IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900 <br><br> **JURY TRIAL DEMANDED** <br><br> **EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| Defendants. | ) ) | |

---

**PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT**

---

TO THE HONORABLE COURT:

Bundren Law Group, PLLC (hereinafter collectively referred to as

"Plaintiff"), moves the Court to grant Plaintiff an Emergency Temporary

Restraining Order against Defendants ATLANTIC SPECIALTY INSURANCE

COMPANY ("Atlantic"), ONE BEACON PROFESSIONAL INSURANCE GROUP, and ONE BEACON PROFESSIONAL INSURANCE, INC. ("One Beacon"), and INTACT INSURANCE GROUP, USA, LLC ("Intact"), (hereinafter collectively referred to as the "Insurance Defendants"), and says:

## I.

## NATURE OF THE ACTION AND CLAIMS

1.      This is a diversity action for, *inter alia*, breach of contract promissory estoppel and third-party beneficiary of the insurance contract.

## II.

## STATEMENT OF FACTS

2.      Plaintiff offers the Affidavit of Charles Bundren, Esq., manager of Bundren Law Group, PLLC, as evidence in support of Plaintiff's Emergency Application for Temporary Restraining Order. (A copy of the Affidavit is attached as Exhibit 1 to this Emergency Application.).

3.      This is a suit for Defendants' breach of an insurance contract and breach of the contract with Plaintiff to pay for legal services and expenses for defense in a lawsuit. (*See* Affidavit of Charles Bundren, Esq. ("Bundren Affidavit") attached as Exhibit 1, at ¶10.)

4.      TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually and Joe Hoft were sued by Ruby Freeman ("Freeman") and Shea Moss ("Moss") for, *inter alia,* defamation, disparagement, personal injury, harm to character or reputation including libel, and slander for publications allegedly made by TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually. The lawsuit will hereinafter be referred to as the "Freeman Moss Lawsuit." (*See* Bundren Affidavit at ¶11.).

5.      Atlanta, Beacon and Intact, the insurance companies, issued to TGP COMMUNICATIONS, LLC, and its agents, employees, members, and managers a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy") which covered the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually. (*See* Bundren Affidavit at ¶12.).

6.      Atlanta, Beacon and Intact, the insurance companies, admitted coverage of the Insurance Policy covering the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually. (*See* Bundren Affidavit at ¶13.).

7.      The insurance policy has a "limit of liability" of "$2,000,000.00." (*See* Bundren Affidavit at ¶14.).

8.      Atlanta, Beacon and Intact, the insurance companies, have taken the position that Defense Costs are part of and not in addition to the limits of liability and the "Defense Costs" will erode and may exhaust the "limits of liability" of the insurance companies. (*See* Bundren Affidavit at ¶15.).

9.      Plaintiff was retained by Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually to provide legal representation to TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit, and Plaintiff did so. Plaintiff was retained by written contract. (*See* Bundren Affidavit at ¶16.).

10.     Plaintiff relied on the Insurance Policy as the primary contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. (*See* Bundren Affidavit at ¶17.).

11.     Plaintiff is a third-party beneficiary of the Insurance Policy for payment of legal services and expenses rendered by Plaintiff to TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. (*See* Bundren Affidavit at ¶18.).

12.     The insurance policy was the primary contract relied on by Bundren Law Group, PLLC to pay defense costs in defending TGP, James "Jim" Hoft,

individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. (*See* Bundren Affidavit at ¶19.).

13.    TGP, James "Jim" Hoft, individually, and Joe Hoft, individually also promised and entered into a written contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. (*See* Bundren Affidavit at ¶20.).

14.    Atlanta, Beacon and Intact, the insurance companies, participated in and negotiated the terms of the written contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. (*See* Bundren Affidavit at ¶21.).

15.    Plaintiff submitted invoices to Atlanta, Beacon and Intact, the insurance companies and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. Atlanta, Beacon and Intact, the insurance companies paid a portion of the invoices but have failed and refused, and continue to fail and refuse, to pay Plaintiff for all of the invoices owed resulting in a balance owed by all Defendants, jointly and

severally, to Plaintiff in the amount of $512,215.50. This amount is past due and remains unpaid by Defendants. (*See* Bundren Affidavit at ¶22.).

