# Exhibit 2

# OneBeacon
### E N T E R T A I N M E N T

onebeaconentertainment.com

| RE:   Media Professional Liability - Primary<br>TGP Communications, LLC | Policy |
|---|---|
| Account No:  199908          Policy No:  MEP-23005-20 | |

199 Scott Swamp Road          860.321.2888 t
Farmington, CT 06032          860.321.2889 f

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

**Atlantic Specialty Insurance Company**
150 Royall Street
Canton, MA 02021
1-877-701-0171
*(hereinafter referred to as the "Underwriter")*



Policy Number:  MEP-23005-20
Renewal of:        MEP-20981-19

### DECLARATIONS

### MEDIA ADVANTAGE POLICY

**DEFENSE COSTS** ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY**. DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY. **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.  THE **UNDERWRITER** WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS OR **DEFENSE COSTS** ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.  VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

| ITEM 1. | **NAMED INSURED**<br>Name and Principal Address:<br>TGP Communications, LLC<br>5105 Lindell Boulevard<br>St. Louis, MO 63108 | ITEM 2.   **POLICY PERIOD:**<br><br>(a)  Inception Date: January 30, 2020<br>(b)  Expiration Date: January 30, 2021<br>Both dates at 12:01 a.m. at the<br>Principal Address in ITEM 1. |
|---|---|---|
| ITEM 3. | **SCHEDULED MEDIA:**<br>Matter published and/or distributed by the Named Insured via www.thegatewaypundit.com | |

| ITEM 4.<br>(A)<br>(B) | **LIMITS OF LIABILITY**<br>Each **Claim**<br>Aggregate for All **Claims** | $2,000,000<br>$2,000,000 |
|---|---|---|
| ITEM 5. | **RETENTION**<br>  Each **Claim** or **Related Claims** | $25,000 |

| ITEM 6. | **PREMIUM: $14,171** |
|---|---|
| | **X**   *Gross Premium*:  **The Underwriter will pay a percentage of the Premium shown above as brokerage commission.  The Underwriter does not pay contingent or deferred commissions. Consult your broker for information concerning commission.** |
| | **_**   *Net Premium*: **The Premium shown above is net, and the Underwriter will pay no brokerage commission of any kind thereon.** |

| ITEM 7. | **ALL NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER GENERAL CONDITION (D) OF THIS POLICY MUST BE ADDRESSED TO:** |
|---|---|
| | OneBeacon Professional Insurance<br>Attn:  Claims Administrator<br>6800 College Boulevard, Suite 350<br>Overland Park, Kansas 66211<br>1-800-753-7545<br>913-384-4822 - fax<br>    -or-<br>mediaclaims@onebeacon.com |
| | **ALL OTHER NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER THIS POLICY MUST BE ADDRESSED TO:** |
| | OneBeacon Professional Insurance<br>6800 College Boulevard, Suite 350<br>Overland Park, Kansas 66211 |
| ITEM 8. | **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:** |

| | |
|---|---|
| NPF-91001-01-14 | Media Advantage Policy |
| NPE-900MO-01-14 | Missouri Amendatory |
| NPE-902MO-DWL-01-14 | Missouri DWL Disclosure and Acknowledgement |
| NPE-90018-DWL-01-14 | Defense within Limits of Liability |
| NPE-90047-06-16 | Clarification for Related Occurrences |
| NPE-90053-07-18 | Declaratory Relief Action Coverage |

These Declarations, the completed and signed Application, and the Policy (including all endorsements thereto) shall constitute the entire agreement between the Underwriter and the Insureds.

**Atlantic Specialty Insurance Company**
By:

*T. M. Smith* _____

_____        <u>January 31, 2020</u>
Its Authorized Representative                               Date

**MISSOURI IMPORTANT NOTICE TO POLICYHOLDERS**

(1)   You may contact the Underwriter at the following address/telephone number:

199 Scott Swamp Road
Farmington, CT 06032
(877) 701-0171

(2)   **Missouri Property and Casualty Insurance Guaranty Association**

(a)   Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (the "Act"), if the Underwriter is a member of the Missouri Property and Casualty Insurance Guaranty Association (the "Association"), the Association will pay claims covered under the Act if the Underwriter becomes insolvent.

(b)   The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

(i)   Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer, if the insured has a net worth of more than $25 million on the later of the end of the insured's most recent fiscal year or December thirty-first of the year next preceding the date the insurer becomes insolvent; provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

(ii)   Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000.

However, the Association will not:

(A)   pay an amount in excess of the applicable limit of liability of the policy from which a claim arises; or

(B)   return to an insured any unearned premium in excess of $25,000.

These limitations have no effect on the coverage provided under this Policy.

ENDORSEMENT NO.  1
MISSOURI AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on January 30, 2020, forms part of

> Policy No.     MEP-23005-20
> Issued to      TGP Communications, LLC
> Issued by      Atlantic Specialty Insurance Company

In consideration of the premium charged:

(1)     The last sentence of Section II DEFINITIONS (E) of this Policy is amended to read as follows:

> provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured** or the **underwriter**.

(2)     The first sentence of Section IV GENERAL CONDITIONS (T)(2) of this Policy is amended to read as follows:

> The **underwriter** may cancel this Policy by mailing written notice, to the **named insured** at the address shown in the Declarations at least:
>
> (a)   ten (10) days before the effective date of cancellation if the **underwriter** cancels for non-payment of premium;
>
> (b)   thirty (30) days before the effective date of cancellation if the **underwriter** cancels for one or more of the following reasons:
>
>> (i)    fraud or material misrepresentation affecting this Policy or a **claim** filed under this Policy or a violation of any of the terms of this Policy;
>>
>> (ii)   changes in conditions after the effective date of this Policy which have materially increased the risk assumed;
>>
>> (iii)  the **underwriter** becomes insolvent; or
>>
>> (iv)   the **underwriter** involuntarily loses reinsurance for this Policy;
>
> (c)   sixty (60) days before the effective date of cancellation if the **underwriter** cancels for any other reason.

