UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BUNDREN LAW GROUP, PLLC | § |
| | § |
| v. | § CIVIL NO. 4:24-CV-900-ALM |
| | § |
| ATLANTIC SPECIALTY | § |
| INSURANCE COMPANY, ET. AL | § |

## **ORDER DISSOLVING TRO**

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause . . . The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998) (cleaned up) (citations omitted).

The Court's jurisdiction over this case remains an open question because Defendant TGP Communications, LLC ("TGP") has failed to allege facts establishing diversity of citizenship. Accordingly, this Court has no power to proceed in this case until it has determined subject-matter jurisdiction. Because the Court cannot make any merits-based decision or impose any relief at this time, preliminary or otherwise, the TRO currently in place must be **DISSOLVED**.

**I.**

TGP removed this case to federal court, alleging that the Court has diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. #1). "To properly allege diversity jurisdiction under § 1332, the parties need to allege complete diversity." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quotation omitted). Complete diversity requires "all persons on one side of the controversy [to] be citizens of different states than all persons on the other side." *Id.* (quotation omitted).

Citizenship of an entity depends on its form. Because citizenship is form dependent, different business associations are charged with presenting different factual allegations to establish citizenship. A court cannot determine whether jurisdiction exists without these allegations. *See MidCap*, 929 F.3d at 313.

A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Thus, "allegations regarding the citizenship of a corporation must set out the principal place of business of the corporation as well as the state[(s)] of its incorporation." *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 634 n.18 (5th Cir. 1985).

The citizenship of an unincorporated insurance association is determined by the citizenship of its underwriters. *See Royal Ins. Co. of Am. v. Quinn-L Cap. Corp.*, 3 F.3d 877, 882 (5th Cir. 1993). Thus, to adequately allege the citizenship of an unincorporated insurance association, the parties must allege the required

jurisdictional facts for each underwriter, depending on whether the underwriter is an individual or an entity. *See Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F.App'x 765, 768 (5th Cir. 2015) (per curiam).

A limited liability company is a citizen where each of its members is a citizen. *See Harvey v. Grey Wolf Drilling, Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Allegations regarding the citizenship of an LLC require "the citizenship of every member of [the] LLC." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017). To adequately allege the citizenship of an LLC, the parties must allege the required jurisdictional facts for each member, depending on whether the member is an individual or an entity. *See Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F.App'x 765, 768 (5th Cir. 2015) (per curiam) (explaining that, when an unincorporated entity is comprised of additional entities, the "appropriate tests for citizenship involve tracing entities' citizenships down the various organizational layers where necessary") (cleaned up)); *see also, e.g., Thomason v. Outback Steakhouse of Fla., L.L.C.,* No. 1:17-CV-01541, 2019 WL 3526839, at *1 n.1 (W.D. La. May 14, 2019) (holding that, where a defendant LLC's sole member was itself an LLC, and the member LLC's sole member was a Delaware corporation with its principal place of business in Florida, the defendant LLC's citizenship was both Delaware and Florida). For jurisdictional purposes, a PLLC is no different from an LLC: the parties must allege the required jurisdictional facts for each member of the PLLC just as they would for members of a LLC. *See Folgar v. McCully & Gardner PLLC*, 2022 WL 17904086, at *1 (W.D. Wash. Dec. 23, 2022) (applying the LLC standard to PLLC).

3

Thus, each member's citizenship must be alleged "distinctly and affirmatively"; general allegations are insufficient. *See Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988).

## II.

TGP's Notice of Removal, (Dkt. #1), is woefully inadequate concerning its allegations of citizenship, rendering the Court's subject-matter jurisdiction profoundly uncertain. TGP purports to allege the citizenship of several entities named as parties to this suit but fails to adequately allege the citizenship of all but one of the entity-parties.[1]

First, TGP fails to properly allege the citizenship of Plaintiff Bundren Law Group, PLLC ("Bundren"). Instead of pleading the citizenship of the members of Bundren, an LLC, as required to show this Court's jurisdiction, TGP simply alleges that Bundren is a "professional [LLC] with its principal place of business in Collin County, Texas." (Dkt. #1 at 2). TGP also indicates that Bundren is "incorporated and organized pursuant to the laws of the State of Texas." Of course, this information is *completely irrelevant* to the citizenship question before the Court. What matters is the citizenship of Bundren's *members*, and TGP does not even identify Bundren's member(s), much less allege their citizenship. Having failed to establish Bundren's citizenship, TGP at the outset fails to establish this Court's jurisdiction.

