UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION

| | |
|---|---|
| BUNDREN LAW GROUP, PLLC, *Plaintiff*, vs. ATLANTIC SPECIALTY INSURANCE COMPANY; ONE BEACON PROFESSIONAL INSURANCE GROUP; ONE BEACON PROFESSIONAL INSURANCE, INC.; INTACT INSURANCE GROUP, USA, LLC; TGP COMMUNICATIONS, LLC; JAMES "JIM" HOFT, INDIVIDUALLY; AND JOE HOFT, INDIVIDUALLY, *Defendants*. | CASE NO. 4:24-CV-00900-ALM<br><br>JURY TRIAL DEMANDED |

# DEFENDANTS TGP COMMUNICATIONS, LLC'S MOTION FOR RECUSAL

Defendant TGP Communications, LLC ("TGP") requests that the Honorable Amos Mazzant, the Judge assigned to hear this matter, either recuse himself pursuant to 28 U.S.C. § 144 or be disqualified pursuant to 28 U.S.C. § 455.

Plaintiff's attorney, *and sole member*, William Charles Bundren and Judge Mazzant serve together as officers of the Judge Paul Brown American Inn of Court. As President of the chapter, Judge Mazzant oversees the activities of the other officers, including Bundren as its Treasurer. Judge Mazzant already supervises Bundren's handling of the Inn of Court's finances and inevitably already possesses an opinion regarding how Bundren handles money based upon that supervision. He cannot be expected to render an impartial decision in a case where Bundren has been accused of grossly overbilling a client and mishandling client money because he comes to the case with a preestablished trust in Bundren as a fiduciary.

## 1.0 INTRODUCTION AND STATEMENT OF FACTS

This motion is not filed lightly. This motion is filed not because an attorney simply got favorable treatment for his client, but because a party appears to be receiving personal favors from the Court itself. It is not just about disagreement with a reasonable judicial decision, but because there appears to be a relationship between a party and the presiding judge that is one of pre-existing trust, when the underlying case is about that very party's honesty or lack thereof. This motion is filed because, if the Plaintiff's dishonesty is proven, as Defendants believe it is already apparent, this will cast a pall on the Judge, himself, who cannot be expected to be impartial or to at least appear impartial in such a situation. This case cries out for recusal.

Plaintiff Bundren Law Group, PLLC ("BLG") and its principal, William Charles Bundren, filed the state court version of this case on October 8, 2024 in bad faith; TGP removed the case to this Court on October 9, 2024. *See* Declaration of John Burns (the "Burns Decl.") at ¶ 6. Almost two weeks earlier, on September 27, 2024, Plaintiff and Bundren were served with a lawsuit dealing with the exact same subject matter and legal issues that had been filed by TGP and related parties in the U.S. District Court for the Eastern District of Missouri. *See id.* at ¶ 5. TGP filed in Missouri because it is located there, and its relationship with Plaintiff and Bundren was wholly centered around litigation in Missouri, where Bundren applied for pro hac vice admission, traveled to the state, and agreed to be subject to the Missouri rules of professional conduct.

The Honorable Amos Mazzant was appointed to this case. As soon as Judge Mazzant began presiding over the case, he began making decisions that seemed unusual. *See* Burns Decl. at ¶ 7. After Plaintiff filed a Motion for Temporary Restraining Order, the Court set a hearing date so quickly that TGP did not have time to file opposition papers. *See id.* at ¶ 8. During the hearing,

Judge Mazzant accepted all evidence submitted by Plaintiff as true but refused to hear any evidence from TGP, even though witnesses were prepared to give evidence. *See id.* at ¶ 9.

He granted that Temporary Restraining Order, even though Plaintiff could not show irreparable injury as it was only seeking monetary damages, and set an incredibly low bond amount of $1,000 even though TGP provided credible argument that the TRO would be its death sentence. *See* Burns Decl. at ¶ 10.

Finally, despite providing Plaintiff with a TRO hearing immediately after it filed its Motion (and hearing TGP's argument that extending the TRO past October 19, 2024[1] would destroy TGP) without explanation, Judge Mazzant set the preliminary injunction hearing for October 25, 2024—a few days past the date when TGP would not be able to meet its obligations under a settlement agreement—thereby assuring that TGP would be in breach of its settlement. *See id.* at ¶ 11.

