IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900

**JURY TRIAL DEMANDED** |
| Defendants. | | |

---

## AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO TGP'S MOTION TO TRANSFER

---

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF COLLIN | § |

---

Before me, the undersigned notary, on this day personally appeared Charles Bundren, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1.     My name is Charles Bundren. I do hereby swear under penalty of perjury that the facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.     I am over the age of 18 years, of sound mind, and a resident of the City of Frisco, Texas. I submit this affidavit based upon my personal knowledge and, if called upon to testify as to the contents of this Affidavit, I am legally competent to testify to the contents of the Affidavit in a court of law.

3.     I am a member of the State Bar of Texas. I received my membership and license to practice law in the State of Texas on November 12, 1979. My State Bar of Texas bar number is 03343200.

4.     I am a member of the bar of the Supreme Court of the United States, the United States Court of Appeals for the Fifth Circuit, the United States Court of Appeals for the Eleventh Circuit, the United States District Court for the Eastern District of Texas, the United States District Court for the Northern District of Texas, the United States District Court for the Southern District of Texas, and the United States District Court for the Western District of Texas.

5.      I have never been a member of the State Bar of Missouri. I have never been a member of any United States District Court in Missouri. I have never been a member of any United States Courts of Appeals in Missouri.

6.      I have never practiced law or operated a law practice in the State of Missouri.

7.      I have never been employed as a lawyer by any law firm or lawyer licensed to practice in the State of Missouri.

8.      I have never lived in Missouri and I do not own any property in Missouri.

9.      I have never been a citizen or resident of the State of Missouri.

10.    I have been a resident and citizen of the State of Texas, exclusively, since my date of birth on November 17, 1953.

11.    I am registered to vote as a citizen of Collin County in the State of Texas.

12.    I attended Texas Tech University in Lubbock, Texas and received my undergraduate degree in May of 1976.

13.    I received my law degree from Texas Tech University School of Law in Lubbock, Texas in May of 1979.

14.    I am currently employed by Bundren Law Group, PLLC ("BLG") in the capacity of manager and attorney. In my capacity as manager and attorney of BLG, I am responsible for overall management and supervision of BLG.

15.    I was one of the attorneys whom represented TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually (collectively, the "Hofts"), who were sued by Ruby Freeman ("Freeman") and Shea Moss ("Moss") in the case styled *Ruby Freeman, et al.,* v. *James Hoft, et al.*, Case No. 2122-CC09815, for, *inter alia,* defamation, disparagement, personal injury, harm to character or reputation, including libel and slander in connection with publications allegedly made by TGP and the Hofts. The lawsuit hereinafter is referred to as (the "Freeman-Moss Lawsuit").

16.    TPG has its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957. TGP conducts its business affairs in the State of Florida and at its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957.

17.    James Hoft is the sole member and manager and agent of and for TGP.

18.    The Hofts are residents and citizens of the State of Florida.

19.    On April 24, 2024, TGP filed a voluntarily petition for non-individuals filing bankruptcy in the United States Bankruptcy Court for the Southern District of

Florida. A true and accurate copy of the Voluntary Petition filed is attached as Exhibit 3 to this affidavit.

20.     TGP listed the "debtor's address" as "1820 NE Jensen Beach Boulevard, Unit 1129, Jensen Beach, Florida 34957, Martin County Florida." *See* Ex. 3.

21.     On July 27, 2024, TGP's voluntary bankruptcy was dismissed by the United States Bankruptcy Court for the Southern District of Florida.

22.     I conducted, performed, and organized all activities and legal services for BLG with respect to the legal representation and defense of TGP and the Hofts in the Freeman-Moss Lawsuit.

23.     Substantially all of the work performed by BLG in the defense of TGP and the Hofts in the Freeman Moss Lawsuit was performed in the State of Texas and, more particularly, in Collin County, Texas

24.     I negotiated all contracts and attorney retention agreements between BLG, TGP, the Hofts, and the insurance companies whom insured both TGP and the Hofts in connection with the Freeman-Moss Lawsuit.

25.     TGP and the Hofts contacted me in December of 2023 and requested that BLG provide legal representation for a defense of TGP and the Hofts in the Freeman-Moss Lawsuit.

26.     On January 10, 2024, TGP and the Hofts executed and delivered a Retainer Agreement to BLG in connection with the Freeman-Moss Lawsuit. A true and correct copy of the January 10, 2024 Retainer Agreement (the "Retainer Agreement") is attached as Exhibit 1 to this Affidavit.

27.     The Retainer Agreement states, in part, in capitalized and bold font that:

**13. THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL OBLIGATIONS OF THE PARTIES ARE PERFORMABLE IN COLLIN COUNTY, TEXAS. THIS AGREEMENT CAN BE ENFORCEABLE BY ANY COURT OF COMPETENT JURISDICTION IN COLLIN COUNTY, TEXAS.**

*See* Ex. 1.

28.     I am not a party to the Retainer Agreement and did not execute the Retainer Agreement in my individual capacity.

29.     I am making this affidavit in my capacity as a company representative of BLG on personal information known to me regarding BLG and BLG's legal representation and defense of TGP and the Hofts in the Freeman Moss Lawsuit.

30.     Before BLG agreed to undertake a defense of TGP and the Hofts in the Freeman Moss Lawsuit, BLG requested information on the existence of an insurance policy or agreement that insured or covered the reimbursement of defense costs and attorney fees for BLG's legal services.

31.     TGP and the Hofts represented and promised that they were insured under an insurance policy or agreement that would guarantee payment of BLG's

defense costs and attorney fees invoices for legal representation in connection with the Freeman-Moss Lawsuit.

32.     Before execution of the Retainer Agreement, BLG received a copy of a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy"), which covered TGP and the Hofts for the defense costs and alleged claims and allegations asserted in the Freeman-Moss Lawsuit. A true and correct copy of the Insurance Policy is attached as <u>Exhibit 2</u> to this Affidavit.

33.     The Insurance Policy requires the issuing insurance companies to pay for the defense costs incurred by BLG in connection with the Freeman-Moss Lawsuit.

34.     The Insurance Policy was issued and guaranteed by a number of insurance companies, including Atlantic Specialty Insurance Company ("Atlantic"), One Beacon Professional Insurance Group and One Beacon Professional Insurance, Inc. (collectively, "Beacon"), and Intact Insurance Group, USA, LLC ("Intact"). Atlantic, Beacon, and Intact are hereinafter referred to collectively as the ("Insurance Companies"). *See* Ex. 2.

35.     None of the Insurance Companies are headquartered or have their principal place of business in the State of Missouri.

36.    The Insurance Companies participated in and negotiated the terms of the Retainer Agreement, which was executed by their insureds, TGP and the Hofts.

37.    TGP is a company conducting business in the State of Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. TPG has its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957. TGP conducts its business affairs in the State of Florida and at its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957.

38.    BLG relied on the Insurance Policy as the primary contract to pay BLG's defense costs, attorney fees, and expenses expended in defense of TGP and the Hofts.

39.    I prepared BLG's invoices for legal services rendered and costs incurred to defend TGP and the Hofts in the Freeman-Moss Lawsuit. The daily timeslips and invoices were prepared and are maintained in BLG's offices in Collin County, Texas. The books and records supporting the time entries on the invoices are maintained in BLG's offices in Collin County, Texas.

40.    I was directed by the Insurance Companies, TGP, and the Hofts to submit invoices for BLG's legal services to the Insurance Companies (the "Invoices").

41.     Specifically, I was directed by TGP, the Hofts, and the insurance companies to submit the Invoices to Annamarie Haught ("Haught"), the claims representative for the Insurance Companies, TGP, and the Hofts.

42.     On information and belief, Haught does not reside in and is not a citizen of the State of Missouri.

43.     I submitted the Invoices to Haught for payment and with a copy of the invoices also submitted to TGP and the Hofts.

44.     The Insurance Companies paid a portion of amounts owed on the Invoices but have failed and refused, and continue to fail and refuse, to pay BLG all of the amounts due and owing under the Invoices pursuant to the Retainer Agreement, resulting in a past due balance owed in the amount of $512,215.50.

45.     BLG has made repeated written demands to the Insurance Companies, TGP, and the Hofts for payment of the Invoices, but such demand have been ignored.

46.     Despite BLG's demands, the Insurance Companies, TGP, and the Hofts continue to refuse to pay the Invoices due and owing to BLG pursuant to the Retainer Agreement and Insurance Policy.

47.     James Jim Hoft is a resident and citizen of the State of Florida and resides in Jensen Beach, Florida.

48.     Joseph Joe Hoft is a resident and citizen of the State of Florida and resides in Jensen Beach, Florida.

49.     Prior to BLG being retained in January of 2024 by the Insurance Companies, TGP and the Hofts to defend TGP and the Hofts, in the Freeman Moss Lawsuit, I was counsel of record in a lawsuit filed in December 2020 in Superior Court in Fulton County, Georgia which sought various claims and remedies against Fulton County, Georgia and its election officials arising out of the scanning of election ballots for the November 2020 general election which occurred at the State Farm Arena in Atlanta, Georgia.

50.     Pursuant to the Retainer Agreement, the Insurance Companies, TGP, and the Hofts directed BLG to obtain and gather admissible evidence of the events and actions that occurred on election day in November 2020 in Fulton County, Georgia at the State Farm Arena in connection with the scanning of the mail-in ballots by Freeman, Moss, and others (the "Fulton County Events").

51.     After executing the Retainer Agreement, I learned that TGP and the Hofts' prior retained defense attorneys in the Freeman-Moss lawsuit, John Burns, Esq. ("Burns"), Marc Randazza, Esq. ("Randazza"), and Jay Wolman, Esq. ("Wolman") failed to investigate and make any effort to obtain any admissible evidence in connection with the Fulton County Events.

52.     In January 2024, Burns acted as co-counsel with BLG and me in connection with the Freeman-Moss Lawsuit.

53.     Mr. Burns has stated to me that he works and resides in Illinois.

54.    In January 2024, Marc Randazza, Esq., and Randazza Legal Group, PLLC acted as co-counsel with BLG and me in connection with the Freeman-Moss Lawsuit. Mr. Randazza and his law firm are not residents of nor do they reside in the State of Missouri.

55.    Mr. Randazza's law firm, Randazza Legal Group, PLLC, has its principal offices located in Hartford, Connecticut along with other offices located in Gloucester, Massachusetts, and Brooklyn, New York. Randazza Legal Group, PLLC does not have offices located in the State of Missouri.

56.    Likewise, on information and belief, Wolman does not reside in nor does he a maintain a residence in the State of Missouri.

57.    At the time of my involvement in the Freeman-Moss Lawsuit, Randazza, Burns, and Wolman failed to make any effort to obtain discovery or any admissible evidence concerning the Fulton County Events.

58.    The truth of the matters stated in a publication is an affirmative defense to any claim for defamation, libel, or slander and the investigation of the truth of the matters stated is critical to any defense when a libel, defamation or slander lawsuit is filed against a defendant.

59.    As such, BLG and its attorneys, legal assistants, employees, and consultants were specifically retained by the Insurance Companies, TGP and the

Hofts to investigate and obtain admissible evidence from Georgia and other states (not including Missouri) regarding the actions regarding the Fulton County Events.

60.     None of BLG's attorneys, legal assistants, employees, and/or consultants are, or were at any time, residents of the State of Missouri, and none reside in the State of Missouri or undertook any investigation of the facts, interviews, or discovery in the State of Missouri for purposes of legal services in connection with the Freeman-Moss lawsuit, which the Invoices subject to this lawsuit arise out of.

61.     To fulfill my instructions from the Insurance Companies, TGP, and the Hofts, BLG conducted investigations and sought admissible discovery in the States of Georgia, Texas, Washington D.C., Virginia, Maryland, and State of Louisiana.

62.     BLG and I did not conduct investigations, nor did it seek admissible evidence in the State of Missouri.

63.     To fulfill BLG's instructions from the Insurance Companies, TGP, and the Hofts to investigate and obtain admissible evidence in the Freeman-Moss Lawsuit, I performed the following services and actions pursuant to the Retainer Agreement:

64.     I interviewed and attended a deposition of a material witness, Joseph Bartling, in Washington, D.C. Joseph Bartling is a citizen and resident of the State of Virginia.

65.     I obtained the deposition testimony and interview of Jackie Pik, a material fact witness. Jackie Pik is a resident and citizen of the State of Texas.

66.     I interviewed and attended by zoom a deposition of a material witness, Jordan Conradson, in Baltimore, Maryland.   On information and belief, Jordan Conradson is a citizen and resident of the State of Maryland.

67.     I interviewed and attended a deposition by zoom of a material witness, Michelle Branton, in the State of Georgia. Michelle Branton is a citizen and resident of the State of Georgia.

68.     BLG and none of its attorneys or legal assistants have attended any depositions either in person or by zoom of any material witness to the Freeman Moss Lawsuit in the State of Missouri.

69.     BLG and none of its attorneys or legal assistants have interviewed or sought discovery from any witness in the State of Missouri.

70.     BLG and none of its attorneys or legal assistants have sought records or documents or any other discovery from any witness or person in the State of Missouri

71.     Ruby Freeman, one of the plaintiffs in the Freeman Moss Lawsuit, resides in and is a citizen of the State of Georgia. To fulfill BLG's instructions from the Insurance Companies, and the Hofts, I scheduled the deposition of Freeman in

Atlanta, Georgia in May of 2024. At that time, Freeman was a resident of the State of Georgia.

72.     Shay Moss, one of the plaintiffs in the Freeman Moss Lawsuit, resides in and is a citizen of the State of Georgia. To fulfill BLG's instructions from the Insurance Companies, and the Hofts, I scheduled the deposition of Moss in Atlanta, Georgia in May of 2024. At that time, Moss was a resident of the State of Georgia.

73.     I scheduled the deposition of James Hoft in Jensen Beach, Florida in May of 2024, where he lives and resides.

74.     I scheduled the deposition of Joe Hoft in Jensen Beach, Florida, in May 2024 where he lives and resides.

75.     I retained David Sawyer of Sawyer & Company, LLC as an expert witness and consultant to, *inter alia,* assist in the investigation of the evidence in the Freeman-Moss Lawsuit. David Sawyer resides in the State of Georgia and has no connection with, does not conduct business in, and is not a resident or citizen of the State of Missouri.

76.     I retained Todd Harding, Esq. ("Harding") to assist in filing a lawsuit in the Superior Court of Fulton County, State of Georgia, to obtain subpoenas for records and documents and depositions of witnesses in Georgia who had and have material, substantial and personal knowledge of the actions of the Fulton County

Events. Harding is a resident of the State of Georgia and has no connection with, does not conduct business in, and is not a resident or citizen of the State of Missouri.

77.     Harding filed a Verified Petition and Aid of Discovery on April 12, 2024 in the Superior Court of Fulton County State of Georgia, Civil Action No. 24-CV-004696 (the "Fulton County Georgia Lawsuit") on behalf of TGP and the Hofts. A true and correct copy of the Petition and Aid of Discovery is attached to this affidavit as Exhibit 4.

78.     I retained Steve Davis and Cobra Legal Solutions, LLC as a legal assistant and ESI consultant to, *inter alia*, assisting in obtaining video evidence of the Fulton County Events. Steve Davis is a resident of the State of Texas and resides in Dallas, Texas. The offices of Cobra Legal Solutions, LLC are located in Dallas, Texas.

79.     I interviewed a material witness, Garland Favorito, in the State of Georgia with the assistance of Harding. Garland Favorito is a citizen and resident of the State of Georgia.

80.     I interviewed a material witness, Joe Rossi in the State of Georgia with the assistance of Harding. Joe Rossi is a citizen and resident of the State of Georgia.

81.     I obtained discoverable admissible evidence from Fulton County, Georgia of pdf and tiff images of the ballots scanned by Freeman and Moss in connection with the Fulton County Events.

82.     I interviewed and prepared and caused a subpoena to be issued to a material witness, David Cross in the State of Georgia with the assistance of Todd Harding. David Cross is a citizen and resident of the State of Georgia.

83.     I interviewed a material witness, Susan Voyles in the State of Georgia with the assistance of Harding.  Susan Voyles is a citizen and resident of the State of Georgia.

84.     I caused a subpoena to be issued to a material witness, Morgan White, in the State of Georgia with the assistance of Harding. Morgan White is a citizen and resident of the State of Georgia.

85.     I interviewed a material witness, Caroline Jeffords, in the State of Georgia. Caroline Jeffords is a citizen and resident of the State of Georgia.

86.     I interviewed a material witness, Bridget Thorne, in the State of Georgia. Bridget Thorne is a citizen and resident of the State of Georgia.

87.     I caused a subpoena to be issued to a material witness, Mark Wingate in the State of Georgia with the assistance of Todd Harding, Esq. Mark Wingate is a citizen and resident of the State of Georgia.

88.     I caused a subpoena to be issued to a material witness, Mitchell Harrison, in the State of Georgia with the assistance of Harding. Mitchell Harrison is a citizen and resident of the State of Georgia.

89.     I caused a subpoena to be issued to a material witness, Brandon Moye, in the State of Georgia with the assistance of Harding. Brandon Moye is a citizen and resident of the State of Georgia.

90.     I caused a subpoena to be issued to a material witness, Trevor McCoy in the State of Georgia with the assistance of Harding. Trevor McCoy is a citizen and resident of the State of Georgia.

91.     I caused a subpoena for records and a deposition to be issued and served to and interviewed a material witness, Harrison William Prescott Floyd, with the assistance of Harding. Harrison William Prescott Floyd is not a citizen and resident of the State of Missouri.

92.     I caused a subpoena for records and a deposition to be issued and served to a material witness, Steven Clifford Lee, in the State of Georgia with the assistance of Harding. Steven Clifford Lee is a citizen and resident of the State of Georgia.

93.     I caused a subpoena for records and a deposition to be issued and served to a material witness, Trevian C. Kutti, in the State of Georgia with the assistance of Harding. Trevian C. Kutti is not a citizen and resident of the State of Missouri.

94.     I caused a subpoena for records and a deposition to be issued and served to and interviewed a material witness, David Graham of Astro Integration Services Security, in the State of Georgia with the assistance of Harding. David Graham is a citizen and resident of the State of Georgia.

95.    I caused a subpoena for records and deposition to be issued and served to a material witness, Bahn Rich, in the State of Georgia with the assistance of Harding. Bahn Rich is a citizen and resident of the State of Georgia.

96.    I reviewed a previous deposition of and caused a subpoena for records and deposition to be issued and served to a material witness Ralph Jones in the State of Georgia with the assistance of Harding. Ralph Jones is a citizen and resident of the State of Georgia.

97.    I caused a subpoena for records and deposition to be issued and served to a material witness, Regina Waller, in the State of Georgia with the assistance of Harding. Regina Waller is a citizen and resident of the State of Georgia.

98.    I reviewed documents regarding and caused a subpoena for records and deposition to be issued and served to a material witness, Carter Jones, in the State of Georgia with the assistance of Harding. Carter Jones is a citizen and resident of the State of Georgia.

99.    I caused a subpoena for records and deposition to be issued and served to a material witness, Gilbert C. Humes, in the State of Georgia with the assistance of Harding. Gilbert C. Humes is a citizen and resident of the State of Georgia.

100.    I reviewed documents regarding and investigated a material witness, Richard Baron, with the assistance of Harding. Richard Baron a former election

official in Fulton County, Georgia and is now believed to be a citizen and resident of the State of Texas.

101.   I caused a subpoena for records and deposition to be issued and served to a material witness, Nadine Williams, in the State of Georgia with the assistance of Harding. Nadine Williams is a citizen and resident of the State of Georgia.

102.   I caused a subpoena for records and deposition to be issued and served to a material witness, Adrick Hall, in the State of Georgia with the assistance of Harding. Adrick Hall is a citizen and resident of the State of Georgia.

103.   I caused a subpoena for records and deposition to be issued and served to a material witness, Yetunda Sims, in the State of Georgia with the assistance of Harding. Yetunda Sims is a citizen and resident of the State of Georgia.

104.   I caused a subpoena for records and deposition to be issued and served to a material witness, Jeffrey Merrifield, in the State of Georgia with the assistance of Harding. Jeffrey Merrifield is a citizen and resident of the State of Georgia.

105.   I caused a subpoena for records and deposition to be issued and served to a material witness, Keisha Dixon, in the State of Georgia with the assistance of Harding. Keisha Dixon is a citizen and resident of the State of Georgia.

106.   I caused a subpoena for records and deposition to be issued and served to a material witness, Paul Braun, in the State of Georgia with the assistance of Harding. Paul Braun is a citizen and resident of the State of Georgia.

107.   I caused a subpoena for records and deposition to be issued and served to a material witness the Federal Bureau of Investigation and FBI investigators in Atlanta, Georgia with the assistance of Harding. The Federal Bureau of Investigation and FBI investigators reside in the State of Georgia.

108.   I caused a subpoena for records and deposition to be issued and served to a material witness, the Georgia Bureau of Investigation and Georgia Bureau of Investigation investigators in Atlanta, Georgia, with the assistance of Harding. The Georgia Bureau of Investigation and Georgia Bureau of Investigation investigators in Atlanta, Georgia all reside in the State of Georgia.

109.   I caused a subpoena for records and deposition to be issued and served to a material witness, the Fulton County Board of Elections and Registration in Atlanta, Georgia with the assistance of Harding. The Fulton County Board of Elections and Registration witnesses and records reside in the State of Georgia.

110.   I caused a subpoena for records and deposition to be issued and served to a material witness, the Georgia Secretary of State in the State of Georgia with the assistance of Harding. The Georgia Secretary of State witnesses reside in Georgia.

111.   I caused a subpoena for records and deposition to be issued and served to a material witness, the Georgia State Board of Elections, in the State of Georgia with the assistance of Harding. The Georgia State Board of Elections witnesses and records reside in Georgia.

112. I caused a subpoena for records and deposition to be issued and served to a material witness, the Cobb County, Georgia Police Department, in the state of Georgia with the assistance of Harding. The Cobb County, Georgia Police Department witnesses and records reside in and are maintained in the State of Georgia.

113. I caused a subpoena for records and deposition to be issued and served to a material witness, the Fulton County, Georgia Sheriff Department, in the State of Georgia with the assistance of Harding. The Fulton County, Georgia Sheriff Department witnesses and records reside in and are maintained in the State of Georgia.

114. I caused a subpoena for records and deposition to be issued and served to a material witness the Fulton County, Georgia custodian of records, in the state of Georgia with the assistance of Harding. The Fulton County, Georgia custodian of records witnesses and records reside in and are maintained in the State of Georgia.

115. I caused a subpoena for records and deposition to be issued and served to a material witness, Cle Alexander, the Fulton County, Georgia Clerk of Superior and Magistrate Courts, in the State of Georgia with the assistance of Harding. Cle Alexander, the Fulton County, Georgia Clerk of Superior and Magistrate Courts resides in the State of Georgia.

116.   I caused a subpoena for records and deposition to be issued and served to a material witness Fanni Willis, the Fulton County, Georgia District Attorney in the State of Georgia with the assistance of Todd Harding, Esq. Fanni Willis, the Fulton County, Georgia District Attorney resides in the State of Georgia.

117.   I caused a subpoena for records and deposition to be issued and served to a material witness Lawrence Sloan in the State of Georgia with the assistance of Harding. Lawrence Sloan resides in the State of Georgia.

118.   I caused a subpoena for records and deposition to be issued and served to a material witness, Bessie Hampton, in the State of Georgia with the assistance of Harding. Bessie Hampton resides in the State of Georgia.

119.   I interviewed a material witness, Kevin Moncla and engage with communications with his counsel.  Kevin Moncla and his legal counsel reside in the State of Louisiana.

120.   I caused a subpoena for records and deposition to be issued and served to a material witness, James Calloway, in the State of Georgia with the assistance of Harding. James Calloway resides in the State of Georgia.

121.   I caused a subpoena for records and deposition to be issued and served to a material witness Ide Moss in the State of Georgia with the assistance of Harding. Ide Moss resides in the State of Georgia.

122.   BLG did not conduct any interviews of any witnesses and did not seek the deposition of any witnesses residing in the State of Missouri.

123.   BLG did not issue any subpoenas nor receive any records of any custodian of records from any witness or entity residing in the State of Missouri.

124.   Substantially all of the legal work performed by BLG for the Insurance Companies, TGP, and the Hofts was performed in the States of Texas or Georgia. No substantial legal work was performed in the State of Missouri.

125.   On October 8, 2024, Bundren Law Group, PLLC filed a lawsuit against the Insurance Companies, TGP, and the Hofts in the 471st District Court of Collin County, Texas, for, *inter alia,* breach of contract, promissory estoppel, and third-party beneficiary of the Insurance Contract, seeking damages against the Insurance Companies, TGP, and the Hofts, jointly and severally, for their refusal to pay the Invoices and defense costs, attorneys' fees, and litigation expenses expended by BLG.

126.   On October 8, 2024, the 471st District Court of Collin County, Texas granted BLG a Temporary Restraining Order against the Insurance Companies.

127.   All of the books and records regarding the above referenced lawsuit are located in Collin County, Texas at the law offices of Bundren Law Group, PLLC.

128.   All of the employees, legal assistants, attorneys who worked on the Freeman Moss Lawsuit for Bundren Law Group, PLLC reside in Collin County,

Texas, and it would be a great inconvenience for those witnesses to be forced to travel to Missouri for a trial of the above referenced matter.

129. There are no witnesses necessary for the trial of the above referenced civil matter who reside in the State of Missouri.

130. All of the material witnesses necessary for trial of the above referenced civil matter reside in either Collin County, Texas, Florida, Georgia, Minnesota, or Maryland.

131. There are no records or documents necessary for the trial of the above referenced matter located in the State of Missouri.

132. Neither I nor any other employee, agent, legal assistant, or attorney working for Bundren Law Group, PLLC conducted any discovery for the Freeman Moss Lawsuit in the State of Missouri.

133. Neither I nor any other employee, agent, legal assistant, or attorney working for Bundren Law Group, PLLC filed any pleadings or documents in any court in the State of Missouri, and did not file any pleadings or documents in the Freeman Moss Litigation.

134. The State of Missouri and the United States District Court for the Eastern District of Missouri have no connection to the disputes between the parties in the above referenced civil action.

135.   On October 18, 2024 BLG filed a motion to dismiss TGP's lawsuit in the United States District Court for the Eastern District of Missouri. Attached as Exhibit 5 is a copy of BLG's motion to dismiss.

