UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BUNDREN LAW GROUP, PLLC,<br><br>*Plaintiff*,<br><br>vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY; ONE BEACON PROFESSIONAL INSURANCE GROUP; ONE BEACON PROFESSIONAL INSURANCE, INC.; INTACT INSURANCE GROUP, USA, LLC; TGP COMMUNICATIONS, LLC; JAMES "JIM" HOFT, INDIVIDUALLY; AND JOE HOFT, INDIVIDUALLY,<br><br>*Defendants*. | CASE NO. 4:24-CV-00900-ALM<br><br>JURY TRIAL DEMANDED |

# JIM HOFT & TGP COMMUNICATIONS, LLC'S
# MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

| | | |
|---|---|---|
| TABLE OF AUTHORITIES | | III |
| SUMMARY OF THE ARGUMENT | | 1 |
| 1.0 | BACKGROUND | 2 |
| 1.1 | Operative Facts as to Claims | 2 |
| 1.2 | Facts Relevant to Personal Jurisdiction and Venue | 2 |
| 2.0 | ARGUMENT AND AUTHORITIES | 3 |
| 2.1 | This case should be dismissed for lack of personal jurisdiction. | 3 |
| 2.2 | This case should be dismissed for improper venue. | 6 |
| 2.3 | Bundren's Claims are Meritless No Matter Where Litigated. | 8 |
| 2.3.1 | *The Insurers are Not Proper Parties* | 9 |
| 2.3.2 | *Bundren's Claims Against his Clients Should be Dismissed* | 11 |
| 2.3.3 | *TGP and the Hofts are Not Liable for Breach of Contract* | 11 |
| 2.3.4 | *Bundren has No Claim for Promissory Estoppel* | 13 |
| 2.3.5 | *Bundren has No Valid Third-Party Beneficiary Claim* | 14 |
| 3.0 | CONCLUSION | 15 |

TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 9, 10

*Blalock v. United States*, 844 F.2d 1546 (11th Cir. 1988) .............................................................. 10

*Bowlby v. City of Aberdeen*, 681 F.3d 215 (5th Cir. 2012) ............................................................... 9

*Brock v. Baskin-Robbins USA Co.*, 113 F. Supp. 2d 1078 (E.D. Tex. 2000) .................................... 2

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................................... 4

*Cartlidge v. Hernandez*, 9 S.W.3d 341 (Tex. App. 1999) ................................................................. 8

*Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nig.*, 850 F. Supp. 2d 277 (D.D.C. 2012) ......... 12

*D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455 (7th Cir. 1993) ....................................................... 10

*Drywall Elements, LLC v. Edward Wolff & Assocs., LLC*, No. 4:21-CV-00537-CAN, 2023 U.S. Dist. LEXIS 54080 (E.D. Tex. Mar. 29, 2023) .............................................................. 11

*E. Concrete Materials, Inc. v. Ace Am. Ins. Co.*, 948 F.3d 289 (5th Cir. 2020) ................................ 5

*First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017) ......................................................................... 16

*Gabarick v. Laurin Mar. (America) Inc.*, 635 F. Supp. 2d 499 (E.D. La. 2009) .............................. 13

*Graham v. Dyncorp, Int'l, Inc.*, 973 F. Supp. 2d 698 (S.D. Tex. 2013) ............................................. 6

*Hardy v. Scandinavian Airlines Sys.*, No. 23-30632, 2024 U.S. App. LEXIS 21543 (5th Cir. Aug. 26, 2024) ..................................................................................................................... 5

*Lamar Cty. Elec. Coop. Ass'n v. McInnis Bros. Constr., Inc.*, Civil Action No. 4:20-CV-930, 2021 U.S. Dist. LEXIS 51869 (E.D. Tex. Mar. 19, 2021) .......................................................... 13

*Latshaw v. Johnston*, 167 F.3d 208 (5th Cir. 1999) .......................................................................... 4

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) ...................... 9

*Marine Indem. Ins. Co. of America v. Lockwood Warehouse and Storage*, 115 F.3d 282 (5th Cir 1997) .. 13