16.     TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, although they have received all invoices from Plaintiff for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit, TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, have failed and refused, and continue to fail and refuse, to pay Plaintiff's invoices resulting in a balance of unpaid and past due invoices in the amount of $512,215.50 owed to Plaintiff. This amount is past due and remains unpaid by TGP, James "Jim" Hoft, individually, and Joe Hoft, individually. (*See* Bundren Affidavit at ¶23.)

17.     Plaintiff has made repeated written demands to Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, for payment of the past due invoices for legal services and expenses incurred in defense of the Freeman Moss Lawsuit. Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, have ignored Plaintiff's demands and have failed and refused, and continue to fail and refuse, to pay the past due invoices which totaled in the amount of $512,215.50 owed to Plaintiff. (*See* Bundren Affidavit at ¶24.)

18.     Atlanta, Beacon and Intact, the insurance companies taken the position that "Defense Costs" "are part of and not in addition to the limits of liability" of the Insurance Policy and that "Defense Costs will erode and may exhaust the limit of liability" of the Insurance Policy.(*See* Bundren Affidavit at ⁋25.).

19.     Based on information and belief and communications made by Defendants, Atlanta, Beacon and Intact, the insurance companies have paid and will continued to pay amounts to other persons that "will erode and may exhaust the limit of liability" of the Insurance Policy without payment of past due amounts and invoices owed to Plaintiff in the amount of $512,215.50, including a settlement with Plaintiffs in the Freeman Moss Lawsuit. (*See* Bundren Affidavit at ⁋26.)

20.     If the "limit of liability" of the Insurance Policy is eroded or exhausted without payment to Plaintiff in the amount of $512,215.50 for Plaintiff's past due invoices in the amount of $512,215.50 for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit, Plaintiff will be irreparably harmed and injured by the exhaustion and erosion the "limit of liability" of the Insurance Policy. (*See* Bundren Affidavit at ⁋27.).

21.     Plaintiff has given Defendants notice of Plaintiff's claims and damages suffered by Plaintiff but Defendants have failed and refused, and continue to fail and refuse, to honor the insurance contract and the attorney retention contract, and

continue to fail and refuse to pay Plaintiff for the amount of damages suffered by Plaintiff and covered by the Insurance Policy.(*See* Bundren Affidavit at ₱28.).

22.     Plaintiff has been forced to file this lawsuit because Defendants have failed and refused, and continue to fail and refuse, to pay a lawful debt owed to Plaintiff, and have failed and refused to pay Plaintiff for the past due invoices for defense costs which are covered by the Insurance Policy.(*See* Bundren Affidavit at ₱29.)

23.     Plaintiff has occurred legal fees and court costs to bring this legal action against Defendants for which Plaintiff will seek recovery from Defendants for the court costs and attorney's fees incurred in this action. (*See* Bundren Affidavit at ₱30.)

### III.

### ARGUMENT AND AUTHORITIES

*a.     Plaintiff needs a Temporary Restraining Order to maintain the status quo.*

24.     The purpose of a temporary restraining order is to preserve the status quo of the subject matter of the litigation and prevent irreparable until a hearing can be held on a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974); FRCP 65(b). To receive a restraining order, Plaintiffs must prove that "immediate and irreparable injury, loss, or damage will result to" [Plaintiff] before notice can be served and a hearing had

on the preliminary injunction. FRCP 65(b).  Here, there is immediate and irreparable imminent harm if the Court does not grant a temporary restraining order because the Insurance Defendants will continue to deplete, erode, and exhaust the limit of liability of the insurance policy such that the insurance policy will have no limit of liability remaining to pay Plaintiff's invoices for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

25.     The status quo is to maintain the limit of liability of the insurance policy sufficient to pay Plaintiff's invoices for defense costs incurred in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

26.     Plaintiff's Application for Temporary Restraining Order is authorized by general principles of equity, federal statutes and federal rules and Texas state law. *eBay Inc. v. Merc-Exchange, L.L.C.,* 547 U.S. 388, 391 (2006) (injunctive relief is based on well-established principles of equity).

### b. Plaintiff needs a Temporary Restraining Order to protect Plaintiff's interest in the limit of liability of the insurance policy to pay defense costs incurred in the defense in the Freeman Moss Lawsuit.