(3)     Section IV GENERAL CONDITIONS (T) is amended to add the following:

> The **underwriter** may also deliver the notice required by this Section IV GENERAL CONDITIONS (T) to the first **named insured**.   Notice of cancellation or non-renewal by the **underwriter** shall state the specific reason(s) for such cancellation or non-renewal.

To the extent required for compliance with the regulatory requirements of this state, this Amendatory Endorsement shall supersede and take precedence over any provisions of this Policy or any endorsement to this Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  2
MISSOURI DEFENSE COSTS WITHIN THE LIMITS OF LIABILITY
DISCLOSURE AND ACKNOWLEDGEMENT FOR POLICYHOLDERS ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2020, forms part of:

| | |
|---|---|
| Policy No. | MEP-23005-20 |
| Issued to | TGP Communications, LLC |
| Issued by | Atlantic Specialty Insurance Company |

**DEFENSE COSTS** ARE PART OF AND NOT IN IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY**.  DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY. **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.   THE **UNDERWRITER** WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS, OR **DEFENSE COSTS** ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.

**Defense costs** are defined in this Policy as:

(1)     reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

(2)     reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**; or

(3)     the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond;

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

By signing below, the **named insured**, acting on behalf of all **insureds**, understands and acknowledges that **defense costs** are within the Limit of Liability and **defense costs** will erode and may exhaust completely the Limits of Liability.


BY:     _____
          (signature)


          _____
          (printed name)

Execution by the **named insured** of this Disclosure and Acknowledgement is a requirement of Missouri law and a copy of this form signed by the **named insured** must be received by the **underwriter** in order to issue this Policy.

ENDORSEMENT NO.  <EN>
MISSOURI DEFENSE COSTS WITHIN THE LIMITS OF LIABILITY
DISCLOSURE AND ACKNOWLEDGEMENT FOR POLICYHOLDERS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on _____, forms part of

> Policy No.      <
> Issued to       <
> Issued by       <

**DEFENSE COSTS** ARE PART OF AND NOT IN IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY.  **DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY.  **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.  THE **UNDERWRITER** WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS, OR **DEFENSE COSTS** ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.

**Defense costs** are defined in this Policy as:

(1)     reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

(2)     reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**; or

(3)     the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond;

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

By signing below, the **named insured**, acting on behalf of all **insureds**, understands and acknowledges that **defense costs** are within the Limit of Liability and **defense costs** will erode and may exhaust completely the Limits of Liability.

BY:   _James H. ft_____

(signature)

_James Ho ft_____

(printed name)

Execution by the **named insured** of this Disclosure and Acknowledgement is a requirement of Missouri law and a copy of this form signed by the **named insured** must be received by the **underwriter** in order to issue this Policy.

ENDORSEMENT NO. 3
DEFENSE WITHIN LIMITS OF LIABILITY ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2020, forms part of:

| | |
|---|---|
| Policy No. | MEP-23005-20 |
| Issued to | TGP Communications, LLC |
| Issued by | Atlantic Specialty Insurance Company |

In consideration of the premium charged:

(1)     The introductory text at the top of page 1 of this Policy is amended to read in its entirety as follows:

   **DEFENSE COSTS** ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY.   **DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY.   **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.  THE UNDERWRITER WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS OR DEFENSE COSTS ONCE THE APPLICABLE LIMIT OF LIABILTIY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.  VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

(2)     The introductory section of the first sentence of Section I COVERAGE AGREEMENTS (A) of this Policy is amended to read in its entirety as follows:

   The **underwriter** will pay on behalf of the **insured** any **loss** and **defense costs** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim**, including but not limited to a **claim** for:

(3)     Section I COVERAGE AGREEMENTS (B) of this Policy is amended to read in its entirety as follows:

   The **underwriter** will pay on behalf of the **insured** any **loss** and **defense costs** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim** for negligence, misrepresentation, misstatement or misleading statement in connection with the content of **matter** uttered or disseminated in **scheduled media**.

(4)     Section IV GENERAL CONDITIONS (A)(1) of this Policy is amended to read in its entirety as follows:

   The "Each Claim" amount stated in ITEM 4(A) of the Declarations shall be the **underwriter's** maximum Limit of Liability for all **loss** and **defense costs** resulting from each **claim** or **related claims** for which this Policy provides coverage.

(5)     Section IV GENERAL CONDITIONS (A)(2) of this Policy is amended to read in its entirety as follows:
   The "Aggregate for all Claims" amount stated in ITEM 4(B) of the Declarations shall be the **underwriter's** maximum aggregate Limit of Liability for all **loss** and **defense costs**

resulting from all **claims** or **related claims** for which this Policy provides coverage.

(6)  Section IV GENERAL CONDITIONS (A)(4) of this Policy is amended to read in its entirety as follows:

The **underwriter** will have no obligation to pay **loss** or **defense costs**, or to defend or continue to defend, any **claim** after the **underwriter's** applicable "Each Claim" Limit of Liability, as stated in ITEM 4(A) of the Declarations, has been exhausted by payments under this Policy.  If the **underwriter's** "Aggregate for all Claims" Limit of Liability, as stated in ITEM 4(B) of the Declarations, is exhausted by payments under this Policy, the premium will be fully earned, all obligations of the **underwriter** will be completely fulfilled and exhausted, and the **underwriter** will have no further obligations of any kind or nature whatsoever under this Policy.

(7)  Section IV GENERAL CONDITIONS (F)(3) is amended to read in its entirety as follows:

**Defense costs** are part of, and not in addition to, the Limits of Liability stated in ITEM 4 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 4
CLARIFICATION FOR RELATED OCCURRENCES ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2020, forms part of:

Policy No.          MEP-23005-20
Issued to           TGP Communications, LLC
Issued by           Atlantic Specialty Insurance Company

In consideration of the premium charged:

(1)     Section III EXCLUSION (M) of this Policy is amended to read in its entirety as follows:

        (M)     based upon or arising out of an **occurrence**:

                (1)     committed before the Inception Date or after the Expiration Date of this

                        Policy set forth in ITEM 2 of the Declarations; or

                (2)     which, prior to the Inception Date of this Policy, was the subject of any

                        notice to any **insured** of a claim or a potential claim.