---

[1] The Court notes that TGP adequately alleges the citizenship of individual defendants James Hoft and Joe Hoft, both of whom are citizens of Florida. (Dkt. #1 at 2–3). TGP also adequately alleges its own citizenship, identifying its sole member as James Hoft, a citizen of Florida.

Second, TGP fails to properly allege the citizenship of any of the insurance companies in this case. As to Atlantic Specialty Insurance Company ("Atlantic") and One Beacon Professional Insurance Group ("One Beacon"), TGP's notice of removal states that "Atlantic Specialty Insurance Company … is an insurance company with its principal place of business [in Massachusetts]" and that "One Beacon Professional Insurance Group … is an insurance company with its principal place of business [in Kansas]." (Dkt. #1 at 2). TGP fails at the outset to allege whether Atlantic and One Beacon are corporations, LLCs, partnerships, unincorporated insurance associations, or some other type of entity. Having failed to distinctly allege the corporate form of Atlantic and One Beacon, the Court cannot know their citizenship, or how to determine their citizenship.

As to One Beacon Professional Insurance, Inc., ("Beacon"), another insurer, the Court presumes Beacon is a corporation based on the term "Inc.," in its name, but TGP fails to confirm that Beacon is a corporation. Assuming Beacon is a corporation, TGP's citizenship allegations once again are inadequate. TGP simply alleges that Beacon is "a citizen of the State of Kanas" with "its principal place of business [in Kansas]." (Dkt. #1 at 2). But a corporation is a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For TGP to establish that Beacon is a citizen of Kansas, and of Kansas alone, it is not enough for TGP to allege that Beacon's principal place of business is in Kansas; TGP must also allege Beacon's state

5

of incorporation. Since TGP fails to allege Beacon's state of incorporation, the Court does not have sufficient information to determine its jurisdiction.

Finally, TGP also fails to properly allege the citizenship of Intact Insurance Group, USA, LLC ("Intact"). As with its failure to properly allege Bundren's citizenship, here TGP alleges that Intact is a "citizen of the State of Minnesota," apparently based solely on the assertion that Intact has its principal place of business in Minnesota. (Dkt. #1 at 2). Again, the principal place of business of an LLC is entirely irrelevant to the Court's analysis of diversity jurisdiction. And TGP fails to allege the citizenship of Intact's members, which is determinative of the citizenship question. Not knowing the citizenship of Intact's members, the Court is unable to determine the citizenship of Intact itself.

\* \* \* \*

As courts of limited jurisdiction, federal courts must "affirmatively ascertain subject-matter jurisdiction before adjudicating a suit." *Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020). "A party seeking a TRO cannot establish a 'substantial likelihood of success on the merits' of his claim if the court concludes that it lacks jurisdiction to adjudicate the claim altogether." *Id*. Likewise, a Court cannot consider or rule on the merits of any claims "while the Court's subject matter jurisdiction remains in question.*" Godiciu v. J.P. Morgan Chase Bank, N.A.*, 2012 WL 4370263, at *1 (S.D. Fla. 2012).

The Court's subject-matter jurisdiction remains very much in question here. TGP invokes the Court's diversity jurisdiction but has failed to properly allege the

citizenship of the majority of named parties in the case. Absent adequate citizenship allegations for all parties, the Court cannot know whether it has subject-matter jurisdiction. Under the circumstances, the Court cannot proceed in this case and certainly cannot make merits-based determinations or award relief, preliminary or otherwise, until it has confirmed it has subject-matter jurisdiction. For these reasons, the Court must dissolve the TRO that is currently in place. TGP must submit an amended notice of removal alleging the facts required to establish diversity jurisdiction.