On their own, the facts asserted above might not be grounds to disqualify Judge Mazzant, despite them creating reasonable suspicion that something was amiss. However, on October 20, 2024, Defendants' counsel discovered that Judge Mazzant was extrajudicially biased. *See* Burns Decl. at ¶ 12. He and William Bundren have an undisclosed affiliation that is more than a mere personal acquaintance relationship, and Judge Mazzant may have information relevant to the facts of this case. Judge Mazzant is the President of the Judge Paul Brown American Inn of Court and oversees Mr. Bundren as its Treasurer, and Mr. Bundren's handling of money and his honesty and integrity are central to this case. *See id.* at ¶ 12. See **Exhibit A**. Had this relationship been disclosed, the suspicion that it was coloring this case might have been diminished. But, since neither the Court

---

[1] While TGP's counsel represented at the hearing that the date was October 19, 2024, it was actually October 20, 2024. TGP regrets the error, but it was an honest and immaterial mistake.

nor Mr. Bundren disclosed it, it certainly creates the impression that something is wrong. *See* Burns Decl. at ¶ 13.

The facts surrounding this case will reveal Mr. Bundren to be an unethical, dishonest, and untrustworthy attorney. An ethical examination by the Texas State Bar is likely to follow due to Bundren's fraudulent billing practices and conflict of interest. Certainly if this case shows that, it will cast a shadow on the reputation of the Judge Paul Brown American Inn of Court and, by extension, of Judge Mazzant. *See* Burns Decl. at ¶ 15. As its President, Judge Mazzant should want to minimize any damage to the Inn's reputation, if not avoid it entirely. *See id.* This relationship was not disclosed to Defendant TGP by the Court or Plaintiff prior to October 20, 2024, when TGP's in-house counsel discovered it.

As President of the chapter, Judge Mazzant oversees the activities of the other officers, including Bundren as its Treasurer. Judge Mazzant already supervises Bundren's handling of the Inn of Court's finances and inevitably already possesses an opinion regarding how Bundren handles money based upon that supervision. He cannot be expected to render an impartial decision in a case where Bundren has been accused of grossly overbilling a client and mishandling client money.

The pre-existing extrajudicial and professional relationship between Judge Mazzant and Mr. Bundren is enough on its own to necessitate the Judge's disqualification. The questionable and strange decisions he made at the outset of the case regarding the timing of the TRO were inexplicable until this relationship came to light. Perhaps the relationship between Judge Mazzant and Bundren had no bearing on the decisions, but it certainly creates the appearance of favoritism and bias. Regardless of whether there has been any impropriety, Judge Mazzant's impartiality can logically and reasonably be questioned given his close relationship with Plaintiff's principal and only member.

This case is in its infancy, so the parties will not be prejudiced by another judge having to familiarize himself with the facts of the case. In fact, another judge, District Judge Sean D. Jordan, has already adjudicated a motion in this matter (ECF 28), and is thus probably even more familiar with the case than Judge Mazzant.

## 2.0     LEGAL ARGUMENT

28 U.S.C. §§ 144 and 455 both deal with the recusal and disqualification of a federal judge from a particular case. Section 144 provides that whenever "a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." The affidavit required by the statute must meet the following requirements: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true, would convince a reasonable person that a bias exists; and (3) the facts must show that the bias is personal, as opposed to judicial, in nature. *See Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990) (citing *Parrish v. Bd. of Comm'rs of Alabama State Bar*, 524 F.2d 98, 100 (5th Cir. 1975)); *United States v. Merkt*, 794 F.2d 950, 960 (5th Cir. 1986). The declaration submitted by Defendant TGP with this Motion satisfies these requirements.

Meanwhile, Section 455 requires a federal judge to "disqualify himself in any proceeding where his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In other words, Section 455 requires disqualification upon the mere appearance that the judge may be biased. It provides that he should disqualify himself where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. 28 U.S.C. § 455(b)(1).

Judges have a continuing obligation to disclose a disqualifying or potentially disqualifying condition. *United States v. Lopez*, No. ARMY 20170386, 2020 CCA LEXIS 161, at *24 (A. Ct. Crim. App. May 11, 2020). The purpose of requiring the judge to make the disclosure is to afford the parties an opportunity to question the judge on any potentially disqualifying issues. *See id.* This did not happen in this case, and this relationship was kept from the Defendants—who certainly would have raised an objection had it been raised as it should have been.

When construing Sections 144 and 455, the Fifth Circuit has previously determined that "the test is the same for both." *See In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 965 (5th Cir. 1980), *quoting Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1052 (5th Cir. 1975). Both statutes require that "the type of bias requiring a judge's disqualification must stem from an extrajudicial source." *Hadd v. LSG-Sky Chefs*, 272 F.3d 298, 301 (5th Cir. 2001). A judge should not be disqualified if the alleged bias arises from "what the judge has learned from participating in the case or a related case." *In re Faulkner*, 856 F.2d 716, 720 (5th Cir. 1988).

The standard for whether the judge should disqualify himself is from the point of view of "the average, reasonable person." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1988). The "recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 541 U.S. 913, 924, 124 S. Ct. 1391, 158 L. Ed. 2d 225 (2004) *see also United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016), cert. denied, 580 U.S. 1131, 137 S. Ct. 1098, 197 L. Ed. 2d 206 (2017). Recusal is required if the judge "harbors an aversion, hostility, or *disposition* of a kind that a fair-minded person could not set aside when judging the dispute." *U.S. v. Brocato*, 4 F.4th 296, 302 (5th Cir. 2021)(emphasis added).

The U.S. Court of Appeals for the Fifth Circuit has explained that the court should "ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person," while remaining "mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary" would be. *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995).

In *Liljeberg*, the plaintiff sought a ruling that it owned a hospital. While the case was pending, the defendant engaged in negotiations with a third party to purchase the hospital. *See id.* at 852-56. The presiding judge sat on that third party's board of trustees. *See id.* The judge failed to recuse himself and issued a judgment in the case adverse to the plaintiff. *See id.* When determining whether the judge should have recused himself and whether the judgment should be voided because he failed to do so, the Supreme Court set out three factors to consider: (1) "the risk of injustice to the parties in the particular case;" (2) "the risk that the denial of relief will produce injustice in other cases;" and (3) "the risk of undermining the public's confidence in the judicial process." *Id.* at 864.

The Supreme Court ultimately held that the judge's seat on the third party's board created "precisely the kind of appearance of impropriety that § 455 was intended to prevent." *Id.* at 867. It ruled that the judge's failure to disqualify was "neither insubstantial nor excusable." *Id.* Based upon that failure, it vacated the judgment of the lower court. *See id.* The same issues that were present with the judge in *Liljeberg* are present here.

In this case, Judge Mazzant is the President of the Judge Paul Brown American Inn of Court, while Bundren sits as its Treasurer. *See* **Exhibit A**. Despite the Court's obligation to do so, this fact was not disclosed to Defendant TGP by Plaintiff's counsel or by the Court. Rather, Defense counsel learned it through independent research on Sunday, October 20, 2024. *See* Burns Decl. at ¶ 12.

The extrajudicial relationship between Judge Mazzant and Mr. Bundren raises unresolvable issues about the Judge's potential bias. As President of the chapter, Judge Mazzant must ensure that Mr. Bundren's actions as its Treasurer are credible and trustworthy. Judge Mazzant has inevitably developed opinions regarding Bundren's trustworthiness and his handling of financial matters. After all, he already supervises Bundren on exactly those issues. Judge Mazzant should not be put into the position of trusting Mr. Bundren with the finances of the Judge Paul Brown American Inn of Court, while presiding over litigation where Mr. Bundren's trustworthiness regarding money, accounting, and his business affairs is at stake. No judge should be placed into that position.

Additionally, the Court's failure to disclose his relationship with Mr. Bundren at the outset of the case is troubling and contributes to the appearance of impropriety. To be clear, TGP is not suggesting that the Court did anything dishonest. However, a reasonable and objective person would logically harbor doubts about the Judge's impartiality given these facts. *See United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995). That Judge Mazzant chose not to disclose that relationship inevitably raises even more questions about his impartiality.

Not only did Judge Mazzant's failure to disclose his relationship with Mr. Bundren create doubts about his impartiality, but it could also have prejudiced Defendants' handling of this case. Given that, in his role as President of the Inn of Court, Judge Mazzant is familiar with Mr. Bundren's trustworthiness and his handling of money generally, Judge Mazzant might be called as a witness. Without TGP's independent research, it never would have known that the judge presiding over the case could end up on the witness stand himself.

Requests for disqualification or recusal may not be solely premised on a Judge's decisions in the litigation itself, and Defendant TGP's request is not. It stems primarily from the close

extrajudicial relationship that Judge Mazzant and Mr. Bundren apparently have that was not disclosed at any point to the other parties to the case. However, the discovery of the relationship between the two certainly raises questions for Defendant regarding the one significant decision the Court has made in the case thus far.

The Court granted Plaintiffs' request for a TRO to lock up the funds that Plaintiffs claim to be owed. Despite a comprehensive search by multiple lawyers on the defense team, nobody was able to locate a single case in any federal court where a court agreed to secure funds for an attorney's fees in a TRO. *See* Burns Decl. at ¶ 10. The number of cases against such a holding is legion. After all, a temporary restraining order requires irreparable harm "where there is no adequate remedy at law, such as monetary damages." *Tribal Sols. Grp. LLC v. Valandra*, No. 23-60233, 2023 U.S. App. LEXIS 29539, at *4-5 (5th Cir. Nov. 6, 2023), *quoting Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). However, this motion is not predicated on a mere disagreement with that ruling. In fact, that ruling is now vacated.

The procedure of the hearing on Bundren's motion for temporary restraining order also gave the Defendants pause. Bundren managed to secure hearing time so quickly that it beggared belief. *See* Burns Decl. at ¶ 8. The time clock was so short that Defendant was unable to provide briefing to the Court. *See id.* During the hearing itself, the Court refused to hear any evidence from Defendants, but uncritically accepted all representations by Bundren. *See id.* at ¶ 9.

The Court's decision to issue the TRO and only require a bond of $1,000 from Plaintiff BLG also puzzled Defendant TGP. *See id.* at ¶ 10. During the hearing, TGP provided credible argument that the issuance of the temporary restraining order would effectively be its death sentence.

*See id.* Given that, the bond was inconceivably low and extremely questionable, particularly given the lack of irreparable injury to Plaintiff.

Finally, despite TGP's credible argument that its business would be destroyed if the restraining order extended past October 19, 2024, it casually and with no analysis set the hearing for, and extended the TRO until, October 25, 2024. *See id.* at ¶ 11. Given how rapidly Judge Mazzant set a hearing at Plaintiff's request, to a reasonable observer it would likely appear as though he set the next hearing for October 25, 2024 to inflict as much damage upon TGP as possible.

And then, when the TRO issued, the Court actually held that Plaintiff demonstrated a likelihood of success on its breach of contract claim and that it would suffer irreparable harm without injunctive relief. (ECF No. 6 at 2). It made this finding despite accepting no evidence from TGP or Defendants and despite Plaintiffs' admission that they would only suffer monetary damages with no temporary restraining order. Again, on its own, this might be mere disagreement with the judge, and not itself sufficient to mandate recusal. Combined with Judge Mazzant's extrajudicial relationship with Plaintiff Bundren, it raises real questions about the effect of the Judge's biases and prejudices on the decisions he is making in this case.

Finally, American Inns of Court exist to "improve the skills, professionalism, and ethics of the bench and bar." (American Inns of Court, About the American Inns of Court, at <inns.innsofcourt.org/for-members/inns/the-judge-hugh-means-american-inn-of-court/about-the-american-inns-of-court/>) This case will expose Plaintiff Bundren as an unethical, dishonest, and untrustworthy attorney. After all, as BLG's sole member, Bundren is essentially a party to this case. If Bundren were representing an unethical client, the Judge's relationship with him would not be

problematic. Given that Bundren himself is the unethical party, his relationship with the Judge is significantly more troublesome.

Bundren's conduct will stain the entire American Inns of Court chapter and, by extension, Judge Mazzant. As President of the chapter, Judge Mazzant should be expected to protect the Inn's reputation. Defendants should not have to litigate with this knowledge in the back of their minds. It will naturally cause them to question every decision made by the Court and ultimately harm the public's perception of the judicial system.

## 3.0 CONCLUSION

On October 20, 2024, Defendant TGP discovered the extrajudicial relationship between Judge Mazzant and William Charles Bundren. That relationship had not been disclosed to TGP and Defendants beforehand and creates an appearance of bias. Judge Mazzant's puzzling decisions regarding the timing of the TRO and follow-up preliminary injunction hearing in this case exacerbates this appearance. This Motion should be granted, and Judge Mazzant should disqualify himself.

Dated: October 21, 2024          Respectfully Submitted,

*/s/ John C. Burns*

Darin M. Klemchuk
State Bar No. 24002418
darin.klemchuk@klemchuk.com
Brian Casper
State Bar No. 24075563
brian.casper@klemchuk.com
Mandi M. Phillips
State Bar No. 24036117
mandi.phillips@klemchuk.com
**KLEMCHUK PLLC**

8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
(214) 367-6000 – Direct
(214) 367-6001 – Fax

John C. Burns
Missouri Bar No. 66462 (admitted *pro hac vice*)
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: (314) 329-5040
F: (314) 282-8136
TBLF@pm.me

Marc J. Randazza (admitted *pro hac vice*)
Florida Bar No. 625566
Randazza Legal Group, PLLC
4974 S. Rainbow Blvd., Ste. 100,
Las Vegas, NV 89118
P: (888) 887-1776
ecf@randazza.com
**ATTORNEYS FOR DEFENDANT**
**TGP COMMUNICATIONS, LLC**

### CERTIFICATE OF CONFERENCE

Here, because Plaintiff has filed an emergency motion (without conferring) that could potentially be granted ex parte, it was important to get this motion filed before the Court opens for business. Given the circumstances, conferring with Plaintiff would be futile because he will not agree to this motion for obvious reasons. Therefore, I do not think it unreasonable to not meet and confer as described by Local Rule CV-7(h).

*/s/ John C. Burns*
John C. Burns

### CERTIFICATE OF SERVICE

This document was filed and served via the Court's CM/ECF system on all counsel of record on the date noted above, and will be served on all other Defendants by U.S. mail, postage prepaid, as follows:

Joe Hoft
1820 NE Jensen Beach Blvd., Suite1120
Jensen Beach, FL 34957

                                                          */s/ John C. Burns*
                                                          John C. Burns