FURTHER, AFFIANT SAYETH NAUGHT.


**WILLIAM CHARLES BUNDREN**

By: _____

William Charles Bundren


STATE OF TEXAS            )
                          )
COUNTY OF COLLIN  )


On this 29th day of October, 2024, before me, a Notary Public in and for said State, personally appeared William Charles Bundren, and that said instrument was signed on by him and he acknowledged said instrument to be his free act and deed.

IN TESTIMONY WHEREOF, I have set my hand and affixed my official seal in the County and State aforesaid, the day and year first written above.


_____
Notary Public

My Commission Expires: 06/04/2027

JACOB JOSEPH
Notary Public, State of Texas
Notary ID# 13203749-1
My Commission Expires 06-04-2027

---

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO TRANSFER**          **PAGE 25**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900  **JURY TRIAL DEMANDED** |
| Defendants. | | |

---

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO
TGP'S MOTION TO TRANSFER**

---

# EXHIBIT 1

## ATTORNEYS AND COUNSELORS
## BUNDREN LAW GROUP, PLLC

2591 Dallas Parkway, Suite 300
Frisco, Texas 75034

Wm. Charles Bundren, Esq.
E-Mail: Charles@bundrenlaw.net

Telephone: 214.808.3555
Fax: 972.624.5340

### RETAINER AGREEMENT

January 10, 2024

## DELIVERED VIA EMAIL AS FOLLOWS:

Jim Hoft
Email:  midwestjim@charter.net
          jimhoft@gamil.com

Joe Hoft
Email:  jwhoft@gmail.com


Re:    Re: *Ruby Freeman and Wandrea Moss, Plaintiffs v. James Hoft, Joseph Hoft, and TGP Communications LLC d/b/a THE GATEWAY PUNDIT, Defendant.* Case No. 2122-CC-09815-01, IN THE CIRCUIT COURT OF ST. LOUIS CITY, MISSOURI TWENTY-SECOND JUDICIAL CIRCUIT.


| Re: | Insurance Policy Number: | MEP-25081-21 |
|-----|--------------------------|--------------|
|     | Renewal of: | MEP -23005-20 |
|     | Insurer: | ONE BEACON PROFESSIONAL INSURANCE, 6800 College Blvd., Suite 350, Overland Park, KS 66211. |
|     | Underwriter: | Atlantic Specialty Insurance Company ("Underwriter"), 150 Royall Street, Canton, MA 02021 |
|     | Insurance policy description: | Media Advantage Policy |
|     | Named Insured: | TGP Communications, LLC, 5105 Lindell Boulevard, St. Louis, MO 63108. |
|     | Account No. | 199908 |

1

Dear Jim and Joe:

In accordance with our various telephone conference calls and email exchanged over the last several weeks, please find below a revised retainer agreement reflecting the agreements that have been reached as described below.

This letter shall serve to evidence the agreements and understandings we have reached concerning the legal representation of *James Hoft, Joseph Hoft, and TGP Communications LLC d/b/a THE GATEWAY PUNDIT, Defendants* in Case No. 2122-CC-09815-01, IN THE CIRCUIT COURT OF ST. LOUIS CITY, MISSOURI TWENTY-SECOND JUDICIAL CIRCUIT (hereinafter referred to as the "Litigation") by Bundren Law Group, PLLC, whose current business address is 2591 Dallas Parkway, Suite 300, Frisco, Texas 75034 (hereinafter referred to as "Bundren Law"). James Hoft, Joseph Hoft, and TGP Communications LLC d/b/a THE GATEWAY PUNDIT, Defendants will hereinafter collectively be referred to as "DEFENDANTS." It is understood and agreed that the attorney's fees and expenses incurred in the Litigation for the defense of James Hoft, Joseph Hoft, and TGP Communications LLC d/b/a THE GATEWAY PUNDIT, (the insureds pursuant to the above referenced Insurance Policy) and hereinafter referred to as "DEFENDANTS") will be paid to Bundren Law by Defendants for any amounts that are not paid by ONE BEACON PROFESSIONAL INSURANCE (whose address is identified above) and/or Atlantic Specialty Insurance Company ("Underwriter") (whose address is identified above), in accordance with this agreement and pursuant to the above referenced insurance policy (the "Insurance Policy"). ONE BEACON PROFESSIONAL INSURANCE and Atlantic Specialty Insurance Company shall hereinafter be referred to as the "Insurer," and shall be jointly and severally responsible for payment of attorney's fees and costs billed by Bundren Law for the defense of DEFENDANTS in the Litigation, and the attorney's fees and costs of local counsel.

All invoices from Bundren Law shall be submitted to DEFENDANTS on a monthly basis. Upon receipt of the invoice, DEFENDANTS shall review the invoices and submit the necessary work or activity codes required by Insurer in order to comply with the Insurer's "billing guidelines." DEFENDANTS, jointly and severally, shall be responsible to pay Bundren Law all amounts for all invoices which are not paid by Insurer.

**Conflicts**. DEFENDANTS confirm and agree that DEFENDANTS have no conflict of interest between themselves with respect to the Litigation. Bundren Law has conducted a conflicts of interest check, and Bundren Law confirms that Bundren Law has no conflicts in representing all three DEFENDANTS in the Litigation. DEFENDANTS waive any conflict of interests that may exist between them with respect to the defense by Bundren Law of the DEFENDANTS in the Litigation. Bundren Law discloses that in accordance with applicable State Bar of Texas rules of professional conduct, showed an irreconcilable conflict of interest exists between DEFENDANTS in the future, which cannot be resolved, Bundren Law may be forced to withdraw from representing DEFENDANTS in the Litigation.

**Scheduling Order**. This agreement is contingent on a satisfactory Scheduling Order or other agreement(s) being reached with respect to the deadlines and scheduling of matters with respect to the Litigation to the satisfaction of Bundren Law to permit Bundren Law and Charles Bundren, Esq. to file a Notice of Appearance in the Litigation for DEFENDANTS and to have sufficient time to investigate and deliberate what will be necessary for the defense of DEFENDANTS in the Litigation. Bundren Law will not undertake a notice of appearance or legal representation for DEFENDANTS in the Litigation until (1) this agreement is fully executed by all parties; and, (2) the necessary Scheduling Order is entered by the Presiding Court in the Litigation. Upon the occurrence of these conditions, Bundren Law and Charles Bundren, Esq. shall file a Notice of Appearance for DEFENDANTS in the Litigation, and a request for admission pro hac vice in the Litigation from the presiding Court. Bundren Law and attorneys working for Bundren Law are licensed by the State Bar of Texas and their licenses are in good standing with the State Bar of Texas. It will be necessary for attorneys working for Bundren Law who intend to appear in the Litigation to obtain the permission of the presiding Court in the Litigation to appear to represent DEFENDANTS. Bundren Law does not anticipate any problems with any appearance of attorney's working for Bundren Law.

Bundren Law will require all parties to agree to the retention of local counsel acceptable to Bundren Law and all parties to this agreement in St. Louis, Missouri. The DEFENDANTS and Insurer shall be responsible for payment of attorney's fees and costs of local counsel directly.

The legal representation is in connection with the above referenced described Litigation only and the defense of DEFENDANTS in the Litigation and in the capacities therein stated. Bundren Law shall advise DEFENDANTS and Insurer regarding the legal matters described above.

**Resume.** Attached to this retainer agreement as Exhibit 1 is a copy of the resume of Charles Bundren, Esq., who will be the primary legal counsel representing DEFENDANTS in the Litigation for Bundren Law describing the professional background and education, and professional experience of Senior Partner of Bundren Law, Charles Bundren, Esq. through the date reflected on the resume. Should you have any questions concerning the professional background, education, and experience of Charles Bundren, Esq. beyond what is described in the resume, I will be more than happy to answer any such questions.

DEFENDANTS and Insurer have authorized Bundren Law and Charles Bundren, Esq. of Bundren Law to represent DEFENDANTS in the Litigation with respect to the legal matters set forth above and described herein and, in the capacity, stated. This agreement shall not apply to any other legal services other than defense of DEFENDANTS in the Litigation. Bundren Law has agreed to provide such legal representation and services to DEFENDANTS subject to (1) Bundren Law's ethical obligations under the State of Texas Bar Rules provided, however, that the following terms, conditions, agreements, and understandings shall apply to this legal representation and to the payment of attorney's fees and expenses.

## ATTORNEYS FEES AND EXPENSES.

1.      Attorney's fees for the legal services and expenses shall be paid by DEFENDANTS and Insurer and DEFENDANTS and Insurer shall be responsible for payment of all legal services at the reasonable and customary hourly rate described below plus expenses, if any.  It is customary for the Bundren Law to invoice its clients based upon the hours of work performed in representing the client on a monthly basis.  The agreed reasonable and customary hourly rates for attorneys and legal assistants working for Bundren Law on the Litigation for DEFENDANTS are as follows:

A.      Senior partner, Charles Bundren, Esq. -- $575.00 per hour;
B.      Associates  –      $380.00 per hour;
C.      Legal assistants -- $175.00 per hour;
D.      Court room legal assistants -- $295 -- $350.00 per hour (or as contracted (subject to approval of DEFENDANTS and Insurer)).

Bundren Law has assigned Charles Bundren, Esq., Senior Partner, to be lead counsel for DEFENDANTS in defense of the claims asserted in the Litigation. DEFENDANTS and Insurer agree that Charles Bundren, Esq. will be lead counsel

representing DEFENDANTS in the defense of the claims in the Litigation. Any questions concerning the litigation should be directed to Charles Bundren, Esq.

DEFENDANTS and Insurer agrees to pay legal fees at the above-described hourly rates. If necessary, Bundren Law will advise DEFENDANTS and Insurer (subject to the approval of DEFENDANTS and Insurer) regarding the necessity to retain other attorneys or legal assistants to assist Bundren Law who are not employed by Bundren Law. Other attorneys -- such as local counsel -- who are not employed by Bundren Law will determine their own hourly rates and will enter into a separate retention agreement with DEFENDANTS and Insurer, if needed, to assist Bundren Law in the representation of DEFENDANTS as described herein -- subject to the approval of DEFENDANTS and Insurer. Depending upon the nature of the work to be performed by legal assistants, their hourly charge ranges from $175.00 per hour to $325.00 per hour. Bundren Law may also retain other legal counsel to assist Bundren Law in the representation of DEFENDANTS described herein (subject to the approval of DEFENDANTS and Insurer). The hourly rate for such attorney(s) shall be their reasonable and customary hourly rate.

**Experts and non-testifying consultants**: Third-party consultants, non-testifying consultants, or expert witnesses, if needed, will determine their own hourly rate but only as approved by DEFENDANTS and Insurer. Such firms or persons shall enter into their own direct contract with DEFENDANTS and Insurer, and DEFENDANTS and Insurer shall directly pay such firms or persons.

Because of the nature of all legal matters, Bundren Law cannot, and does not, estimate the amount of attorney's fees that may be incurred to defend DEFENDANTS in the Litigation. Bundren Law's representation of DEFENDANTS in the Litigation is not based on a contingency attorney fee and responsibility for payment of legal fees is not based on any outcome in the legal matter.

**Expenses and out-of-pocket costs**: In addition to the foregoing attorney fees, DEFENDANTS and Insurer agrees to pay, all out-of-pocket costs and expenses incurred in connection with the legal representation of DEFENDANTS in the Litigation, including, specifically, without limitation, where applicable and necessary, charges for transcripts, recording and certifying documents charges, service of process, filing fees, photocopying and other reproduction costs (except for photocopying and reproduction cost done by Bundren Law in-house which is considered part of Bundren Law's overhead) and charges (including document numbering), document imaging, document scanning, printing and binding charges, trial notebooks, graphics, simulations, animations, and re-creations, visual aid

presentations equipment charges, investigators and investigations, consultants and expert witnesses (including accountants and certified public accountants, economists, real estate appraisers, and others, (but only if needed and approved by DEFENDANTS and Insurer), other witness fees, title opinions or reports, jury consultants (if approved by DEFENDANTS and Insurer), mediators or arbitrators fees, messenger and delivery services, mileage, travel expenses, lodging and meals when out of the home city of the Bundren Law, parking expenses, postage and mailing charges (including certified mail charges and commercial carrier charges). Travel expenses, if any, will be charged based upon reasonable expenses actually incurred, but will include best available class of travel, meals, and accommodations, if necessary. Bundren Law will travel, if any, at coach fare unless another level of service is necessary. Bundren Law does not mark up any expenses incurred for the legal representation of its clients. Lodging shall be limited to reasonable accommodation charges. Bundren Law does not utilize five-star hotels.

Bundren Law will not charge for in-house duplication, telecommunication or fax expenses, long-distance telephone calls, email, or conference room rental. Such expenses are included in the Bundren Law's overhead. Bundren Law shall not markup any expenses. All expenses shall be at the cost incurred by Bundren Law and Bundren Law shall provide invoices or receipts for such cost upon written request from DEFENDANTS and/or Insurer.

## CLIENT AUTHORIZATION

2. DEFENDANTS and Insurer authorizes Bundren Law to undertake, on behalf of DEFENDANTS, and engage in providing legal services seeking to obtain the DEFENDANTS' objectives in the Litigation. DEFENDANTS and Insurer authorizes Bundren Law to appear for and to represent DEFENDANTS with respect to the legal matters described above.

3. DEFENDANTS and Insurer and Bundren Law shall have an attorney-client relationship and all communications between DEFENDANTS and Insurer and Bundren Law shall be subject to the Attorney-client privilege, and the work product mental impression privilege, where applicable.

4. Although not expected, DEFENDANTS and Insurer agrees that any and all funds (not legal services) that might be recovered due to Bundren Law's legal representation of DEFENDANTS in the legal matter, if any, will be placed in Bundren Law's Interest on Lawyer's Trust Account (hereinafter "IOLTA") account administered by the State Bar of Texas. These funds will remain in the IOLTA

account only for as long as is reasonably necessary under the circumstances then existing to disburse the funds, if necessary. The IOLTA account is an escrow account which is non-interest bearing to DEFENDANTS. In accordance with Texas State Bar Rules, the interest earned by the IOLTA account will be remitted to the Texas Equal Access to Justice Foundation to fund legal services for the poor. DEFENDANTS and Insurer hereby expressly consents to the deposit of such funds, if any and if necessary, into the IOLTA account, realizing that any *interest* thereon will be remitted in that fashion, rather than to DEFENDANTS.

**BEST EFFORTS**

5.      Bundren Law shall use Bundren Law's best efforts in representing DEFENDANTS; however, Defendants and Insurer acknowledges that Bundren Law has given DEFENDANTS and Insurer no assurances regarding the outcome of any legal matter(s), and no assurances regarding the outcome of the Litigation.

**CLIENT FILES**

6.      If the agreement between Bundren Law and DEFENDANTS and Insurer is terminated for any reason, or upon cessation of the attorney-client representation, Bundren Law will return DEFENDANTS' and Insurer's client papers and client property that DEFENDANTS and/or Insurer furnished to Bundren Law, if any.

7.      Client's files may be retained for no more than four (4) years after Bundren Law's representation has been completed and then will be discarded if not previously delivered to DEFENDANTS and Insurer.

**BILLING**

8.      All billing for Bundren Law's services and expenses shall be in accordance with the following procedures. The Bundren Law invoices will be detailed as to separate services performed by date, description and time incurred, and timekeeper. **THE INVOICES CONTAIN HIGHLY CONFIDENTIAL ATTORNEY/CLIENT COMMUNICATIONS AND INFORMATION AND WORK PRODUCT. PLEASE CLOSELY PROTECT THE INVOICES**. All invoices are due within 30 days of receipt unless otherwise noted by Bundren Law in writing or email. Failure to pay an Invoice upon receipt may result in Bundren Law withdrawing all legal representation of DEFENDANTS in the legal matter.

**ADDITIONAL CONFLICTS**

9.     Bundren Law has conducted a conflict review, and has confirmed that Bundren Law is not presently representing any person or entity, in any matters adverse to DEFENDANTS and Insurer, as defined by the Texas State Bar Rules.  To the extent any court dockets erroneously suggest otherwise (such as, for example, by continuing to identify Bundren Law as counsel of record), Bundren Law will take immediate steps to correct any such errors. DEFENDANTS and Insurer confirms that there is no conflict of interest that DEFENDANTS and/or Insurer is aware of which would prevent Bundren Law from representing all DEFENDANTS in the Litigation. *DEFENDANTS waive any conflict between them with respect to the legal representation of Bundren Law for them in the Litigation.*

**COOPERATION**

10.     DEFENDANTS and Insurer agrees to keep Bundren Law advised of DEFENDANTS' and Insurer's contact information, location, phone number and email address at all times, and to appear on reasonable notice at any and all depositions and court appearances, and to comply with all reasonable requests of Bundren Law for cooperation in connection with the preparation and presentation of any legal matters involved in the Litigation, including the return of all phone messages and e-mail messages as soon as possible.

11.     The Supreme Court of Texas has adopted a Creed which mandates professionalism in the conduct of attorneys.  Bundren Law will strictly abide by that Creed. Attached is a copy of the Creed. A copy of the attorney Creed is attached hereto as Exhibit 2.

12.     **Invoices.** Invoices submitted by Bundren Law comply with state and federal requirements including contemporaneous recording of time by timekeepers, billing by the 10th of the hour, detailed descriptions of the services and activities performed, and single-entry timekeeping with activities describe separately by timekeeper, date and time incurred. Invoices are prepared and submitted for payment on a monthly basis. Bundren Law does not -- unless approved by its clients -- have multiple professionals attend appearances. All activities performed for its clients are contemporaneously recorded, invoiced and to be paid. Travel time is expected to be paid at full billing rates for the timekeeper involved. Preparation of email, documents, briefs, motions, and discovery and electronic filing and service of documents is billed at the actual time incurred for the activity. Bundren Law complies with all court requirements for conferences between attorneys which

includes email, letters, telephone conference calls, zoom calls and in person conferences, and such activities are invoiced to its clients and expected to be paid.

Bundren Law represents multiple clients in multiple jurisdictions and has established its procedures for billing and invoicing its clients. DEFENDANTS and Insurer agree that Bundren Law shall invoice DEFENDANTS and Insurer in accordance with the procedures described in this agreement and that all time incurred by an attorney or legal assistant in furtherance of DEFENDANTS' defense in the Litigation is compensable and recoverable for legal services and shall be paid by DEFENDANTS and Insurer. Bundren Law, because of its standard operating billing procedures over many jurisdictions and with many clients, will not agree to separate and distinct billing guidelines of Insurer.

Invoices shall be delivered to DEFENDANTS and Insurer by email attachment of a PDF file. Bundren Law will not deliver its invoices in any other manner than is customary and acceptable to Bundren Law's other clients which is by PDF attachment to an email.

**13.   THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL OBLIGATIONS OF THE PARTIES ARE PERFORMABLE IN COLLIN COUNTY, TEXAS. THIS AGREEMENT CAN BE ENFORCEABLE BY ANY COURT OF COMPETENT JURISDICTION IN COLLIN COUNTY, TEXAS.**

14.   This agreement cannot be modified orally. All modifications to this agreement shall be in writing and shall be signed by Bundren Law and DEFENDANTS and Insurer.

15.   In the event that any one or more of the provisions contained in this Agreement shall be held to be invalid, illegal, or unenforceable in any respect, such invalidity, or illegality shall not affect any other provision, and this agreement shall be construed as if such invalid, illegal, or unenforceable provision did not exist.

If the foregoing correctly sets forth our understandings and agreements concerning representation of DEFENDANTS in the Litigation by Bundren Law, please so indicate by affixing your appropriate signature at the place indicated below. DEFENDANTS and Insurer should maintain an executed copy of this agreement

We look forward to representing DEFENDANTS in the Litigation described above and we greatly appreciate the confidence you have shown in Bundren Law by selecting Bundren Law.

Very truly yours,

By: _____

BUNDREN LAW GROUP, PLLC
Wm. Charles Bundren, Esq., Manager.

Date:              January 10, 2024.

**AGREED AND ACCEPTED AND EFFECTIVE AS OF THE DATE LAST SIGNED AS INDICATED BELOW AND HEREIN.**

Jim Hoft

In his capacity as CEO and Manager of TGP Communications, LLC d/b/a THE GATEWAY PUNDIT.

By: _____
Printed Name:          Jim Hoft,
Title:                 CEO and Manager of TGP Communications, LLC d/b/a
                       THE GATEWAY PUNDIT.

Date:          January _____, 2024.

Jim Hoft, individually.

By: _____
Printed Name:          Jim Hoft,
Title:                 Individually.

Date:          January _____, 2024.

10

Joe Hoft, individually.

By: _____

Printed Name:        Joe Hoft,

Title:               Individually.

Date:        January  _10_____, 2024.

**ATTORNEYS AND COUNSELORS**
**BUNDREN LAW GROUP, PLLC**
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034

Wm. Charles Bundren, Esq.                     Telephone: 214.808.3555
E-Mail: Charles@bundrenlaw.net                          Fax: 972.624.5340

**RETAINER AGREEMENT**

January 10, 2024

**DELIVERED VIA EMAIL AS FOLLOWS:**

Jim Hoft
Email:      midwestjim@charter.net
                  jimhoft@gamil.com

Joe Hoft
Email:      jwhoft@gmail.com


Re:     Re: *Ruby Freeman and Wandrea Moss, Plaintiffs v. James Hoft, Joseph Hoft, and TGP Communications LLC d/b/a THE GATEWAY PUNDIT, Defendant.* Case No. 2122-CC-09815-01, IN THE CIRCUIT COURT OF ST. LOUIS CITY, MISSOURI TWENTY-SECOND JUDICIAL CIRCUIT.

# EXHIBIT 1

**ATTORNEY & COUNSELOR**
*BUNDREN LAW GROUP, PLLC*
**WM. CHARLES BUNDREN, ESQ.**
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034

Office:  214.808.3555                                             Facsimile:  972.624.5340
Cell:    214.808.3555                                             e-mail:  charles@bundrenlaw.net

**DATED:    January 2022**

**PROFESSIONAL BACKGROUND AND EXPERIENCE:**

In 1979, upon graduation from the Texas Tech School of Law, Wm. Charles Bundren joined the law firm of Jackson & Walker of Dallas, Texas in the firm's litigation section.  In 1985, Mr. Bundren became an equity partner of Jackson & Walker.  Mr. Bundren served in various capacities with the firm of Jackson & Walker until March of 1993, when he left the firm to form his own private law practice.

In March of 1993, Mr. Bundren formed Wm. Charles Bundren & Associates, P.C. of Dallas, Texas where he was the principal shareholder and responsible attorney for handling complex federal and state commercial and civil rights litigation.

In October of 2003 Mr. Bundren joined the law firm of Glast, Phillips & Murray in the Dallas, Texas office where he concentrated on complex civil trial and appellate representation of small to medium business interests in federal and state courts and arbitrations.

In December of 2004, Mr. Bundren moved his practice to Frisco, Texas and continued his representation of business owners in complex federal and state civil commercial and civil rights trial and appellate work.  Mr. Bundren's legal practice for 42 years has concentrated in the area of handling complex federal and Texas civil trial and appellate matters, arbitrations, and claim resolutions for business owners and individuals.

In March 2020, Mr. Bundren formed Bundren Law Group, PLLC where he is currently employed as Senior Counsel and Managing Member.

1

For over 42 years, Mr. Bundren has had a varied practice.  He has represented a variety of clients in complex administrative and agency, and state and federal civil litigation, including public and municipality law, antitrust, trade secret and intellectual property rights, covenants not to compete, property tax and condemnation, personal injury, contract disputes, insurance, statutory violations, probate and trusts, zoning, labor and employment, civil rights (42 U.S.C. §1983 ), First Amendment, constitutional law, religious liberty, voting rights and voting dilution, age, immigration, sex, and handicap discrimination, interstate cargo, warranty claims, environmental claims, open records, HIV ("AIDS"), libel and slander, and general civil business litigation and public access claims, and arbitrations.

Mr. Bundren has litigated and argued extensively before administrative agencies, federal district and appellate courts, and State district and appellate courts cases concerning municipal and public law with specific concentration in the areas of claims asserted under 42 U.S.C. §1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, antitrust, trade secret, intellectual property, and  patent claims. and claims under the Voting Rights Act, the Federal Rehabilitation Act, Title VII, Americans with Disabilities Act, Age Discrimination, immigration, Fair Labor Standards Act, Wage and Hour claims, OSHA and environmental claims, sex, religion and handicap discrimination against private companies, local municipalities, and public entities, the Texas Deceptive Trade Practices Act, The Texas Local Government Code, the Texas Property and Probate Codes, the Texas Property Tax Code, and statutory and inverse condemnation.

Mr. Bundren has over 42 years of experience in litigating and arguing before federal and state administrative agencies, and federal district courts in the Northern, Eastern, Southern and Western United States District Courts of Texas, the federal district courts of Arizona, Nevada, the Northern District of Georgia, the Eastern District of Michigan and the Fifth, Sixth and Eleventh Federal Circuit Courts of Appeals, and the United States Supreme Court.  Mr. Bundren has successfully argued cases for clients before the Texas Supreme Court and numerous Texas Courts of Appeals.  Mr. Bundren has acted as lead counsel on such diverse cases as voting rights and voting dilution claims against local cities and the federal constitutional right of privacy.  Mr. Bundren has defended municipalities and police officers in federal district courts on civil rights claims involving, *inter alia,* use of excessive force, and constitutionally invalid customs and policies.  Mr. Bundren has advised, prepared and defended drug-free workplace testing policies, HIV infection policies, and First Amendment speech policies.  Mr. Bundren continues to advise companies

on business liability and discrimination claims.   Mr. Bundren has successfully represented clients in probate and trust litigation, tax (both personal and property), litigation, real estate suits, inverse condemnation suits, immigration, implied and express warranty claims, distributor suits, contract, tort, and Deceptive Trade Practices Act suits, private school litigation, general municipal law, trade secrets, intellectual property, patent claims, and antitrust claims.

During the past 42 years, Mr. Bundren has acted as lead trial counsel in over 200 jury trials and arbitrations. Mr. Bundren has served as lead trial counsel in over 75 trials to the court and has briefed and orally argued over 150 appellate cases in the United States Court of Appeals for the Fifth, Sixth and Eleventh federal circuits, the Supreme Court of Texas and a majority of the Courts of Appeals in Texas.

**PROFESSIONAL ACTIVITIES:**

Mr. Bundren is currently a member of the Board of Directors and the Treasurer of the Honorable Judge Paul Brown Intellectual Property American Inns of Court for the United States District Court for the Eastern District of Texas. Mr. Bundren was elected as a director of the United States District Court for the Eastern District of Texas Bar Association in 2015 and served as President of the Eastern District of Texas Bar Association in 2019.  Mr. Bundren is a former member of the American Bar Association AIDS Task Force and past member of the Texas Hospital Association Legal Task Force on AIDS related issues.  Mr. Bundren has been a member of the faculty and speaker for the State Bar of Texas at the State Bar of Texas Professional Development programs in 1990, 1991, 1992, 1993, and 1994 entitled "Suing and Defending Governmental Entities and Public Officials." Mr. Bundren was also a member of the faculty and speaker at the 1992 Advanced Labor and Employment Law Seminar for the State Bar of Texas Professional Development Program.  In February of 1994 Mr. Bundren was a member of the faculty and speaker at 9th Annual School Law Conference sponsored by the University of Texas School of Law.  Mr. Bundren's topic was "Walking the Line between Establishment and "Accommodation" of Religion.   In May of 1994, Mr. Bundren spoke and presented a paper for the State Bar of Texas municipal law seminar on "First Amendment Issues effecting Municipalities."

Mr. Bundren is a past President of the Rutherford Institute of Texas Foundation and past regional coordinator of the Rutherford Institute for Texas, New Mexico, Oklahoma, Louisiana and Arkansas.  The Rutherford Institute was founded in 1982 by Constitutional attorney and author John W. Whitehead as a religious and civil liberties organization dedicated to preserving religious freedom.   The

Rutherford Institute is a nonprofit, tax-exempt legal and educational organization in accordance with Section 501(c) (3) of the Internal Revenue Code.

For over 42 years, Mr. Bundren has been a pro bono volunteer attorney for First Liberty Institute of Plano, Texas focusing on defense of religious liberty, and is a pro bono affiliate attorney with ADF of Scottsdale, Arizona focusing on defense of life, protection of the family, First Amendment freedoms and religious liberty.

**PROFESSIONAL ASSOCIATIONS:**

Mr. Bundren is a member of the State Bar of Texas. He is a member of the Bar of United States Supreme Court, the United States Courts of Appeals for the Fifth, Sixth and Eleventh Circuits, the United States District Courts for the Northern, Southern, Eastern, and Western Districts of Texas; the United States District Court for the Northern District of Georgia (admitted Pro Hac Vice 2008); the United States District Court for the District of Arizona (admitted Pro Hac Vice 2007); the United States District Court for the District of Nevada (admitted Pro Hac Vice 2007), the State Superior Court for White County Georgia (admitted Pro Hac Vice 2008), and the State Superior Court for Fulton County Georgia (admitted Pro Hac Vice 2021).

**EDUCATION AND PERSONAL:**

Born in Austin, Texas, November 17, 1953; admitted to the Texas Bar in 1979; preparatory education, Texas Tech University (B.A. 1976); legal education, Texas Tech University School of Law (J.D., 1979). Honors: Member of Board of Barristers; Associate Editor, Texas Tech Law Review, 1977-78; Articles, Topics and Book Review Editor, Texas Tech Law Review, 1978-79.

Mr. Bundren has participated as lead counsel or co-counsel, or amicus counsel in the following reported decisions.

**SUPREME COURT OF THE UNITED STATES**

1. **Planned Parenthood v. Casey,** No. 91-744 , SUPREME COURT OF THE UNITED STATES, 505 U.S. 833; 112 S. Ct. 2791; 120 L. Ed. 2d 674; 1992 U.S. LEXIS 4751; 60 U.S.L.W. 4795; 92 Daily Journal DAR 8982; 6 Fla. L. Weekly Fed. S 663, April 22, 1992, Argued , June 29, 1992, Decided * * Together with No. 91-902, Casey, Governor of Pennsylvania, et al. v. Planned Parenthood of Southeastern Pennsylvania et al., also on certiorari to the same court.,   As Amended July 2, 1992

**OVERVIEW:**   The Court held that the husband notification provision of the Pennsylvania Abortion Control Act placed an undue burden on a woman's right to have an abortion in a large fraction of cases and was unconstitutional.

2.   **Lee v. Weisman**, No. 90-1014 , SUPREME COURT OF THE UNITED STATES, 505 U.S. 577; 112 S. Ct. 2649; 120 L. Ed. 2d 467; 1992 U.S. LEXIS 4364; 60 U.S.L.W. 4723; 92 Cal. Daily Op. Service 5448; 92 Daily Journal DAR 8669, November 6, 1991, Argued , June 24, 1992, Decided

**OVERVIEW:**   The inclusion of clerical members who offered prayers as part of official public school graduation ceremonies was inconsistent with the Establishment Clause of the First Amendment of the Constitution.

3.   **Rust v. Sullivan**, No. 89-1391, SUPREME COURT OF THE UNITED STATES, 500 U.S. 173; 111 S. Ct. 1759; 114 L. Ed. 2d 233; 1991 U.S. LEXIS 2908; 59 U.S.L.W. 4451; 91 Cal. Daily Op. Service 3713; 91 Daily Journal DAR 6006, October 30, 1990, Argued , May 23, 1991, Decided ** Together with No. 89-1392, New York et al. v. Sullivan, Secretary of Health and Human Services, also on certiorari to the same court

**OVERVIEW:**   Health department regulations limiting the ability of Title X fund recipients to engage in abortion-related activities were upheld as constitutional, permissible constructions of the underlying legislation.

4.   **Cruzan v. Dir., Mo. Dep't of Health**, No. 88-1503 , SUPREME COURT OF THE UNITED STATES, 497 U.S. 261; 110 S. Ct. 2841; 111 L. Ed. 2d 224; 1990 U.S. LEXIS 3301; 58 U.S.L.W. 4916, December 6, 1989, Argued , June 25, 1990, Decided  ⚠ Caution, As of: Jan 13, 2012

**OVERVIEW:**   Petitioner parents' request to withdraw their vegetative daughter's feeding and hydration equipment was denied where there was no clear and convincing evidence of patient's desire to have life-sustaining treatment withdrawn.

5.   **Webster v. Reprod. Health Servs**., No. 88-605, SUPREME COURT OF THE UNITED STATES, 492 U.S. 490; 109 S. Ct. 3040; 106 L. Ed. 2d 410; 1989 U.S. LEXIS 3290; 57 U.S.L.W. 5023, April 26, 1989, Argued , July 3, 1989, Decided

**OVERVIEW:**   A Missouri statute that regulated the performance of abortions was not unconstitutional. The prohibition against state funded abortions and counseling

did not put a governmental obstacle in the path of a woman who chose to have an abortion.

6.    **Bowen v. Kendrick**, No. 87-253 , SUPREME COURT OF THE UNITED STATES, 487 U.S. 589; 108 S. Ct. 2562; 101 L. Ed. 2d 520; 1988 U.S. LEXIS 3027; 56 U.S.L.W. 4818, March 30, 1988, Argued , June 29, 1988, * Decided * Together with No. 87-431, Bowen, Secretary of Health and Human Services v. Kendrick et al., No. 87-462, Kendrick et al. v. Bowen, Secretary of Health and Human Services, et al., and No. 87-775, United Families of America v. Kendrick et al., also on appeal from the same court.

**OVERVIEW:**  A statute that provided grants for programs concerning adolescent sexuality to religious organizations was not unconstitutional on its face, as those organizations were not disabled from participation in public social welfare programs.

7.    **Frisby v. Schultz**, No. 87-168 , SUPREME COURT OF THE UNITED STATES, 487 U.S. 474; 108 S. Ct. 2495; 101 L. Ed. 2d 420; 1988 U.S. LEXIS 3026; 56 U.S.L.W. 4785, April 20, 1988, Argued , June 27, 1988, Decided

**OVERVIEW:**  Because appellees' picketing prohibited by town ordinance was directed primarily at those who were unwilling to receive it, state had substantial interest in banning it and therefore ordinance was constitutional.

8.    **Karcher v. May**, No. 85-1551, SUPREME COURT OF THE UNITED STATES, 484 U.S. 72; 108 S. Ct. 388; 98 L. Ed. 2d 327; 1987 U.S. LEXIS 5027; 56 U.S.L.W. 4022, October 6, 1987, Argued , December 1, 1987, Decided ,   As Amended
**OVERVIEW:**  Public officials who participated in a lawsuit solely in their official capacities could not appeal an adverse judgment after they left office.

9.    **Bd. of Airport Comm'Rs v. Jews for Jesus**, No. 86-104, SUPREME COURT OF THE UNITED STATES, 482 U.S. 569; 107 S. Ct. 2568; 96 L. Ed. 2d 500; 1987 U.S. LEXIS 2619; 55 U.S.L.W. 4855, March 3, 1987, Argued, June 15, 1987, Decided

**OVERVIEW:**  Resolution of a board of airport commissioners banning First Amendment activities in airport central terminal violated the First Amendment of the Constitution as it was substantially overbroad and not fairly subject to a limiting construction.

10. **Hobbie v. Unemployment Appeals Com.,** No. 85-993, SUPREME COURT OF THE UNITED STATES, 480 U.S. 136; 107 S. Ct. 1046; 94 L. Ed. 2d 190; 1987 U.S. LEXIS 938; 55 U.S.L.W. 4208; 43 Fair Empl. Prac. Cas. (BNA) 21; 42 Empl. Prac. Dec. (CCH) P36,753, December 10, 1986, Argued, February 25, 1987, Decided

**OVERVIEW:**  The Free Exercise Clause of the First Amendment required that an employee discharged for refusing to work certain hours due to sincerely held religious convictions be entitled to unemployment benefits.

11. **Ansonia Bd. of Educ. v. Philbrook,** No. 85-495, SUPREME COURT OF THE UNITED STATES, 479 U.S. 60; 107 S. Ct. 367; 93 L. Ed. 2d 305; 1986 U.S. LEXIS 18; 55 U.S.L.W. 4019; 42 Fair Empl. Prac. Cas. (BNA) 359; 41 Empl. Prac. Dec. (CCH) P36,565, October 14, 1986, Argued, November 17, 1986, Decided

**OVERVIEW:**  Unless prohibition against use of personal days for religious purposes was found, on remand, to be discriminatory, employer met its obligation to accommodate employee by allowing him time off without pay for religious observance.

12. **Bowers v. Hardwick**, No. 85-140, SUPREME COURT OF THE UNITED STATES, 478 U.S. 186; 106 S. Ct. 2841; 92 L. Ed. 2d 140; 1986 U.S. LEXIS 123; 54 U.S.L.W. 4919, March 31, 1986, Argued, June 30, 1986, Decided

**OVERVIEW:**  Georgia statute criminalizing sodomy was upheld as constitutional as the Due Process Clause of the Fourteenth Amendment did not create a fundamental right for homosexuals to engage in consensual sodomy, even in privacy of their own homes.

13. **Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc**., No. 85-488, SUPREME COURT OF THE UNITED STATES, 477 U.S. 619; 106 S. Ct. 2718; 91 L. Ed. 2d 512; 1986 U.S. LEXIS 71; 54 U.S.L.W. 4860; 41 Fair Empl. Prac. Cas. (BNA) 78; 40 Empl. Prac. Dec. (CCH) P36,195, March 26, 1986, Argued, June 27, 1986, Decided

**OVERVIEW:**  A religious school was not exempt from the state's administrative agency's investigation of a discharge of a teacher and could seek judicial review if the action violated its constitutional rights. The federal court improperly issued an injunction.

14.    **Bowen v. Roy**, No. 84-780, SUPREME COURT OF THE UNITED STATES, 476 U.S. 693; 106 S. Ct. 2147; 90 L. Ed. 2d 735; 1986 U.S. LEXIS 52; 54 U.S.L.W. 4603, January 14, 1986, Argued, June 11, 1986, Decided

**OVERVIEW:**  Welfare agencies were allowed to use a child's social security number when processing her family's benefits where using the number did not violate the family's rights under the Free Exercise Clause of the First Amendment.

15.    **Bowen v. American Hospital Asso.,** No. 84-1529, SUPREME COURT OF THE UNITED STATES, 476 U.S. 610; 106 S. Ct. 2101; 90 L. Ed. 2d 584; 1986 U.S. LEXIS 87; 54 U.S.L.W. 4579, January 15, 1986, Argued, June 9, 1986, Decided

**OVERVIEW:**  Certain regulations promulgated by the Secretary of Department of Health and Human Services governing the provision of health care to handicapped infants were declared invalid as unauthorized by Rehabilitation Act of 1973.

16.    **Goldman v. Weinberger**, No. 84-1097, SUPREME COURT OF THE UNITED STATES, 475 U.S. 503; 106 S. Ct. 1310; 89 L. Ed. 2d 478; 1986 U.S. LEXIS 34; 54 U.S.L.W. 4298; 40 Fair Empl. Prac. Cas. (BNA) 543; 39 Empl. Prac. Dec. (CCH) P35,947, January 14, 1986, Argued, March 25, 1986, Decided

**OVERVIEW:**  In petitioner rabbi's First Amendment challenge to an Air Force regulation prohibiting petitioner from wearing a yarmulke while in uniform, the regulation was deemed constitutional as justified by the military's interest in uniformity and discipline.

## UNITED STATES COURTS OF APPEALS

17.    **Fisher v. Univ. of Tex.,** No. 09-50822, UNITED STATES COURT APPEALS FOR THE FIFTH CIRCUIT, 2014 U.S. App. LEXIS 21842, November 12,2014, Decide.

18.    **Morgan v. Swanson,** No. 13-40433, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 755 F.3d 757; 2014 U.S. App. LEXIS 10293, June 3, 2014, Filed

**OVERVIEW:** Where parent alleged that principal violated his First Amendment rights by not allowing him to distribute religious material to other adults at son's in-

class winter party, principal was entitled to qualified immunity because there was no legal authority that clearly established asserted right such that parent could overcome principal's defense.

19.   **Morgan v. Swanson**, No. 13-40433, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 748 F.3d 241; 2014 U.S. App. LEXIS 6125, April 2, 2014, Filed, Opinion withdrawn by, Substituted opinion at Morgan v. Swanson, 755 F.3d 757, 2014 U.S. App. LEXIS 10293 (5th Cir. Tex., June 3, 2014).

**OVERVIEW:** A district court's dismissal of a § 1983 complaint was affirmed because a school principal was entitled to qualified immunity since a parent had not identified any case clearly establishing his constitutional right to distribute religious material during a classroom activity.

20.   **Morgan v. Plano Indep. Sch. Dist.,** No. 12-40493, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 724 F.3d 579; 2013 U.S. App. LEXIS 15257, July 26, 2013, Filed.

**OVERVIEW:** Tex. Civ. Prac. & Rem. Code Ann. § 110.006 required pre-suit notice by certified mail, return receipt requested, 60 days before suit, and Tex. Gov't Code Ann. § 311.034 made that prerequisite jurisdictional; parent's Texas Religious Freedom Restoration Act suit against a school district failed for lack of pre-suit notice.

21.   **Wernecke v. Garcia**, No. 10-41035, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 2011 U.S. App. LEXIS 22554, November 7, 2011, Filed, PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**OVERVIEW:**  Even if social worker had included in her warrant affidavit that parents had requested a referral for their child's treatment that was denied due to doctor's non-certification, findings of immediate danger and need for treatment could have been made under Tex. Fam. Code Ann. § 262.102; qualified immunity precluded a Fourth Amendment claim.

22.   **Morgan v. Swanson,** No. 09-40373, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 659 F.3d 359; 2011 U.S. App. LEXIS 19656, September 27, 2011, Filed, Revised September 29, 2011. As Revised, September 28, 2011

**OVERVIEW:**  Principals were entitled to immunity as general state of law was complicated and subject to great debate. At time of incidents, neither single controlling authority nor robust consensus of persuasive authority held that First Amendment prohibited principals from restricting distribution of written religious materials in public elementary schools.

23.    **Simmons v. Liberty Mut. Fire Ins. Co.,** No. 09-41123, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 420 Fed. Appx. 388; 2011 U.S. App. LEXIS 6572, March 30, 2011, Filed, PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**OVERVIEW:**  An insurer had no duty to defend independent business operators (IBOs) against claims made by the owner of a marketing operation in underlying arbitrations because the allegations were not based on the operation of the IBOs' businesses. Engaging in efforts to start a competing business was not IBO business.

24.    **Rundus v. City of Dallas,** No. 09-11027 cons. w/ No. 10-10024, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 634 F.3d 309; 2011 U.S. App. LEXIS 3420, February 21, 2011, Filed, US Supreme Court certiorari denied by Rundus v. City of Dallas, 2011 U.S. LEXIS 6625 (U.S., Oct. 3, 2011)US Supreme Court certiorari denied by Rundus v. Dallas, 2011 U.S. LEXIS 6703 (U.S., Oct. 3, 2011)

**OVERVIEW:**  Plaintiff's 42 U.S.C.S. § 1983 action failed because defendant, a private corporation performing the operation of a state fair, was not a state actor; it merely ran a private event on public property, and the city had no say in the corporation's internal decision making, or in the restriction on distribution of literature.

25.    **Asphalt Ref. & Tech. Co., LLC** v. Underwriters at Lloyd's London, No. 10-10863, UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT, 416 Fed. Appx. 815; 2011 U.S. App. LEXIS 1645, January 26, 2011, Decided, January 26, 2011, Filed, PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**OVERVIEW:**  Carrier properly applied coinsurance penalty clause and refused to pay insured's claim for damaged tanks and buildings in full because neither the

insurance binder, pursuant to O.C.G.A § 33-24-33, nor signed insurance application contained qualifying language specifying how many tanks were insured; meaning of the term "tanks" was plain and obvious.

26.     **Morgan v. Swanson**, No. 09-40373, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 628 F.3d 705; 2010 U.S. App. LEXIS 26016, December 17, 2010, Decided, December 17, 2010, Filed, on rehearing at, Remanded by Morgan v. Swanson, 2011 U.S. App. LEXIS 19656 (5th Cir. Tex., Sept. 27, 2011)

27.     **Morgan v. Swanson**, No. 09-40373, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 627 F.3d 170; 2010 U.S. App. LEXIS 24368, November 29, 2010, Filed, Rehearing, en banc, granted by Morgan v. Swanson, 628 F.3d 705, 2010 U.S. App. LEXIS 26016 (5th Cir. Tex., Dec. 17, 2010)

**OVERVIEW:**  In students' suit alleging discrimination from the banning of the distribution of religious messages by students while on school property, two elementary school principals were not entitled to qualified immunity because it was clearly established that the First Amendment protected elementary school students from religious-viewpoint discrimination.

28.     **Morgan v. Swanson**, No. 09-40373, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 2010 U.S. App. LEXIS 21452, June 30, 2010, Filed, As Revised, July 1, 2010.Opinion withdrawn by, Substituted opinion at Morgan v. Swanson, 627 F.3d 170, 2010 U.S. App. LEXIS 24368 (5th Cir. Tex., Nov. 29, 2010)

**OVERVIEW:**   In a suit by parents challenging the prohibition of student distribution of gifts containing religious messages, two elementary school principals were not entitled to qualified immunity because it was clearly established that elementary school students had a First Amendment right to be free from religious-viewpoint discrimination while at school.

29.     **Morgan v. Swanson**, No. 09-40373, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 610 F.3d 877; 2010 U.S. App. LEXIS 13450, June 30, 2010, Filed, Amended by Morgan v. Swanson, 2010 U.S. App. LEXIS 21452 (5th Cir. Tex., June 30, 2010)

**OVERVIEW:**  Principals who allegedly banned distribution of religious messages by students were not entitled to qualified immunity on students' First Amendment

claim because principals had fair warning that suppression of student-to-student distribution of literature on basis of religious viewpoint was unlawful with respect to elementary school students.

30. **Wernecke v. Garcia**, No. 09-40132, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 591 F.3d 386; 2009 U.S. App. LEXIS 27636, December 15, 2009, Filed, Subsequent appeal at, Motion denied by Wernecke v. Garcia, 2011 U.S. App. LEXIS 22554 (5th Cir. Tex., Nov. 7, 2011)

**OVERVIEW:**  when a state social worker obtains from a judge a temporary emergency custody order that imposes legal duties on the state agency and has reason to believe the child is within the child's home, the social worker may, consistent with the Fourth Amendment, enter and search the home for the child.

31. **Morgan v. Plano Indep. Sch. Dist**., No. 08-40707, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 589 F.3d 740; 2009 U.S. App. LEXIS 26154, December 1, 2009, Filed, US Supreme Court certiorari denied by Morgan v. Plano Indep. Sch. Dist., 130 S. Ct. 3503, 177 L. Ed. 2d 1091, 2010 U.S. LEXIS 5500 (U.S., 2010) On remand at, Magistrate's recommendation at Morgan v. Plano Indep. Sch. Dist., 2010 U.S. Dist. LEXIS 142307 (E.D. Tex., Sept. 22, 2010)

**OVERVIEW:**  A public school's policy which set time, manner, and place restrictions on students' distribution of written materials was reasonable and facially constitutional under the First Amendment: the regulations were content neutral and providing a focused learning environment for students was a significant legitimate interest that was furthered by them.

32. **Quixtar, Inc. v. Brady**, No. 08-2629, UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT, 09 a 0313 n. 06; 328 Fed. Appx. 317; 2009 U.S. App. LEXIS 9226; 2009 FED App. 0313N (6th Cir.), April 30, 2009, Filed, NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**OVERVIEW:**  Because the district court's order to compel arbitration was a final decision that disposed of the entire case that was before it, the appellate court had

jurisdiction to hear the appeal pursuant to 9 U.S.C.S. § 16(a)(3) and there was no dispute that an agreement in writing was made for arbitration between the parties.

33.    **Dearmore v. City of Garland**, No. 06-11007, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 519 F.3d 517; 2008 U.S. App. LEXIS 5161, March 10, 2008, Filed, US Supreme Court certiorari denied by, Motion granted by Garland v. Dearmore, 2008 U.S. LEXIS 6325 (U.S., Oct. 6, 2008)

**OVERVIEW:**  Where a preliminary injunction issued on a finding that a property owner would likely succeed on the merits, and the city then amended the ordinance to address the district court's constitutional concerns with the ordinance, the finding that the owner was a prevailing party and the award of fees under 42 U.S.C.S. § 1988(b) was affirmed.

34.    **Barrow v. Greenville Indep. Sch. Dist**., No. 06-10123, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 2007 U.S. App. LEXIS 24778; 26 I.E.R. Cas. (BNA) 1322, October 23, 2007, Filed, PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS., US Supreme Court certiorari denied by Smith v. Barrow, 2008 U.S. LEXIS 4256 (U.S., May 19, 2008)

**OVERVIEW:**  Judgment in favor of teacher on a 42 U.S.C.S. § 1983 parental rights claim was affirmed under law of the case doctrine. Further, given the district court's impressively careful and thorough consideration of fee issue, the district court did not abuse its discretion in its attorney's fee award. Superintendent's offers of judgment were ineffective.

35.    **Barrow v. Greenville Indep. Sch. Dist**., No. 05-11151, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 480 F.3d 377; 2007 U.S. App. LEXIS 4233; 154 Lab. Cas. (CCH) P60,385; 25 I.E.R. Cas. (BNA) 1256, February 26, 2007, Filed, US Supreme Court certiorari denied by Barrow v. Greenville Indep. Sch. Dist., 552 U.S. 888, 128 S. Ct. 255, 169 L. Ed. 2d 148, 2007 U.S. LEXIS 11047 (2007)

**OVERVIEW:**  A district court's grant of summary judgment in favor of a school district in regards to a teacher's § 1983 claim and Title VII claim was affirmed because, in regards to the §1983 claim, the superintendent was not the policymaker, and, in regards to the Title VII claim, the teacher failed satisfy her initial burden for her disparate impact claim.

36.   **Williams v. Kaufman County**, No. 02-10500, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 352 F.3d 994; 2003 U.S. App. LEXIS 24763, December 9, 2003, Filed

**OVERVIEW:**  Where police officers found no evidence of weapons, drugs or contraband in exercising a search warrant for an exotic dancing club, probable cause did not exist for full-blown searches, much less strip searches of § 1983 plaintiffs in the club.

37.   **Williams v. Kaufman County**, No. 02-10500, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 343 F.3d 689; 2003 U.S. App. LEXIS 16991, August 19, 2003, Filed, THIS OPINION WAS WITHDRAWN BY THE COURT, As Revised September 5, 2003.   Opinion withdrawn by, Substituted opinion at Williams v. Kaufman County, 352 F.3d 994, 2003 U.S. App. LEXIS 24763 (5th Cir. Tex., Dec. 9, 2003)

**OVERVIEW:**  District court properly determined that strip searches of the individuals by the sheriff violated the individual's constitutional rights as the sheriff had no probable cause to conduct the searches. County was also liable for the sheriff's actions.

38.   **Chiu v. Plano Indep. Sch. Dist**., No. 02-41218, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 339 F.3d 273; 2003 U.S. App. LEXIS 14187, July 15, 2003, Filed, Rehearing denied by, Rehearing, en banc, denied by Chiu v. Plano Indep. Sch. Dist., 2003 U.S. App. LEXIS 21091 (5th Cir. Tex., Aug. 11, 2003) US Supreme Court certiorari dismissed by Plano Indep. Sch. Dist. v. Chiu, 2003 U.S. LEXIS 9196 (U.S., Dec. 4, 2003)

**OVERVIEW:**  In a § 1983 action, qualified immunity was properly denied to a superintendent and a principal as there were factual issues regarding potential viewpoint discrimination in subjecting parents' activities to a blanket pre-clearance requirement.

39.   **Barrow v. Greenville Indep. Sch. Dist**., No. 02-10351, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 332 F.3d 844; 2003 U.S. App. LEXIS 10838; 19 I.E.R. Cas. (BNA) 1793, June 2, 2003, Filed, As Revised June 17, 2003.  Rehearing denied by, Rehearing, en banc, denied by Barrow v. Greenville Indep. Sch. Dist., 2003 U.S. App. LEXIS 15391 (5th Cir. Tex., July 2, 2003) On remand at Barrow v. Greenville Indep. Sch. Dist., 2003 U.S. Dist. LEXIS 12479

(N.D. Tex., July 14, 2003) US Supreme Court certiorari denied by Smith v. Barrow, 2003 U.S. LEXIS 8233 (U.S., Nov. 10, 2003)

**OVERVIEW:**  A public school teacher had a right to educate her children in private school; the public school could not refuse to promote her where it had not provided any evidence that its educational mission was materially and substantially affected.

40.   **Chiu v. Plano Indep. Sch. Dist**., No. 00-40613, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 260 F.3d 330; 2001 U.S. App. LEXIS 16592, July 24, 2001, Decided, Appeal after remand at Chiu v. Plano Indep. Sch. Dist., 2003 U.S. App. LEXIS 14187 (5th Cir. Tex., July 15, 2003)

**OVERVIEW:**  School administrator was entitled to qualified immunity from a parent's First Amendment claim related to the administrator's refusal to allow her to circulate a petition through the school's mail delivery system.

41.   **Kee v. City of Rowlett**, No. 99-10555, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 247 F.3d 206; 2001 U.S. App. LEXIS 4970, March 28, 2001, Decided, Rehearing Denied April 24, 2001, Reported at: 2001 U.S. App. LEXIS 9280. Certiorari Denied October 1, 2001, Reported at 2001 U.S. LEXIS 6605.

**OVERVIEW:**  Privacy right was not violated by electronic eavesdropping, absent subjective expectation of privacy at outdoor memorial service. There was no evidence of context or circumstances of conversations, or of steps taken to maintain privacy.

42.   **Tompkins v. Cyr**, No. 98-10295, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 202 F.3d 770; 2000 U.S. App. LEXIS 1027; 53 Fed. R. Evid. Serv. (Callaghan) 1424; 46 Fed. R. Serv. 3d (Callaghan) 319, January 28, 2000, Decided

**OVERVIEW:**  Evidence showed defendant anti-abortion protestors were properly held liable for plaintiffs' injuries; plaintiffs could not collect duplicate damages on different claims for one injury, so part of damages award was vacated.

43.   **Guidry v. Broussard**, No. 89-4172, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 897 F.2d 181; 1990 U.S. App. LEXIS 4347, March 27, 1990, Decided, As Corrected. Rehearing and Rehearing En Banc Denied April 25, 1990.

**OVERVIEW:** The summary judgment record was clear and there was no relevant policy or custom sufficient to impose money damages upon the school board for any constitutional wrong inflicted upon appellant.

44.    **County Line Joint Venture v. Grand Prairie**, No. 87-1304, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 839 F.2d 1142; 1988 U.S. App. LEXIS 3449, March 18, 1988

**OVERVIEW:** Where governmental conduct was legislative, property owners had no procedural due process rights because by passing a law affecting a general class of persons, those persons received procedural due process through the legislative process.

45.    **Del E. Webb Constr. v. Richardson Hosp. Auth**., No. 86-1570, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 823 F.2d 145; 1987 U.S. App. LEXIS 10225, August 3, 1987, As Amended August 6, 1987.

**OVERVIEW:** It was for the arbitrator, and not the trial court, to determine whether a contractor had complied with the contractual prerequisites for demanding arbitration in an action involving the renovation of a hospital.

46.    **Baker v. Wade,** No. 82-1590, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 774 F.2d 1285; 1985 U.S. App. LEXIS 23752, October 23, 1985

**OVERVIEW:** The court declined to become the arbiter of moral issues and to declare invalid a state statute based on homosexual conduct.

47.    **Baker v. Wade**, No. 82-1590, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 769 F.2d 289; 1985 U.S. App. LEXIS 21431; 3 Fed. R. Serv. 3d (Callaghan) 122, August 26, 1985, rehearing En Banc Denied October 23, 1985.

**OVERVIEW:** A state statute that proscribed deviate same-sex sexual intercourse did not violate a homosexual's privacy rights and was rationally related to legitimate state goal of implementing morality; state prosecutor had the right to intervene in the appeal.

48.   **BAKER v. WADE**, No. 82-1590., UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 1985 U.S. App. LEXIS 28009, January 28, 1985

49.   **Baker v. Wade**, No. 82-1590, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 743 F.2d 236; 1984 U.S. App. LEXIS 18362; 40 Fed. R. Serv. 2d (Callaghan) 114, September 21, 1984, Rehearing en banc granted, January 28, 1985.

**OVERVIEW:**  District attorney who was not representative of defendant class of district attorneys had no right to appeal judgment finding Texas penal statute unconstitutional because it was responsibility of state and class representatives to appeal.

50.   **Gay Student Services v. Texas A & M University**, No. 82-2366, UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT, 737 F.2d 1317; 1984 U.S. App. LEXIS 19835, August 3, 1984

**OVERVIEW:**  Judgment for university was reversed where no compelling interest justified its content-based and viewpoint discrimination, as a limited public forum, in refusing to recognize a gay student group despite its recognition of similar groups.

## UNITED STATES DISTRICT COURTS

51.   **Amway Corp. v. BHIP Global, Inc.,** CASE NO. 4:10-CV-549, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2013 U.S. Dist. LEXIS 75393, May 29, 2013, Decided, May 29, 2013.

52.   **Morgan v. Plano Indep. Sch. Dist.**, Case No. 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2013 U.S. Dist. LEXIS 19030, February 13, 2013, Decided, February 13, 2013.

53.   **Morgan v. Plano Indep. Sch. Dist.**, CASE NO. 4:04CV447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2012 U.S. Dist. LEXIS 140561, September 28, 2012, Decided, September 28, 2012, Filed, Motion granted by, Dismissed by, in part Morgan v. Plano Indep. Sch. Dist., 2013 U.S. Dist. LEXIS 19030 (E.D. Tex., Feb. 13, 2013).

54.   **Morgan v. Plano Indep. Sch. Dist**., CASE NO. 4:04CV447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2012 U.S. Dist. LEXIS 140560, September 28, 2012, Decided, September 28, 2012.

55.   **Morgan v. Plano Indep. Sch. Dist**., Case No. 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2012 U.S. Dist. LEXIS 186641, September 25, 2012, Decided, September 25, 2012, Filed, adopted by, in part, Claim dismissed by Morgan v. Plano Indep. Sch. Dist., 2013 U.S. Dist. LEXIS 19030 (E.D. Tex., Feb. 13, 2013).

56.   **Morgan v. Plano Indep. Sch. Dist.**, CASE NO. 4:04CV447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2012 U.S. Dist. LEXIS 99795, July 17, 2012, Decided, July 18, 2012, Filed, Magistrate's recommendation at Morgan v. Plano Indep. Sch. Dist., 2012 U.S. Dist. LEXIS 99799 (E.D. Tex., July 17, 2012) Adopted by, Claim dismissed by Morgan v. Plano Indep. Sch. Dist., 2012 U.S. Dist. LEXIS 140561 (E.D. Tex., Sept. 28, 2012).

57.   **Morgan v. Plano Indep. Sch. Dist**., CASE NO. 4:04CV447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2012 U.S. Dist. LEXIS 99799, July 17, 2012, Decided, July 18, 2012, Filed, adopted by, Motion denied by Morgan v. Plano Indep. Sch. Dist., 2012 U.S. Dist. LEXIS 140560 (E.D. Tex., Sept. 28, 2012).

58.   **Morgan v. Plano Indep. Sch. Dist**., Case No. 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2012 U.S. Dist. LEXIS 45031, March 29, 2012, Decided, March 30, 2012, Filed, Magistrate's recommendation at Morgan v. Plano Indep. Sch. Dist., 2012 U.S. Dist. LEXIS 99795 (E.D. Tex., July 17, 2012) Reversed by Morgan v. Plano Indep. Sch. Dist., 2013 U.S. App. LEXIS 15257 (5th Cir. Tex., July 26, 2013).

59.   **Morgan v. Plano Indep. Sch. Dist.,** CASE NO. 4:04CV447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2012 U.S. Dist. LEXIS 12875, February 1, 2012, Decided, February 2, 2012, Filed, Adopted by, in part, Partial summary judgment granted by, in part, Partial summary judgment denied by, in part Morgan v. Plano Indep. Sch. Dist., 2012 U.S. Dist. LEXIS 45031 (E.D. Tex., Mar. 29, 2012).

60.     **Morgan v. Plano Indep. Sch. Dist.,** Case No. 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2011 U.S. Dist. LEXIS 32256, March 28, 2011, Decided, March 28, 2011, Filed, Magistrate's recommendation at, Summary judgment proceeding at Morgan v. Plano Indep. Sch. Dist., 2012 U.S. Dist. LEXIS 12875 (E.D. Tex., Feb. 1, 2012)

61.     **Morgan v. Plano Indep. Sch. Dist**., Case No. 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2011 U.S. Dist. LEXIS 32256, March 28, 2011, Decided, March 28, 2011, Filed

62.     **Morgan v. Plano Indep. Sch. Dist**., Case No. 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2010 U.S. Dist. LEXIS 142307, September 22, 2010, Decided, September 23, 2010, Filed, adopted by, Partial summary judgment denied by, Summary judgment granted by Morgan v. Plano Indep. Sch. Dist., 2011 U.S. Dist. LEXIS 32256 (E.D. Tex., Mar. 28, 2011)

63.     **Pounds v. Katy Indep. Sch. Dist**., CIVIL ACTION NO. H-06-0527, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, 730 F. Supp. 2d 636; 2010 U.S. Dist. LEXIS 77175, July 30, 2010, Decided, July 30, 2010, Filed

**OVERVIEW:**  After granting motion for reconsideration, court vacated its prior grant of summary judgment in school district's favor concerning its exclusion of religious message from holiday art cards because, in doing so, school district engaged in unconstitutional viewpoint discrimination not justified by interest of avoiding Establishment Clause violation.

64.     **ADi Motorsports, Inc. v. Hubman**, No. CV07-1932-PHX-DGC, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, 2009 U.S. Dist. LEXIS 109314, November 10, 2009, Decided, November 10, 2009, Filed.

65.     **Rundus v. City of Dallas**, NO. 3-06-CV-1823-BD, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2009 U.S. Dist. LEXIS 101429, November 2, 2009, Decided, November 2, 2009, Filed.

66. **Monavie, LLC v. Quixtar, Inc**., Civil Nos. 2:08-CV-0204 BSJ,2:08-MC-0762 BSJ,2:09-CV-0259 BSJ,2:09-CV-0209 BSJ (consolidated), UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION, 741 F. Supp. 2d 1227; 2009 U.S. Dist. LEXIS 99910, October 26, 2009, Decided, October 26, 2009.

**OVERVIEW:**   Former independent business owners (IBOs) met jurisdictional amount in controversy, 28 U.S.C.S. § 1332(d)(2), in class action dispute with direct marketing company over arbitration agreements; IBOs were entitled to enjoin enforcement as they demonstrated likelihood that agreements did not extend to post-termination disputes with former IBOs.

67. **Rundus v. City of Dallas**, NO. 3-06-CV-1823-BD, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2009 U.S. Dist. LEXIS 84035, September 16, 2009, Decided, September 16, 2009, Filed, Objection sustained by, in part, Objection overruled by, in part, Costs and fees proceeding at Rundus v. City of Dallas, 2009 U.S. Dist. LEXIS 101429 (N.D. Tex., Nov. 2, 2009)Affirmed by Rundus v. City of Dallas, 2011 U.S. App. LEXIS 3420 (5th Cir. Tex., Feb. 21, 2011)

68. **Morgan v. Plano Indep. Sch. Dist**., 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 612 F. Supp. 2d 750; 2009 U.S. Dist. LEXIS 27574, March 30, 2009, Decided, March 31, 2009, Filed.

69. **Morgan v. Plano Indep. Sch. Dist**., 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 612 F. Supp. 2d 750; 2009 U.S. Dist. LEXIS 60179, February 27, 2009, Decided, adopted by, Motion denied by Morgan v. Plano Indep. Sch. Dist., 612 F. Supp. 2d 750, 2009 U.S. Dist. LEXIS 27574 (E.D. Tex., 2009).

70. **Weyand v. Hubman Found**., CASE NO. 4:06cv343, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2008 U.S. Dist. LEXIS 91047, November 10, 2008, Decided, November 10, 2008, Filed

71. **Briscoe v. Quixtar, Inc**., 4:08cv286, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2008 U.S. Dist. LEXIS 70537, September 11, 2008, Decided, September 12, 2008, Filed.

72.   **Briscoe v. Quixtar, Inc**., 4:08cv286, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2008 U.S. Dist. LEXIS 121358, August 19, 2008, Decided, August 19, 2008, Filed, adopted by, Motion denied by Briscoe v. Quixtar, Inc., 2008 U.S. Dist. LEXIS 70537 (E.D. Tex., Sept. 11, 2008).

73.   **Simmons v. Quixtar, Inc**., CASE NO. 4:07cv389, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2008 U.S. Dist. LEXIS 52535, July 8, 2008, Decided, July 9, 2008, Filed.

74.   **Quixtar Inc. v. Signature Mgmt. Team, LLC,** 3:07-CV-505-ECR-RAM, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA, 566 F. Supp. 2d 1205; 2008 U.S. Dist. LEXIS 56593, July 7, 2008, Decided, July 7, 2008, Filed, Related proceeding at Simmons v. Quixtar, Inc., 2008 U.S. Dist. LEXIS 52535 (E.D. Tex., July 8, 2008)Writ of mandamus denied Anonymous Online Speakers v. United States Dist. Court for the Dist. of Nevada Reno (In re Anonymous Online Speakers), 2010 U.S. App. LEXIS 14166 (9th Cir. Nev., July 12, 2010).

**OVERVIEW:**  Motion to transfer venue was denied because plaintiff's decision to litigate this case in Nevada was not arbitrary and magistrate's order to compel discovery was vacated in order to allow defendant a reasonable opportunity to notify third parties that the individual could be obligated to reveal their identities.

75.   **Campbell v. Quixtar, Inc**., CIVIL ACTION NO. 2:08-CV-0044-RWS, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, 2008 U.S. Dist. LEXIS 46567, June 13, 2008, Decided, June 16, 2008, Filed, Companion case at Campbell v. Quixtar, Inc., 2008 U.S. Dist. LEXIS 46507 (N.D. Ga., June 13, 2008).

**OVERVIEW:**  A marketing network properly removed the distributors' action under 28 U.S.C.S. §§ 1332 and 1441 because the case was not removable until a first amended complaint was filed adding substantially different claims and causing the likely amount in controversy to surpass the jurisdictional amount. Thus, removal was timely under 28 U.S.C.S. § 1446(b).

76.   **Campbell v. Quixtar, Inc**., CIVIL ACTION NO. 2:08-CV-0045-RWS, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, GAINESVILLE DIVISION, 2008 U.S. Dist. LEXIS 46507, June 13, 2008, Decided, June 16, 2008, Filed.

**OVERVIEW:**  In a removed action seeking a declaration as to the enforceability of a non-compete provision, a corporation was not fraudulently joined as a plaintiff in order to avoid complete diversity, warranting a remand pursuant to 28 U.S.C.S. § 1447, because the court could not say with certainty that the corporation was not a real party in interest.

77.    **Wernecke v. Tex. Dep't of Family & Protective Servs**., CIVIL ACTION NO. C-07-238, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, CORPUS CHRISTI DIVISION, 2008 U.S. Dist. LEXIS 31507, April 16, 2008, Decided, April 16, 2008, Filed, Decision reached on appeal by, Remanded by Wernecke v. Garcia, 2009 U.S. App. LEXIS 27636 (5th Cir. Tex., Dec. 15, 2009).

78.    **Simmons v. Quixtar, Inc**., CASE NO. 4:07cv487, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2008 U.S. Dist. LEXIS 28595, April 8, 2008, Decided, April 8, 2008, Filed, Related proceeding at Quixtar Inc. v. Signature Mgmt. Team, LLC, 2008 U.S. Dist. LEXIS 56593 (D. Nev., July 7, 2008).

79.    **Morgan v. Plano Indep. Sch. Dist**., Case No. 4:04-cv-447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2008 U.S. Dist. LEXIS 18186, March 10, 2008, Decided, March 10, 2008, Filed, Magistrate's recommendation at Morgan v. Plano Indep. Sch. Dist., 612 F. Supp. 2d 750, 2009 U.S. Dist. LEXIS 60179 (E.D. Tex., 2009).

80.    **Weyend v. Hubman Found**., CASE NO. 4:06CV343, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2008 U.S. Dist. LEXIS 1066, January 4, 2008, Decided, January 7, 2008, Filed.

81.    **Weyend v. Hubman Found**., CASE NO. 4:06CV343, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 89380, December 5, 2007, Decided, December 5, 2007, Filed, Motion denied by Weyend v. Hubman Found., 2008 U.S. Dist. LEXIS 1066 (E.D. Tex., Jan. 4, 2008).

82.    **Weyend v. Hubman Found**., CASE NO. 4:06CV343, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 84193, November 14, 2007, Decided, November

14, 2007, Filed, Adopted by, Motion granted by, Motion denied by, Moot Weyend v. Hubman Found., 2007 U.S. Dist. LEXIS 89380 (E.D. Tex., Dec. 5, 2007).

83.    **Simmons v. Quixtar, Inc**., CASE NO. 4:07cv389, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 81752, November 5, 2007, Decided, November 5, 2007, Filed, Stay lifted by Simmons v. Quixtar, Inc., 2008 U.S. Dist. LEXIS 52535 (E.D. Tex., July 8, 2008).

84.    **Pounds v. Katy Indep. Sch. Dist**., CIVIL ACTION NO. H-06-0527, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, 517 F. Supp. 2d 901; 2007 U.S. Dist. LEXIS 70505, September 24, 2007, Decided, September 24, 2007, Filed, Summary judgment granted, in part, summary judgment denied, in part by Pounds v. Katy Indep. Sch. Dist., 2010 U.S. Dist. LEXIS 77175 (S.D. Tex., July 30, 2010).

**OVERVIEW:** In 42 U.S.C.S. § 1983 suit challenging the facial constitutionality of a school district's policy restricting the dissemination of 10 or more copies of written materials on school grounds, a district court held that the policy's requiring principals to give prior approval was a valid time, place, and manner restriction under the First Amendment.

85.    **Weyend v. Hubman Found**., CASE NO. 4:064CV343, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 85484, June 28, 2007, Decided, June 28, 2007, Filed, Modified by Weyend v. Hubman Found., 2007 U.S. Dist. LEXIS 84193 (E.D. Tex., Nov. 14, 2007).

86.    **Morgan v. Plano Indep. Sch. Dist**., 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 20384, March 22, 2007, Decided, March 22, 2007, Filed, later proceeding at Morgan v. Plano Indep. Sch. Dist., 2007 U.S. Dist. LEXIS 20399 (E.D. Tex., Mar. 22, 2007).

87.    **Morgan v. Plano Indep. Sch. Dist**., 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 20387, March 22, 2007, Decided, March 22, 2007, Filed, later proceeding at Morgan v. Plano Indep. Sch. Dist., 2007 U.S. Dist. LEXIS 20384 (E.D. Tex., Mar. 22, 2007).

88.   **Morgan v. Plano Indep. Sch. Dist**., 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 20399, March 22, 2007, decided, March 22, 2007, Filed, Request denied by Morgan v. Plano Indep. Sch. Dist., 2008 U.S. Dist. LEXIS 18186 (E.D. Tex., Mar. 10, 2008).

89.   **Morgan v. Plano Indep. Sch. Dist**., 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 11557, February 16, 2007, Decided, February 20, 2007, Filed, adopted by, Motion granted by Morgan v. Plano Indep. Sch. Dist., 2007 U.S. Dist. LEXIS 20387 (E.D. Tex., Mar. 22, 2007).

90.   **Morgan v. Plano Indep. Sch. Dist**., 4:04cv447, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2007 U.S. Dist. LEXIS 7375, January 30, 2007, Decided, February 1, 2007, Filed, Magistrate's recommendation at Morgan v. Plano Indep. Sch. Dist., 2007 U.S. Dist. LEXIS 11557 (E.D. Tex., Feb. 16, 2007) Decision reached on appeal by, Remanded by Morgan v. Plano Indep. Sch. Dist., 589 F.3d 740, 2009 U.S. App. LEXIS 26154 (5th Cir. Tex., 2009).

91.   **Weyend v. Hubman Found**., CASE NO. 4:064CV343, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION, 2006 U.S. Dist. LEXIS 88935, December 7, 2006, Decided, December 8, 2006, Filed, Magistrate's recommendation at Weyend v. Hubman Found., 2007 U.S. Dist. LEXIS 85484 (E.D. Tex., June 28, 2007).

92.   **Barrow v. Greenville Indep. Sch. Dist**., Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2005 U.S. Dist. LEXIS 34557, December 20, 2005, Decided, December 20, 2005, Filed, Affirmed by Barrow v. Greenville Indep. Sch. Dist., 2007 U.S. App. LEXIS 24778 (5th Cir. Tex., Oct. 23, 2007)

**OVERVIEW:**   Individual was awarded attorneys' fees, 42 U.S.C.S. § 1988, in action against school district and individual. Based on attorney's extensive block billing, occurring over substantial time period, court reduced request for attorney's time by 20 percent; because second attorney engaged in some block billing, request was reduced by 10 percent.

93.   **Barrow v. Greenville Indep. Sch. Dist**., Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

TEXAS, DALLAS DIVISION, 2005 U.S. Dist. LEXIS 16043, August 5, 2005, Decided, August 5, 2005, Filed, Costs and fees proceeding at, Motion granted by Barrow v. Greenville Indep. Sch. Dist., 2005 U.S. Dist. LEXIS 34557 (N.D. Tex., Dec. 20, 2005).

**OVERVIEW:**  Claim that superintendent's policy conditioning employment on teacher's children's public-school enrollment interfered with her parental right to choose a private school for them withstood teacher's First Amendment free exercise challenge, but superintendent was not entitled to qualified immunity as to First Amendment familial privacy rights claim.

94.    **Barrow v. Greenville Indep. Sch. Dist**., Civil Action No. 3:00-CV-0913-D , UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2005 U.S. Dist. LEXIS 17513, March 25, 2005, Decided , March 25, 2005, Filed , Motion denied by, Motion for new trial denied by, Costs and fees proceeding at, Motion denied by Barrow v. Greenville Indep. Sch. Dist., 2005 U.S. Dist. LEXIS 16043 (N.D. Tex., Aug. 5, 2005).

**OVERVIEW:**  Parent normally would recover costs as matter of course under Fed. R. Civ. P. 54(d)(1) for prevailing in suit against school district employee for violations of constitutional rights to direct children's education, but they were ordered to bear own costs, as employee made Fed. R. Civ. P. 68 offers of judgment that could warrant denying some costs.

95.    **Barrow v. Greenville Indep. Sch. Dist.,** Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2005 U.S. Dist. LEXIS 20150, March 10, 2005, Decided, March 10, 2005, Filed.

**OVERVIEW:**  A school district and an official were precluded from raising the defense that an employee's exercise of her constitutional right to educate her children in private school materially and substantially impeded the operation or effectiveness of the state's educational program because they were required under Fed. R. Civ. P. 8(c) to plead the defense.

96.    **Barrow v. Greenville Indep. Sch. Dist**., Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2005 U.S. Dist. LEXIS 216, January 7, 2005, Decided, January 7, 2005, Filed, later proceeding at Barrow v. Greenville Indep. Sch. Dist., 2005 U.S. Dist. LEXIS 20150 (N.D. Tex., Mar. 10, 2005) Judgment

entered by Barrow v. Greenville Indep. Sch. Dist., 2005 U.S. Dist. LEXIS 17513 (N.D. Tex., Mar. 25, 2005).

**OVERVIEW:** A superintendent was denied summary judgment on a § 1983 claim because a candidate adduced evidence of school district communications, which indicated that seeking a promotion was futile if she kept her children in private school.

97.    **Williams v. Kaufman County**, Civil Action No. 3:97-CV-0875-L. UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2003 U.S. Dist. LEXIS 13381, July 30, 2003, Decided, July 30, 2003, Filed.

**OVERVIEW:** Court would consider plaintiffs' tardy supplemental application for attorney's fees where no well-tailored local rule governed filing of fees, no court order set forth deadline for fee requests, and no prejudice would result if motion was considered.

98.    **Barrow v. Greenville Indep. Sch. Dist**., Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2003 U.S. Dist. LEXIS 12479, July 14, 2003, Decided, July 14, 2003, Filed, Summary judgment denied by, Motion to strike denied by Barrow v. Greenville Indep. Sch. Dist., 2005 U.S. Dist. LEXIS 216 (N.D. Tex., Jan. 7, 2005).

99.    **Williams v. Kaufman County**, Civil Action No. 3:97-CV-0875-L, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2003 U.S. Dist. LEXIS 5974, April 9, 2003, Decided, April 9, 2003, Filed, as Amended July 30, 2003.

**OVERVIEW:** In a § 1983 action by bar patrons against a county and county sheriff, the patrons were awarded reasonable attorneys' fees and costs after their fee request was appropriately reduced considering the patrons' degree of success.

100.   **Williams v. Kaufman County**, Civil Action No. 3:97-CV-0875-L, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2002 U.S. Dist. LEXIS 19053, October 4, 2002, Decided , October 4, 2002, Filed; October 7, 2002, Entered , Costs and fees proceeding at, Motion granted by, in part, Motion denied by, in part Williams v. Kaufman County, 2003 U.S. Dist. LEXIS 5974 (N.D. Tex., Apr. 9, 2003).

101.   **Barrow v. Greenville Indep. Sch. Dist**., Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2002 U.S. Dist. LEXIS 6785, April 17, 2002, Decided, April 18, 2002, Filed, Affirmed by Barrow v. Greenville Indep. Sch. Dist., 2007 U.S. App. LEXIS 4233 (5th Cir. Tex., Feb. 26, 2007).

**OVERVIEW:**   Employer did not delegate final policymaking authority to the superintendent and there was no evidence that the failure to promote the employee was based on her religion or her choice of specifically religious education for her children.

102.   **Williams v. Kaufman County,** Civil Action No. 3:97-CV-0875-L, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2002 U.S. Dist. LEXIS 5555, March 29, 2002, Decided , March 29, 2002, Filed; April 2, 2002, Entered , Costs and fees proceeding at, Motion granted by, Request granted Williams v. Kaufman County, 2002 U.S. Dist. LEXIS 19053 (N.D. Tex., Oct. 4, 2002)Affirmed by Williams v. Kaufman County, 2003 U.S. App. LEXIS 16991 (5th Cir. Tex., Aug. 19, 2003).

**OVERVIEW:**   County sheriff violated plaintiffs' constitutional rights when he ordered officers to detain and strip search them even though they were not named in warrant, and court awarded plaintiffs nominal and punitive damages for violation of civil rights.

103.   **Barrow v. Greenville Indep. Sch. Dist**., Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2002 U.S. Dist. LEXIS 2792, February 20, 2002, Decided , February 20, 2002, Filed; February 21, 2002, Entered , Summary judgment granted, in part, summary judgment denied, in part by Barrow v. Greenville Indep. Sch. Dist., 2002 U.S. Dist. LEXIS 6785 (N.D. Tex., Apr. 17, 2002) Reversed by, Remanded by Barrow v. Greenville Indep. Sch. Dist., 2003 U.S. App. LEXIS 10838 (5th Cir. Tex., June 2, 2003).

**OVERVIEW:**   School superintendent was entitled to qualified immunity on job candidate's claims. At time of superintendent's refusal to consider candidate for job, as candidate refused to enroll children in public school, constitutional rights were qualified.

104.   **Barrow v. Greenville Indep. Sch. Dist.**, Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2001 U.S. Dist. LEXIS 20120, December 4, 2001, Decided, December 4, 2001, Filed, December 5, 2001, Entered

**OVERVIEW:**  Court held doctor who moved for summary judgment on basis of qualified immunity, could, if it was denied, file second motion for summary judgment on merits since qualified immunity was immunity from suit rather than merely immunity from liability.

105.   **Barrow v. Greenville Indep. Sch. Dist.**, Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2001 U.S. Dist. LEXIS 15955, October 3, 2001, Decided, October 3, 2001, Filed, October 4, 2001, Entered.

106.   **Barrow v. Greenville Indep. Sch. Dist.**, Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 202 F.R.D. 480; 2001 U.S. Dist. LEXIS 15105; 51 Fed. R. Serv. 3d (Callaghan) 816, September 18, 2001, Decided, September 18, 2001, Filed.

**OVERVIEW:**  Individual who had taken presumptive maximum depositions failed to establish that magistrate abused his discretion in denying additional depositions because she failed to establish the necessity of the depositions taken without leave of court.

107.   **Barrow v. Greenville Indep. Sch. Dist.**, Civil Action No. 3:00-CV-0913-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 2001 U.S. Dist. LEXIS 11846, August 9, 2001, Decided, August 9, 2001, Filed, August 10, 2001, Entered.

**OVERVIEW:**   Where plaintiff failed to show that defendant intended to discriminate against her in its hiring decision, she failed to show a substantial threat that she would have suffered irreparable injury and preliminary injunction application was denied.

108.   **Williams v. Kaufman County**, Civil Action No. 3:97-CV-0875-L, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 86 F. Supp. 2d 586; 2000 U.S. Dist. LEXIS 1596, February 7, 2000, Decided, February 7, 2000, Filed, February 7, 2000, Entered on Docket.

**OVERVIEW:**  Reasonable officers could not have believed that strip searches were objectively reasonable and defendant sheriff not entitled to qualified immunity. Summary judgment denied as to claims of plaintiffs not named in warrant.

109.   **Kee v. City of Rowlett**, No. 3:98-CV-1372-T, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 1999 U.S. Dist. LEXIS 7798, April 28, 1999, Decided. April 28, 1999, Filed, Entered on Docket.

**OVERVIEW:**  Where previous ruling against defendant individuals had already determined that no constitutional violation occurred, defendant city was not liable for any constitutional violation, and its summary judgment motion was granted.

110.   **KEE v. CITY OF GARLAND**, Civil Action No. 3:99-CV-0126-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 1999 U.S. Dist. LEXIS 6271, April 23, 1999, Decided, April 23, 1999, filed; April 26, 1999, Entered on Docket.

**OVERVIEW:**  Plaintiffs' suit was dismissed to the extent that it sought relief for an unlawful quartering of soldiers and for punitive damages for alleged civil rights violations, but defendants' motion to dismiss was denied as to the balance of the claims.

111.   **Kee v. City of Rowlett**, No. 3:98-CV-1372-T, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 1999 U.S. Dist. LEXIS 7938, January 27, 1999, Decided. January 27, 1999, filed; January 28, 1999, Entered on Docket.

**OVERVIEW:**  Defendants were entitled to summary judgment because plaintiffs failed to demonstrate they had a reasonable expectation of privacy at the cemetery where they were audiotaped, and defendants were entitled to qualified immunity.

112.   **Brackens v. City of Ennis**, Civil Action No. 3:97-CV-2502-H, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 1998 U.S. Dist. LEXIS 5825, April 22, 1998, Decided, April 22, 1998, filed; April 23, 1998, Entered on Docket.

**OVERVIEW:** A dismissal of plaintiffs' race discrimination, conspiracy, slander, and libel suit against a daily newspaper was proper where the events complained of occurred approximately six months prior to the incorporation of the newspaper.

113. **Brackens v. City of Ennis**, Civil Action No. 3:97-CV-2502-H, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 1998 U.S. Dist. LEXIS 2610, March 2, 1998, Decided. March 2, 1998, Filed, March 3, 1998, Entered on Docket.

**OVERVIEW:** The police department was entitled to dismissal of the parents' civil rights and tort action because the parents failed to show that the police department had the capacity to engage in litigation.

114. **Tompkins v. Cyr**, NO. 3-94-CV-0973-BD, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 995 F. Supp. 689; 1998 U.S. Dist. LEXIS 166, January 7, 1998, Decided. January 7, 1998, Filed.

**OVERVIEW:** Motions for sanctions filed by activists against a doctor were denied, where the doctor's attorney performed extensive research to identify the activists prior to filing the doctor's action claiming intentional infliction of emotional distress.

115. **Tompkins v. Cyr**, NO. 3-94-CV-0973-BD, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 995 F. Supp. 664; 1998 U.S. Dist. LEXIS 180, January 7, 1998, Decided, January 7, 1998, Filed.

**OVERVIEW:** Doctor and his wife were entitled to judgment on verdict where there was evidence of unprovoked physical confrontation and jury-imposed liability based on form of abortion protestors' communication; injunction was proper due to threat of future harm.

116. **Tompkins v. Cyr**, 3:94-CV-973-R, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 878 F. Supp. 911; 1995 U.S. Dist. LEXIS 6814, February 17, 1995, Decided. February 17, 1995, FILED; February 23, 1995, ENTERED.

117. **Tompkins v. Cyr**, NO. 3-94-CV-0973-R, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 878 F. Supp. 911; 1995 U.S. Dist. LEXIS 7638, January 10, 1995, Decided. January

10, 1995, FILED, Reported at: 878 F. Supp. 911 at 913. Adopting Order of February 17, 1995, Reported at: 1995 U.S. Dist. LEXIS 6814.

**OVERVIEW:**  The doctors made a *prima facie* showing that they were not state actors and the activists had not designated any evidence to dispute that contention; hence, summary judgment was proper in civil rights action against the doctors.

118.  **Clark v. Dallas Independent School Dist**., No. CA 3-85-1203-T, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 701 F. Supp. 594; 1988 U.S. Dist. LEXIS 15224, August 11, 1988, Decided. August 11, 1988, Filed

119.  **Baker v. Wade**, No. CA 3-79-1434-R, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 106 F.R.D. 526; 1985 U.S. Dist. LEXIS 18335, July 1, 1985

**OVERVIEW:**  News articles about AIDS were not sufficient new evidence to reopen a judgment that a statute, which prohibited private, consensual sodomy between homosexuals, was unconstitutional.

120.  **Gatlin v. Countryside Industries, Inc**., Civ. A. No. CA3-82-2018-D, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 564 F. Supp. 1490; 1983 U.S. Dist. LEXIS 16436, June 7, 1983.

**OVERVIEW:**  The buyer's claim under the Texas Manufactured Housing Standards Act did not present a federal question for adjudication in federal court even though it was designed the comply with federal law and to ensure commitment to the federal standards.

121.  **Political Civil Voters Organization v. Terrell**, Civil Action No. 3-81-1103-H, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, 565 F. Supp. 338; 1983 U.S. Dist. LEXIS 17889, April 8, 1983.

**OVERVIEW:**  The court found that a city's election system was designed to invidiously discriminate against minorities, particularly inasmuch as it required candidates for office to own land and it refused to set up a polling place in a minority area.

## SUPREME COURT OF TEXAS

122. **Quixtar Inc. v. Signature Mgmt. Team, LLC**, NO. 09-0345, SUPREME COURT OF TEXAS, 315 S.W.3d 28; 2010 Tex. LEXIS 475; 53 Tex. Sup. J. 978, July 2, 2010, Opinion Delivered, Released for Publication August 13, 2010.

**OVERVIEW:** Court of appeals erred in reversing order granting petitioner's motion to dismiss respondent's restraint of trade and business action on ground of forum non conveniens because both entities' principal places of business were in Michigan, key meeting leading up to dispute occurred in Michigan, and majority of evidence and witnesses were in Michigan.

123. **Republican Party v. Dietz**, No. 96-0555, SUPREME COURT OF TEXAS, 924 S.W.2d 932; 1996 Tex. LEXIS 86; 39 Tex. Sup. J. 804, June 19, 1996, Delivered

**OVERVIEW:** Temporary injunction prohibiting political party from denying gay rights group booth at convention and from printing advertisement was improper where there was no state action violating constitutional rights.

124. **Trinity River Authority, Petitioner V. URS Consultants, Inc. - Texas F/K/A URS/Forrest and Cotton, Inc., Respondent,** No. D-4376 SUPREME COURT OF TEXAS, 889 S.W.2d 259; 1994 Tex. LEXIS 66; 37 Tex. Sup. J. 742, February 16, 1994, Argued, April 28, 1994, Delivered.

**OVERVIEW:** Respondent contracted with petitioner to design improvements to a sewage treatment plant operated by petitioner. Several years later, the basin wall collapsed causing damage. Petitioner brought suit alleging negligence. Respondent moved for summary judgment on the basis of Tex. Civ. Prac. & Rem. Code Ann. § 16. 008, which barred suits against architects or engineers brought more than ten years after the improvement was completed. The trial court granted respondent summary judgment, and the court of appeals affirmed. On appeal, the court held that section 16.008 did not violate the state's open courts provision under Tex. Const. Art. I, § 13. The court held that a cause of action based on negligence accrued, and the two-year negligence limitations period began to run, as soon as the owner suffered some injury, regardless of when the injury became discoverable. Further, the court held that the ten-year repose period struck a fair balance between the legislative purpose of protecting against stale claims and the rights of litigants to obtain redress for injuries. The court also held that the respondent had no continuing contact or control over the structure after it was completed.

125.  **Valenzuela v. Aquino**, NO. D-0740, SUPREME COURT OF TEXAS, 853 S.W.2d 512; 1993 Tex. LEXIS 57; 36 Tex. Sup. J. 849, May 5, 1993, Delivered.

**OVERVIEW:**  Where the trial court granted a permanent injunction, the Texas Supreme Court reversed and held that no relief, including a permanent injunction, could be granted in a contested case without a determination of liability.  In Texas, there is no cause of action for negligent infliction of mental distress.

## TEXAS COURTS OF APPEALS

126.  **Bundren v. Holly Oaks Townhomes Ass'n,** No. 05-09-00788-CV, COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS, 347 S.W.3d 421; 2011 Tex. App. LEXIS 6330, August 11, 2011, Opinion Filed,  Released for Publication September 30, 2011.Rehearing denied by Bundren v. Holly Oaks Townhomes Ass'n, 2011 Tex. App. LEXIS 7865 (Tex. App. Dallas, Sept. 12, 2011)

**OVERVIEW:** In a dispute over unpaid homeowner association dues, the associations' pleadings sufficed under Tex. R. Civ. P. 47(a) to disclose a theory that corporations owned the units because deeds executed while their corporate charters were forfeited were void. Tex. R. Civ. P. 193.6 did not require that discovery responses identify the relevant statutes.

127.  **Frito-Lay, Inc. v. Trinity Universal Ins. Co**., No. 05-08-01263-CV, COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS, 2010 Tex. App. LEXIS 9271, November 22, 2010, Opinion Filed,  Released for Publication November 22, 2010.Rehearing overruled by Frito-Lay, Inc. v. Trinity Universal Ins. Co., 2010 Tex. App. LEXIS 10350 (Tex. App. Dallas, Dec. 22, 2010)Petition for review denied by Frito-Lay, Inc. v. Trinity Universal Ins. Co., 2011 Tex. LEXIS 766 (Tex., Sept. 30, 2011).

**OVERVIEW:**  Policy did not apply to damage to personal property in the care, custody, or control of the insured; the insured was in exclusive control of the facility where the company's product was damaged and the product, such that the insurer conclusively established that the insured's liability was for damage to personal property and the exclusion applied.

128.  **Signature Mgmt. Team, LLC v. Quixtar, Inc.,** No. 05-07-01765-CV, COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS, 281 S.W.3d 666; 2009 Tex. App. LEXIS 1766, March 13, 2009, Opinion Issued, Reversed by

Quixtar Inc. v. Signature Mgmt. Team, LLC, 2010 Tex. LEXIS 475 (Tex., July 2, 2010).

**OVERVIEW:**  In a Nevada limited liability company's (LLC) tort suit against a Virginia corporation, the trial court erred in granting the corporation's motion to dismiss based on forum non conveniens as the evidence that the private interests of the parties and witnesses would be strongly disserved by retaining this case in Texas was weak.

129.  **Wm. Charles Bundren & Assocs., P.C. v. Hoffman Controls Corp**., No. 05-00-01166-CV, COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS, 2002 Tex. App. LEXIS 137, January 10, 2002, Opinion Issued. PURSUANT TO THE TEXAS RULES OF APPELLATE PROCEDURE, UNPUBLISHED OPINIONS SHALL NOT BE CITED AS AUTHORITY BY COUNSEL OR BY A COURT.

130.  **KJ Eastwood Invs. v. Enlow**, NO. 2-96-031-CV, COURT OF APPEALS OF TEXAS, SECOND DISTRICT, FORT WORTH, 923 S.W.2d 255; 1996 Tex. App. LEXIS 2201, May 30, 1996, Decided, May 30, 1996, FILED

**OVERVIEW:**  Trial court abused discretion when it denied motion to transfer venue where relators established mandatory venue in Dallas County in plaintiff's action seeking injunctive relief and plaintiff failed to establish proper venue in Tarrant County.

131.  **City of McAllen v. Garza**, NUMBER 13-92-635-CV, COURT OF APPEALS OF TEXAS, THIRTEENTH DISTRICT, CORPUS CHRISTI, 869 S.W.2d 558; 1993 Tex. App. LEXIS 3327, December 16, 1993, Delivered, December 16, 1993, Filed.  Rehearing Overruled January 13, 1994.

**OVERVIEW:**  Trial court, presented with a declaratory judgment suit to void an order calling an incorporation election, had no authority to interfere with the political right to hold an election by inquiring into its validity before results were declared.

132.  **Trinity River Auth. v. URS Consultants, No**. 05-92-02807-CV, COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS, 869 S.W.2d 367; 1993 Tex. App. LEXIS 3499, June 29, 1993, Filed.  Application for Writ of Error Granted January 12, 1994.

**OVERVIEW:**  Grant of summary judgment to engineering firm was affirmed because statute of repose for architects and engineers was constitutional and barred negligence claims against firm, which designed a portion of a sewage treatment plant that later collapsed.

133.   **Weaver v. AIDS Services of Austin, Inc**., NO. 3-91-129-CV, COURT OF APPEALS OF TEXAS, THIRD DISTRICT, AUSTIN, 835 S.W.2d 798; 1992 Tex. App. LEXIS 2133, August 12, 1992, Filed, Motion for Rehearing Overruled September 23, 1992. Released for Publication September 23, 1992.

**OVERVIEW:**  Summary judgment in favor of nonprofit organization was affirmed, as there was no state action in the decision to exclude protestor from "safer-sex" workshops, and absent state action, there was no violation of protestor's constitutional rights.

134.   **Valenzuela v. Aquino**, No. 13-89-494-CV, COURT OF APPEALS OF TEXAS, Thirteenth District, Corpus Christi, 800 S.W.2d 301; 1990 Tex. App. LEXIS 2752, November 15, 1990, Delivered, November 15, 1990, Filed , Rehearing overruled December 13, 1990. Application for writ of error granted May 1, 1991.

**OVERVIEW:**  Appellant picketers unsuccessfully argued the unconstitutionality of an injunction against picketing the residence of appellee doctor and his family; appellees were not entitled to damages for negligent infliction of emotional distress.

135.   **Thrower v. Johnston**, No. 05-87-00775-CV, COURT OF APPEALS OF TEXAS, Fifth District, Dallas, 775 S.W.2d 718; 1989 Tex. App. LEXIS 2398, July 5, 1989  ⚠ Caution, As of: Jan 13, 2012

**OVERVIEW:**  Where trial court was provided specific data concerning counsel's conflicting trial obligations, and where counsel appeared personally to answer questions concerning them, trial court's denial of motion to reset trial was abuse of discretion.

136. **Terrell v. McFarland**, No. 05-87-01385-CV, COURT OF APPEALS OF TEXAS, Fifth District, Dallas, 766 S.W.2d 809; 1988 Tex. App. LEXIS 3414, December 30, 1988 ,   Petition for Rehearing Denied February 28, 1989.

**OVERVIEW:**  In a breach of contract action against city, entering judgment in favor of landowner was proper when evidence supported the jury's finding that a contract existed between the parities.

137.  **Storms v. Reid**, No. 05-84-00634-CV, COURT OF APPEALS OF TEXAS, Fifth District, Dallas, 691 S.W.2d 73; 1985 Tex. App. LEXIS 6710, May 1, 1985 , Rehearing Denied June 3, 1985.

**OVERVIEW:**  The trial court properly limited an owner's recovery to the fair market value of the house at the time and place of conversion because to recover the converted property itself would over-compensate the owner for his injury.

138.  **North American Van Lines, Inc. v. Bauerle**, No. 2-83-188-CV, COURT OF APPEALS OF TEXAS, Second District, Fort Worth, 678 S.W.2d 229; 1984 Tex. App. LEXIS 6228, September 13, 1984

**OVERVIEW:**  Notice from customer's attorney regarding damage to her piano after movers dropped it was sufficient under the Deceptive Trade Practices Act because that statute did not require her to threaten suit or specify which section was violated.

139.  **North American Van Lines, Inc. v. Bauerle**, NO. 2-83-188-CV, COURT OF APPEALS OF TEXAS, Second District, Fort Worth, 673 S.W.2d 380; 1984 Tex. App. LEXIS 5686, June 21, 1984 ,   The Document Reported at this Citation has been Withdrawn from the Bound Volume.

**OVERVIEW:**  Owner of piano damaged by inexperienced movers was entitled to actual damages and attorney's fees in deceptive trade practices action against moving company.

**ATTORNEYS AND COUNSELORS**
**BUNDREN LAW GROUP, PLLC**
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034

Wm. Charles Bundren, Esq.                    Telephone: 214.808.3555
E-Mail: Charles@bundrenlaw.net                    Fax: 972.624.5340

**RETAINER AGREEMENT**

January 10, 2024

**DELIVERED VIA EMAIL AS FOLLOWS:**

Jim Hoft
Email:      midwestjim@charter.net
            jimhoft@gamil.com

Joe Hoft
Email:      jwhoft@gmail.com


Re:    Re: *Ruby Freeman and Wandrea Moss, Plaintiffs v. James Hoft, Joseph Hoft, and TGP Communications LLC d/b/a THE GATEWAY PUNDIT, Defendant.* Case No. 2122-CC-09815-01, IN THE CIRCUIT COURT OF ST. LOUIS CITY, MISSOURI TWENTY-SECOND JUDICIAL CIRCUIT.


# EXHIBIT 2

**STATE RULES**
**THE TEXAS LAWYER'S CREED-A MANDATE FOR PROFESSIONALISM**
**DECEMBER 2014**

## INTRODUCTION

Promulgated by The Supreme Court of Texas and The Court of Criminal Appeals

I am a lawyer. I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that Professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this Creed for no other reason than it is right.

## I OUR LEGAL SYSTEM

A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism.

1. I am passionately proud of my profession. Therefore, "My word is my bond."

2. I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life.

3. I commit myself to an adequate and effective pro bono program.

4. I am obligated to educate my clients, the public, and other lawyers regarding the spirit and letter of this Creed.

5. I will always be conscious of my duty to the judicial system.

## II Lawyer To Client

A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate legal means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest.

1. I will advise my client of the contents of this creed when undertaking representation.

2. I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible.

3. I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice.

4. I will advise my client that civility and courtesy are expected and are not a sign of weakness.

5. I will advise my client of proper and expected behavior.

6. I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct.

7. I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

8. I will advise my client that we will not pursue tactics which are intended primarily for delay.

9. I will advise my client that we will not pursue any course of action which is without merit.

10. I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel.

11. I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

## III LAWYER TO LAWYER

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct.

1. I will be courteous, civil, and prompt in oral and written communications.

2. I will not quarrel over matters of form or style, but I will concentrate on matters of substance.

3. I will identify for other counsel or parties all changes I have made in documents submitted for review.

4. I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties.

5. I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are cancelled.

6. I will agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client will not be adversely affected.

7. I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond.

8. I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses.

9. I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me.

10. I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel.

11. I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed.

12. I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the Court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court.

13. I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence.

14. I will not arbitrarily schedule a deposition, Court appearance, or hearing until a good faith effort has been made to schedule it by agreement.

15. I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party.

16. I will refrain from excessive and abusive discovery.

17. I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear.

18. I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable.

19. I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

## IV LAWYER AND JUDGE

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession.

1. I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.

2. I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law.

3. I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility.

4. I will be punctual.

5. I will not engage in any conduct which offends the dignity and decorum of proceedings.

6. I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.

7. I will respect the rulings of the Court.

8. I will give the issues in controversy deliberate, impartial and studied analysis and consideration.

9. I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900  **JURY TRIAL DEMANDED** |
| Defendants. | | |

---

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO
TGP'S MOTION TO TRANSFER**

---

# EXHIBIT 2

---

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO TRANSFER**          **PAGE 1**

**INFORMATIONAL NOTICE TO POLICYHOLDERS**

OneBeacon Insurance Group has rebranded as Intact Insurance Specialty Solutions.  This is the marketing brand for the insurance company subsidiaries (including Atlantic Specialty Insurance Company) of Intact Insurance Group USA LLC, a member of Intact Financial Corporation (TSX: IFC), the largest provider of property and casualty insurance in Canada and a leading specialty insurance carrier in North America.

Atlantic Specialty Insurance Company will continue to operate under its current name.  The marketing brand change has no impact on policies in force and does not change, amend, or waive any of the policy's terms.

This notice is for information only and does not become a part or condition of this policy.

**OneBeacon**
E N T E R T A I N M E N T

onebeaconentertainment.com

| RE: | Media Professional Liability - Primary<br>TGP Communications, LLC | Policy |
|---|---|---|
| Account No:  199908 | Policy No:  MEP-25081-21 | |

199 Scott Swamp Road
Farmington, CT 06032

860.321.2888 t
860.321.2889 f

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

**Atlantic Specialty Insurance Company**
150 Royall Street
Canton, MA 02021
1-877-701-0171
*(hereinafter referred to as the "Underwriter")*



**Policy Number: MEP-25081-21**
**Renewal of:        MEP-23005-20**

## DECLARATIONS

## MEDIA ADVANTAGE POLICY

**DEFENSE COSTS** ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY**.  DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY.  **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.  THE **UNDERWRITER** WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS OR **DEFENSE COSTS** ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.  VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

| ITEM 1. | **NAMED INSURED**<br>Name and Principal Address:<br>TGP Communications, LLC<br>5105 Lindell Boulevard<br>St. Louis, MO 63108 | ITEM 2.  **POLICY PERIOD:**<br>(a)  Inception Date: January 30, 2021<br>(b)  Expiration Date: January 30, 2022<br>Both dates at 12:01 a.m. at the<br>Principal Address in ITEM 1. |
|---|---|---|
| ITEM 3. | **SCHEDULED MEDIA:**<br>Matter published and/or distributed by the Named Insured via www.thegatewaypundit.com | |
| ITEM 4.<br>(A)<br>(B) | **LIMITS OF LIABILITY**<br>Each **Claim**<br>Aggregate for All **Claims** | $2,000,000<br>$2,000,000 |
| ITEM 5. | **RETENTION**<br> Each **Claim** or **Related Claims** | $25,000 |
| ITEM 6. | **PREMIUM: $14,171** | |

<table>
<tr><td></td><td><u>X</u></td><td><em>Gross Premium</em>:  The Underwriter will pay a percentage of the Premium shown above as brokerage commission.  The Underwriter does not pay contingent or deferred commissions. Consult your broker for information concerning commission.</td></tr>
<tr><td></td><td>_</td><td><em>Net Premium</em>: The Premium shown above is net, and the Underwriter will pay no brokerage commission of any kind thereon.</td></tr>
</table>

| ITEM 7. | **ALL NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER GENERAL CONDITION (D) OF THIS POLICY MUST BE ADDRESSED TO:** |
| --- | --- |
| | OneBeacon Professional Insurance<br>Attn:  Claims Administrator<br>6800 College Boulevard, Suite 350<br>Overland Park, Kansas 66211<br>1-800-753-7545<br>913-384-4822 - fax<br>    -or-<br>mediaclaims@onebeacon.com |
| | **ALL OTHER NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER THIS POLICY MUST BE ADDRESSED TO:** |
| | OneBeacon Professional Insurance<br>6800 College Boulevard, Suite 350<br>Overland Park, Kansas 66211 |
| ITEM 8. | **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:** |
| | NPF-91001-01-14     Media Advantage Policy<br>NPE-900MO-01-14     Missouri Amendatory<br>NPE-902MO-DWL-01-14     Missouri DWL Disclosure and Acknowledgement<br>NPE-90018-DWL-01-14     Defense within Limits of Liability<br>NPE-90047-06-16     Clarification for Related Occurrences<br>NPE-90053-07-18     Declaratory Relief Action Coverage |

These Declarations, the completed and signed Application, and the Policy (including all endorsements thereto) shall constitute the entire agreement between the Underwriter and the Insureds.

**Atlantic Specialty Insurance Company**
By:

*T. M. Smith*

_____       February 1, 2021
Its Authorized Representative                    Date

**MISSOURI IMPORTANT NOTICE TO POLICYHOLDERS**

(1)      You may contact the Underwriter at the following address/telephone number:

          199 Scott Swamp Road
          Farmington, CT 06032
          (877) 701-0171

(2)      **Missouri Property and Casualty Insurance Guaranty Association**

      (a)     Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (the "Act"), if the Underwriter is a member of the Missouri Property and Casualty Insurance Guaranty Association (the "Association"), the Association will pay claims covered under the Act if the Underwriter becomes insolvent.

      (b)     The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

           (i)     Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer, if the insured has a net worth of more than $25 million on the later of the end of the insured's most recent fiscal year or December thirty-first of the year next preceding the date the insurer becomes insolvent; provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

           (ii)    Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000.

      However, the Association will not:

      (A)    pay an amount in excess of the applicable limit of liability of the policy from which a claim arises; or

      (B)    return to an insured any unearned premium in excess of $25,000.

      These limitations have no effect on the coverage provided under this Policy.

ENDORSEMENT NO.  1
MISSOURI AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on January 30, 2021, forms part of

| | |
|---|---|
| Policy No. | MEP-25081-21 |
| Issued to | TGP Communications, LLC |
| Issued by | Atlantic Specialty Insurance Company |

In consideration of the premium charged:

(1)   The last sentence of Section II DEFINITIONS (E) of this Policy is amended to read as follows:

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured** or the **underwriter**.

(2)   The first sentence of Section IV GENERAL CONDITIONS (T)(2) of this Policy is amended to read as follows:

The **underwriter** may cancel this Policy by mailing written notice, to the **named insured** at the address shown in the Declarations at least:

(a)   ten (10) days before the effective date of cancellation if the **underwriter** cancels for non-payment of premium;

(b)   thirty (30) days before the effective date of cancellation if the **underwriter** cancels for one or more of the following reasons:

(i)   fraud or material misrepresentation affecting this Policy or a **claim** filed under this Policy or a violation of any of the terms of this Policy;

(ii)   changes in conditions after the effective date of this Policy which have materially increased the risk assumed;

(iii)   the **underwriter** becomes insolvent; or

(iv)   the **underwriter** involuntarily loses reinsurance for this Policy;

(c)   sixty (60) days before the effective date of cancellation if the **underwriter** cancels for any other reason.

(3)   Section IV GENERAL CONDITIONS (T) is amended to add the following:

The **underwriter** may also deliver the notice required by this Section IV GENERAL CONDITIONS (T) to the first **named insured**.  Notice of cancellation or non-renewal by the **underwriter** shall state the specific reason(s) for such cancellation or non-renewal.

To the extent required for compliance with the regulatory requirements of this state, this Amendatory Endorsement shall supersede and take precedence over any provisions of this Policy or any endorsement to this Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  2
MISSOURI DEFENSE COSTS WITHIN THE LIMITS OF LIABILITY
DISCLOSURE AND ACKNOWLEDGEMENT FOR POLICYHOLDERS ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2021, forms part of:

| | |
|---|---|
| Policy No. | MEP-25081-21 |
| Issued to | TGP Communications, LLC |
| Issued by | Atlantic Specialty Insurance Company |

**DEFENSE COSTS** ARE PART OF AND NOT IN IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY**.  DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY. **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.   THE **UNDERWRITER** WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS, OR **DEFENSE COSTS** ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.

**Defense costs** are defined in this Policy as:

(1)     reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

(2)     reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**; or

(3)     the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond;

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

By signing below, the **named insured**, acting on behalf of all **insureds**, understands and acknowledges that **defense costs** are within the Limit of Liability and **defense costs** will erode and may exhaust completely the Limits of Liability.


BY:     _____
            (signature)


            _____
            (printed name)

Execution by the **named insured** of this Disclosure and Acknowledgement is a requirement of Missouri law and a copy of this form signed by the **named insured** must be received by the **underwriter** in order to issue this Policy.

ENDORSEMENT NO.  <EN>
MISSOURI DEFENSE COSTS WITHIN THE LIMITS OF LIABILITY
DISCLOSURE AND ACKNOWLEDGEMENT FOR POLICYHOLDERS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on Jan 30, forms part of

Policy No.      <
Issued to      <
Issued by      <

**DEFENSE COSTS** ARE PART OF AND NOT IN IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY.  **DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY.  **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.  THE **UNDERWRITER** WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS, OR **DEFENSE COSTS** ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.

**Defense costs** are defined in this Policy as:

(1)      reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

(2)      reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**; or

(3)      the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond;

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

By signing below, the **named insured**, acting on behalf of all **insureds**, understands and acknowledges that **defense costs** are within the Limit of Liability and **defense costs** will erode and may exhaust completely the Limits of Liability.

BY:      _James Hoft_____
(signature)

_James Hoft_____
(printed name)

Execution by the **named insured** of this Disclosure and Acknowledgement is a requirement of Missouri law and a copy of this form signed by the **named insured** must be received by the **underwriter** in order to issue this Policy.

ENDORSEMENT NO. 3
DEFENSE WITHIN LIMITS OF LIABILITY ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2021, forms part of:

Policy No.    MEP-25081-21
Issued to     TGP Communications, LLC
Issued by     Atlantic Specialty Insurance Company

In consideration of the premium charged:

(1)    The introductory text at the top of page 1 of this Policy is amended to read in its entirety as follows:

**DEFENSE COSTS** ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY.   **DEFENSE COSTS** WILL ERODE AND MAY EXHAUST THE LIMIT OF LIABILITY.   **DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.  THE UNDERWRITER WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS OR DEFENSE COSTS ONCE THE APPLICABLE LIMIT OF LIABILTIY IS EXHAUSTED BY **DEFENSE COSTS** OR **LOSS**.  VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

(2)    The introductory section of the first sentence of Section I COVERAGE AGREEMENTS (A) of this Policy is amended to read in its entirety as follows:

The **underwriter** will pay on behalf of the **insured** any **loss** and **defense costs** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim**, including but not limited to a **claim** for:

(3)    Section I COVERAGE AGREEMENTS (B) of this Policy is amended to read in its entirety as follows:

The **underwriter** will pay on behalf of the **insured** any **loss** and **defense costs** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim** for negligence, misrepresentation, misstatement or misleading statement in connection with the content of **matter** uttered or disseminated in **scheduled media**.

(4)    Section IV GENERAL CONDITIONS (A)(1) of this Policy is amended to read in its entirety as follows:

The "Each Claim" amount stated in ITEM 4(A) of the Declarations shall be the **underwriter's** maximum Limit of Liability for all **loss** and **defense costs** resulting from each **claim** or **related claims** for which this Policy provides coverage.

(5)    Section IV GENERAL CONDITIONS (A)(2) of this Policy is amended to read in its entirety as follows:
The "Aggregate for all Claims" amount stated in ITEM 4(B) of the Declarations shall be the **underwriter's** maximum aggregate Limit of Liability for all **loss** and **defense costs**

resulting from all **claims** or **related claims** for which this Policy provides coverage.

(6)     Section IV GENERAL CONDITIONS (A)(4) of this Policy is amended to read in its entirety as follows:

The **underwriter** will have no obligation to pay **loss** or **defense costs**, or to defend or continue to defend, any **claim** after the **underwriter's** applicable "Each Claim" Limit of Liability, as stated in ITEM 4(A) of the Declarations, has been exhausted by payments under this Policy.  If the **underwriter's** "Aggregate for all Claims" Limit of Liability, as stated in ITEM 4(B) of the Declarations, is exhausted by payments under this Policy, the premium will be fully earned, all obligations of the **underwriter** will be completely fulfilled and exhausted, and the **underwriter** will have no further obligations of any kind or nature whatsoever under this Policy.

(7)     Section IV GENERAL CONDITIONS (F)(3) is amended to read in its entirety as follows:

**Defense costs** are part of, and not in addition to, the Limits of Liability stated in ITEM 4 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 4
CLARIFICATION FOR RELATED OCCURRENCES ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2021, forms part of:

Policy No.       MEP-25081-21
Issued to        TGP Communications, LLC
Issued by        Atlantic Specialty Insurance Company


In consideration of the premium charged:


(1)     Section III EXCLUSION (M) of this Policy is amended to read in its entirety as follows:

        (M)     based upon or arising out of an **occurrence**:

                (1)     committed before the Inception Date or after the Expiration Date of this

                        Policy set forth in ITEM 2 of the Declarations; or

                (2)     which, prior to the Inception Date of this Policy, was the subject of any

                        notice to any **insured** of a claim or a potential claim.

(2)     Section IV GENERAL CONDITIONS (C)(2) of this Policy is amended to read in its entirety
        as follows:

        (2)     Where related **occurrences** take place on one or more dates during the **policy
                period**, or during two or more consecutive policy periods of policies issued by
                the **underwriter**:

                (a)     such **occurrences** shall be considered a single **occurrence** subject to

                        the Limit of Liability and Retention in effect when the first of such related

                        **occurrences** took place; and

                (b)     the **underwriter** shall not be responsible for that portion of any **loss** or

                        **defense costs** attributable to **occurrences** which took place prior

                        to the Inception Date of the first policy issued to the **insured** by the

                        **underwriter** or after expiration of the last policy issued to the **insured**

                        by the **underwriter**.



All other terms, conditions and limitations of this Policy shall remain unchanged.


NPE-90047-06-16                                                              Page 1 of 1

ENDORSEMENT NO. 5
DECLARATORY RELIEF ACTION COVERAGE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 30, 2021, forms part of:

Policy No.      MEP-25081-21
Issued to       TGP Communications, LLC
Issued by       Atlantic Specialty Insurance Company

In consideration of the premium charged:

(1)     The term "**defense costs**" as defined in Section II DEFINITIONS of this Policy is amended to read in its entirety as follows:

**Defense costs** means:

(1)     reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

(2)     reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**;

(3)     the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond; or

(4)     **declaratory relief action costs** incurred in connection with a covered **claim**;

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

(2)     Section II DEFINITIONS of this Policy is amended to include the following additional term:

"**Declaratory relief action costs**" means reasonable and necessary legal fees, costs and expenses incurred by the **insured** to initiate a declaratory relief action if:

(1)     the **insured** receives notice of a covered **claim** arising from an **occurrence** committed by the **insured** during the **policy period**;

(2)     the underlying **claim** is reported to the **underwriter** in accordance with Section IV GENERAL CONDITIONS (D) of this Policy;

(3)     the **insured** has received the **underwriter's** prior written consent to initiate such declaratory relief action in response to such **claim**; and

(4)     the **claim** remains pending against the **insured** while the **insured** pursues its declaratory relief action in response to such **claim**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **MEDIA ADVANTAGE POLICY** | OneBeacon<br>PROFESSIONAL INSURANCE® |

**DEFENSE COSTS** ARE IN ADDITION TO THE LIMITS OF LIABILITY OF THIS POLICY AND THE LIMITS OF LIABILITY ARE NOT REDUCED OR EXHAUSTED BY PAYMENT OF **DEFENSE COSTS.  DEFENSE COSTS** AND **LOSS** SHALL BE APPLIED AGAINST THE RETENTION.   VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE.  PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the **underwriter**, and subject to all of the terms and conditions of this Policy (including all endorsements hereto), the **underwriter** and the **insured** agree as follows:

## I.   COVERAGE AGREEMENTS

### (A)   Communications and Personal Injury Liability

The **underwriter** will pay on behalf of the **insured** any **loss** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim**, including but not limited to a **claim** for:

(1)   defamation, however styled in a **claim**, involving disparagement or harm to the character or reputation of any person or organization, including libel, slander, product disparagement or trade libel;

(2)   invasion of or interference with the right of privacy or publicity, however styled in a **claim**, including eavesdropping, intrusion upon seclusion, false light invasion of privacy, public disclosure of private facts and misappropriation of name or likeness;

(3)   negligent or intentional infliction of emotional distress, outrage or outrageous conduct;

(4)   trespass or wrongful entry or eviction;

(5)   false arrest or imprisonment, abuse of process, detention or malicious prosecution;

(6)   harassment or stalking;

(7)   violation of the Fourth Amendment to the United States Constitution or other equivalent state statute prohibiting unreasonable searches and seizures relating to newsgathering;

(8)   breach of any duty of confidentiality in any oral, written or implied agreement arising from the failure to maintain the confidentiality of a source or the materials furnished by a source, or from the failure to portray a source or subject in a certain manner or light;

(9)   infringement of copyright, infringement of **title**, plagiarism, **piracy** and misappropriation of ideas, material or information;

(10)   failure to attribute authorship or to recognize creative moral rights pursuant to a written agreement;

(11)     infringement or dilution of trademark, **slogan**, trade name, trade dress, service mark or service name;

(12)     **unfair competition**, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above;

(13)     deceptive trade practices or fraud, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above; provided that the acts giving rise to such causes of action had been approved in advance by the **insured's** counsel or by a duly authorized supervisor of the **insured**;

(14)     conspiracy, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above;

(15)     breach of a written, oral or implied hold harmless or indemnification agreement, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1 – 11 above;

(16)     any contempt order, but only if the act or omission giving rise to such contempt order had been authorized in advance by the **insured's** counsel based upon such counsel's good faith belief that (a) the applicable court order violated the First Amendment to the United States Constitution or any similar provision of a state constitution protecting freedom of speech and press; or (b) the act or omission was not a violation of such court order;

(17)     any proceeding relating to spoliation of evidence arising from the inadvertent destruction or recycling of the **insured's matter**; and

(18)     negligent supervision of an employee, but only when alleged in, and based on the same factual allegations as, a **claim** covered under one or more of subparts 1-17 above.

**(B)     Contextual Errors and Omissions Liability**

The **underwriter** will pay on behalf of the **insured** any **loss** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or **assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim** for negligence, misrepresentation, misstatement or misleading statement in connection with the content of **matter** uttered or disseminated in **scheduled media.**

## II.     DEFINITIONS

**(A)     Advertising** means the content of **public appearance**, publicity, press releases or promotional materials in or of **scheduled media**, provided that **advertising** does not include: (1) one-on-one written or oral communications; (2) any lottery, sweepstakes, coupons, contests or games of chance, including but not limited to any redemption of any of the above; or (3) the design, print, images or information contained in or on the packaging or labeling of any goods or products.

**(B)     Assumed under contract** means liability assumed by the **insured** in any written, oral or implied hold harmless or indemnification agreement with any third party, but only with respect to **matter** provided by the **insured** and for an **occurrence** that is otherwise covered under this Policy.

**(C)     Bodily injury** means bodily injury, sickness or disease, including death.

**(D)     Claim** means:

(1)     a judicial or alternative dispute resolution proceeding seeking monetary damages, services or injunctive relief against an **insured** for an **occurrence**;

(2)     a written demand or notice received by an **insured** from any person or entity seeking to hold an **insured** responsible for an **occurrence**;

(3)     a demand for the retraction or correction of **matter**; or

(4)     a written request to toll or waive an applicable statute of limitations relating to a potential **claim** against an **insured**;

provided that **claim** shall not include any subpoena or request for information issued by, or any investigation, action or proceeding brought or maintained by or on behalf of, in the name or right of, or for the benefit of, any administrative, governmental or regulatory agency, body, entity or tribunal, including but not limited to the Federal Trade Commission or the Federal Communications Commission**.**

**(E)**    **Defense costs** means:

(1)     reasonable and necessary fees, costs and expenses incurred to respond to a demand for retraction or correction of **matter**;

(2)     reasonable and necessary legal fees, costs and expenses incurred by outside counsel in the investigation, adjustment, defense or appeal of a **claim**; or

(3)     the cost of any appeal bond or bond to release attachments as a result of a covered **claim** for a bond amount not exceeding the Limit of Liability, but the **underwriter** shall not be obligated to apply for or furnish any such bond;

provided that **defense costs** shall not include remuneration, salaries, wages, fees, expenses, overhead or benefit expenses of any **insured**.

**(F)**    **Independent contractor** means an individual or entity providing **matter** or services to the **insured** pursuant to an express contract or agreement.

**(G)**    **Insured** means:

(1)     the **named insured** and any **subsidiary**;

(2)     any person who was, is or becomes a director, officer, trustee, shareholder, principal, member, partner or employee of the **named insured** or any **subsidiary,** but only for acts committed within the capacity and scope of such person's duties as such;

(3)     the estate, heirs, legal representatives or assigns of a natural person **insured** in the event of the death, incapacity or bankruptcy of such **insured,** but only to the extent that such **insured** would otherwise be provided coverage under this Policy;

(4)     the lawful spouse or domestic partner of a natural person **insured**, but only if the **claim** arises solely from the spouse's or domestic partner's status as such or from the spouse's or domestic partner's ownership interest in the **matter** giving rise to the **claim**; provided that such **claim** would otherwise be covered under this Policy if made against the **insured**; or

(5)     at the written request and sole discretion of the **named insured**, any agent, leased or temporary employee, volunteer or **independent contractor** providing **matter** or services for **scheduled media**, including but not limited to freelancers, correspondents, photographers and stringers, but only for acts committed within the capacity and scope of such individual's duties as such and on behalf of the **named insured** or any **subsidiary**.

**(H)**    **Loss** means any monetary damages the **insured** is legally obligated to pay as a result of a **claim** covered by this Policy, including: actual damages; statutory damages; punitive, multiplied or exemplary damages if insurable under applicable law; pre-judgment and post-judgment interest; and plaintiff's attorneys' fees and costs included as part of a judgment.  **Loss** shall not include:

    (1)      any fine, tax, fee, forfeiture, penalty or sanction (other than punitive or exemplary damages);

    (2)      any non-monetary or equitable relief or redress, including but not limited to any cost or expense of complying with any injunctive, declaratory or administrative relief or specific performance award;

    (3)      any cost or expense of recall, correction, production, reproduction, redistribution or reprinting of **matter** or any related expenses;

    (4)      any royalty or license fee, or other payment owed to a licensor under a license;

    (5)      any payment, restitution, return or disgorgement of sums the **insured** is not legally entitled to;

    (6)      any return, reduction, offset, or lack of payment or receipt of, any fees, compensation or other payment owed, paid, or to be paid to an **insured**; or

    (7)      any matter that is uninsurable under applicable law.

With regard to punitive or exemplary damages, this Policy shall apply to the fullest extent permitted under applicable law.  Where the **named insured** determines, based on written opinion of counsel, that punitive or exemplary damages are insurable under the applicable law, the **underwriter** will not challenge the **named insured's** determination of insurability.

**(I)**    **Matter** means the informational content of any communication, regardless of its nature, form or format or the medium by which such **matter** is communicated.

**(J)**    **Named insured** means the person or entity named in ITEM 1 in the Declarations of this Policy.

**(K)**    **Occurrence** means any actual or alleged act, error or omission committed by the **insured** in or for **scheduled media** arising directly out of:

    (1)      the gathering, creation, acquisition, investigation and compilation of **matter**;

    (2)      any broadcast, transmission, utterance, telecast, cablecast, webcast, podcast, serialization, production or online dissemination of **matter**;

    (3)      any publication or republication of **matter** or incidental publications relating thereto;

    (4)      **advertising** in or directly relating to **scheduled media**;

    (5)      the release, distribution, syndication, licensing, sale, lease or exhibition of **matter**;

    (6)      an editorial decision to deny or limit access to **scheduled media** to prevent the utterance or dissemination of **matter**;

    (7)      internet social networking in connection with **scheduled media**; or

    (8)      any **public appearance** directly relating to **scheduled media**;

provided that any and all such acts, errors or omissions or series of acts, errors or omissions based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, decisions or events shall be deemed to constitute a single **occurrence**, regardless of the number of repetitions, versions or forms of such **occurrence**, and shall be deemed to have occurred on the date as determined in accordance with Section IV GENERAL CONDITIONS (C) of this Policy.

**(L)**    **Piracy** means the wrongful use, reprinting or reproduction of copyrighted **matter**.

      

**(M)**   **Policy period** means the period from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the Declarations or to any earlier cancellation or termination of this Policy.

**(N)**   **Property damage** means:

(1)   physical harm to or destruction of tangible or intangible property, including its loss of use; or

(2)   loss of use of tangible or intangible property that has not been otherwise physically harmed or destroyed**.**

**(O)**   **Public appearance** means public speaking, including press conferences, speeches and seminars, and appearances on media outlets owned or operated by third parties, including radio, television and cable, by any natural person **insured** (other than an **independent contractor)** acting within the capacity and scope of such person's duties on behalf of the **named insured** or any **subsidiary**.

**(P)**   **Related claims** means all **claims** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving the same or related **occurrences**.  All **related claims** shall be treated as a single **claim**, subject to a single Retention and single "Each Claim" Limit of Liability.

**(Q)**   **Scheduled media** means the media, publications, programs, broadcast or cable stations, or other communications set forth in ITEM 3 of the Declarations, which were created or acquired on or prior to the Inception Date of the Policy set forth in ITEM 2(a) of the Declarations, including any electronic, incidental, supplemental or special editions of such media.

**(R)**   **Slogan** means any distinctive phrase used in **advertising** which has not been copyrighted or trademarked.

**(S)**   **Subsidiary** means, subject to Section IV GENERAL CONDITIONS (N), any entity during any time in which the **named insured** owns, directly or through one or more **subsidiaries**, greater than fifty percent (50%) of the issued or outstanding voting securities.

**(T)**   **Title** means the caption or name of a literary or artistic work which has not been copyrighted or trademarked; provided that **title** shall not include the literary or artistic work itself, any goods or products, or any packaging of any goods or products.

**(U)**   **Underwriter** means the insurance company shown on the Declarations.

**(V)**   **Unfair competition** means the misuse of an intellectual property right in **matter**.

**III.**   **EXCLUSIONS**

This Policy does not apply to, and no coverage will be available under this Policy for any **claim**, **loss** or **defense costs**:

**(A)**   for any actual or alleged: (1) breach of any express or implied contract, agreement, warranty or guarantee; or (2) obligation to make or pay any fee, profit, billing, cost or expense by an **insured**, including but not limited to the **insured's** alleged failure to pay royalties or other payments or to account for same; provided that this EXCLUSION (A) shall not apply to liability **assumed under contract** or to **claims** otherwise covered under SECTION I COVERAGE AGREEMENTS (A)(8), (A)(10) or (A)(15);

**(B)**   based upon or arising out of any ownership dispute relating to **matter** or services supplied to the **insured** by any past, present or future **insured**, joint venture participant or **independent contractor**;

**(C)**   based upon or arising out of usual and ordinary business activities and transactions that do not arise directly from the content of **matter** uttered or disseminated in **scheduled media**;

**(D)**      based upon or arising out of any actual or alleged misuse or infringement of any patent, inducement to infringe any patent, or any other misuse or violation in connection with patent rights, including any portion of any such **claim** that would otherwise be covered under this Policy;

**(E)**      based upon or arising out of any actual or alleged intentionally false, fraudulent, deceptive or misleading **advertising** with respect to the **insured's** goods, products or services, or any unfair competition arising therefrom;

**(F)**      based upon or arising out of the rendering of or failure to render **advertising** services by an **insured**, including but not limited to the development, distribution, display or placement of **advertising,** provided that this EXCLUSION (F) shall not apply to **claims** directly attributable to the content of **advertising**;

**(G)**      based upon or arising out of any actual or alleged **bodily injury** or **property damage**; provided that this EXCLUSION (G) shall not apply to **bodily injury** arising exclusively from emotional distress;

**(H)**      based upon or arising out of any actual or alleged violation of any responsibility, duty or obligation imposed under the Interstate Commerce Act of 1887, the Sherman Antitrust Act of 1890, the Clayton Act of 1914, the Robinson-Patman Act of 1936, the Cellar-Kefauver Act of 1950, the Racketeer Influenced and Corrupt Organizations Act of 1970, any law involving or prohibiting any antitrust activity, price fixing, price discrimination, predatory pricing, monopoly or monopolization, restraint of trade, unfair competition, conspiracy, collusion, or unfair, false, deceptive or misleading trade or business practices or advertising, or any similar local, state, federal or foreign act, statute, rule, regulation, requirement, ordinance, common law, or other law, including but not limited to any amendment thereto or any regulation promulgated thereunder;

**(I)**      based upon or arising out of any actual or alleged violation of any responsibility, duty or obligation imposed under the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisors Act of 1940, any Blue Sky or other securities law, or any similar local, state, federal or foreign act, statute, rule, regulation, requirement, ordinance or common law, including but not limited to any amendment thereto or any regulation promulgated thereunder;

**(J)**      for violation of a criminal statute, which shall have been determined by a judge, jury or adverse admission; provided that this EXCLUSION (J) shall not apply to:

     (1)      prosecution of any **insured** under a criminal defamation statute;

     (2)      prosecution of any **insured** under the Espionage Act of 1917; or

     (3)      any act or omission authorized in advance by the **insured's** counsel based upon such counsel's good faith belief that (a) the criminal statute violated the First Amendment to the United States Constitution or a provision of the applicable state constitution protecting freedom of speech and press; or (b) the act or omission was not a violation of such criminal statute;

     provided further that for the purposes of determining the applicability of this EXCLUSION (J), no knowledge possessed by or conduct of any **insured** shall be imputed to any other **insured** who was not aware of and did not participate in such conduct, except that knowledge possessed by and conduct of the chief executive officer, chief operating officer, chief financial officer, chief technology/privacy officer, president, general counsel, risk manager, partner or principal, or any equivalent position of the **insured**, shall be imputed to all **insureds**;

**(K)**      based upon or arising out of any actual or alleged: (1) unauthorized or unlawful collection, use or dissemination of internet user information through web cookies or other online profiling processes by or on behalf of the **insured**; or (2) failure to comply with any local, state, federal or foreign act, statute, rule, regulation, requirement, ordinance or common law requiring that individuals be provided with the ability to assent, consent to, or opt-in or withhold or withdraw assent to, consent to, or opt-out from the gathering, collecting, acquiring, receiving, using, obtaining or taking of any information of any type, nature or kind;

**(L)** brought by or on behalf of or in the name or right of any trade or licensing agency, body, entity, society or tribunal, including but not limited to the American Society of Composers, Authors and Publishers, the Society of European Stage Authors and Composers, the Recording Industry Association of America, or Broadcast Music, Inc.;

**(M)** based upon or arising out of an **occurrence** that was first committed before the Inception Date of the Policy set forth in ITEM 2(a) of the Declarations or which, prior to the Inception Date, was the subject of any notice to any **insured** of a claim or a potential claim;

**(N)** based upon or arising out of any actual or alleged: (1) distribution, dissemination or transmission of any unsolicited facsimile, wireless or telephone communication, electronic mail, direct mail, voice mail, or telemarketing, including but not limited to Short Message Service or Multimedia Message Service; or (2) act, error or omission that violates or allegedly violates the Telephone Consumer Protection Act (TCPA), the Fair Credit Reporting Act (FCRA), the CAN-SPAM Act of 2003 or any amendment of or addition to such laws or any statute, ordinance or regulation other than the TCPA, FCRA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communication or distribution of information of any type, nature or kind;

**(O)** based upon or arising out of any (1) denial of service attack; (2) transmission of malicious code; or (3) unauthorized or unlawful accessing, taking, obtaining, using or disclosing of any **insured's** website, network, computer system or other data system, or **matter**, information or data of any type, nature or kind;

**(P)** based upon or arising out of any actual or alleged discrimination or harassment of a sexual nature or discrimination or harassment because of race, creed, color, association, age, gender, sexual orientation, national origin, citizenship, ethnicity, ancestry, religion, disability or marital or economic status;

**(Q)** based upon or arising out of any actual or alleged liability or breach of any duty or obligation of any **insured** as an employer, including but not limited to any **claim** brought by or on behalf of a current, former or prospective employee in connection with his or her employment or potential employment relationship or the nature, terms or conditions of such employment or potential employment;

**(R)** based upon or arising out of any actual or alleged breach of any responsibility, duty or obligation in a fiduciary relationship, including but not limited to any **claim** for theft or disclosure of trade secrets;

**(S)** based upon or arising out of any dilution or infringement of copyright committed or allegedly committed by any **insured** in connection with the creation, development, manufacture, display, leasing, licensing, distribution, or sale by the **insured** of any software, application, program, code, or script;

**(T)** based upon or arising out of any actual or alleged products liability of any kind, including but not limited to any **claim** for failure of goods, products or services to conform with any statement of quality or performance made in the **insured's matter**; or

**(U)** based upon or arising out of:

    (1) any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, seepage, dispersal, escape, treatment, removal, handling, processing or disposal of any "pollutants"; or

    (2) any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, detect, disclose or report any "pollutants" or any action taken in contemplation or anticipation of any such regulation, order, direction or request.

For the purposes of this EXCLUSION (U), "pollutants" means (1) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any similar local, state, federal or foreign administrative, governmental or regulatory agency, body, entity or tribunal, including but not limited to solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials; or (2) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, or any noise.

**IV.**     **GENERAL CONDITIONS**

**(A)**     **Limits of Liability**

(1)     The "Each Claim" amount stated in ITEM 4(A) of the Declarations shall be the **underwriter's** maximum Limit of Liability for all **loss** resulting from each **claim** or **related claims** for which this Policy provides coverage.

(2)     The "Aggregate for all Claims" amount stated in ITEM 4(B) of the Declarations shall be the **underwriter's** maximum aggregate Limit of Liability for all **loss** resulting from all **claims** or **related claims** for which this Policy provides coverage.

(3)     The Limits of Liability described in this GENERAL CONDITION (A) of this Policy shall apply regardless of the time of payment by the **underwriter**, the number of persons or entities included within the definition of **insured** or the number of claimants.

(4)     The **underwriter** will have no obligation to pay **loss** or **defense costs**, or to defend or continue to defend, any **claim** after the **underwriter's** applicable "Each Claim" Limit of Liability, as stated in ITEM 4(A) of the Declarations, has been exhausted by payment of **loss** under this Policy.  If the **underwriter's** "Aggregate for all Claims" Limit of Liability, as stated in ITEM 4(B) of the Declarations, is exhausted by payments of **loss** under this Policy, the premium will be fully earned, all obligations of the **underwriter** will be completely fulfilled and exhausted, and the **underwriter** will have no further obligations of any kind or nature whatsoever under this Policy.

**(B)**     **Retention**

The **insured** shall be responsible for payment in full of the Retention identified in ITEM 5 of the Declarations, which shall apply to **loss** and **defense costs** for each **claim** or **related claims**.  The **underwriter's** obligation to pay **loss** or **defense costs** under this Policy shall be excess of such Retention. Any amounts paid within the Retention will not reduce the Limit of Liability.  The **underwriter** shall have no obligation whatsoever to pay all or any portion of the Retention on behalf of the **insured**.  The **underwriter** shall, however, at its sole discretion, have the right and option to do so, in which event the **insured** shall repay the **underwriter** any amounts so paid**.**

**(C)**     **Date of Occurrences and Related Claims**

(1)     An **occurrence** shall be deemed to have taken place on the date of the first dissemination of **matter** or **advertising**, or the first **public appearance** that is the subject of any **claim** or **related claims** arising out of such **occurrence**.  In the event a **claim** is made but there has not yet been any such dissemination or **public appearance**, the applicable **occurrence** shall be deemed to have taken place on the date of the first act, error or omission in preparation for dissemination or **public appearance**, such as the first act of gathering, creating, acquiring, investigating or compiling **matter**.

(2)     The **underwriter** shall have no obligation under this Policy to pay any **claim** or portion of any **claim** or **related claim** that is attributable to any **occurrence** that takes place, or is deemed to have taken place by operation of this GENERAL CONDITION (C) of this Policy, prior to or after the **policy period**.

**(D)**     **Reporting of Claims and Occurrences**

If any **claim** is first made against an **insured**, as a condition precedent to its right to coverage under this Policy, the **insured** shall give the **underwriter** written notice of such **claim**, including suit papers, if any, as soon as practicable thereafter.  Timely and sufficient notice by one **insured** of a **claim** shall be deemed timely and sufficient notice for all **insureds** involved in the **claim**.  Such notice shall give full particulars of the **claim**, including but not limited to: a description of the **claim** and **occurrence**; the identity of the claimant and any **insureds** involved; and information on the time, place and nature of, and manner in which the **insured** first became aware of such **occurrence**.

If an **insured** becomes aware of an **occurrence** that may subsequently give rise to a **claim** or a potential **claim**, the **insured** shall give the **underwriter** written notice of such **occurrence** as soon as practicable.

**(E)     Notice**

(1)     Notice to any **insured** shall be sent to the first **named insured** at the address designated in ITEM 1 of the Declarations.

(2)     Notice to the **underwriter** shall be sent to the address designated in ITEM 7 of the Declarations.

**(F)     Defense and Settlement**

(1)     The **underwriter** has the right and duty to defend any covered **claim**, even if the allegations of such **claim** are groundless, false or fraudulent.  The **underwriter** shall have the right to select counsel to represent the **insured** in connection with any covered **claim**.  With respect to any **claim**, the **underwriter** shall have the right to make investigations, direct the defense and conduct negotiations, and, with the consent of the **insured**, enter into a settlement of any **claim** as the **underwriter** deems appropriate.  If the **insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **underwriter's** recommendation, then, subject to the **underwriter's** applicable Limits of Liability stated in ITEM 4 of the Declarations, the **underwriter's** liability for such **claim** shall not exceed:

(a)     the amount for which such **claim** could have been settled plus **defense costs** incurred up to the date the **insured** refused to settle such **claim** (the "Potential Resolution Amount"); plus

(b)     fifty percent (50%) of any **loss** or **defense costs** in excess of the Potential Resolution Amount incurred in connection with such **claim**, with the remaining fifty percent (50%) of any **loss** or **defense costs** in excess of the Potential Resolution Amount being the responsibility of the **insured**.

(2)     No **insured** shall, except at its own cost, incur any expense, make any payment, admit any liability, assume any obligation, or settle any **claim** without the **underwriter's** prior written consent; provided that this paragraph (F)(2) shall not apply: (i) to the correction or retraction of **matter**; or (ii) to the settlement of any **claim** for which the total of **loss** and **defense costs** is less than the Retention.

(3)     In addition to the Limits of Liability, the **underwriter** will pay **defense costs** incurred in the defense of a covered **claim** that are in excess of the Retention.

**(G)     Allocation**

If both **loss** and **defense costs** covered by this Policy and loss and defense costs not covered by this Policy are incurred, either because a **claim** made against the **insureds** includes both covered and uncovered matters, or because a **claim** is made against both **insureds** and others not included within the definition of "**insured**", the **insureds** and the **underwriter** agree to use their best efforts to determine a fair and proper allocation of all such amounts.  The **underwriter's** obligation to pay **loss** and **defense costs** shall relate only to those sums allocated to the **insureds** that are covered under this Policy.  In making such determination, the parties shall take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **claim**.  In the event that the **underwriter** and the **insureds** do not reach an agreement with respect to allocation, then the **underwriter** shall be obligated to make an interim payment of the amount of **loss** or **defense costs** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

**(H)     Assistance and Cooperation**

In the event of a **claim**, the **insured** shall provide the **underwriter** with all information, assistance and cooperation that the **underwriter** reasonably requests.  At the **underwriter's** request, the **insured** shall assist in: the investigation, defense, settlement, or other resolution of any matter; the pursuit or enforcement of any right of contribution or indemnity against another who may be liable to any **insured**; conduct with respect to any action, suit, appeal, or other proceeding, including but not limited to attending any trial, hearing, or deposition, securing and giving evidence, or obtaining the attendance of any witness.

**(I)     Retraction or Correction**

The **insured** shall have sole discretion regarding the necessity to retract or correct **matter** that has been uttered or disseminated in **scheduled media**.

**(J)     Sources, Notes and Confidentiality**

The duty to cooperate does not require the **insured** to disclose the identity of a confidential source or materials furnished by a source or to produce a reporter's notes, recordings, tapes, out-takes or related materials in connection with a **claim**.

**(K)     Territory**

This Policy applies to an **occurrence** taking place anywhere in the world.

**(L)     Currency**

If judgment is rendered or settlement is made in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the applicable rate of exchange on the date the final judgment is rendered or date such amounts are sustained or incurred.

**(M)     Premium**

The **named insured** shall pay to the **underwriter** the premium stated in ITEM 6 of the Declarations. The premium may be subject to change during the **policy period** based upon additions or deletions of **scheduled media** or changes in the provisions of the Policy by endorsement as agreed upon by the **named insured** and the **underwriter**.

**(N)     Mergers, Consolidations and Acquisitions**

(1)     If, during the **policy period**, the **named insured** creates or acquires a **subsidiary**, or merges or consolidates with another entity such that the **named insured** is the surviving entity, or acquires any publications, broadcast or cable stations, programs or other communications (each an "acquired asset"), then, subject to paragraph (N)(2) below, for a period of ninety (90) days after the effective date of the transaction, coverage shall be provided for such "acquired asset" but only for **occurrences** that take place after the effective date of such transaction.  Upon the expiration of such ninety (90) day period, there will be no coverage available under this Policy for any **claim** based upon, arising out of, or in any way involving the "acquired asset" unless within such ninety (90) day period, the **named insured** gives the **underwriter** written notice of the "acquired asset" and such information regarding the transaction as the **underwriter** requests, the **underwriter** has specifically agreed by written endorsement to this Policy to provide coverage for such "acquired asset", and the **named insured** has accepted any terms and conditions, including payment of additional premium, the **underwriter** imposes in connection with such transaction.

(2)    If, at the time of a creation, acquisition, merger or consolidation as described in paragraph (N)(1) above:

    (a)    the total annual revenue, or projected total annual revenue of the "acquired asset" is less than ten percent (10%) of the **named insured's** total annual revenue as reflected in the most recent audited consolidated financial statements of the **named insured** and such entity as of the date of such creation, acquisition, merger or consolidation; and

    (b)    the "acquired asset" produces the same type of **scheduled media** as set forth in ITEM 3 of the Declarations;

then coverage shall be provided under this Policy for such "acquired asset" for **occurrences** that take place after the effective date of such transaction.

## (O)    Other Insurance

The coverage afforded under this Policy shall be specifically excess of and will not contribute with any other valid and collectible insurance available to the **insured**, whether such other insurance is stated to be primary, *pro rata*, contributory, excess, contingent or otherwise, unless such other insurance is specifically written as excess insurance over the limits of liability provided in this Policy.

## (P)    Subrogation

In the event of any payment hereunder, the **underwriter** shall be subrogated to the extent of any payment to all of the rights of recovery of the **insured**.  The **insured** shall execute all papers and do everything necessary to secure such rights, including but not limited to the execution of any documents necessary to enable the **underwriter** effectively to bring suit in its name.  The **insured** shall do nothing that may prejudice the **underwriter's** position or potential or actual rights of recovery.  The obligations of the **insureds** under this GENERAL CONDITIONS (P) shall survive the expiration, cancellation, or termination of this Policy.  The **underwriter** shall have no subrogation rights against the **insured**.

With respect to a **claim**, any amount recovered upon the exercise of such rights of subrogation will be applied as follows: first, to the repayment of expenses incurred in recovery by exercise of such subrogation rights; second, to **loss** or **defense costs** paid by the **insured** in excess of the Limits of Liability; third, to **loss** or **defense costs** paid by the **underwriter**; and last, to **loss** or **defense costs** paid by the **insured** toward the Retention.

## (Q)    Assignment

No assignment of interest under this Policy shall bind the **underwriter** without the **underwriter's** prior written consent issued as an endorsement to this Policy.

## (R)    No Action against Underwriter

(1)    No action shall be taken against the **underwriter** by any **insured** unless, as conditions precedent thereto, the **insured** has fully complied with all of the terms of this Policy and the amount of the **insured's** obligation to pay has been finally determined either by judgment against the **insured** after adjudicatory proceedings or by written agreement of the **insured**, the claimant and the **underwriter**.

(2)    No individual or entity shall have any right under this Policy to join the **underwriter** as a party to any **claim** to determine the liability of any **insured;** nor shall the **underwriter** be impleaded by the **insured** or his/her/its legal representative in any such **claim**.

## (S)    Bankruptcy or Insolvency

Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve the **underwriter** of any of its obligations under this Policy.

**(T)**     **Cancellation and Non-renewal**

(1)     Except as set forth in Section IV GENERAL CONDITION (A)(4), the first **named insured** may cancel this Policy at any time by transmitting to the **underwriter** written notice stating when thereafter such cancellation shall be effective.  In such event, the earned premium will be calculated in accordance with the customary short rate table and procedure.

(2)     The **underwriter** may cancel this Policy by mailing written notice to the first **named insured**, at the address shown in the Declarations, stating when, not less than sixty (60) days thereafter, such cancellation shall be effective; except that, in the event of cancellation for non-payment of premium, the **underwriter** may make the cancellation effective upon written notice of only ten (10) days.  If the **underwriter** cancels this Policy, earned premium will be calculated *pro rata*.  If the **underwriter** receives no premium whatsoever by the premium due date and no premium whatsoever is received by the last day of such ten (10) day notice period, the **underwriter** may cancel this Policy as of the Inception Date stated in ITEM 2(a) of the Declarations.

(3)     The **underwriter** will not be required to renew this Policy upon its expiration.  If the **underwriter** elects not to renew this Policy, the **underwriter** will mail written notice of non-renewal to the first **named insured**, at the address shown in the Declarations, at least sixty (60) days prior to the Expiration Date of this Policy.  Any offer of renewal on terms involving a change of retention, premium, limit of liability, or other terms and conditions shall not constitute, nor be construed as, a failure or refusal by the **underwriter** to renew this Policy.

**(U)**     **Authorization and Notices**

The first **named insured** will act on behalf of all **insureds** with respect to: the giving and receiving of any notices under this Policy; the payment of premiums to, and the receiving of return premiums from, the **underwriter**; and the receiving and acceptance of any endorsements issued to form a part of this Policy.

**(V)**     **Changes**

Notice to or knowledge possessed by any agent or other person acting on behalf of the **underwriter** shall not effect a waiver or change in any part of this Policy, or prevent or estop the **underwriter** from asserting any right under this Policy.  This Policy can only be altered, waived or changed by written endorsement issued to form a part of this Policy.

**(W)**     **Application Representations and Severability**

The **insureds** represent that the particulars and statements contained in the application and all materials submitted in connection therewith are true, accurate and complete and agree that: this Policy is issued and continued in force by the **underwriter** in reliance on the truth of such representations; those particulars and statements are the basis of this Policy; and the application and those particulars and statements are incorporated in and form a part of this Policy.  No knowledge or information possessed by any **insured** shall be imputed to any other **insured,** except for material facts or information known to the chief executive officer, chief operating officer, chief financial officer, chief technology/privacy officer, president, general counsel, risk manager, partner or principal, or any equivalent position thereof, or other person whose signature appears on the application.  In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the application, this Policy shall be void with respect to any **insured** who knew of such untruth, misrepresentation or omission, or to whom such knowledge is imputed.

**(X)**     **Risk Management**

The **underwriter** directly or indirectly may make available risk management services in connection with this Policy for the purpose of managing and reducing the risks covered under this Policy.  Such risk management services may cease or change in the **underwriter's** sole discretion at any time**.**

**(Y)**   **Entire Agreement**

The **insureds** agree that this Policy, including the application, Declarations and any endorsements, constitutes the entire agreement between them and the **underwriter** or any of its agents relating to this insurance.

**In witness whereof, the Underwriter has caused this Policy to be executed by its authorized representative.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | | |

---

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO
TGP'S MOTION TO TRANSFER**

---

# EXHIBIT 3

---

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO TRANSFER**          **PAGE 1**

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

Southern District of Florida

Case number (*If known*): _____

Chapter you are filing under:
- ☐ Chapter 7
- ☑ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | TGP COMMUNICATIONS, LLC |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | The Gateway Pundit |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 46-4161586 |

4. **Debtor's address**

**Principal place of business**

1820 NE JENSEN BEACH BLVD
Number        Street

UNIT 1120

Jensen Beach        FL    34957
City                State    ZIP Code

Martin County
County

**Mailing address, if different from principal place of business**

_____
Number        Street

_____
P.O. Box

_____
City        State    ZIP Code

**Location of principal assets, if different from principal place of business**

_____
Number        Street

_____

_____
City        State    ZIP Code

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | http://www.thegatewaypundit.com |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding  LLP)<br>☐ Other. Specify: _____ |

| Debtor | TGP COMMUNICATIONS, LLC | Case number (if known) _____ |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.naics.com/search/ .

5178____

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply:*

 ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

 ☑ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

 ☐ A plan is being filed with this petition.

 ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

 ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

 ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
                MM / DD / YYYY

     District _____ When _____ Case number _____
                MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes. Debtor _____ Relationship _____

     District _____ When _____
             MM / DD / YYYY

     Case number, if known _____

| Debtor | TGP COMMUNICATIONS, LLC | Case number (if known)_____ |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

Check all that apply:

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (Check all that apply.)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
　　　　　　　　　　　　　　　　Number　　　　Street

_____

_____
City　　　　　　　　　　　　　　State　　　ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency _____

　　　　Contact name _____

　　　　Phone _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

Check one:

☑ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

| Debtor | TGP COMMUNICATIONS, LLC | Case number (if known) _____ |
|--------|-------------------------|-----------------------------------|
|        | Name                    |                                   |

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☑ $100,001-$500,000
- ☐ $500,001-$1 million

- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million

- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  04/24/2024
MM  / DD / YYYY

✖ /s/ James Hoft
Signature of authorized representative of debtor

James Hoft
Printed name

Title  Manager

**18. Signature of attorney**

✖ /s/ Bart Houston
Signature of attorney for debtor

Date  04/24/2024
MM  / DD / YYYY

Bart Houston
Printed name

Houston Roderman PLLC
Firm name

633 S. Andrews Avenue Suite 500
Number      Street

Ft. Lauderdale
City

FL
State

33301
ZIP Code

954-900-2615
Contact phone

bhouston@thehoustonfirm.com
Email address

0623636
Bar number

FL
State

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900 **JURY TRIAL DEMANDED** |
| Defendants. | | |

---

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO
TGP'S MOTION TO TRANSFER**

---

# EXHIBIT 4

---

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO TRANSFER**          **PAGE 1**

Fulton County Superior Court
***EFILED***LW
Date: 4/12/2024 9:07 AM
Che Alexander, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

JAMES HOFT, JOSEPH HOFT, and
TGP COMMUNICATIONS LLC d/b/a
THE GATEWAY PUNDIT,
        PETITIONERS,

v.

GILBERT C. HUMES, NADINE WILLIAMS,
FEDERAL BUREAU OF INVESTIGATION
AND FBI INVESTIGATORS, GEORGIA
BUREAU OF INVESTIGATION AND GBI
INVESTIGATORS, ADRICK HALL,
YETUNDA SIMS, JEFFERY MERRIFIELD,
KEISHA DIXSON, FULTON COUNTY BOARD
OF ELECTIONS AND REGISTRATION,
GEORGIA SECRETARY OF STATE,
LAWRENCE SLOAN, COBB COUNTY
POLICE DEPARTMENT, M.P. KEARNEY
OF COBB COUNTY POLICE DEPARTMENT,
BAHAN RICH, JAMES CALLOWAY,
FULTONCOUNTY DISTRIC ATTORNEY,
MORGAN WHITE, CHE'ALEXANDER, AS
FULTON COUNTY CLERK OF SUPERIOR
AND MAGISTRATE COURTS, DAVID
GRAHAM ASTRO INTEGRATION SERVICES,
GEORGIA STATE BOARD OF ELECTIONS,
FULTON COUNTY BOARD OF COMMISSIONERS,
AND FULTON COUNTY SHERIFF'S OFFICE,
        RESPONDENTS.

24CV004696

CIVIL ACTION NO.:

**PETITION IN AID OF DISCOVERY**

    **COME NOW, THE PETITIONERS,** by and through their attorney of record and

pursuant to Ga. Code Ann. § 24-13-151 shows the Court the following:

**PARTIES, VENUE, AND JURISDICTION.**

1.

    The Petitioners are subject to the jurisdiction of this Court by virtue of having filed its

Petition.

2.

Respondent Gilbert C. Humes, is subject to the jurisdiction and venue of this Court and may be served at: 2 MLK, Jr. Drive, Suite 802 Floyd West Towe, Atlanta, Georgia 30344. The Petitioners seek a deposition and production from this Respondent. (Exhibit "A").

3.

Respondent Nadine Williams is subject to the jurisdiction and venue of this Court and may be served at:141 Pryor St. S.W., Atlanta, Georgia 30034, or wherever she may be found. The Petitioners seek a deposition from this Respondent.

4.

Respondent Federal Bureau of Investigation and FBI Investigators is subject to the jurisdiction and venue of this Court and may be served at: 300 Flowers Road S, Atlanta, Georgia 30341. The Petitioners seek a deposition or documents from this Respondent. (Exhibit "B").

5.

Respondent Georgia Bureau of Investigation and GBI Investigators, is subject to the jurisdiction and venue of this Court and may be served at: 3121 Panthersville Road, Decatur, Georgia 30034. The Petitioners seek a deposition and production from this Respondent. (Exhibit "C").

6.

Respondent Adrick Hall is subject to the jurisdiction and venue of this Court and may be served at: 2 MLK Jr. Drive, Suite 802 Floyd Tower, Atlanta, Georgia 30344. The Petitioners seek a deposition and production from this Respondent. (Exhibit "D").

7.

Respondent Yetunda Sims is subject to the jurisdiction and venue of this Court and may

be served at:141 Pryor St. S.W., Atlanta, Georgia 30034, or wherever she may be found. The Petitioners seek a deposition from this Respondent.

8.

Respondent Jeffrey Merrifield is subject to the jurisdiction and venue of this Court and may be served at:2 MLK Jr. Drive, Suite 802 Floyd Tower, Atlanta, Georgia 30344. The Petitioners seek a deposition and production from this Respondent. (Exhibit "E").

9.

Respondent Keisha Dixson is subject to the jurisdiction and venue of this Court and may be served at:141 Pryor St. S.W., Atlanta, Georgia 30034, or wherever she may be found. The Petitioners seek a deposition from this Respondent.

10.

Respondent Fulton County Board of Elections and Registration is subject to the jurisdiction and venue of this Court and may be served at: 141 Pryor Street, SW, Atlanta, Georgia. The Petitioners seek a deposition and production from this Respondent. (Exhibit "F").

11.

Respondent Georgia Secretary of State is subject to the jurisdiction and venue of this Court and may be served at: 2 MLK Jr. Drive, St. 802 Floyd W. Tower, Atlanta, Georgia 30334. The Petitioners seek a deposition and production from this Respondent. (Exhibit "G").

12.

Respondent Lawrence Sloan is subject to the jurisdiction and venue of this Court and may be served at:141 Pryor St. S.W., Atlanta, Georgia 30034, or wherever he may be found. The Petitioners seek a deposition from this Respondent.

13.

Respondent Cobb County Police Department is subject to the jurisdiction and venue of this Court and may be served at: 545 S. Fairground Street, Marietta, Georgia 30060. The Petitioners seek a deposition and production from this Respondent. (Exhibit "H").

14.

Respondent M.P. Kearney of Cobb County Police Department is subject to the jurisdiction and venue of this Court and may be served at: 545 S. Fairground Street, Marietta, Georgia 30060. The Petitioners seek a deposition from this Respondent.

15.

Respondent Bahan Rich is subject to the jurisdiction and venue of this Court and may be served at: 3121 Pantherville Road, Decatur, Georgia 30034. The Petitioners seek a deposition and production from this Respondent. (Exhibit "I").

16.

Respondent James Calloway is subject to the jurisdiction and venue of this Court and may be served at: 141 Pryor St. S.W., Atlanta, Georgia 30034, or wherever he may be found. The Petitioners seek a deposition from this Respondent.

17.

Respondent Fulton County District Attorney is subject to the jurisdiction and venue of this Court and may be served at: 141 Pryor Street, SW, Atlanta, Georgia 30034. The Petitioners seek a deposition and production from this Respondent. (Exhibit "J").

18.

Respondent Morgan White is subject to the jurisdiction and venue of this Court and may be served at:141Pryor St. S.W., Atlanta, Georgia 30034, or wherever she may be found. The

Petitioners seek a deposition from this Respondent.

19.

Respondent Che' Alexander, Fulton County Georgia Clerk of Superior and Magistrate Courts, is subject to the jurisdiction and venue of this Court and may be served at: 141 Pryor Street, SW, Atlanta, Georgia. The Petitioners seek a deposition and production from this Respondent. (Exhibit "K").

20.

Respondent David Graham, Astro Integration Services, is subject to the jurisdiction and venue of this Court and may be served at: 1880 West Oak Parkway, Suite 10, Marrietta, Georgia. The Petitioners seek a deposition and production from this Respondent. (Exhibit "L").

21.

Respondent Georgia State Board of Elections is subject to the jurisdiction and venue of this Court and may be served at: 2 MLK, Jr. Drive, Suite 802 Floyd West Tower, Atlanta, Georgia. The Petitioners seek a deposition and production from this Respondent. (Exhibit "M").

22.

Respondent Fulton County Board of Commissioners is subject to the jurisdiction and venue of this Court and may be served at: Chairman Robert Pitts, 141 Pryor Street, 10th Floor, Atlanta, Georgia. The Petitioners seek a deposition and production from this Respondent. (Exhibit "N").

23.

Respondent Fulton County Sheriff's Office is subject to the jurisdiction and venue of this Court and may be served at: 141 Pryor Street, SW, Atlanta, Georgia. The Petitioners seek a deposition and production from this Respondent. (Exhibit "O").

24.

The Petitioners aver that venue is proper in this county and Court as to all Respondents.

## STATEMENT OF FACTS

25.

The Petitioners re-avers and incorporate by reference paragraphs 1-24 of this Petition as if re-stated herein verbatim.

26.

A defamation case has been filed against the Petitioners in the State of Missouri (see Exhibit "P").

27.

The Petitioners aver that the Respondents in this case hold in their custody and control evidence that Petitioners need for Discovery in the Missouri Case tort case (Exhibit "P") and seek to have this Court issue a Georgia subpoena to require production or testimony for discovery purposes.

28.

The Petitioners aver that the evidence held by the Respondents would be necessary to the Petitioners' defense in the Missouri tort case pending against them.

29.

The Petitioners aver that the evidence held by the Respondents is material to the underlying claims, defenses, and counterclaims in the Missouri tort case.

30.

The Petitioners aver that the evidence held by the Respondents can be legitimately used to defend the claims against the Petitioners in the Missouri tort case.

31.

The Petitioners aver that the State of Missouri has not enacted a Uniform Interstate
Depositions and Discovery Act.

32.

The Petitioners aver that the failure of the State of Missouri to enact a reciprocal version
of the Uniform Interstate Depositions and Discovery Act precludes the Petitioners from using
that process to procure discovery in this State.

33.

The Petitioners aver that their inability to use the Uniform Depositions and Discovery
Act as a vehicle to procure civil discovery for the pending out of state litigation requires the
equitable intervention of this Court.

34.

The Missouri court has ordered that all fact discovery in that tort case will conclude by
May 31, 2024. (Exhibit "Q")

35.

The Petitioners aver that the Missouri court has requested this Court's assistance in
procuring the evidence sought by the Petitioners. (Exhibit "R").

36.

The Petitioners requests this Court orders that duplicate Georgia subpoenas be issued that
allow the Petitioners to seek the items and depositions contained on the Exhibits "A" through
"O".

37.

The Petitioners requests that this Court orders subpoenas be issued to allow for

depositions of the following Respondents: a). Nadine Williams, b). Yetunda Sims, c).

Keish Dixon, d). Lawerence Sloan, e). James Calloway, f). Morgan White, and g).

M. P. Kearney of the Cobb County Police Department.

> **WHEREFORE, THE PETITIONERS** pray:
>
>> a). that the Court **ORDERS** the Clerk of Court to issue duplicate subpoenas for production;
>>
>> b). or in the alternative, that the Court **ORDERS** the Petitioners to prepare and provide duplicate subpoenas for production to the Clerk of Court for execution;
>>
>> c). that the Court **ORDERS** the Clerk of Court to issue subpoenas for depositions from a list provided by the Petitioners;
>>
>> d). or in the alternative, that the Court **ORDERS** the Petitioners to prepare and provide subpoenas for depositions to the Clerk of Court for execution; AND
>>
>> e). for any other relief the Court **DEEMS** just and proper.

Respectfully submitted this the _____ day of April, 2024.

> **HARDING LAW FIRM, LLC**

Todd A. Harding, For the Firm
Ga. Bar No.: 101562
Attorney for Petitioners

Harding Law Firm, LLC
Attorney at Law
113 E. Solomon Street
Griffin, Georgia 30223
(770) 229-4578
(770) 228-9111 facsimile

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

JAMES HOFT, JOSEPH HOFT, and
TGP COMMUNICATIONS LLC d/b/a
THE GATEWAY PUNDIT,                                    24CV004696
      PETIONERS,

v.                                                CIVIL ACTION NO.:

GARLAND FAVORITO et. al,
      RESPONDENTS.

## VERIFICATION

COME NOW, THE PETITIONERS, in the above style action, and personally appeared

before the undersigned officer duly authorized to administer oaths, and on oath depose and say that

the facts contained in the within and foregoing Petition are true and correct.

Respectfully submitted this the 10 day of April, 2024.


_____
JAMES HOFT, PETITIONER


_____
JOSEPH HOFT, PETITIONER


_____
JAMES HOFT, AS MEMBER FOR
TGP COMMUNICATIONS LLC d/b/a
THE GATEWAY PUNDIT


ERNEST EFOSA OSAGHAE
Notary Public, Notary Seal
State of Missouri
St. Louis County
Commission # 21602773
My Commission Expires 10-24-2025

SUBSCRIBED AND SWORN
BEFORE ME this 10 day of
April, 2024, to certify and
witness my hand and official seal.

Notary Public: _____

_____
[AFFIX NOTARIAL SEAL]

Page **9** of **9**

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

JAMES HOFT, JOSEPH HOFT, and
TGP COMMUNICATIONS LLC d/b/a
THE GATEWAY PUNDIT,
      PETIONERS,

24CV004696

v.

CIVIL ACTION NO.:

GARLAND FAVORITO et. al,
      RESPONDENTS.

### VERIFICATION

COME NOW, THE PETITIONERS, in the above style action, and personally appeared

before the undersigned officer duly authorized to administer oaths, and on oath depose and say that

the facts contained in the within and foregoing Petition are true and correct.

Respectfully submitted this the ___ day of April, 2024.

_____
JAMES HOFT, PETITIONER



_____
JOSEPH HOFT, PETITIONER


_____
JAMES HOFT, AS MEMBER FOR
TGP COMMUNICATIONS LLC d/b/a
THE GATEWAY PUNDIT

SUBSCRIBED AND SWORN
BEFORE ME this 10 day of
April, 2024, to certify and
witness my hand and official seal.

Notary Public:

_____
[AFFIX NOTARIAL SEAL]
SHEVOL SHIMYOU COPE

SHEVOL SHIM-YOU COPE
Notary Public - State of Florida
Commission # HH 267791
My Comm. Expires May 24, 2026

Page **9** of **9**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | CIVIL ACTION NO. |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:24-CV-00900  **JURY TRIAL DEMANDED** |
| Defendants. | | |

---

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO
TGP'S MOTION TO TRANSFER**

---

# EXHIBIT 5

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JAMES HOFT and      )
TGP COMMUNICATIONS, LLC, d/b/a/      )
*The Gateway Pundit***,**      )
     )
     )
       Plaintiffs,      )
     )    CASE NO.: 4:24-CV-01304-HEA
v.      )
     )
WILLIAM CHARLES BUNDREN and      )
BUNDREN LAW GROUP, PLLC,      )
     )
       Defendants.      )

## <u>DEFENDANTS' MOTION TO DIMISS PLAINTIFFS' COMPLAINT</u>

COME NOW William Charles Bundren ("Bundren") and Bundren Law Group, PLLC ("BLG") (collectively, "Defendants"), by and through counsel, and hereby submit their Motion to Dismiss Plaintiffs James Hoft ("Hoft") and TGP Communications, LLC d/b/a *The Gateway Pundit's* ("TGP") (collectively, the "Plaintiffs") Complaint, and state as follows:

1.     First, this Court should Dismiss Plaintiffs' Complaint because it lacks subject matter jurisdiction over Defendants pursuant to Rule (12)(b)(1).

2.     Second, this Court should dismiss Plaintiff's Complaint because it lacks personal jurisdiction over the Defendants under Rule 12(b)(2).

3.     Third, this Court should dismiss Plaintiffs' Complaint because the Eastern District of Missouri is an improper venue under Rule 12(b)(3).

4.     Fourth, and lastly, this Court should dismiss Plaintiffs' Complaint for Forum Non Conveniens.

5. In support of their Motion to Dismiss, Defendants incorporate by reference the arguments set forth in their Memorandum in Support of their Motion to Dismiss, filed contemporaneously herewith. Additionally, Defendants offer the Affidavit of William Charles Bundren, Esq, filed contemporaneously herewith as <u>Exhibit "A"</u> and incorporated by reference.

 WHEREFORE Defendants William Charles Bundren and Bundren Law Group, PLLC, respectfully request that this Honorable Court enter an order dismissing Plaintiffs' Complaint in its entirety with prejudice; and for such other and further relief the Court deems just and proper.

Dated: October 18, 2024    Respectfully submitted,

         JENKINS & KLING, P.C.

         By: *Liam R. Brannon*
          Liam R. Brannon, #73640MO
          Katherine I. McLaughlin, #69734MO
          150 N. Meramec Ave., Suite 400
          St. Louis, Missouri 63105
          (314) 721-2525 Phone
          (314) 721-5525 Fax
          lbrannon@jenkinskling.com
          kmclaughlin@jenkinskling.com
          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

 The undersigned hereby certifies that on October 18, 2024, the foregoing was filed electronically to be served to all counsel of record by operation of the Court's electronic filing system.

          /s/ *Liam R. Brannon*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HOFT and | ) | |
| TGP COMMUNICATIONS, LLC, d/b/a/ | ) | |
| *The Gateway Pundit*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.: 4:24-CV-01304-HEA |
| v. | ) | |
| | ) | |
| WILLIAM CHARLES BUNDREN and | ) | |
| BUNDREN LAW GROUP, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

COME NOW William Charles Bundren ("Bundren") and Bundren Law Group, PLLC ("BLG") (collectively, "Defendants"), by and through counsel, and hereby submit their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs James Hoft ("Hoft") and TGP Communications, LLC d/b/a *The Gateway Pundit's* ("TGP") (collectively, "Plaintiffs") Complaint in its entirety.

## INTRODUCTION

This case arises out of a state court lawsuit filed in the Circuit Court of St. Louis City, Missouri, styled *Freeman, et al. v. Hoft, et al.*, Case No. 2122-CC-09815 (the "State Action"). Doc 1, ¶ 9. Plaintiffs retained Defendants for representation and a defense in the State Action against allegations of defamation, disparagement, and personal injury, among other things, pursuant to a certain retainer agreement (the "Retainer Agreement"). Doc 1, ¶¶ 9-10. Subject to the Retainer Agreement, Plaintiffs were insured under a certain insurance policy for defense and indemnity, the cost of defense being within the policy limits. Doc 1, ¶¶ 11-12. Plaintiffs have

1

filed the instant Complaint against Defendants claiming the attorneys' fees and costs expended during the course of Defendants' representation in the State Action are excessive and unreasonable. Doc 1, ¶¶ 13-25.

Plaintiffs' Complaint, however, must be dismissed because this Court lacks personal jurisdiction over the Defendants. Plaintiffs have not and cannot show that Defendants have the requisite systematic and continuous minimum contacts with this forum. Nor can Plaintiffs show that Defendants conducted business or activities related to their billing practices and legal representation in this forum. Additionally, Plaintiffs' Complaint must be dismissed for improper venue because Defendants do not reside in Missouri, the events subject to this lawsuit did not occur or arise out of Missouri, and there is no property that is the subject of the instant lawsuit that is situated in Missouri. Further, this Court lacks subject matter jurisdiction over the Defendants such that Plaintiffs have failed to join all of the parties to the Retainer Agreement and relevant insurance agreements. Lastly, this Court should dismiss the instant lawsuit for forum non conveniens because none of the activities described in the Complaint occurred in Missouri and, therefore, Missouri has no interest in the dispute between Plaintiffs and Defendants. In support of these arguments, Defendants offer the Affidavit of Defendant William Charles Bundren (the "Bundren Affidavit") attached hereto as <u>Exhibit A</u>.

**ARGUMENT**

I.    <u>**THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS AND, THEREFORE, PLAINTIFFS' COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(2).**</u>

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Mitchell v. Eli Lilly & Co.*, 159 F. Supp. 3d 967, 972 (E.D. Mo. 2016) (citation omitted). "To successfully survive a motion to dismiss challenging personal

2

jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id*. at 273. "A plaintiff's prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Id.* "If a defendant has not consented to a State's exercise of jurisdiction, personal jurisdiction can be specific or general." *Id.*

### i. *This Court does not have general jurisdiction over Defendants.*

Federal courts do not have jurisdiction over a non-resident defendant unless the non-resident defendant has purposefully established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 474-76 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); and, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Defendants have not purposefully established any contact in Missouri and, thus, this Court does not have personal jurisdiction over Defendants. *See generally*, Bundren Affidavit.

Under the minimum-contact analysis, this Court must determine whether Defendants have purposely availed themselves of the benefits and protections of Missouri by conducting substantial activities within Missouri. *See* J. *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011); *Steinbuch v. Cutler*, 518 F.3d 580, 585-86 (8th Cir. 2008). In measuring and determining the minimum contacts, the Court must consider the following elements: (1) the nature and quality of the contacts within Missouri; (2) the quantity of contacts; (3) the relation of the claim to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Steinbuch,* 518 F.3d at 586.

In this case, while TGP is registered to do business in Missouri, its principal place of business is in Florida. Bundren Affidavit, ¶ 16. TGP also filed voluntary bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Florida, which the court later dismissed. *Id.*, ¶ 19.  Second, the Insurance Companies (as defined in the Bundren Affidavit, ¶ 34), Plaintiffs, and Defendants negotiated and performed the Retainer Agreement in Texas and all billing for legal services to the Insurance Companies occurred in Texas, not Missouri. *Id.*, ¶¶ 59-124. Third, Defendants' legal services, when not performed in Texas, were performed in Georgia, Louisiana, and Maryland, among other States. *Id.* Fourth, Defendants are not residents of Missouri and have never resided in Missouri nor maintained an office in Missouri. *Id.*, ¶¶ 3-9. Fifth, the Insurance Companies are required by the Insurance Policy (as defined in the Bundren Affidavit, ¶ 32) to pay the legal fees of BLG and they do not reside nor maintain offices in Missouri. *Id.*, ¶¶ 34-35. Defendants simply have no contacts with Missouri and Plaintiffs' claims regarding the billing and invoicing for Defendants' legal services have no connection with Missouri. *Id.*, ¶¶ 3-9, 32-124.

### ii.   *This Court does not have specific jurisdiction over Defendants*.

This Court also cannot exercise specific jurisdiction over Defendants because Defendants' alleged activities concerning their billing practices were not purposefully directed in Missouri. This is especially true given that Plaintiffs' alleged claims result from alleged injuries that arise out of or relate to alleged activities in Texas, and perhaps other States, but not Missouri. Bundren Affidavit, ¶¶ 50, 22-124. Importantly, Defendants' invoices for legal fees were submitted to the non-resident Insurance Companies for payment pursuant to the Insurance Policy. *See* Bundren Affidavit, ¶¶ 31-43; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351, 359-60 (2021); and, J. *McIntyre Mach., Ltd.*, 564 U.S. at 881.

4

Ultimately, this Court cannot exercise either general jurisdiction or specific jurisdiction over Defendants because Defendants have no contacts with Missouri that are so continuous and systematic as to render Defendants essentially "at home" in Missouri. *See generally*, Bundren Affidavit; *Daimler AG* , 571 U.S. at 139-38; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

          iii. <u>*This Court's assumption of jurisdiction over Defendants would offend traditional notions of fair play, substantial justice, and due process.*</u>

This Court's assumption of jurisdiction over Defendants would offend traditional notions of fair play and substantial justice and would be inconsistent with the constitutional requirements of due process. *Int'l Shoe Co.*, 326 U.S. at 316. It would further place an extraordinary burden on Defendants by causing them to defend this action in a foreign forum when material witnesses, records, documents, and files are located in Texas and Georgia, among other States. Bundren Affidavit, ¶¶ 23, 37-124; *Elliott Mach. Corp. v. John Holland Party, Ltd.,* 995 F.2d 474, 479-80 (4th Cir. 1993). Missouri has no interest in this lawsuit because (1) the Retainer Agreement was neither negotiated nor performed in Missouri; (2) the billing invoices were neither prepared, sent or received in Missouri; (3) the non-resident Insurance Companies had an obligation to pay the billing invoices submitted by Defendants; (4) the Insurance Companies are not parties to this lawsuit; and (5) Plaintiffs do not reside nor maintain a principle place of business in Missouri, respectively. Bundren Affidavit, ¶¶ 22-62; *Elliott Mach. Corp.* 995 F.2d at 479-80.

This Court's assumption of jurisdiction over Defendants would also allow Plaintiffs to prosecute this lawsuit in Missouri even though Plaintiffs can obtain convenient and effective relief in the United States District Court for the Eastern District of Texas—Sherman Division. There is currently pending in the Eastern District of Texas litigation between the Insurance Companies, Plaintiffs, and Defendants. Bundren Affidavit, ¶¶ 125-131. And this Court's assumption of

5

jurisdiction would therefore prevent the parties from resolving the instant lawsuit more efficiently in the Eastern District of Texas where the Insurance Companies and Plaintiffs have been named and joined as defendants. *Id.*; *TH Agric & Nutrition, LLC v. Ace Eur. Grp. Ltd*., 488 F.3d 1282, 1292-93 (10th Cir. 2007); and, *Elliott Mach. Corp.* 995 F.2d at 479-80. Lastly, this Court's assumption of jurisdiction over Defendants would not further any fundamental substantial social policy interest of Missouri in that it would split the jurisdiction of this Court with the jurisdiction of the Eastern District of Texas where, again, the relevant parties to the dispute have been named and joined. Bundren Affidavit, ¶¶ 125-131; *TH Agric & Nutrition, LLC*, 488 F.3d at 1297; and, *Elliott Mach. Corp.* 995 F.2d at 479-80.

For these reasons, this Court should grant Defendants' Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

## II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER DEFENDANTS AND, THEREFORE, PLAINTIFFS' COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(1)

This Court must also have subject matter jurisdiction over Defendants, which is limited to cases arising under the U.S. Constitution, federal law, and cases involving diversity of citizenship. 28 U.S.C. §§ 1331, 1332. Therefore, Plaintiffs must establish their standing in order for this Court to have subject matter jurisdiction. *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023); *TransUnion, LLC v. Ramirez*, 594 U. S. 413, 423-24 (2021); and, *CGM, LLC v. BellSouth Telecomms., Inc*., 664 F.3d 46, 52 (4th Cir. 2011). Plaintiffs, however, have failed to do so such that Plaintiffs are not the parties obligated under the Insurance Policy to pay BLG's defense costs and attorneys' fees rendered in connection with the State Action. *See* Doc 1, ¶¶ 11-22; Bundren Affidavit, ¶¶ 32, 40-46.

As such, this Court should refrain from exercising subject matter jurisdiction based on the doctrine of abstention because there was a pending state court action in Texas that was later removed to the Eastern District of Texas now pending before Judge Amos Mazzant. Bundren Affidavit, ¶¶ 125-131. The Eastern District of Texas provides Plaintiffs with an adequate opportunity to raise the same claims which Plaintiffs now allege in this lawsuit in connection with the Retainer Agreement and the State Action. Ultimately, this Court should dismiss this lawsuit pursuant to the doctrine of abstention. *Brillhart v. Excess Ins.,* 316 U.S. 491, 494-95 (1942) (court should abstain from exercising jurisdiction over declaratory-judgment action when pending state lawsuit presents same question between the same parties); *Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800, 817 (1976) (federal court should abstain if parallel suit is filed on same issues); *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (abstention appropriate on principles of judicial economy); *Gold-Fogel v. Fogel*, 16 F.4th 790, 799-800 (2021); *Casiano-Montanez v. State Ins. Fund Corp*., 707 F.3d 124, 128-29 (1st Cir. 2023); and, *Coles v. Granville*, 448 F.3d 853, 865-66 (6th Cir. 2006).

For these reasons, this Court should dismiss Plaintiffs' lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### III.    <u>THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR IMPROPER VENUE.</u>

This Court should also dismiss Plaintiffs' Complaint for improper venue pursuant to Rule 12(b)(3), 28 U.S.C. §1406(a-b), and 28 U.S.C. §1391(b)(1), and (2). Under § 1391, venue is only proper if (1) Defendants reside in the district where the suit is brought; (2) a substantial part of the claim occurred in the district where the suit is brought; or (3) a substantial part of the property that is the subject of the action is situated where the suit is brought. 28 U. S. C. §1391(b)(1-2); *Atlantic*

*Mar. Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.,* 571 U.S. 49, 55-56 (2013); and, *Daniel v. Am. Bd. of Emergency Med*., 428 F.3d 408, 431 (2nd Cir. 2005).

None of the factors in *Atlantic Mar. Constr. Co.* are present here because (1) Defendants do not reside in Missouri; (2) a substantial part of Plaintiffs' claim did not occur in Missouri but rather in Texas and other States by virtue of the submission of invoices to the Insurance Companies located in Kansas, Minnesota, and Maryland; and, (3) there is no property that is the subject matter of this lawsuit which is situated in Missouri. Bundren Affidavit, ⁋⁋ 3-48. Moreover, the Retainer Agreement was negotiated and performable, as stated on the face of the Retainer Agreement, in Texas. Bundren Affidavit, ⁋ 26-27. The alleged "excessive" billing of invoices, which Plaintiffs erroneously complain of, were based upon records and evidence in Texas, and were generated and delivered to the non-resident Insurance Companies from Texas. Bundren Affidavit, ⁋⁋ 34-44.

Plaintiffs do not claim that any of the alleged "excessive" invoices or the alleged "excessive hours" *occurred* in Missouri or the Eastern District of Missouri. *See* Doc 1. In fact, the Complaint admits that Defendants' invoices were "submitted to the insurer for payment." Doc 1, ⁋ 13. The Complaint implicitly admits that a "substantial" part of the claimed activities giving rise to this lawsuit did not occur in Missouri nor the Eastern District of Missouri. Other than a recitation of the general venue statute, Plaintiffs have failed to allege—much less offer to prove—that a substantial part of BLG's invoicing and billing activities occurred in Missouri or the Eastern District of Missouri. Ultimately, this lawsuit has no connection to Missouri or to the Eastern District of Missouri.

As such, this Court should grant Defendants' Motion to Dismiss for improper venue pursuant to Rule 12(b)(3).

8

## IV. **THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR FORUM NON CONVENIENS.**

Alternatively, this Court should dismiss this lawsuit based on forum non conveniens because there is an adequate alternative forum available to Plaintiffs and the balance of private and public interests favor dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55, n.22 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). Specifically, Plaintiffs already have an adequate forum to seek redress of their alleged claims against Defendants in the Eastern District of Texas. Bundren Affidavit, ¶¶ 125-131; *see also Piper Aircraft Co.*, 454 U.S. at 254 n. 22; *Ranza v. Nike, Inc*., 793 F.3d 1059, 1077-78 (9th Cir. 2015); *Stroitelstvo Bulg. Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009); and, *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211-12 (5th Cir. 2010).

As stated ad nauseam, none of the activities alleged by Plaintiffs occurred in Missouri nor in the Eastern District of Missouri. Bundren Affidavit, ¶¶ 60-124. The Retainer Agreement was negotiated in and performed in Texas. Bundren Affidavit, ¶¶ 23-24, 36. The legal services provided by Defendants to Plaintiffs and others were provided in Texas, Georgia, Florida, Maryland, and Louisiana, among other States. Bundren Affidavit, ¶¶ 59-124. And the Insurance Companies responsible for issuing payment to BLG are not parties to this lawsuit. *See* Doc 1. Nor do the Insurance Companies have or maintain a principal place of business in Missouri. Bundren Affidavit, ¶¶ 34-35.

More importantly, no material witnesses nor any documents or records relevant to the claims asserted by Plaintiffs are located in Missouri. Access to any documents or records relevant to this lawsuit are more readily accessible and available in Texas and Florida where Defendants and Plaintiffs reside, respectively. *Gulf Oil Corp.*, 330 U.S. at 508; *Ranza*., 793 F.3d at 1078; *Kisano Trade & Invest Ltd.*, 737 F.3d at 877-878. And, the Eastern District of Texas has authority

under the Federal Rules of Civil Procedure and federal law to compel unwilling witnesses to testify. *Gulf Oil Corp.*, 330 U.S. at 508. Lastly, in accordance with the Retainer Agreement, the Insurance Companies, Plaintiffs, and Defendants each agreed that the law of the State of Texas controls the disposition of this lawsuit. Bundren Affidavit, ¶¶ 24-27. Therefore, the Eastern District of Texas should adjudicate this lawsuit. *Gulf Oil Corp.*, 330 U.S. at 508-09.

For these reasons, Plaintiffs' claims can and should be heard in the Eastern District of Texas—Sherman Division. Therefore, this Court should grant Defendants' Motion to Dismiss for Forum Non Conveniens.

## CONCLUSION

In sum, Plaintiffs' Complaint should be dismissed pursuant to the following: (1) lack of subject matter jurisdiction under Rule 12(b)(1); (2) lack of personal jurisdiction under Rule 12(b)(2); (3) improper venue under Rule 12(b)(3); and forum non conveniens.

Dated: October 18, 2024          Respectfully submitted,

JENKINS & KLING, P.C.

By: /s/ *Liam R. Brannon*
    Liam R. Brannon, #73640MO
    Katherine I. McLaughlin, #69734MO
    150 N. Meramec Ave., Suite 400
    St. Louis, Missouri 63105
    (314) 721-2525 Phone
    (314) 721-5525 Fax
    lbrannon@jenkinskling.com
    kmclaughlin@jenkinskling.com
    *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 18, 2024, the foregoing was filed electronically to be served to all counsel of record by operation of the Court's electronic filing system.

<em>/s/ Liam R. Brannon</em>