*McGrath v. Chesapeake Bay Diving*, No. 06-11413, 2010 U.S. Dist. LEXIS 2776 (E.D. La. Jan. 14, 2010) .......................................................................................................................... 13

*Melancon v. Petrostar Corp.*, 762 F. Supp. 1261 (W.D. La. 1991) ................................................. 11

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) .................................................. 4

*Mumphrey v. Gregg Cty.*, No. 2-05-CV-22 (TJW), 2005 U.S. Dist. LEXIS 39409 (E.D. Tex. July 8, 2005) ........................................................................................................................................ 11

*Murphy v. ABA Ranch, LLC*, Civil Action No. 4:17-CV-00215, 2018 U.S. Dist. LEXIS 129978 (E.D. Tex. Aug. 2, 2018) ................................................................................................................. 14

*Nagle v. Nagle*, 633 S.W.2d 796 (Tex. 1982) ......................................................................................... 15

*Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387 (E.D. Tex. 2022) ...................................... 7

*Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002) ..................................................... 3

*Pace v. Cirrus Design Corp.*, No. 23-60465, 2024 U.S. App. LEXIS 13317 (5th Cir. June 3, 2024) .... 4

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) ................... 3, 4, 6

*Ruff v. Ruff*, Civil Action No. 4:22-cv-00321, 2023 U.S. Dist. LEXIS 98426 (E.D. Tex. June 6, 2023) ........................................................................................................................................ 16

*Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380 (5th Cir. 2007) .................................................. 12

*Tawes v. Barnes*, 340 S.W.3d 419, 428 (Tex. 2011) ............................................................................ 17

*Travelhost, Inc. v. Blandford*, 68 F.3d 958 (5th Cir. 1995) ................................................................. 11

*White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445 (1982) ......................................... 12

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ............................................................. 8

**STATUTES**

28 U.S.C. § 1391 ........................................................................................................................................ 7

**RULES**

Fed. R. Civ. P. 12 ........................................................................................................................... 1, 6, 8, 9

Fed. R. Civ. P. 65 .................................................................................................................................... 10

Fed. R. Civ. P. 8 ........................................................................................................................................ 9

Mo. R. Prof. Conduct 4-1.5 ..................................................................................................................... 12

## SUMMARY OF THE ARGUMENT

Rather than file compulsory counterclaims in the first-filed suit in the Eastern District of Missouri, Plaintiff Bundren Law Group, PLLC ("Plaintiff" or "Bundren") multiplied proceedings in this action, raising meritless claims. The First Amended Complaint (ECF No. 39) fares no better than the original state court petition (ECF No. 1-1) or his so-called "Original Complaint" (ECF No. 7). This matter should be dismissed for lack of personal jurisdiction under to Rule 12(b)(2), for improper venue under Rule 12(b)(3),[1] and for failure to state a claim per Rule 12(b)(6), or at the least the Motion to Transfer Venue (ECF No. 9) should be granted, and the Eastern District of Missouri will consolidate it with the first-filed action, Case No. 4:24-cv-01304, which was filed on September 27, 2024.

Despite this being his *third* iteration of the complaint, Bundren has again failed to allege sufficient facts for the Court to assert personal jurisdiction over Defendant TGP. Specifically, Plaintiff fails to allege that TGP has sufficient contacts with the State of Texas to justify this Court taking specific personal jurisdiction over it, or that Bundren's claims arise from TGP's Texas conduct. All that Bundren makes are conclusory allegations regarding personal jurisdiction, which the Court should ignore. Regarding improper venue under Fed. R. Civ. P. 12(b)(3), virtually none of the facts underlying this case occurred in this judicial district, the property at issue in this case is not in this judicial district, and Bundren had no basis for filing the case here beyond a desire to forum shop. This case should not have been filed in this Court. It properly belongs with the United States District Court for the Eastern District of Missouri, where it should have been filed as a compulsory counterclaim to a first-filed action.

---

[1] Movants note that their motion to transfer venue (ECF No. 9) otherwise remains pending. Dismissal would, of course, obviate the need to transfer venue.

## 1.0 BACKGROUND

### 1.1 Operative Facts as to Claims

Bundren was retained to work on case in St. Louis, Missouri. He was to represent TGP, Jim Hoft, and Joseph Hoft in *Ruby Freeman and Wandrea Moss v. James Hoft, Joseph Hoft, and TGP Communications, LLC d/b/a THE GATEWAY PUNDIT*, in the Circuit Court of St. Louis City, Missouri, Twenty-Second Judicial Circuit (the "Freeman Moss lawsuit"). *See* FAC at ¶ 40 & 45. In the course of such representation, Bundren submitted invoices for purported legal services and expenses, a portion of which were paid. FAC at ¶¶ 51 & 52. Bundren is not a party to the insurance contract. *See* **Exhibit A** to the Declaration of John Burns.[2] Although Bundren pleads he performed his *obligations* (FAC at ¶ 98), Bundren conspicuously omits any allegation that Bundren performed the *services* in the invoices it claims are unpaid.

### 1.2 Facts Relevant to Personal Jurisdiction and Venue

On December 5, 2021, Ruby Freeman and Wandrea Moss filed the Freeman Moss lawsuit in St. Louis, Missouri. On January 10, 2024, TGP retained Bundren to assist in the defense, in fact, to take over as lead counsel in the case. Bundren traveled to and performed all known work under the retainer agreement in Missouri.[3] The agreement with Bundren did not call for any work to be performed in Texas. *See* Burns Decl. **Exhibit B**; *see also* Burns Decl. at ¶¶ 5. In fact, no part of the Missouri case at all had anything to do with Texas. Obviously, Bundren had the right to work on the file in Texas, but frankly he had the right to work on it from Hawaii or Djibouti if he wanted to.

---

[2] Although Bundren does not attach the insurance agreement, "[i]n considering a Rule 12(b)(6) motion, the district court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Brock v. Baskin-Robbins USA Co.*, 113 F. Supp. 2d 1078, 1092 (E.D. Tex. 2000) (quotation marks omitted).

[3] With the exception of one deposition in Georgia, which he attended remotely.

Bundren only makes a conclusory allegation that its "damages and injuries" and "all or a substantial part of the events or omissions" are in Collin County, Texas (FAC at ¶ 21), which is not only wholly conclusory, without alleging any actual facts, it is still demonstrably false, given Bundren's travel to Missouri and elsewhere. *see also* Burns Decl. at ¶ 6.

Notably, nowhere in the FAC does Bundren allege any actual performance of the purported services made subject of the unpaid invoices in Texas. Similarly, in opposition to the motion to transfer venue, which would be an apt place to assert facts relating to Texas, Bundren identifies none of the alleged services as having been performed in Texas, only making general allegations that "[s]ubstantially all of the work…was performed in the State of Texas." ECF No. 41-1 at ¶¶ 23 & 124. The only connection this case has to Texas is that Bundren lives there, his office is purportedly based there, and he seems to believe that there is a tactical advantage to litigating there.

## 2.0    ARGUMENT AND AUTHORITIES

### 2.1    This case should be dismissed for lack of personal jurisdiction.

As set forth in the FAC, none of the defendants reside in this judicial district or the State of Texas. So, Plaintiff must show that TGP directed activities toward Texas or purposely availed itself of the privileges of conducting activities in Texas, and that Plaintiff's causes of action arose out of or resulted from TGP's Texas-related contacts. *See Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). Establishing a prima facie case for personal jurisdiction "requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The Court is not required to accept conclusory allegations, even if uncontroverted. *See Panda Brandywine*, 253 F.3d at 869.

Plaintiff makes no specific allegations that TGP or Jim Hoft have minimum contacts with Texas. All they did was contract with a Texan, which is insufficient. "Although a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted, entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007) (finding a visit to the forum state to negotiate a contract is not a sufficient contact to support specific personal jurisdiction). At best, Plaintiff's arguments, even if true, relate to the foreseeability of Bundren feeling injury in Texas, "which is not a sufficient benchmark for specific jurisdiction." *Panda Brandywine*, 253 F.3d at 869, citing *Burger King*, 471 U.S. at 474.

In the unlikely event that the Court determines that it could assert jurisdiction over TGP, doing so would "offend traditional notions of fair play and substantial justice." *Pace v. Cirrus Design Corp.*, No. 23-60465, 2024 U.S. App. LEXIS 13317, at *10 (5th Cir. June 3, 2024). The Court should weigh five factors to determine whether exercising jurisdiction over Plaintiff would be fair and just: (1) the burden on the nonresident defendant; (2) the forum state's interest; (3) plaintiff's interest in securing relief; (4) interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering societal policies. *See Hardy v. Scandinavian Airlines Sys.*, No. 23-30632, 2024 U.S. App. LEXIS 21543, at *21 (5th Cir. Aug. 26, 2024). "[T]he most important factor is the burden on the defendant." *E. Concrete Materials, Inc. v. Ace Am. Ins. Co.*, 948 F.3d 289, 299 (5th Cir. 2020).

The burden on TGP to defend itself in Texas is unbearably high. TGP is a Missouri corporation that does business primarily in Florida and Missouri. Bundren's claims all arise out of and relate to litigation that was pending in Missouri state court, where Bundren's actions were governed by the State Bar of Missouri. The retainer agreement was for Missouri litigation and did not require jurisdiction or venue in the State of Texas for any disputes arising out of it. And, Bundren has already been sued by TGP in a first-filed suit, as set forth in more detail in its motion to transfer venue, incorporated herein by reference.

Additionally, given that this dispute concerns a Missouri client in Missouri litigation with a lawyer that was being governed by Missouri's ethical rules, Missouri's interest in adjudicating this dispute is much greater than Texas's interest to the extent that Texas even has an interest at all. After all, while Bundren's principal may be a Texas attorney, he was acting under authority of Missouri law in the case. Frankly, for a lawyer to come to Missouri to litigate a case and then claim that he cannot be sued in Missouri for malfeasance nor malpractice stemming from that representation in Missouri simply boggles the mind.

Missouri is the location of the majority of the documents and witnesses—not only is TGP a Missouri entity, the witnesses significantly include Missouri residents (including, but not limited to, Matthew Ampleman, Edward Dowd, John Danforth, Peter Dunne, Hon. Elizabeth B. Hogan, and Hon. Joseph P. Whyte). *See* Burns Decl. at ¶¶ 9. Should all these witnesses need to travel to Texas, because a lawyer who interacted with all of them in a Missouri case decided to sue his client in Texas, after a first-filed action in Missouri was served on him?

Finally, the Eastern District of Missouri is better equipped to rule on conduct that occurred in Missouri than a Texas court would be. While Bundren is certainly eager to pursue relief, he can

easily do so in Missouri. After all, Missouri was not an inconvenient venue when he engaged in activity in the state to destroy his client's business. The FAC should be dismissed for lack of personal jurisdiction. Bundren did not make a sufficient prima facie case.

**2.2    This case should be dismissed for improper venue.**

Even if this Court has personal jurisdiction over Defendant TGP, it should be dismissed for improper venue. *See* Fed. R. Civ. P. 12(b)(3). Once a defendant challenges venue, the plaintiff has the burden of demonstrating that venue is proper. *See Graham v. Dyncorp, Int'l, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013).

Bundren claims that venue is proper in this Court based on an allegation that "all or a substantial part of the events or omissions giving rise to the claim" took place in this District. ECF No. 39 at ¶ 31. First, the FAC merely quotes the statute verbatim. It does not expand or elaborate because *nothing* happened in this District to make venue proper here. This Court does not to accept conclusory allegations as true. *See Panda Brandywine*, 253 F.3d at 869. Necessarily, Bundren is, *sub silentio*, invoking the venue provision of 28 U.S.C. § 1391(b)(2).[4]

Bundren is, of course, asking this Court assume venue is proper in this District through circular reasoning. The central issue in this case (and the Eastern District of Missouri case) is Bundren's fraudulent invoices that falsely claim work performed that was not actually performed—work that was performed in Missouri, for a Missouri client, in a Missouri case, governed by Missouri law and the Missouri rules of professional conduct. While Bundren may have done some work at his home office in this District, all that can actually be proven is his appearances in St. Louis,

---

[4] There is no legitimate dispute that none of the Defendants reside in this District or that it could not have been brought in the Eastern District of Missouri, thereby precluding venue under the other provisions of Section 1391(b).

Missouri, within the ambit of the Eastern District of Missouri. Texas' only connection to the claims in the case is that Bundren is there.[5] This case should be dismissed for improper venue.

Although Bundren also claims that its "damages and injuries" (ECF No. 39 at ¶ 21) occurred here, such is not implicated by the venue statute. Nor does mere residence in the District "necessarily mean that the events or injury occurred there." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 404 (E.D. Tex. 2022) (Mazzant, U.S.D.J.). There is no basis for this Court to assert venue over this litigation, which should be dismissed.

To be clear—there is a proper venue for this case under 28 U.S.C. § 1391(b)(2) & (3)—the Eastern District of Missouri. A substantial part of the events giving rise to the claim occurred there—Bundren appeared there on multiple occasions to litigate the Freeman Moss lawsuit in the Missouri court. And, Bundren and all Defendants are subject to personal jurisdiction there.

There can be little doubt that the Eastern District of Missouri has personal jurisdiction over the defendants—TGP and Jim Hoft are subject to general jurisdiction there and Joe Hoft was a defendant in the Freeman Moss lawsuit based on his work with TGP. The insurance companies are similarly subject to personal jurisdiction in Missouri because their policy related to the indemnification and defense of the Freeman Moss lawsuit. Only Bundren contests personal jurisdiction there.

Not only did Bundren contract with TGP, a Missouri citizen (which is insufficient itself), it was specifically to perform services in Missouri—to defend the Freeman Moss lawsuit in the courts of Missouri up to and including trial. As a Texan, Bundren should have anticipated being haled into

---

[5] Bundren additionally claims that "a substantial part of the property that is subject of this action is situated" in this District. ECF No. 39 at ¶ 31. However, it does not specify what that property could possibly be, and the Prayer to the FAC only requests money damages.

Missouri to address his representation there. *Compare Cartlidge v. Hernandez*, 9 S.W.3d 341, 348 (Tex. App. 1999) (Texas could exercise jurisdiction over Nevada attorney who represented Texas client in Nevada litigation). While merely entering into an agreement to represent a client is insufficient to confer jurisdiction, where the matter or claim arises from the lawyer's contacts, including breaches of fiduciary duty bases on failure to disclose material information, there is personal jurisdiction in the forum. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). The only identifiable services Bundren performed were in Missouri; contrary to his assertion in his opposition, his affidavit does not actually aver performance of the allegedly billed services in Texas. The invoices were directed at Missouri. Here, the issues directly relate to Bundren's breaches, including failing to disclose that his bills are fraudulent. And, the Missouri court would be better suited to assess whether Bundren's bills for performance in a Missouri case were fraudulent or unreasonable—there are no complex issues of Texas law in this matter. Moreover, as noted above, it would not offend notions of fair play and substantial justice where only Bundren is located in Texas; most of the witnesses, noted above, are in Missouri, and all of Bundren's records should be digital, rendering them no more a burden to produce in Missouri than Texas.

**2.3     Bundren's Claims are Meritless No Matter Where Litigated.**

In its Order Dissolving TRO, this Court stated it was "dubious" as to Bundren's likelihood of success on the merits of its claims (ECF No. 28 at 8). In fact, it stated "[i]f maintaining the TRO is the endzone, Bundren has not even made it to the redzone." *Id.* at 7.

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider

"the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* Bundren fails to plausibly suggest any entitlement to relief.

### 2.3.1 The Insurers are Not Proper Parties

The Court already determined that Bundren had no contractual, third-party, or promissory estoppel based claim against the insurer defendants. *Id.* at 9-10. For the reasons set forth in the motion to dissolve, incorporated herein by reference (ECF No. 17), the dissolution order, which Bundren made no effort to then plead-around in his FAC, and as otherwise set forth below, Counts 1, 2 & 3 against the insurance companies should be dismissed.

Bundren attempts to keep in the insurers through a specious claim for contempt of the original state court TRO (FAC Count 4). That is not a cause of action. *See D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) ("We begin with the observation that although Patrick initiated the proceeding below with a 'complaint' purporting to state a cause of action for civil

contempt, in fact, 'there is no such thing as an independent cause of action for civil contempt.'") (quoting *Blalock v. United States*, 844 F.2d 1546, 1550 (11th Cir. 1988)). Moreover, a "party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). There was no order in effect. The state court TRO was superseded by the one he sought and obtained in this Court (ECF Nos. 4 & 6), which was thereupon dissolved (ECF No. 28). If Bundren believed the state court order was still in effect, why did he represent to the Collin County court that the removal *vacated the TRO* when sought a return of his bond? *See* Burns Decl. **Exhibit C,** at 2. Moreover, the reimbursement of the bond nullified the TRO itself. *See* Fed. R. Civ. P. 65(c) (requiring bond as predicate for order). Thus, the insurers were in contempt of nothing. Of course, Bundren also fails to show that they did anything even during the period he claims the TRO was in place.

The remaining claims are not causes of action, but are remedies. Count 5 is for attorneys' fees, which is not a cause of action. *See Drywall Elements, LLC v. Edward Wolff & Assocs., LLC*, No. 4:21-CV-00537-CAN, 2023 U.S. Dist. LEXIS 54080, at *7-9 (E.D. Tex. Mar. 29, 2023) (collecting cases). Count 6 seeks "actual damages," but only for the same causes of action raised in the preceding counts and, is therefore, duplicative. *See e.g., Mumphrey v. Gregg Cty.*, No. 2-05-CV-22 (TJW), 2005 U.S. Dist. LEXIS 39409, at *6 (E.D. Tex. July 8, 2005) (dismissing claim as duplicative). Count 7 is for prejudgment interest, but "an award of prejudgment interest is not a substantive cause of action." *Melancon v. Petrostar Corp.*, 762 F. Supp. 1261, 1263 (W.D. La. 1991). Similarly, Count 8 is for post-judgment interest, and "Postjudgment interest is more akin to attorney's fees or costs, requests for which 'raise legal issues collateral to the main cause of action[.]'" *Cont'l Transfert Technique, Ltd. v.*

*Fed. Gov't of Nig.*, 850 F. Supp. 2d 277, 287 (D.D.C. 2012) (quoting *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 451 (1982)). Thus, all of the claims against the insurers are meritless and should be dismissed.

### 2.3.2 Bundren's Claims Against his Clients Should be Dismissed

In addition to Counts 5-8, which should be dismissed as mere remedies and not independent causes of action, as stated above, Bundren raises three causes of action against TGP and the Hofts: 1) breach of contract; 2) promissory estoppel; and 3) third-party beneficiary. Just as they lacked merit against the insurers, Bundren has failed to state a claim against his clients.

### 2.3.3 TGP and the Hofts are Not Liable for Breach of Contract

Bundren failed to plead a breach of contract. Although, of all of Bundren's claims, this is the only one that could hypothetically be properly brought, Bundren did not state a valid claim. The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Two contracts are asserted—the insurance agreement and the representation agreement. Bundren is not a party to the insurance agreement. *See* Burns Decl., **Exhibit A**. Bundren cannot sue upon the Insurance Policy for, as the Court previously observed, "no person can sue upon a contract except … he in privity with it." *Lamar Cty. Elec. Coop. Ass'n v. McInnis Bros. Constr., Inc.*, Civil Action No. 4:20-CV-930, 2021 U.S. Dist. LEXIS 51869 at *10 (E.D. Tex. Mar. 19, 2021) (Mazzant, U.S.D.J.) The insurance company never hired Bundren, and there was never privity of contract between Bundren and the insurance company. Moreover, the duty of the insurance companies is to insureds.

The primary obligation is to pay up to the limits of the policy, whether for indemnity or defense. The policy does not prioritize defense costs over indemnity, and, as discussed below, equity dictates that the proceeds should favor the insured's underlying settlement. *See Gabarick v. Laurin Mar. (America) Inc.*, 635 F. Supp. 2d 499, 509 (E.D. La. 2009) ("To the extent that the priority of claims is not controlled by policy language or controlling law, determination of priority of claims 'is neither a conclusion of law nor a factual finding, but is, instead, an equitable decision.' *Marine Indem. Ins. Co. of America v. Lockwood Warehouse and Storage*, 115 F.3d 282, 287 (5th Cir 1997)"). In any defense of an insured with a depleting policy, there is always the possibility of exhaustion, at which point the insurance company has no further duty. *See, e.g., McGrath v. Chesapeake Bay Diving*, No. 06-11413, 2010 U.S. Dist. LEXIS 2776, at *12 n.3 (E.D. La. Jan. 14, 2010) ("where the limits of an eroding policy are exhausted, the duty to defend expires"). Instead, TGP hired Bundren, and the insurance company, in its policy with TGP, agreed to pay "reasonable and necessary legal fees" within the policy, including, where applicable, the fees of retained counsel. Burns Decl., **Exhibit A**. Thus, Bundren has no viable claim for breach of the insurance agreement.

Bundren can show no breach of the representation agreement. TGP and the Hofts are only obliged to pay after the insurance companies have made their determination as to what fees, if any, are reasonable. Only reasonable fees may be charged and collected by an attorney. *See* Mo. R. Prof. Conduct 4-1.5(a).

Notably, as to the representation agreement, Bundren fails to properly allege performance and damages. While Bundren alleges submission of invoices, conspicuously absent is any allegation that the specific work claimed in those invoices (which have not been made part of the pleading) was actually performed. By that same token, Bundren has not shown damage if the work was not

actually performed. Invoices are not sufficient to claim damages. The dockets of the courts of this circuit and nationwide routinely include matters involving falsified and fraudulent invoices. A plaintiff cannot simply give a damages amount without supporting documentation. *See Murphy v. ABA Ranch, LLC*, Civil Action No. 4:17-CV-00215, 2018 U.S. Dist. LEXIS 129978, at *13 (E.D. Tex. Aug. 2, 2018). Bundren cannot supply it non-fraudulently. A truthful affidavit by Bundren would belie his invoices and show he violated his duty to not charge unreasonable fees.

Due to Bundren's lack of privity of contract with the insurance companies, his failure to allege performance, and his fraudulently claimed damages, Bundren's contract claim must be dismissed.

### 2.3.4   Bundren has No Claim for Promissory Estoppel

Bundren failed to allege a claim of promissory estoppel. Bundren must assert four elements: (1) a promise (2) that the promisor should have expected would lead the promisee to some definite and substantial injury, (3) that such an injury occurred, and (4) that injustice that may be remedied only by enforcing the promise. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982). In Texas, a promissory estoppel claim is limited to cases where the promise was "to sign a written agreement which itself complies with the Statute of Frauds." *Id.*

Bundren identifies no promises made other than the Insurance Policy and the representation agreement. The insurance companies made no promises to Bundren, and Bundren had no reason to believe there was a promise. And, as stated in the retainer agreement, Bundren's invoices were to be directed to TGP, not the insurance companies. The only promise Bundren references is a promise between TGP and Bundren to pay legal fees. Bundren had no reason to solely rely on the insurance.

Although Bundren asserts promises of payment of defense costs for legal services and payment of invoices (FAC at ¶ 103), there are two significant flaws in these conclusory allegations. First, he has not asserted performance of legal services. Second, the representation agreement was for the "attorney's fees and expenses incurred in the Litigation[.]" Burns Decl., **Exhibit B**. Bundren cannot compel payment of fraudulent invoices.

Bundren also has suffered no definite and substantial injury. As stated above, Bundren has already been partially paid on his bills and unpaid fraudulent invoices are not evidence of injury. Based on Bundren's inability to prove a promise to which he was a party, detrimental reliance, and injury, he fails on his promissory estoppel claim.

### 2.3.5 Bundren has No Valid Third-Party Beneficiary Claim

Bundren is not a third-party beneficiary of the Insurance Policy.[6] A third-party beneficiary claim requires as follows:

> As a general rule, the benefits and burdens of a contract belong solely to the contracting parties, and "no person can sue upon a contract except he be a party to or in privity with it." An exception to this general rule permits a person who is not a party to the contract to sue for damages caused by its breach if the person qualifies as a third-party beneficiary. Absent a statutory or other legal rule to the contrary, a person's status as a third-party beneficiary depends solely on the contracting parties' intent. Specifically, a person seeking to establish third-party-beneficiary status must demonstrate that the contracting parties "intended to secure a benefit to that third party" and "entered into the contract directly for the third party's benefit." It is not enough that the third party would benefit—whether directly or indirectly—from the parties' performance, or that the parties knew that the third party would benefit. Nor does it matter that the third party intended or expected to benefit from the contract, for only the "intention of the contracting parties in this respect is of controlling importance." To create a third-party beneficiary, the contracting parties must have intended to grant the third party the right to be a "claimant" in the event of a breach.

*First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017)(internal citations omitted). Bundren fails to meet

---

[6] It is unclear if this claim is asserted against TGP and the Hofts due to the vague drafting.

these requirements.

Bundren claims he is a third-party beneficiary under the policy, but he is not. There is a presumption against third-party beneficiary status, and to overcome this presumption, a party must establish that the contracting parties "intended to secure a benefit to that third party" and that they "entered into the contract for the third party's benefit." *Ruff v. Ruff*, Civil Action No. 4:22-cv-00321, 2023 U.S. Dist. LEXIS 98426, at *19 (E.D. Tex. June 6, 2023) (Mazzant, U.S.D.J.). Bundren is not mentioned in the Policy. Bundren is not an insured. The Policy predates Bundren's relationship with TGP, and, thus, his services could not have been contemplated at that time. There is no allegation or evidence either of them intended to benefit Bundren at that time. The Policy contains no "sufficiently clear and unequivocal language demonstrating" that TGP and the insurance company intended for Bundren to directly benefit. *Tawes v. Barnes*, 340 S.W.3d 419, 428 (Tex. 2011). Thus, his claim fails. Moreover, as noted above, there has been no breach and Bundren's fraud does not constitute an injury.

### 3.0 CONCLUSION

There is no personal jurisdiction over TGP or Jim Hoft. Bundren filed this case in the wrong venue, an affront to the first-filed Missouri federal case. And, most important, none of Bundren's claims in this third version of his complaint are sufficiently pleaded. This is merely an effort by Bundren to commit fraud on his home turf and weaponize the courts, violating his ethical obligations to his clients. In light of the foregoing, especially the fact that even after three iterations of the complaint, Bundren cannot articulate supportable claims this matter should be dismissed with prejudice, and if any claims survive, they should be transferred to the Eastern District of Missouri, where they will be consolidated with the first-filed case.

Dated: October 31, 2024.                    Respectfully Submitted,

                                            */s/ Marc J. Randazza*
                                            Darin M. Klemchuk
                                            State Bar No. 24002418
                                            darin.klemchuk@klemchuk.com
                                            Brian Casper
                                            State Bar No. 24075563
                                            brian.casper@klemchuk.com
                                            Mandi M. Phillips
                                            State Bar No. 24036117
                                            mandi.phillips@klemchuk.com
                                            **KLEMCHUK PLLC**
                                            8150 N. Central Expressway, 10th Floor
                                            Dallas, Texas 75206
                                            (214) 367-6000 – Direct

                                            John C. Burns (*Pro hac vice*)
                                            Burns Law Firm
                                            P.O. Box 191250
                                            St. Louis, Missouri 63119
                                            P: (314) 329-5040
                                            TBLF@pm.me

                                            Marc J. Randazza (*Pro hac vice*)
                                            Randazza Legal Group, PLLC
                                            4974 S. Rainbow Blvd., Ste. 100,
                                            Las Vegas, NV 89118
                                            P: (888) 887-1776
                                            ecf@randazza.com

                                            ATTORNEYS FOR DEFENDANT
                                            TGP COMMUNICATIONS, LLC

## CERTIFICATE OF SERVICE

This document was filed via the Court's CM/ECF system, on the date noted above and will be served all other Defendants by U.S. mail, postage prepaid, as follows:

Joe Hoft
1820 NE Jensen Beach Blvd., Suite 1120
Jensen Beach, FL 34957

                                            */s/ Marc J. Randazza*
                                            Marc J. Randazza