27.     Plaintiff reasonably relied upon the insurance policy to pay the defense costs incurred by Plaintiff in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

28.     The limit of liability of the insurance policy is being exhausted, eroded, and depleted by the Insurance Defendants to the extent that if a Temporary

Restraining Order is not granted, the limit of liability of the insurance policy will be exhausted and eroded, and reduced and depleted below $600,000 which is necessary to pay Plaintiff for Plaintiff's unpaid and past due invoices, and the attorney's fees and expenses incurred in this action.

### *c. Plaintiff is likely to prevail on Plaintiff's breach of contract claim.*

29.    The essential elements of a claim for breach of contract are: (1) a valid, enforceable contract; (2) that the plaintiff is a party or third-party beneficiary to the contract; (3) that plaintiff performed, tendered performance of, or was excused from performing plaintiff's contractual obligations; (4) breach of the contract by defendant; and, (5) injury caused to plaintiff by defendant's breach. *Turner v. Ewing.*, 625 S.W.3d 510, 518 (Tex. App. – Houston [14th] Dist. 2020, pet denied); and, *Marquis Acquisitions, Inc. v. Steadfast Ins.*, 409 S.W.3d 808, 813 (Tex. App. Dallas 2013, no denied). All of these elements are met here.

30.    A written and fully executed contract exists between Plaintiff and Defendants to pay Plaintiff for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

31.    Plaintiff defended TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

32.    Plaintiff prepared and delivered invoices to Defendants for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

33.    Defendants have failed and refused, and continue to fail and refuse, to pay Plaintiff's invoices for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

34.    Under the contract for payment of defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit, all work was to be performed in Collin County, Texas.

35.    Plaintiff has been injured by Defendants' breach of contract because Defendants, jointly and severally, owe Plaintiff $512,215.50 for Plaintiff's past due invoices in the amount of $512,215.50 for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

### d. Plaintiff is likely to prevail on Plaintiff's promissory estoppel claim.

36.    The essential elements of a claim for promissory estoppel are: (1) defendants made promises to plaintiff; (2) plaintiff reasonably and substantially relied on the promise to plaintiff's detriment; (3) plaintiff's reliance was foreseeable by defendants; and, (4) injustice can be avoided only by enforcing defendant's promise. *Henry Schein, Inc. v. Strombe*, 102 S.W.3d 675, 586 9Tex. 2002).

37.     All of the essential elements of a claim for promissory estoppel are present in this case. Defendants promised to pay Plaintiff to defend TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit, and promised to pay Plaintiff from the insurance policy.

38.     Plaintiff defended TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit, and incurred defense costs.

39.     Plaintiff reasonably and substantially relied on Defendants' promise to pay Plaintiff to defend TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit from, *inter alia*, the insurance policy, and Plaintiff reasonably and substantially relied on the insurance policy and the insurance policy's obligation to pay defense costs to be paid for defending TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

40.     Plaintiff's reliance on Defendants and the insurance policy to pay Plaintiff for defense costs in defending TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit was foreseeable by Defendants.

41.     Injustice can only be avoided by enforcing Defendants' promise to pay Plaintiff the defense costs and to pay Plaintiff for defending TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit from, *inter alia*, the insurance policy.

42.    Plaintiff has been injured and has suffered $512,215.50 in damages for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit which Defendants have failed and refused to pay.

### e. Plaintiff is likely to prevail on Plaintiff's third-party beneficiary claim.

43.    The essential elements of a claim for third-party beneficiary of the contract are: (1)  the contracting parties intended to secure a benefit for Plaintiff; (2) the contracting parties entered into the contract for the third party's benefit; and, (3) plaintiff performed, tendered performance of or was excused from performing the contract obligations. *Wal-Mart Stores v. Xerox State & Local Solutions, Inc.*, 663 S.W.3d 569, 582-83 (Tex. 2023); and, *First Bank v. Brumitt.*, 519 S.W.3d 95, 102 (Tex. 2017).

44.    All of the essential elements of a claim for third-party beneficiary of the insurance contract are present in this action.

45.    Plaintiff was contracted and retained to defend TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

46.    The insurance contract specifically required the Insurance Defendants to pay Plaintiff for defense costs in defending TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit from the insurance policy.

47.    The insurance contract and obligations of the Insurance Defendants to pay defense costs from the insurance policy was for the benefit of Plaintiff to

contractually bind the Insurance Defendants to pay Plaintiff for defense costs in defending TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

48.    Plaintiff performed Plaintiff's contractual obligations by defending TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

49.    Plaintiff submitted invoices for the defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit to the Insurance Defendants, and the Insurance Defendants did not object to or contest Plaintiff's invoices.

50.    Accordingly, Plaintiff is entitled to a Temporary Restraining Order protecting the limit of liability of the insurance contract.  Moreover, the irreparable harm created by Defendants' actions cannot be fully remedied by monetary damages.  If not restrained, the insurance Defendants will continue to exhaust, diminish, erode, and damage the limit of liability of the insurance contract.

51.    The 471st Judicial District Court of Collin County, Texas has heard Plaintiff's application for Temporary Restraining Order and based upon the same evidence as presented by Plaintiff in this action, that Court granted Plaintiff a Temporary Restraining Order to restrain the Insurance Defendants from exhausting, eroding, and reducing the limit of liability of the insurance contract below $600,000.

Plaintiff prays that this Court do the same as the 471st Judicial District Court of Collin County, Texas has already done.

52.    Plaintiff is willing to post bond.  As the Court makes its determination of the amount of the bond, Plaintiff asks that the Court consider the importance to Plaintiff's business of the equitable relief sought which is merely to maintain the status quo.

## PRAYER

53.    Plaintiff respectfully request that the Court grant Plaintiff's Emergency Application for a Temporary Restraining Order.  A copy of the proposed Emergency Temporary Restraining Order is attached as Exhibit 2 to this Emergency Application.

54.    For these reasons, Plaintiff prays that the Court grant Plaintiff's Emergency Application for a Temporary Restraining Order and restrain the Defendants as prayed for herein.

Dated:        October 11, 2024.

Respectfully submitted,

By: /s/ Charles Bundren

**BUNDREN LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
Lead Attorney and Attorney-in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300

Frisco, Texas 75034
(214) 808-3555    Telephone
e-mail:        charles@bundrenlaw.net
**ATTORNEY FOR PLAINTIFF:**
**BUNDREN LAW GROUP, PLLC**

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of October, 2024, a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure and the United States District Court for the Eastern District of Texas Local Rules on all legal counsel of record for any party by serving the following:

**KLEMCHUK PLLC**
Brian Casper, Esq.
Lead Counsel and Attorney-in-Charge
Texas State Bar No. 24075563
8150 N. Central Expressway, 10th Floor
Dallas, TX 75206
Phone:              (214) 367-6000
Fax:                 (214) 367-6001
Email:             brian.casper@klemchuk.com

**ATTORNEYS FOR DEFENDANT TGP**

__X__ by the Court's CM/ECF Pacer electronic filing System pursuant to FRCP 5(b)(2)(E) and 5(b)(3), and LOCAL RULE CV-5 (c)&(d),

____ by certified mail return receipt requested deposited with the United States Postal Service on the date indicated above pursuant to FRCP 5(b)(2)(C),

____ by email at the email address indicated above pursuant to FRCP 5(b)(2)(E), and in accordance with the United States District Court for the Eastern District of Texas Local Rule CV-5(a)(7)(D) a copy of this document was served opposing counsel in electronic form by serving opposing counsel at the email addresses listed herein.

and/or

____ by hand delivery service on the date indicated above pursuant to FRCP 5(b)(2)(A) and (B).

And to the non-represented Defendants by Federal Express delivery as follows:

ATLANTIC SPECIALTY INSURANCE COMPANY
150 Royal St.
Canton, MA 02021

ONE BEACON PROFESSIONAL INSURANCE GROUP
6800 College Blvd., Suite 350
Overland Park, Kansas 66211

ONE BEACON PROFESSIONAL INSURANCE, INC.
6800 College Blvd., Suite 350
Overland Park, Kansas 66211

INTACT INSURANCE GROUP, USA, LLC
605 Highway 169 N., Suite 800
Plymouth, MN 55441

James "Jim" Hoft
1820 NE Jensen Beach Boulevard, Suite 1120
Jensen Beach, FL 34957

Joseph "Joe" Hoft
1820 NE Jensen Beach Boulevard, Suite 1120
Jensen Beach, FL 34957

By: /s/ Charles Bundren
**ATTORNEY FOR PLAINTIFF:**
**BUNDREN LAW GROUP, PLLC**

## CERTIFICATE OF CONFERENCE

On October 11, 2024 lead legal counsel for Plaintiff, Charles Bundren, Esq., called Brian Casper, Esq. lead counsel for Defendant, TGP Communications, Inc.

regarding the relief requested in this emergency application. Mr. Casper was unavailable to confer. Mr. Casper has not returned plaintiff's counsel's phone call as of the filing of this application. No other defendant has legal counsel who has appeared in this case.

Plaintiff's legal counsel has complied with the meet and confer requirements in Local Rule CV-7(h) of the Local Rules of the United States District Court for the Eastern District of Texas.

By: /s/ Charles Bundren
**ATTORNEY FOR PLAINTIFF:**
**BUNDREN LAW GROUP, PLLC**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900 **JURY TRIAL DEMANDED** **EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| Defendants. | ) ) | |

---

**PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND BRIEF IN SUPPORT**

---

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**JURY TRIAL DEMANDED**

CIVIL ACTION NO.

4:24-CV-00900

**JURY TRIAL DEMANDED**

**EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**

---

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**

---

STATE OF TEXAS

COUNTY OF COLLIN

---

Before me, the undersigned notary, on this day personally appeared Charles Bundren, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1.      My name is Charles Bundren. I do hereby swear under penalty of perjury that the facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.      Am over the age of 18 years, of sound mind, and a resident of the City of Frisco, Texas. I make this affidavit based upon my personal knowledge and if called upon to testify as to the contents of this Affidavit, I am legally competent to testify to the contents of the Affidavit in a court of law.

3.      I am currently employed by Bundren Law Group, PLLC in the capacity of manager and attorney. In my capacity as manager and attorney of Bundren Law Group, PLLC, I have responsibility for overall management and supervision of Bundren Law Group, PLLC.

4.      I was the attorney in charge and lead attorney representing TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually, who were sued by Ruby Freeman ("Freeman") and Shea Moss ("Moss") for, *inter alia,* defamation, disparagement, personal injury, harm to character or reputation including libel, and slander for publications allegedly made

by TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually. The lawsuit will hereinafter be referred to as the "Freeman Moss Lawsuit."

5.     I conducted and organized all activities and legal services for Bundren Law Group, PLLC with respect to Bundren Law Group, PLLC's legal representation and defense of TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually, in the Freeman Moss Lawsuit.

6.     I negotiated all contracts between Bundren Law Group, PLLC and Defendants including the legal services retention contract concerning legal representation and defense of TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually, in the Freeman Moss Lawsuit by Bundren Law Group, PLLC.

7.     I prepared and submitted invoices from Bundren Law Group, PLLC to Atlanta, Beacon and Intact, the insurance companies, who issued to TGP COMMUNICATIONS, LLC, and its agents, employees, members, and managers a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy") which covered the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually.

8.      I am making this affidavit in my capacity as a company representative of Bundren Law Group, PLLC on personal information known to me regarding Bundren Law Group, PLLC and Bundren Law Group, PLLC's legal representation and defense of TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually, in the Freeman Moss Lawsuit.

9.      As part of my responsibilities at Bundren Law Group, PLLC I am responsible for contracts that are executed between Bundren Law Group, PLLC and its clients. I am also responsible for the supervision of Bundren Law Group, PLLC representation of its clients and, in this case, specifically Bundren Law Group, PLLC's legal representation and defense of TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually, in the Freeman Moss Lawsuit.

10.     This is a suit for Defendants' breach of an insurance contract and breach of the contract with Bundren Law Group, PLLC to pay for legal services and expenses for defense in a lawsuit.

11.     TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually and Joe Hoft were sued by Ruby Freeman ("Freeman") and Shea Moss ("Moss") for, *inter alia,* defamation, disparagement, personal injury, harm to character or reputation including libel, and slander for publications allegedly made by TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and

Joe Hoft, individually. The lawsuit will hereinafter be referred to as the "Freeman Moss Lawsuit."

12.     Atlanta, Beacon and Intact, the insurance companies, issued to TGP COMMUNICATIONS, LLC, and its agents, employees, members, and managers a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy") which covered the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually.

13.     Atlanta, Beacon and Intact, the insurance companies, admitted coverage of the Insurance Policy covering the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually.

14.     The insurance policy has a "limit of liability" of "$2,000,000.00."

15.     Atlanta, Beacon and Intact, the insurance companies, have taken the position that Defense Costs are part of and not in addition to the limits of liability and the "Defense Costs" will erode and may exhaust the "limits of liability" of the insurance companies.

16.     Bundren Law Group, PLLC was retained by Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, to provide legal representation and a defense to TGP, James "Jim"

Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit, and Bundren Law Group, PLLC did so. Bundren Law Group, PLLC was retained by written contract.

17.    Bundren Law Group, PLLC relied on the Insurance Policy as the primary contract to pay Bundren Law Group, PLLC for legal services and expenses rendered for and in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

18.    Bundren Law Group, PLLC is a third-party beneficiary of the Insurance Policy for payment of legal services and expenses rendered by Bundren Law Group, PLLC to TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

19.    The insurance policy was the primary contract relied on by Bundren Law Group, PLLC to pay the defense costs in defending TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

20.    TGP, James "Jim" Hoft, individually, and Joe Hoft, individually also promised and entered into a written contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

21.    Atlanta, Beacon and Intact, the insurance companies, participated in and negotiated the terms of the written contract to pay Bundren Law Group, PLLC

for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

22.     Bundren Law Group, PLLC submitted invoices to Atlanta, Beacon and Intact, the insurance companies and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. Atlanta, Beacon and Intact, the insurance companies paid a portion of the Bundren Law Group, PLLC invoices but have failed and refused, and continue to fail and refuse, to pay Bundren Law Group, PLLC for all of the invoices owed resulting in a balance owed by all Defendants, jointly and severally, to Bundren Law Group, PLLC in the amount of $512,215.50. This amount is past due and remains unpaid by Defendants.

23.     TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, although they have received all invoices from Bundren Law Group, PLLC for legal services and expenses rendered by Bundren Law Group, PLLC for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit, TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, have failed and refused, and continue to fail and refuse, to pay Bundren Law Group, PLLC's invoices resulting in a balance of unpaid and past due invoices in the amount

of $512,215.50 owed to Bundren Law Group, PLLC. This amount is past due and remains unpaid by TGP, James "Jim" Hoft, individually, and Joe Hoft, individually.

24.     Bundren Law Group, PLLC has made repeated written demands to Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, for payment of the past due invoices for legal services and expenses incurred in defense of the Freeman Moss Lawsuit. Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, have ignored Bundren Law Group, PLLC's demands and have failed and refused, and continue to fail and refuse, to pay the past due invoices which totaled in the amount of $512,215.50 owed to Bundren Law Group, PLLC.

25.     Atlanta, Beacon and Intact, the insurance companies taken the position that "Defense Costs" "are part of and not in addition to the limits of liability" of the Insurance Policy and that "Defense Costs will erode and may exhaust the limit of liability" of the Insurance Policy.

26.     Based on information and belief and communications made by Defendants to me and Bundren Law Group, PLLC, Atlanta, Beacon and Intact, the insurance companies have paid and will continued to pay amounts to other persons that "will erode and may exhaust the limit of liability" of the Insurance Policy without payment of past due amounts and invoices owed to Bundren Law Group,

PLLC in the amount of $512,215.50, including a settlement with the plaintiffs in the Freeman Moss Lawsuit.

27.    If the "limit of liability" of the Insurance Policy is eroded or exhausted without payment to Bundren Law Group, PLLC in the amount of $512,215.50 for Bundren Law Group, PLLC's past due invoices in the amount of $512,215.50 for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit, Bundren Law Group, PLLC will be irreparably harmed and injured by the exhaustion and erosion the "limit of liability" of the Insurance Policy.

28.    Bundren Law Group, PLLC has given Defendants written notice of Bundren Law Group, PLLC's claims and damages suffered by Bundren Law Group, PLLC but Defendants have failed and refused, and continue to fail and refuse, to honor the insurance contract and the attorney retention contract, and continue to fail and refuse to pay Bundren Law Group, PLLC for the amount of damages suffered by Bundren Law Group, PLLC and covered by the Insurance Policy.

29.    Bundren Law Group, PLLC has been forced to file this lawsuit because Defendants have failed and refused, and continue to fail and refuse, to pay a lawful debt owed to Bundren Law Group, PLLC, and have failed and refused to pay Bundren Law Group, PLLC for the past due invoices for defense costs which are covered by the Insurance Policy.

30.    Bundren Law Group, PLLC has occurred legal fees and court costs to bring this legal action against Defendants.



_____
Charles Bundren

Sworn to and subscribed before me by Charles Bundren on October 11, 2024.

_____

ROSALINDA NATALIA MEDLIN
Notary Public, State of Texas
Notary ID# 13465149-2
My Commission Expires 11-17-2027

Notary Public in and for the State of Texas.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900 **JURY TRIAL DEMANDED** **EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| Defendants. | ) ) | |

---

**PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT**

---

# EXHIBIT 2

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900 **JURY TRIAL DEMANDED** **EMERGENCY TEMPORARY RESTRAINING ORDER** |
| Defendants. | ) ) | |

---

## TEMPORARY RESTRAINING ORDER

---

On this day the Court heard and considered Plaintiff's Application for an Emergency Temporary Restraining Order. After considering Plaintiff's Application for an Emergency Temporary Restraining Order, the pleadings, the affidavits, and arguments of counsel, the Court finds there is sufficient evidence

to support the issuance of this Order because:

A. From the evidence presented, this Court concludes that the harm, injury, loss, or damage is immediate and imminent to Plaintiff;

B. From the evidence presented, this Court concludes that Plaintiff will likely succeed on the merits of Plaintiff's claims at the trial of this matter;

C. From the evidence presented, this Court concludes that and if the Court does not issue the Temporary Restraining Order, Plaintiff will likely suffer immediate and irreparable injury, loss, or damage because the harm, loss and injury to Plaintiff may be difficult to recover during the pendency of this lawsuit;

D. From the evidence presented, this Court concludes that the harm, loss, and injury to Plaintiff is continuing and ongoing unless this Court restrains Defendants' unlawful activity and,

E. From the evidence presented, this Court concludes that if the Court does not issue a Temporary Restraining Order Plaintiff will be irreparably injured and harmed because:

1. TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually and Joe Hoft were sued by Ruby Freeman ("Freeman") and Shea Moss ("Moss") for, *inter alia,* defamation, disparagement, personal injury, harm to character or reputation including libel, and slander for publications allegedly made by TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and

Joe Hoft, individually. The lawsuit will hereinafter be referred to as the "Freeman Moss Lawsuit" which Plaintiff was retained by written contract to defend;

2.      Defendants, Atlanta, Beacon and Intact, the insurance companies, issued to TGP COMMUNICATIONS, LLC, and its agents, employees, members, and managers a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy") which covered the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually;

3.      Defendant, Atlanta, Beacon and Intact, the insurance companies, have admitted coverage of the Insurance Policy covering the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually;

4.      The insurance policy issued by Defendant, Atlanta, Beacon and Intact, the insurance companies, has a "limit of liability" of "$2,000,000.00;"

5.      Defendant's, Atlanta, Beacon and Intact, the insurance companies, have taken the position that Defense Costs are part of and not in addition to the limits of liability and the "Defense Costs" will erode and may exhaust the "limits of liability" of the insurance companies;

6.     Plaintiff was retained by Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually to provide legal representation to TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit, and Plaintiff did so, and Plaintiff was retained by written contract;

7.     Plaintiff relied on the Insurance Policy as the primary contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit;

8.     Plaintiff is likely a third-party beneficiary of the Insurance Policy for payment of legal services and expenses rendered by Plaintiff to TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit;

9.     The insurance policy was the primary contract relied on by Bundren Law Group, PLLC to pay defense costs in defending TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit;

10.     Defendants Atlanta, Beacon and Intact, the insurance companies, participated in and negotiated the terms of the written contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit;

11.   Plaintiff submitted invoices to Atlanta, Beacon and Intact, the insurance companies and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. Atlanta, Beacon and Intact, the insurance companies paid a portion of the invoices but have failed and refused, and continue to fail and refuse, to pay Plaintiff for all of the invoices owed resulting in a balance owed by all Defendants, jointly and severally, to Plaintiff in the amount of $512,215.50, and this amount is past due and remains unpaid by Defendants;

12.   TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, although they have received all invoices from Plaintiff for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit, TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, have failed and refused, and continue to fail and refuse, to pay Plaintiff's invoices resulting in a balance of unpaid and past due invoices in the amount of $512,215.50 owed to Plaintiff. This amount is past due and remains unpaid by TGP, James "Jim" Hoft, individually, and Joe Hoft, individually;

13.   Plaintiff has made repeated written demands to Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe

Hoft, individually, for payment of the past due invoices for legal services and expenses incurred in defense of the Freeman Moss Lawsuit. Atlanta, Beacon and Intact, the insurance companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, have ignored Plaintiff's demands and have failed and refused, and continue to fail and refuse, to pay the past due invoices which totaled in the amount of $512,215.50 owed to Plaintiff;

14.     Atlanta, Beacon and Intact, the insurance companies taken the position that "Defense Costs" "are part of and not in addition to the limits of liability" of the Insurance Policy and that "Defense Costs will erode and may exhaust the limit of liability" of the Insurance Policy;

15.     Based on information and belief and communications made by Defendants, Atlanta, Beacon and Intact, the insurance companies have paid and will continued to pay amounts to other persons that "will erode and may exhaust the limit of liability" of the Insurance Policy without payment of past due amounts and invoices owed to Plaintiff in the amount of $512,215.50, including a settlement with Plaintiffs in the Freeman Moss Lawsuit;

16.     If the "limit of liability" of the Insurance Policy is eroded or exhausted without payment to Plaintiff in the amount of $512,215.50 for Plaintiff's past due invoices in the amount of $512,215.50 for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit, Plaintiff will

be irreparably harmed and injured by the exhaustion and erosion the "limit of liability" of the Insurance Policy;

17.     Plaintiff has given Defendants notice of Plaintiff's claims and damages suffered by Plaintiff but Defendants have failed and refused, and continue to fail and refuse, to honor the insurance contract and the attorney retention contract, and continue to fail and refuse to pay Plaintiff for the amount of damages suffered by Plaintiff and covered by the Insurance Policy;

18.     The 471st Judicial District Court of Collin County, Texas, prior to removal of this action to this Court, previously entered a Temporary Restraining Order for the same reasons as this Court's Order; and,

19.     Texas law recognizes that equity will protect the exercise of natural and contractual rights arising from written contracts formal in the State of Texas and in Collin County, Texas.

The Court further finds that this Order is both necessary and appropriate in order to prevent imminent and irreparable harm and injury to Plaintiff's business and contracts.

An Emergency Temporary Restraining Order is necessary because there was not enough time to give notice to Defendants, hold a hearing, and issue a Temporary Restraining Order before the imminent and irreparable injury, loss or damage and harm to Plaintiff continue.

**IT IS THEREFORE ORDERED THAT**:

1.      Defendants, ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., and INTACT INSURANCE GROUP, USA, LLC and their respective officers, managers, trustees, agents, servants, employees, consultants, attorneys, confederates and all other persons in active concert or participation with them, are hereby restrained and enjoined immediately from making any payments to any person for any reason under the insurance policy which would reduce, erode, exhaust, or deplete the limits of liability and balance of funds available to pay defense costs to Plaintiff Bundren Law Group, PLLC below $600,000.

2.      Actual notice of this Order shall be effective by delivery of a copy of this Order by hand, by United States mail by certified delivery return receipt requested, by courier or private delivery service, by facsimile, by e-mail, by Federal Express or by any other reasonable means of delivery to Defendants or any of their agents, assigns, affiliates register agents or representatives.

The clerk shall issue notice to Defendants that the hearing on Plaintiff's Application for Preliminary Injunction is set for _____, 2024, at _____ _____a.m./ p.m. in the court room of the United States District Court for the Eastern District of Texas Sherman Division sitting in Sherman,

Texas.  The purpose of the hearing shall be to determine whether this Temporary Restraining Order should be made a Preliminary Injunction pending a full trial on the merits.

The clerk shall issue this Temporary Restraining Order upon Plaintiff posting a bond of $_____.

The Court finds that this Order is entered based upon very special circumstances.  It is supported by evidence showing imminent and irreparable harm that will deprive Plaintiff of a just resolution of Plaintiff's dispute absent entry of this Order.  This Order represents the least restrictive means to protect against the threatened imminent and irreparable harm found by the Court.

This Order expires at 11:59 P.M. on the _____ day of October, 2024.

Signed this _____ day of October, 2024.


_____
Judge Amos L. Mazzant, III.
United States District Court Judge
for the Eastern District of Texas
Sherman Division