(2)     Section IV GENERAL CONDITIONS (C)(2) of this Policy is amended to read in its entirety
        as follows:

        (2)     Where related **occurrences** take place on one or more dates during the **policy
                period**, or during two or more consecutive policy periods of policies issued by
                the **underwriter**:

                (a)     such **occurrences** shall be considered a single **occurrence** subject to

                        the Limit of Liability and Retention in effect when the first of such related

                        **occurrences** took place; and

                (b)     the **underwriter** shall not be responsible for that portion of any **loss** or

                        **defense costs** attributable to **occurrences** which took place prior

                        to the Inception Date of the first policy issued to the **insured** by the

                        **underwriter** or after expiration of the last policy issued to the **insured**

                        by the **underwriter**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 5
DECLARATORY RELIEF ACTION COVERAGE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2020, forms part of:

    Policy No.      MEP-23005-20
    Issued to       TGP Communications, LLC
    Issued by      Atlantic Specialty Insurance Company

In consideration of the premium charged:

(1)      The term "**defense costs**" as defined in Section II DEFINITIONS of this Policy is amended to read in its entirety as follows:

      **Defense costs** means:

      (1)      reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

      (1)      reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**;

      (2)      the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond; or

      (4)      **declaratory relief action costs** incurred in connection with a covered **claim**;

      provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

(2)      Section II DEFINITIONS of this Policy is amended to include the following additional term:

      "**Declaratory relief action costs**" means reasonable and necessary legal fees, costs and expenses incurred by the **insured** to initiate a declaratory relief action if:

      (1)      the **insured** receives notice of a covered **claim** arising from an **occurrence** committed by the **insured** during the **policy period**;

      (2)      the underlying **claim** is reported to the **underwriter** in accordance with Section IV GENERAL CONDITIONS (D) of this Policy;

      (3)      the **insured** has received the **underwriter's** prior written consent to initiate such declaratory relief action in response to such **claim**; and

      (4)      the **claim** remains pending against the **insured** while the **insured** pursues its declaratory relief action in response to such **claim**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

| **MEDIA ADVANTAGE POLICY** | **OneBeacon**<br>P R O F E S S I O N A L   I N S U R A N C E® |
| --- | --- |

**DEFENSE COSTS** ARE IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY AND THE LIMITS OF LIABILITY ARE NOT REDUCED OR EXHAUSTED BY PAYMENT OF **DEFENSE COSTS.  DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.   VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the **underwriter**, and subject to all of the terms and conditions of this Policy (including all endorsements hereto), the **underwriter** and the **insured** agree as follows:

**I.      COVERAGE AGREEMENTS**

**(A)     Communications and Personal Injury Liability**

The **underwriter** will pay on behalf of the **insured** any **loss** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim**, including but not limited to a **claim** for:

(1)     defamation, however styled in a **claim**, involving disparagement or harm to the character or reputation of any person or organization, including libel, slander, product disparagement or trade libel;

(2)     invasion of or interference with the right of privacy or publicity, however styled in a **claim**, including eavesdropping, intrusion upon seclusion, false light invasion of privacy, public disclosure of private facts and misappropriation of name or likeness;

(3)     negligent or intentional infliction of emotional distress, outrage or outrageous conduct;

(4)     trespass or wrongful entry or eviction;

(5)     false arrest or imprisonment, abuse of process, detention or malicious prosecution;

(6)     harassment or stalking;

(7)     violation of the Fourth Amendment to the United States Constitution or other equivalent state statute prohibiting unreasonable searches and seizures relating to newsgathering;

(8)     breach of any duty of confidentiality in any oral, written or implied agreement arising from the failure to maintain the confidentiality of a source or the materials furnished by a source, or from the failure to portray a source or subject in a certain manner or light;

(9)     infringement of copyright, infringement of **title**, plagiarism, **piracy** and misappropriation of ideas, material or information;

(10)    failure to attribute authorship or to recognize creative moral rights pursuant to a written agreement;

(11)    infringement or dilution of trademark, **slogan**, trade name, trade dress, service mark or service name;

(12)    **unfair competition**, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above;

(13)    deceptive trade practices or fraud, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above; provided that the acts giving rise to such causes of action had been approved in advance by the **insured's** counsel or by a duly authorized supervisor of the **insured**;

(14)    conspiracy, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above;

(15)    breach of a written, oral or implied hold harmless or indemnification agreement, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above;

(16)    any contempt order, but only if the act or omission giving rise to such contempt order had been authorized in advance by the **insured's** counsel based upon such counsel's good faith belief that (a) the applicable court order violated the First Amendment to the United States Constitution or any similar provision of a state constitution protecting freedom of speech and press; or (b) the act or omission was not a violation of such court order;

(17)    any proceeding relating to spoliation of evidence arising from the inadvertent destruction or recycling of the **insured's matter**; and

(18)    negligent supervision of an employee, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1-17 above.

**(B)    Contextual Errors and Omissions Liability**

The **underwriter** will pay on behalf of the **insured** any **loss** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim** for negligence, misrepresentation, misstatement or misleading statement in connection with the content of **matter** uttered or disseminated in **scheduled media.**

## II.    DEFINITIONS

**(A)    Advertising** means the content of **public appearance**, publicity, press releases or promotional materials in or of **scheduled media**, provided that **advertising** does not include: (1) one-on-one written or oral communications; (2) any lottery, sweepstakes, coupons, contests or games of chance, including but not limited to any redemption of any of the above; or (3) the design, print, images or information contained in or on the packaging or labeling of any goods or products.

**(B)    Assumed under contract** means liability assumed by the **insured** in any written, oral or implied hold harmless or indemnification agreement with any third party, but only with respect to **matter** provided by the **insured** and for an **occurrence** that is otherwise covered under this Policy.

**(C)    Bodily injury** means bodily injury, sickness or disease, including death.

**(D)    Claim** means:

(1)    a judicial or alternative dispute resolution proceeding seeking monetary damages, services or injunctive relief against an **insured** for an **occurrence**;

(2)    a written demand or notice received by an **insured** from any person or entity seeking to hold an **insured** responsible for an **occurrence**;

(3)    a demand for the retraction or correction of **matter**; or

(4)    a written request to toll or waive an applicable statute of limitations relating to a potential **claim** against an **insured**;

provided that **claim** shall not include any subpoena or request for information issued by, or any investigation, action or proceeding brought or maintained by or on behalf of, in the name or right of, or for the benefit of, any administrative, governmental or regulatory agency, body, entity or tribunal, including but not limited to the Federal Trade Commission or the Federal Communications Commission**.**

**(E)    Defense costs** means:

(1)    reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

(2)    reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**; or

(3)    the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond;

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

**(F)    Independent contractor** means an individual or entity providing **matter** or services to the **insured** pursuant to an express contract or agreement.

**(G)    Insured** means:

(1)    the **named insured** and any **subsidiary**;

(2)    any person who was, is or becomes a director, officer, trustee, shareholder, principal, member, partner or employee of the **named insured** or any **subsidiary,** but only for acts committed within the capacity and scope of such person's duties as such;

(3)    the estate, heirs, legal representatives or assigns of a natural person **insured** in the event of the death, incapacity or bankruptcy of such **insured,** but only to the extent that such **insured** would otherwise be provided coverage under this Policy;

(4)    the lawful spouse or domestic partner of a natural person **insured**, but only if the **claim** arises solely from the spouse's or domestic partner's status as such or from the spouse's or domestic partner's ownership interest in the **matter** giving rise to the **claim**; provided that such **claim** would otherwise be covered under this Policy if made against the **insured**; or

(5)    at the written request and sole discretion of the **named insured**, any agent, leased or temporary employee, volunteer or **independent contractor** providing **matter** or services for **scheduled media**, including but not limited to freelancers, correspondents, photographers and stringers, but only for acts committed within the capacity and scope of such individual's duties as such and on behalf of the **named insured** or any **subsidiary**.

**(H)    Loss** means any monetary damages the **insured** is legally obligated to pay as a result of a **claim** covered by this Policy, including: actual damages; statutory damages; punitive, multiplied or exemplary damages if insurable under applicable law; pre-judgment and post-judgment interest; and plaintiff's attorneys' fees and costs included as part of a judgment.  **Loss** shall not include:

(1)     any fine, tax, fee, forfeiture, penalty or sanction (other than punitive or exemplary damages);

(2)     any non-monetary or equitable relief or redress, including but not limited to any cost or expense of complying with any injunctive, declaratory or administrative relief or specific performance award;

(3)     any cost or expense of recall, correction, production, reproduction, redistribution or reprinting of **matter** or any related expenses;

(4)     any royalty or license fee, or other payment owed to a licensor under a license;

(5)     any payment, restitution, return or disgorgement of sums the **insured** is not legally entitled to;

(6)     any return, reduction, offset, or lack of payment or receipt of, any fees, compensation or other payment owed, paid, or to be paid to an **insured**; or

(7)     any matter that is uninsurable under applicable law.

With regard to punitive or exemplary damages, this Policy shall apply to the fullest extent permitted under applicable law.  Where the **named insured** determines, based on written opinion of counsel, that punitive or exemplary damages are insurable under the applicable law, the **underwriter** will not challenge the **named insured's** determination of insurability.

**(I)**    **Matter** means the informational content of any communication, regardless of its nature, form or format or the medium by which such **matter** is communicated.

**(J)**    **Named insured** means the person or entity named in ITEM 1 in the Declarations of this Policy.

**(K)**    **Occurrence** means any actual or alleged act, error or omission committed by the **insured** in or for **scheduled media** arising directly out of:

(1)     the gathering, creation, acquisition, investigation and compilation of **matter**;

(2)     any broadcast, transmission, utterance, telecast, cablecast, webcast, podcast, serialization, production or online dissemination of **matter**;

(3)     any publication or republication of **matter** or incidental publications relating thereto;

(4)     **advertising** in or directly relating to **scheduled media**;

(5)     the release, distribution, syndication, licensing, sale, lease or exhibition of **matter**;

(6)     an editorial decision to deny or limit access to **scheduled media** to prevent the utterance or dissemination of **matter**;

(7)     internet social networking in connection with **scheduled media**; or

(8)     any **public appearance** directly relating to **scheduled media**;

provided that any and all such acts, errors or omissions or series of acts, errors or omissions based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, decisions or events shall be deemed to constitute a single **occurrence**, regardless of the number of repetitions, versions or forms of such **occurrence**, and shall be deemed to have occurred on the date as determined in accordance with Section IV GENERAL CONDITIONS (C) of this Policy.

**(L)**    **Piracy** means the wrongful use, reprinting or reproduction of copyrighted **matter**.

**(M)**   **Policy period** means the period from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the Declarations or to any earlier cancellation or termination of this Policy.

**(N)**   **Property damage** means:

  (1)   physical harm to or destruction of tangible or intangible property, including its loss of use; or

  (2)   loss of use of tangible or intangible property that has not been otherwise physically harmed or destroyed**.**

**(O)**   **Public appearance** means public speaking, including press conferences, speeches and seminars, and appearances on media outlets owned or operated by third parties, including radio, television and cable, by any natural person **insured** (other than an **independent contractor)** acting within the capacity and scope of such person's duties on behalf of the **named insured** or any **subsidiary**.

**(P)**   **Related claims** means all **claims** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving the same or related **occurrences**.  All **related claims** shall be treated as a single **claim**, subject to a single Retention and single "Each Claim" Limit of Liability.

**(Q)**   **Scheduled media** means the media, publications, programs, broadcast or cable stations, or other communications set forth in ITEM 3 of the Declarations, which were created or acquired on or prior to the Inception Date of the Policy set forth in ITEM 2(a) of the Declarations, including any electronic, incidental, supplemental or special editions of such media.

**(R)**   **Slogan** means any distinctive phrase used in **advertising** which has not been copyrighted or trademarked.

**(S)**   **Subsidiary** means, subject to Section IV GENERAL CONDITIONS (N), any entity during any time in which the **named insured** owns, directly or through one or more **subsidiaries**, greater than fifty percent (50%) of the issued or outstanding voting securities.

**(T)**   **Title** means the caption or name of a literary or artistic work which has not been copyrighted or trademarked; provided that **title** shall not include the literary or artistic work itself, any goods or products, or any packaging of any goods or products.

**(U)**   **Underwriter** means the insurance company shown on the Declarations.

**(V)**   **Unfair competition** means the misuse of an intellectual property right in **matter**.

**III.**   **EXCLUSIONS**

This Policy does not apply to, and no coverage will be available under this Policy for any **claim**, **loss** or **defense costs**:

**(A)**   for any actual or alleged: (1) breach of any express or implied contract, agreement, warranty or guarantee; or (2) obligation to make or pay any fee, profit, billing, cost or expense by an **insured**, including but not limited to the **insured's** alleged failure to pay royalties or other payments or to account for same; provided that this EXCLUSION (A) shall not apply to liability **assumed under contract** or to **claims** otherwise covered under SECTION I COVERAGE AGREEMENTS (A)(8), (A)(10) or (A)(15);

**(B)**   based upon or arising out of any ownership dispute relating to **matter** or services supplied to the **insured** by any past, present or future **insured**, joint venture participant or **independent contractor**;

**(C)**   based upon or arising out of usual and ordinary business activities and transactions that do not arise directly from the content of **matter** uttered or disseminated in **scheduled media**;

**(D)**  based upon or arising out of any actual or alleged misuse or infringement of any patent, inducement to infringe any patent, or any other misuse or violation in connection with patent rights, including any portion of any such **claim** that would otherwise be covered under this Policy;

**(E)**  based upon or arising out of any actual or alleged intentionally false, fraudulent, deceptive or misleading **advertising** with respect to the **insured's** goods, products or services, or any unfair competition arising therefrom;

**(F)**  based upon or arising out of the rendering of or failure to render **advertising** services by an **insured**, including but not limited to the development, distribution, display or placement of **advertising,** provided that this EXCLUSION (F) shall not apply to **claims** directly attributable to the content of **advertising**;

**(G)**  based upon or arising out of any actual or alleged **bodily injury** or **property damage**; provided that this EXCLUSION (G) shall not apply to **bodily injury** arising exclusively from emotional distress;

**(H)**  based upon or arising out of any actual or alleged violation of any responsibility, duty or obligation imposed under the Interstate Commerce Act of 1887, the Sherman Antitrust Act of 1890, the Clayton Act of 1914, the Robinson-Patman Act of 1936, the Cellar-Kefauver Act of 1950, the Racketeer Influenced and Corrupt Organizations Act of 1970, any law involving or prohibiting any antitrust activity, price fixing, price discrimination, predatory pricing, monopoly or monopolization, restraint of trade, unfair competition, conspiracy, collusion, or unfair, false, deceptive or misleading trade or business practices or advertising, or any similar local, state, federal or foreign act, statute, rule, regulation, requirement, ordinance, common law, or other law, including but not limited to any amendment thereto or any regulation promulgated thereunder;

**(I)**  based upon or arising out of any actual or alleged violation of any responsibility, duty or obligation imposed under the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisors Act of 1940, any Blue Sky or other securities law, or any similar local, state, federal or foreign act, statute, rule, regulation, requirement, ordinance or common law, including but not limited to any amendment thereto or any regulation promulgated thereunder;

**(J)**  for violation of a criminal statute, which shall have been determined by a judge, jury or adverse admission; provided that this EXCLUSION (J) shall not apply to:

    (1)  prosecution of any **insured** under a criminal defamation statute;

    (2)  prosecution of any **insured** under the Espionage Act of 1917; or

    (3)  any act or omission authorized in advance by the **insured's** counsel based upon such counsel's good faith belief that (a) the criminal statute violated the First Amendment to the United States Constitution or a provision of the applicable state constitution protecting freedom of speech and press; or (b) the act or omission was not a violation of such criminal statute;

provided further that for the purposes of determining the applicability of this EXCLUSION (J), no knowledge possessed by or conduct of any **insured** shall be imputed to any other **insured** who was not aware of and did not participate in such conduct, except that knowledge possessed by and conduct of the chief executive officer, chief operating officer, chief financial officer, chief technology/privacy officer, president, general counsel, risk manager, partner or principal, or any equivalent position of the **insured**, shall be imputed to all **insureds**;

**(K)**  based upon or arising out of any actual or alleged: (1) unauthorized or unlawful collection, use or dissemination of internet user information through web cookies or other online profiling processes by or on behalf of the **insured**; or (2) failure to comply with any local, state, federal or foreign act, statute, rule, regulation, requirement, ordinance or common law requiring that individuals be provided with the ability to assent, consent to, or opt-in or withhold or withdraw assent to, consent to, or opt-out from the gathering, collecting, acquiring, receiving, using, obtaining or taking of any information of any type, nature or kind;

**(L)**   brought by or on behalf of or in the name or right of any trade or licensing agency, body, entity, society or tribunal, including but not limited to the American Society of Composers, Authors and Publishers, the Society of European Stage Authors and Composers, the Recording Industry Association of America, or Broadcast Music, Inc.;

**(M)**   based upon or arising out of an **occurrence** that was first committed before the Inception Date of the Policy set forth in ITEM 2(a) of the Declarations or which, prior to the Inception Date, was the subject of any notice to any **insured** of a claim or a potential claim;

**(N)**   based upon or arising out of any actual or alleged: (1) distribution, dissemination or transmission of any unsolicited facsimile, wireless or telephone communication, electronic mail, direct mail, voice mail, or telemarketing, including but not limited to Short Message Service or Multimedia Message Service; or (2) act, error or omission that violates or allegedly violates the Telephone Consumer Protection Act (TCPA), the Fair Credit Reporting Act (FCRA), the CAN-SPAM Act of 2003 or any amendment of or addition to such laws or any statute, ordinance or regulation other than the TCPA, FCRA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communication or distribution of information of any type, nature or kind;

**(O)**   based upon or arising out of any (1) denial of service attack; (2) transmission of malicious code; or (3) unauthorized or unlawful accessing, taking, obtaining, using or disclosing of any **insured's** website, network, computer system or other data system, or **matter**, information or data of any type, nature or kind;

**(P)**   based upon or arising out of any actual or alleged discrimination or harassment of a sexual nature or discrimination or harassment because of race, creed, color, association, age, gender, sexual orientation, national origin, citizenship, ethnicity, ancestry, religion, disability or marital or economic status;

**(Q)**   based upon or arising out of any actual or alleged liability or breach of any duty or obligation of any **insured** as an employer, including but not limited to any **claim** brought by or on behalf of a current, former or prospective employee in connection with his or her employment or potential employment relationship or the nature, terms or conditions of such employment or potential employment;

**(R)**   based upon or arising out of any actual or alleged breach of any responsibility, duty or obligation in a fiduciary relationship, including but not limited to any **claim** for theft or disclosure of trade secrets;

**(S)**   based upon or arising out of any dilution or infringement of copyright committed or allegedly committed by any **insured** in connection with the creation, development, manufacture, display, leasing, licensing, distribution, or sale by the **insured** of any software, application, program, code, or script;

**(T)**   based upon or arising out of any actual or alleged products liability of any kind, including but not limited to any **claim** for failure of goods, products or services to conform with any statement of quality or performance made in the **insured's matter**; or

**(U)**   based upon or arising out of:

   (1)   any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, seepage, dispersal, escape, treatment, removal, handling, processing or disposal of any "pollutants"; or

   (2)   any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, detect, disclose or report any "pollutants" or any action taken in contemplation or anticipation of any such regulation, order, direction or request.

   For the purposes of this EXCLUSION (U), "pollutants" means (1) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any similar local, state, federal or foreign administrative, governmental or regulatory agency, body, entity or tribunal, including but not limited to solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials; or (2) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, or any noise.

IV.     **GENERAL CONDITIONS**

**(A)**     **Limits of Liability**

(1)     The "Each Claim" amount stated in ITEM 4(A) of the Declarations shall be the **underwriter's** maximum Limit of Liability for all **loss** resulting from each **claim** or **related claims** for which this Policy provides coverage.

(2)     The "Aggregate for all Claims" amount stated in ITEM 4(B) of the Declarations shall be the **underwriter's** maximum aggregate Limit of Liability for all **loss** resulting from all **claims** or **related claims** for which this Policy provides coverage.

(3)     The Limits of Liability described in this GENERAL CONDITION (A) of this Policy shall apply regardless of the time of payment by the **underwriter**, the number of persons or entities included within the definition of **insured** or the number of claimants.

(4)     The **underwriter** will have no obligation to pay **loss** or **defense costs**, or to defend or continue to defend, any **claim** after the **underwriter's** applicable "Each Claim" Limit of Liability, as stated in ITEM 4(A) of the Declarations, has been exhausted by payment of **loss** under this Policy.  If the **underwriter's** "Aggregate for all Claims" Limit of Liability, as stated in ITEM 4(B) of the Declarations, is exhausted by payments of **loss** under this Policy, the premium will be fully earned, all obligations of the **underwriter** will be completely fulfilled and exhausted, and the **underwriter** will have no further obligations of any kind or nature whatsoever under this Policy.

**(B)**     **Retention**

The **insured** shall be responsible for payment in full of the Retention identified in ITEM 5 of the Declarations, which shall apply to **loss** and **defense costs** for each **claim** or **related claims**.  The **underwriter's** obligation to pay **loss** or **defense costs** under this Policy shall be excess of such Retention. Any amounts paid within the Retention will not reduce the Limit of Liability.  The **underwriter** shall have no obligation whatsoever to pay all or any portion of the Retention on behalf of the **insured**.  The **underwriter** shall, however, at its sole discretion, have the right and option to do so, in which event the **insured** shall repay the **underwriter** any amounts so paid**.**

**(C)**     **Date of Occurrences and Related Claims**

(1)     An **occurrence** shall be deemed to have taken place on the date of the first dissemination of **matter** or **advertising**, or the first **public appearance** that is the subject of any **claim** or **related claims** arising out of such **occurrence**.  In the event a **claim** is made but there has not yet been any such dissemination or **public appearance**, the applicable **occurrence** shall be deemed to have taken place on the date of the first act, error or omission in preparation for dissemination or **public appearance**, such as the first act of gathering, creating, acquiring, investigating or compiling **matter**.

(2)     The **underwriter** shall have no obligation under this Policy to pay any **claim** or portion of any **claim** or **related claim** that is attributable to any **occurrence** that takes place, or is deemed to have taken place by operation of this GENERAL CONDITION (C) of this Policy, prior to or after the **policy period**.

**(D)**     **Reporting of Claims and Occurrences**

If any **claim** is first made against an **insured**, as a condition precedent to its right to coverage under this Policy, the **insured** shall give the **underwriter** written notice of such **claim**, including suit papers, if any, as soon as practicable thereafter.  Timely and sufficient notice by one **insured** of a **claim** shall be deemed timely and sufficient notice for all **insureds** involved in the **claim**.  Such notice shall give full particulars of the **claim**, including but not limited to: a description of the **claim** and **occurrence**; the identity of the claimant and any **insureds** involved; and information on the time, place and nature of, and manner in which the **insured** first became aware of such **occurrence**.

If an **insured** becomes aware of an **occurrence** that may subsequently give rise to a **claim** or a potential **claim**, the **insured** shall give the **underwriter** written notice of such **occurrence** as soon as practicable.

**(E)    Notice**

(1)    Notice to any **insured** shall be sent to the first **named insured** at the address designated in ITEM 1 of the Declarations.

(2)    Notice to the **underwriter** shall be sent to the address designated in ITEM 7 of the Declarations.

**(F)    Defense and Settlement**

(1)    The **underwriter** has the right and duty to defend any covered **claim**, even if the allegations of such **claim** are groundless, false or fraudulent.  The **underwriter** shall have the right to select counsel to represent the **insured** in connection with any covered **claim**.  With respect to any **claim**, the **underwriter** shall have the right to make investigations, direct the defense and conduct negotiations, and, with the consent of the **insured**, enter into a settlement of any **claim** as the **underwriter** deems appropriate.  If the **insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **underwriter's** recommendation, then, subject to the **underwriter's** applicable Limits of Liability stated in ITEM 4 of the Declarations, the **underwriter's** liability for such **claim** shall not exceed:

(a)    the amount for which such **claim** could have been settled plus **defense costs** incurred up to the date the **insured** refused to settle such **claim** (the "Potential Resolution Amount"); plus

(b)    fifty percent (50%) of any **loss** or **defense costs** in excess of the Potential Resolution Amount incurred in connection with such **claim**, with the remaining fifty percent (50%) of any **loss** or **defense costs** in excess of the Potential Resolution Amount being the responsibility of the **insured**.

(2)    No **insured** shall, except at its own cost, incur any expense, make any payment, admit any liability, assume any obligation, or settle or offer to settle any **claim** without the **underwriter's** prior written consent; provided that this paragraph (F)(2) shall not apply: (i) to the correction or retraction of **matter**; or (ii) to the settlement of any **claim** for which the total of **loss** and **defense costs** is less than the Retention.

(3)    In addition to the Limits of Liability, the **underwriter** will pay **defense costs** incurred in the defense of a covered **claim** that are in excess of the Retention.

**(G)    Allocation**

If both **loss** and **defense costs** covered by this Policy and loss and defense costs not covered by this Policy are incurred, either because a **claim** made against the **insureds** includes both covered and uncovered matters, or because a **claim** is made against both **insureds** and others not included within the definition of "**insured**", the **insureds** and the **underwriter** agree to use their best efforts to determine a fair and proper allocation of all such amounts.  The **underwriter's** obligation to pay **loss** and **defense costs** shall relate only to those sums allocated to the **insureds** that are covered under this Policy.  In making such determination, the parties shall take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **claim**.  In the event that the **underwriter** and the **insureds** do not reach an agreement with respect to allocation, then the **underwriter** shall be obligated to make an interim payment of the amount of **loss** or **defense costs** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

**(H)**     **Assistance and Cooperation**

In the event of a **claim**, the **insured** shall provide the **underwriter** with all information, assistance and cooperation that the **underwriter** reasonably requests.  At the **underwriter's** request, the **insured** shall assist in: the investigation, defense, settlement, or other resolution of any matter; the pursuit or enforcement of any right of contribution or indemnity against another who may be liable to any **insured**; conduct with respect to any action, suit, appeal, or other proceeding, including but not limited to attending any trial, hearing, or deposition, securing and giving evidence, or obtaining the attendance of any witness.

**(I)**     **Retraction or Correction**

The **insured** shall have sole discretion regarding the necessity to retract or correct **matter** that has been uttered or disseminated in **scheduled media**.

**(J)**     **Sources, Notes and Confidentiality**

The duty to cooperate does not require the **insured** to disclose the identity of a confidential source or materials furnished by a source or to produce a reporter's notes, recordings, tapes, out-takes or related materials in connection with a **claim**.

**(K)**     **Territory**

This Policy applies to an **occurrence** taking place anywhere in the world.

**(L)**     **Currency**

If judgment is rendered or settlement is made in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the applicable rate of exchange on the date the final judgment is rendered or date such amounts are sustained or incurred.

**(M)**     **Premium**

The **named insured** shall pay to the **underwriter** the premium stated in ITEM 6 of the Declarations. The premium may be subject to change during the **policy period** based upon additions or deletions of **scheduled media** or changes in the provisions of the Policy by endorsement as agreed upon by the **named insured** and the **underwriter**.

**(N)**     **Mergers, Consolidations and Acquisitions**

(1)     If, during the **policy period**, the **named insured** creates or acquires a **subsidiary**, or merges or consolidates with another entity such that the **named insured** is the surviving entity, or acquires any publications, broadcast or cable stations, programs or other communications (each an "acquired asset"), then, subject to paragraph (N)(2) below, for a period of ninety (90) days after the effective date of the transaction, coverage shall be provided for such "acquired asset" but only for **occurrences** that take place after the effective date of such transaction.  Upon the expiration of such ninety (90) day period, there will be no coverage available under this Policy for any **claim** based upon, arising out of, or in any way involving the "acquired asset" unless within such ninety (90) day period, the **named insured** gives the **underwriter** written notice of the "acquired asset" and such information regarding the transaction as the **underwriter** requests, the **underwriter** has specifically agreed by written endorsement to this Policy to provide coverage for such "acquired asset", and the **named insured** has accepted any terms and conditions, including payment of additional premium, the **underwriter** imposes in connection with such transaction.

(2)    If, at the time of a creation, acquisition, merger or consolidation as described in paragraph (N)(1) above:

        (a)    the total annual revenue, or projected total annual revenue of the "acquired asset" is less than ten percent (10%) of the **named insured's** total annual revenue as reflected in the most recent audited consolidated financial statements of the **named insured** and such entity as of the date of such creation, acquisition, merger or consolidation; and

        (b)    the "acquired asset" produces the same type of **scheduled media** as set forth in ITEM 3 of the Declarations;

then coverage shall be provided under this Policy for such "acquired asset" for **occurrences** that take place after the effective date of such transaction.

**(O)    Other Insurance**

The coverage afforded under this Policy shall be specifically excess of and will not contribute with any other valid and collectible insurance available to the **insured**, whether such other insurance is stated to be primary, *pro rata*, contributory, excess, contingent or otherwise, unless such other insurance is specifically written as excess insurance over the limits of liability provided in this Policy.

**(P)    Subrogation**

In the event of any payment hereunder, the **underwriter** shall be subrogated to the extent of any payment to all of the rights of recovery of the **insured**.  The **insured** shall execute all papers and do everything necessary to secure such rights, including but not limited to the execution of any documents necessary to enable the **underwriter** effectively to bring suit in its name.  The **insured** shall do nothing that may prejudice the **underwriter's** position or potential or actual rights of recovery.  The obligations of the **insureds** under this GENERAL CONDITIONS (P) shall survive the expiration, cancellation, or termination of this Policy.  The **underwriter** shall have no subrogation rights against the **insured**.

With respect to a **claim**, any amount recovered upon the exercise of such rights of subrogation will be applied as follows: first, to the repayment of expenses incurred in recovery by exercise of such subrogation rights; second, to **loss** or **defense costs** paid by the **insured** in excess of the Limits of Liability; third, to **loss** or **defense costs** paid by the **underwriter**; and last, to **loss** or **defense costs** paid by the **insured** toward the Retention.

**(Q)    Assignment**

No assignment of interest under this Policy shall bind the **underwriter** without the **underwriter's** prior written consent issued as an endorsement to this Policy.

**(R)    No Action against Underwriter**

(1)    No action shall be taken against the **underwriter** by any **insured** unless, as conditions precedent thereto, the **insured** has fully complied with all of the terms of this Policy and the amount of the **insured's** obligation to pay has been finally determined either by judgment against the **insured** after adjudicatory proceedings or by written agreement of the **insured**, the claimant and the **underwriter**.

(2)    No individual or entity shall have any right under this Policy to join the **underwriter** as a party to any **claim** to determine the liability of any **insured;** nor shall the **underwriter** be impleaded by the **insured** or his/her/its legal representative in any such **claim**.

**(S)    Bankruptcy or Insolvency**

Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve the **underwriter** of any of its obligations under this Policy.

**(T)** **Cancellation and Non-renewal**

(1)     Except as set forth in Section IV GENERAL CONDITION (A)(4), the first **named insured** may cancel this Policy at any time by transmitting to the **underwriter** written notice stating when thereafter such cancellation shall be effective.  In such event, the earned premium will be calculated in accordance with the customary short rate table and procedure.

(2)     The **underwriter** may cancel this Policy by mailing written notice to the first **named insured**, at the address shown in the Declarations, stating when, not less than sixty (60) days thereafter, such cancellation shall be effective; except that, in the event of cancellation for non-payment of premium, the **underwriter** may make the cancellation effective upon written notice of only ten (10) days.  If the **underwriter** cancels this Policy, earned premium will be calculated *pro rata*.  If the **underwriter** receives no premium whatsoever by the premium due date and no premium whatsoever is received by the last day of such ten (10) day notice period, the **underwriter** may cancel this Policy as of the Inception Date stated in ITEM 2(a) of the Declarations.

(3)     The **underwriter** will not be required to renew this Policy upon its expiration.  If the **underwriter** elects not to renew this Policy, the **underwriter** will mail written notice of non-renewal to the first **named insured**, at the address shown in the Declarations, at least sixty (60) days prior to the Expiration Date of this Policy.  Any offer of renewal on terms involving a change of retention, premium, limit of liability, or other terms and conditions shall not constitute, nor be construed as, a failure or refusal by the **underwriter** to renew this Policy.

**(U)** **Authorization and Notices**

The first **named insured** will act on behalf of all **insureds** with respect to: the giving and receiving of any notices under this Policy; the payment of premiums to, and the receiving of return premiums from, the **underwriter**; and the receiving and acceptance of any endorsements issued to form a part of this Policy.

**(V)** **Changes**

Notice to or knowledge possessed by any agent or other person acting on behalf of the **underwriter** shall not effect a waiver or change in any part of this Policy, or prevent or estop the **underwriter** from asserting any right under this Policy.  This Policy can only be altered, waived or changed by written endorsement issued to form a part of this Policy.

**(W)** **Application Representations and Severability**

The **insureds** represent that the particulars and statements contained in the application and all materials submitted in connection therewith are true, accurate and complete and agree that: this Policy is issued and continued in force by the **underwriter** in reliance on the truth of such representations; those particulars and statements are the basis of this Policy; and the application and those particulars and statements are incorporated in and form a part of this Policy.  No knowledge or information possessed by any **insured** shall be imputed to any other **insured,** except for material facts or information known to the chief executive officer, chief operating officer, chief financial officer, chief technology/privacy officer, president, general counsel, risk manager, partner or principal, or any equivalent position thereof, or other person whose signature appears on the application.  In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the application, this Policy shall be void with respect to any **insured** who knew of such untruth, misrepresentation or omission, or to whom such knowledge is imputed.

**(X)** **Risk Management**

The **underwriter** directly or indirectly may make available risk management services in connection with this Policy for the purpose of managing and reducing the risks covered under this Policy.  Such risk management services may cease or change in the **underwriter's** sole discretion at any time**.**

**(Y)**     **Entire Agreement**

The **insureds** agree that this Policy, including the application, Declarations and any endorsements, constitutes the entire agreement between them and the **underwriter** or any of its agents relating to this insurance.

**In witness whereof, the Underwriter has caused this Policy to be executed by its authorized representative.**