### III.

For the reasons already explained herein, *see supra* Part I–II, the TRO must be dissolved because the Court's subject-matter jurisdiction is uncertain. The Court notes, however, that even if it had subject-matter jurisdiction, the same result would likely have followed. If maintaining the TRO is the endzone, Bundren has not even made it to the redzone.

Bundren obtained a TRO only against the insurance company defendants. Bundren's burden to maintain the TRO is that it must clearly carry the burden of persuasion in demonstrating (1) a substantial likelihood of success on the merits on the identified claims against the insurers; (2) a substantial threat that Bundren will suffer irreparable harm if the injunction is not granted; and (3) the threatened injury to Bundren outweighs any damage that the TRO might cause the Defendants. (Dkt. #6 at 2); *U.S. v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024).[2] The first element—

---

[2] The Court does not believe that the fourth TRO element, whether the injunction disservices the public interest, would be decisively relevant to this private party case

7

the likelihood of success on the merits—is the most important. *Abbott,* 110 F.4th at 706. Having carefully reviewed the additional filings and applicable case law, the Court is dubious Bundren has clearly carried its burden of persuasion on any of these elements, and especially on substantial likelihood of success, the first and most important.

Bundren identifies three claims it believes it is likely to prevail on: a breach of contract claim, a third-party beneficiary claim, and a promissory estoppel claim. The first two claims require the existence of a valid contract to which Bundren is either a signatory to or a beneficiary of. Inexplicably, however, Bundren failed to submit any agreement or insurance policy supporting its claims. It is puzzling that Bundren argued for extraordinary TRO relief without even submitting the documents on which it apparently relies.

In this regard, the materials presented by other parties to the case work against Bundren's claims. At the outset, there appears to be no dispute that the insurance policies referenced by the parties are contracts to which Bundren is not a party. *See* (Insurance Policy, Dkt. #17-7 at 3). And the documents submitted by TGP make clear that the insurers Bundren seeks to enjoin confirmed that they *were not* retaining Bundren—rather, Bundren was retained solely by TGP and the individual defendants (James Hoft and Joe Hoft). *See* (Bundren Emails with Insurer, Dkt. #17-8 at 2). Likewise, the retainer agreement submitted by TGP makes clear that TGP and the individual defendants (James Hoft and Joe Hoft), not the insurers,

---

involving only monetary damages.

are ultimately responsible for Bundren's legal fees. *See* (Retainer Agreement, Dkt. #17-2 at 1). That is to say, the retainer agreement imposes *no contractual obligation* on any insurer, and no insurer is a party to Bundren's retainer agreement. Under the circumstances, the theory that Bundren has a viable breach-of-contract claim of any kind against the insurers, much less a claim on which it is substantially likely to succeed, appears to be entirely unsupported by the record. To the extent Bundren maintains it is a third-party beneficiary of certain insurance policies, it has not submitted any such policies into the record, nor has it cited any legal authority to support this claim.

As for the promissory estoppel claim—which, the Court notes in passing, would necessarily require that *no contract exists* to which Bundren is a party[3]—Bundren offers no legal authority or factual evidence explaining why it would be reasonable for Bundren to have solely relied on the insurers for payment of its legal fees when the retainer agreement says *exactly the opposite*: that TGP and the Hofts were contractually responsible for such fees. *See* (Retainer Agreement, Dkt. #17-2 at 1).

From a pragmatic standpoint, it appears that Bundren's contractual claim and related claims for legal fees, if any, are against TGP and the Hofts, who retained Bundren, and not the insurers—who expressly did not retain Bundren. On this record, the Court discerns no basis to enjoin the insurance company parties in this case.

---

[3] *See Subaru of Amer., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002) ("[T]he promissory-estoppel doctrine presumes no contract exists ....")

## IV.

It is **ORDERED** that the Temporary Restraining Order, (Dkt. #6), is **DISSOLVED effective immediately**. TGP's Emergency Motion to Dissolve Temporary Restraining Order, (Dkt. #17), is **DENIED as moot**.

It is further **ORDERED** that, by no later than **October 22, 2024**, TGP must file an amended notice of removal that alleges facts sufficient to invoke federal jurisdiction.

**So ORDERED and SIGNED this 18th day of October, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE