IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BUNDREN LAW GROUP, PLLC. | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | 4:24-CV-00900 |
| ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

---

## AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO TGP'S MOTION TO DISMISS

---

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF COLLIN | § |

Before me, the undersigned notary, on this day personally appeared Charles Bundren, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1.    My name is Charles Bundren. I do hereby swear under penalty of perjury that the facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.    I am over the age of 18 years, of sound mind, and a resident of the City of Frisco, Texas. I submit this affidavit based upon my personal knowledge and, if called upon to testify as to the contents of this Affidavit, I am legally competent to testify to the contents of the Affidavit in a court of law.

3.    I am a member of the State Bar of Texas. I received my membership and license to practice law in the State of Texas on November 12, 1979. My State Bar of Texas bar number is 03343200.

4.    I am a member of the bar of the Supreme Court of the United States, the United States Court of Appeals for the Fifth Circuit, the United States Court of Appeals for the Eleventh Circuit, the United States District Court for the Eastern District of Texas, the United States District Court for the Northern District of Texas, the United States District Court for the Southern District of Texas, and the United States District Court for the Western District of Texas.

5.    I have never been a member of the State Bar of Missouri. I have never been a member of any United States District Court in Missouri. I have never been a member of any United States Courts of Appeals in Missouri.

6.    I have never practiced law or operated a law practice in the State of Missouri.

7.    I have never been employed as a lawyer by any law firm or lawyer licensed to practice in the State of Missouri.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS          PAGE 2**

8.      I have never lived in Missouri and I do not own any property in Missouri.

9.      I have never been a citizen or resident of the State of Missouri.

10.     I have been a resident and citizen of the State of Texas, exclusively, since my date of birth on November 17, 1953.

11.     I am registered to vote as a citizen of Collin County in the State of Texas.

12.     I attended Texas Tech University in Lubbock, Texas and received my undergraduate degree in May of 1976.

13.     I received my law degree from Texas Tech University School of Law in Lubbock, Texas in May of 1979.

14.     I am currently employed by Bundren Law Group, PLLC ("BLG") in the capacity of manager and attorney. In my capacity as manager and attorney of BLG, I am responsible for overall management and supervision of BLG.

15.     I was one of the attorneys whom represented TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually (collectively, the "Hofts"), who were sued by Ruby Freeman ("Freeman") and Shea Moss ("Moss") in the case styled *Ruby Freeman, et al.,* v. *James Hoft, et al.*, Case No. 2122-CC09815, for, *inter alia,* defamation, disparagement, personal injury, harm to character or reputation, including libel and slander in connection with publications allegedly made by TGP and the Hofts. The lawsuit hereinafter is referred to as (the "Freeman-Moss Lawsuit").

16.     On November 16, 2023, I received a telephone call from Jim Hoft and Joe Hoft soliciting BLG and me to represent them and TGP in the Freeman Moss Lawsuit. I was in my offices in Collin County, Texas when I received the solicitation phone call.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**                **PAGE 3**

17.    On December 4, 2023 I received another telephone call from Jim Hoft and Joe Hoft soliciting BLG and me to represent them and TGP in the Freeman Moss Lawsuit. I was in my offices in Collin County, Texas when I received the solicitation phone call.

18.    On December 9, 2023, I received an email from Jim Hoft and Joe Hoft to the Insurance Companies requesting that the Insurance Companies retain BLG and me to represent Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation. I was in my office in Collin County, Texas when I received the email.

19.    On December 11, 2023, I received an email from Jim Hoft and Joe Hoft requesting my availability for a telephone call concerning BLG and me representing Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation. I was in my office in Collin County, Texas when I received the email.

20.    On December 11, 2023, I received an email from Jim Hoft and Joe Hoft providing BLG and me with a copy of the Insurance Policy which Jim Hoft and Joe Hoft stated covered Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation and will pay for defense costs. I was in my office in Collin County, Texas when I received the email.

21.    On December 11, 2023, I received a telephone call from Jim Hoft and Joe Hoft concerning the Insurance Companies, the Insurance Policy and Jim Hoft and Joe Hoft's request that the Insurance Companies retain BLG and me to represent Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation.

22.    On December 12, 2023, received an email from TGP's General Counsel, John Burns, Esq. providing me with a copy of the PLAINTIFF'S SECOND AMENDED PETITION filed in the Freeman Moss Litigation. I was in my office in Collin County Texas when I received the email.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**          **PAGE 4**

23.     On December 15, 2023, I received an email from Joe Hoft regarding the Insurance Companies' approval of BLG and me to represent Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation. I was in my office in Collin County, Texas when I received the email.

24.     On December 16, 2023, I received a telephone call from Joe Hoft regarding the Insurance Companies' approval of BLG and me to represent Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation. I was in my office in Collin County, Texas when I received the telephone call.

25.     On December 20, 2023, I received an email from John Burns, Esq., general counsel for TGP, attaching information regarding the Insurance Companies, outside counsel guidelines and insurance company management documents with regard to Insurance Companies' approval of BLG and me to represent Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation. I was in my office in Collin County, Texas when I received the email.

26.     On December 22, 2023, I received an email from Joe Hoft following up on the Insurance Companies' approval of BLG and me to represent Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation. I was in my office in Collin County, Texas when I received the email.

27.     On January 3, 2024, I received an email from Jim Hoft regarding the response from the Insurance Companies regarding approval of BLG's Retainer Agreement. I was in my office in Collin County, Texas when I received the email.

28.     On January 5, 2024, received a telephone call from Joe Hoft regarding the Insurance Companies' approval of BLG's Retainer Agreement and status concerning BLG and me to representing Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation. I was in my office in Collin County, Texas when I received the telephone call.

29.     On January 7, 2024, I received an email from John Burns, Esq., general counsel for TGP, regarding response from the Insurance Companies to the BLG proposed attorney retainer agreement. I was in my office in Collin County, Texas when I received that email.

30.     At the request of John Burns, Esq., on January 7, 2024, I prepared an email to Annamarie Haught, the Insurance Companies' representative, regarding a copy of the BLG Retainer Agreement and execution of the BLG Retainer Agreement. The email was sent from me from my office in Collin County, Texas.

31.     On January 8, 2024, received an email from John Burns, Esq., General Counsel for TGP, regarding my email to Annamarie Haught, the Insurance Companies' representative, regarding a copy of the BLG Retainer Agreement and execution of the BLG Retainer Agreement. I was in my offices in Collin County, Texas when I received the email.

32.     On January 8, 2024, I received an email from Annamarie Haught, the Insurance Companies' representative, regarding a the BLG Retainer Agreement and execution of the BLG Retainer Agreement. I was in my office in Collin County, Texas when I received the email.

33.     On January 10, 2024, I received an email from Annamarie Haught, the Insurance Companies' representative, approving the hourly rates contained in the BLG Retainer Agreement. I was in my office in Collin County, Texas when I received the email.

34.     On January 10, 2024, I revised the BLG Retainer Agreement in accordance with instructions received from Annamarie Haught, the Insurance Companies' representative. I was in my office in Collin County, Texas when the revisions were made.

35.     There were many other contacts with TGP, Jim Hoft, Joe Hoft, John Burns, Esq. and Annamarie Haught, the Insurance Companies' representative regarding the BLG Retainer Agreement and BLG and I representing Jim Hoft, Joe Hoft and TGP in the Freeman Moss

Litigation between December 9, 2023 and January 10, 2024 which I have not included in this affidavit. I received these contacts from TGP, Jim Hoft, Joe Hoft, John Burns, Esq. and Annamarie Haught, the Insurance Companies' representative while in my offices in Collin County, Texas.

36.     In addition to approving the hourly rates in the BLG Retainer Agreement, Annamarie Haught, the Insurance Companies' representative also approved payment of the full hourly rate for all travel.

37.     Although the Insurance Companies refused to sign the Retainer Agreement, Annamarie Haught, the Insurance Companies' representative promised to me that the Insurance Companies would pay BLG's invoices for defense costs for defending Jim Hoft, Joe Hoft and TGP in the Freeman Moss Litigation.

38.     I conducted, performed, and organized all activities and legal services for BLG with respect to the legal representation and defense of TGP and the Hofts in the Freeman-Moss Lawsuit.

39.     Substantially all of the work performed by BLG in the defense of TGP and the Hofts in the Freeman Moss Lawsuit was performed in the State of Texas and, more particularly, in Collin County, Texas

40.     I negotiated all contracts and the Retainer Agreement between BLG, TGP, the Hofts, and the Insurance Companies whom insured both TGP and the Hofts in connection with the Freeman-Moss Lawsuit.

41.     On January 10, 2024, TGP and the Hofts executed and delivered to me in Collin County, Texas the Retainer Agreement with BLG in connection with the Freeman-Moss Lawsuit. A true and correct copy of the January 10, 2024 Retainer Agreement (the "Retainer Agreement") is attached as Exhibit 1 to this Affidavit.

42.     The Retainer Agreement states, in part, in capitalized and bold font that:

**13. THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL OBLIGATIONS OF THE PARTIES ARE PERFORMABLE IN COLLIN COUNTY, TEXAS. THIS AGREEMENT CAN BE ENFORCEABLE BY ANY COURT OF COMPETENT JURISDICTION IN COLLIN COUNTY, TEXAS.**

*See* Exhibit 1.

43.    I am not a party to the Retainer Agreement and did not execute the Retainer Agreement in my individual capacity.

44.    I am making this affidavit in my capacity as a company representative of BLG on personal information known to me regarding BLG and BLG's legal representation and defense of TGP and the Hofts in the Freeman Moss Lawsuit.

45.    Before BLG agreed to undertake a defense of TGP and the Hofts in the Freeman Moss Lawsuit, BLG requested information on the existence of an insurance policy or agreement that insured or covered the reimbursement of defense costs and attorney fees for BLG's legal services.

46.    The Insurance Policy was provided by Jim Hoft, Joe Hoft, TGP, John Burns, Esq. and Annamarie Haught, the Insurance Companies' representative, to me before the execution of the Retainer Agreement on January 10, 2024, and I read and analyzed the payment obligations of the Insurance Companies for defense costs in defending TGP and the Hofts in the Freeman Moss Lawsuit.

47.    The Insurance Policy requires the Insurance Companies to pay the defense costs and defense costs invoices for defending TGP and the Hofts in the Freeman Moss Lawsuit.

48.    TGP and the Hofts represented and promised that they were insured under the Insurance Policy or agreement that would guarantee payment of BLG's defense costs and attorney fees invoices for legal representation in connection with the Freeman-Moss Lawsuit.

---

49.    Before execution of the Retainer Agreement, BLG received a copy of a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy"), which covered TGP and the Hofts for the defense costs and alleged claims and allegations asserted in the Freeman-Moss Lawsuit. A true and correct copy of the Insurance Policy is attached as Exhibit 2 to this Affidavit.

50.    Defendants have now produced another Insurance Policy which was attached to the Affidavit of John Burns. (Doc. 43-1, Ex. A). This Insurance Policy on its face states that:

"The **underwriter** will pay on behalf of the **insured** any **loss** and **defense costs** in excess of the Retention . . . that the **insured** is legally obligated to pay to third parties because of liability imposed by law or assumed under contract arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim** . . . ." (Doc. 43-1 at 14).

51.    The language of this Insurance Policy is consistent with the verbal promised made to me by Annamarie Haught, the Insurance Companies' representative, that the Insurance Companies would pay BLG's defense costs invoices in defending TGP and the Hofts in the Freeman Moss Lawsuit.

52.    The Insurance Policy requires the issuing insurance companies to pay for the defense costs incurred by BLG in defending in defending TGP and the Hofts in the Freeman Moss Lawsuit.

53.    BLG only agreed to defend TGP and the Hofts in the Freeman Moss Lawsuit based on the promise from Annamarie Haught, the Insurance Companies' representative, that the Insurance Companies would pay BLG's defense costs invoices in defending TGP and the Hofts in the Freeman Moss Lawsuit and but for that promise, BLG would not have agreed to defend TGP and the Hofts in the Freeman Moss Lawsuit.

54.    The Insurance Policy was issued and guaranteed by a number of insurance companies, including Atlantic Specialty Insurance Company ("Atlantic"), One Beacon

Professional Insurance Group and One Beacon Professional Insurance, Inc. (collectively, "Beacon"), and Intact Insurance Group, USA, LLC ("Intact"). Atlantic, Beacon, and Intact are hereinafter referred to collectively as the ("Insurance Companies").

55.    None of the Insurance Companies are headquartered or have their principal place of business in the State of Missouri.

56.    The Insurance Companies participated in and negotiated the terms of the Retainer Agreement, which was executed by their insureds, TGP and the Hofts.

57.    BLG relied on the Insurance Policy as the primary contract to pay BLG's defense costs, attorney fees, and expenses expended in defense of TGP and the Hofts in the Freeman Moss Lawsuit.

58.    I prepared BLG's invoices for legal services rendered and costs incurred to defend TGP and the Hofts in the Freeman-Moss Lawsuit. The daily timeslips and invoices were prepared and are maintained in BLG's offices in Collin County, Texas. The books and records supporting the time entries on the invoices are maintained in BLG's offices in Collin County, Texas.

59.    I was directed by the Insurance Companies, TGP, and the Hofts to submit invoices for BLG's legal services to the Insurance Companies (the "Invoices").

60.    Specifically, I was directed by TGP, the Hofts, and the insurance companies to submit the Invoices to Annamarie Haught ("Haught"), the claims representative for the Insurance Companies, TGP, and the Hofts.

61.    On information and belief, Haught does not reside in and is not a citizen of the State of Missouri.

62.    I submitted the Invoices to Haught for payment and with a copy of the invoices also submitted to TGP and the Hofts.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS          PAGE 10**

63.    All of the Invoices were prepared by me and my staff in BLG's offices in Collin County, Texas based upon timesheets maintained in Collin County, Texas and based upon records maintained in the offices of BLG in Collin County, Texas.

64.    All work as reflected on the Invoices was performed by BLG and its attorneys, legal assistants, and staff in Collin County, Texas except for travel which is described on the Invoices.

65.    On February 24, 2024, I submitted BLG Invoice No. 11576 to Haught, TGP, Jim and Joe Hoft for legal work performed through the end of January 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit 3 which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

66.    On March 12, 2024, I submitted BLG Invoice No. 11578 to Haught, TGP, Jim and Joe Hoft for legal work performed in the month of February 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit 4which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

67.    On June 6, 2024, I submitted BLG Invoice No. 11586 to Haught, TGP, Jim and Joe Hoft for legal work performed in the month of March 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit 5 which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

68.    On June 9, 2024, I submitted BLG Invoice No. 11587 to Haught, TGP, Jim and Joe Hoft for legal work performed in the month of April 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit

6 which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

69.     On July 26, 2024, I submitted BLG Invoice No. 11598 to Haught, TGP, Jim and Joe Hoft for legal work performed in the month of May 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit 7 which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

70.     On July 26, 2024, I submitted BLG Invoice No. 11604 to Haught, TGP, Jim and Joe Hoft for legal work performed in the month of June 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit 8 which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

71.     On, August 7, 2024, I submitted BLG Invoice No. 11606 to Haught, TGP, Jim and Joe Hoft for legal work performed in the month of July 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit 9 which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

72.     On September 4, 2024, I submitted BLG Invoice No. 11616 to Haught, TGP, Jim and Joe Hoft for legal work performed in the month of August 2024. I submitted the invoice by email from Collin County, Texas to Haught in Minnesota and TGP, Jim and Joe Hoft in Florida. (*See* Exhibit 10 which also includes a copy of the invoice which is being filed under seal because of the attorney-client privileged and confidential nature of some of the descriptions in the invoice).

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS          PAGE 12**

73.    The Insurance Companies paid a portion of amounts owed on the Invoices but have failed and refused, and continue to fail and refuse, to pay BLG all of the amounts due and owing under the Invoices pursuant to the Retainer Agreement, resulting in a past due balance owed in the amount of $512,215.50.

74.    BLG has made repeated written demands to the Insurance Companies, TGP, and the Hofts for payment of the Invoices, but such demand have been ignored.

75.    Despite BLG's demands, the Insurance Companies, TGP, and the Hofts continue to refuse to pay the Invoices due and owing to BLG pursuant to the Retainer Agreement and Insurance Policy.

76.    On August 19, 2024, I sent an email to Haught requesting the status of payment of unpaid invoices owed to BLG. Attached as Exhibit 11 is a copy of that email.

77.    On August 29, 2024, I sent a second email to Haught requesting the status of payment of unpaid invoices owed to BLG. Attached as Exhibit 12 is a copy of that email.

78.    On September 24, 2024, I sent third email to Haught requesting the status of payment of unpaid invoices owed to BLG. Attached as Exhibit 13 is a copy of that email.

79.    On September 24, 2024, I received an email from Joe Hoft to Haught requesting whether there were any invoices that needed to be loaded in order to be paid to BLG. Attached as Exhibit 14 is a copy of that email.

80.    On September 24, 2024, I received a copy of an email from Haught in response to email from Joe Hoft indicating that all invoices were loaded and ready for payment. Attached as Exhibit 15 is a copy of that email.

81.    On September 25, 2024, I received an email from Haught requesting additional copies of invoices 11606 and 11616. Attached as Exhibit 16 is a copy of that email.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**            **PAGE 13**

82.    On September 25, 2024, I received an email from Joe Hoft in response to the email from Haught requesting my assistance in obtaining additional copies of invoices 11606 and 11616. Attached as Exhibit 17 is a copy of that email.

83.    On September 25, 2024, I responded by email to the September 25, 2024 email I received from Joe Hoft in response to the September 25, 2024 email from Haught requesting additional copies of invoices 11606 and 11616. Attached as Exhibit 18 is a copy of that email.

84.    On September 25, 2024, I sent an email to Haught requesting immediate payment of past due invoices. Attached as Exhibit 19 is a copy of that email.

85.    On Friday, September 27, 2024 at 9:58 AM, I sent an email to Haught demanding payment of the past due invoices. Attached as Exhibit 20 is a copy of that email.

86.    Later in the day of September 27, 2024, TGP and Jim Hoft served Plaintiffs' Original Complaint filed in the United States District Court for the Eastern District of Missouri on me.

87.    Prior to the service of Plaintiffs' Original Complaint in the United States District Court for the Eastern District of Missouri on September 27, 2024, I had never received any complaints regarding any invoices sent to TGP, Jim Hoft or Haught by BLG.

88.    I have never received any complaints from Joe Hoft regarding any invoices sent by BLG.

89.    I have never received any complaints from the Insurance Companies regarding any invoices sent by BLG.

90.    TPG has its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957. TGP conducts its business affairs in the State of Florida and at its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957.

91.     James Hoft is the sole member and manager and agent of and for TGP.

92.     James Hoft is a resident and citizen of the State of Florida

93.     Jim Hoft is a resident and citizens of the State of Florida.

94.     TGP is a company conducting business in the State of Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. TPG has its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957. TGP conducts its business affairs in the State of Florida and at its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957.

95.     On April 24, 2024, TGP filed a voluntarily petition for non-individuals filing bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. A true and accurate copy of the Voluntary Petition filed is attached as Exhibit 21 to this affidavit.

96.     TGP listed the "debtor's address" as "1820 NE Jensen Beach Boulevard, Unit 1129, Jensen Beach, Florida 34957, Martin County Florida." *See* Exhibit 21.

97.     On July 27, 2024, TGP's voluntary bankruptcy was dismissed by the United States Bankruptcy Court for the Southern District of Florida. *See* Exhibit 22.

98.     TGP also made confessions and admissions in TGP's bankruptcy filed in the United States Bankruptcy Court for the Southern District of Florida when TGP filed on June 25, 2024 a JOINT STIPULATION OF UNCONTESTED FACTS. (*See* Exhibit 23, Doc. 80 filed in the TGP bankruptcy). TGP admitted that its sole member is "James ("Jim") Hoft. Jim Hoft owns 100% of the Debtor's membership interest." *Id.* at ¶3. TGP also admitted that both before and after the bankruptcy filing "Debtor's only employee has been Jim Hoft." *Id.* at ¶5. TGP also admitted that TGP loaned money to Jim Hoft in order for him to purchase a Florida condominium located at "8750 S. Ocean Drive, Unit 833, Jensen Beach, FL 34957." *Id.* at ¶12. TGP also admitted that

---

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**          **PAGE 15**

"Jim Hoft resides in the Florida Condominium as a personal residence with Jez Morano." *Id.* at ¶14. TGP also admitted that (1) discovery in the Freeman Moss Litigation was scheduled to be completed by May 31, 2024; and, (2) Defendants in the Freeman Moss Litigation moved for the issuance of letters rogatory on February 28, 2024 and that the Freeman Moss court granted the motion for letters rogatory on March 15, 2024." *Id.* at ¶14. The letters rogatory concerned the discovery which BLG was employed to obtain from witnesses and entities in Georgia.

99.    TGP also admitted that Jim Hoft was scheduled to be deposed in the Freeman Moss Litigation on May 28, 2024 and that Joe Hoft was scheduled to be deposed in the same litigation on May 29, 2024. *Id.* at ¶¶15 and 16. These depositions were scheduled to be taken in Jensen Beach, Florida. I was designated by TGP to defend the depositions.

100.    TGP admitted that "proceeds" from the Insurance Policy "were used to pay the defense costs with respect to" the Freeman Moss Litigation. *Id.* at ¶42. TGP also admitted that when it filed bankruptcy "approximately $700,000" of the Insurance Policy "have been exhausted as a result of defending" the Freeman Moss Litigation. *Id.* at ¶44.

101.    James Jim Hoft is a resident and citizen of the State of Florida and resides in Jensen Beach, Florida.

102.    Joseph Joe Hoft is a resident and citizen of the State of Florida and resides in Jensen Beach, Florida.

103.    Prior to BLG being retained in January of 2024 by the Insurance Companies, TGP and the Hofts to defend TGP and the Hofts, in the Freeman Moss Lawsuit, I was counsel of record in a lawsuit filed in December 2020 in Superior Court in Fulton County, Georgia which sought various claims and remedies against Fulton County, Georgia and its election officials arising out

of the scanning of election ballots for the November 2020 general election which occurred at the State Farm Arena in Atlanta, Georgia.

104.    Pursuant to the Retainer Agreement, the Insurance Companies, TGP, and the Hofts directed BLG to obtain and gather admissible evidence of the events and actions that occurred on election day in November 2020 in Fulton County, Georgia at the State Farm Arena in connection with the scanning of the mail-in ballots by Freeman, Moss, and others (the "Fulton County Events").

105.    After executing the Retainer Agreement, I learned that TGP and the Hofts' prior retained defense attorneys in the Freeman-Moss lawsuit, John Burns, Esq. ("Burns"), Marc Randazza, Esq. ("Randazza"), and Jay Wolman, Esq. ("Wolman") failed to investigate and make any effort to obtain any admissible evidence in connection with the Fulton County Events.

106.    In January 2024, Burns acted as co-counsel with BLG and me in connection with the Freeman-Moss Lawsuit.

107.    Mr. Burns has stated to me that he works and resides in Illinois.

108.    In January 2024, Marc Randazza, Esq., and Randazza Legal Group, PLLC acted as co-counsel with BLG and me in connection with the Freeman-Moss Lawsuit. Mr. Randazza and his law firm are not residents of nor do they reside in the State of Missouri.

109.    Mr. Randazza's law firm, Randazza Legal Group, PLLC, has its principal offices located in Hartford, Connecticut along with other offices located in Gloucester, Massachusetts, and Brooklyn, New York. Randazza Legal Group, PLLC does not have offices located in the State of Missouri.

110.    Likewise, on information and belief, Wolman does not reside in nor does he a maintain a residence in the State of Missouri.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS          PAGE 17**

111.    At the time of my involvement in the Freeman-Moss Lawsuit, Randazza, Burns, and Wolman failed to make any effort to obtain discovery or any admissible evidence concerning the Fulton County Events.

112.    The truth of the matters stated in a publication is an affirmative defense to any claim for defamation, libel, or slander and the investigation of the truth of the matters stated is critical to any defense when a libel, defamation or slander lawsuit is filed against a defendant.

113.    As such, BLG and its attorneys, legal assistants, employees, and consultants were specifically retained by the Insurance Companies, TGP and the Hofts to investigate and obtain admissible evidence from Georgia and other states (not including Missouri) regarding the actions regarding the Fulton County Events.

114.    None of BLG's attorneys, legal assistants, employees, and/or consultants are, or were at any time, residents of the State of Missouri, and none reside in the State of Missouri or undertook any investigation of the facts, interviews, or discovery in the State of Missouri for purposes of legal services in connection with the Freeman-Moss lawsuit, which the Invoices subject to this lawsuit arise out of.

115.    To fulfill my instructions from the Insurance Companies, TGP, and the Hofts, BLG conducted investigations and sought admissible discovery in the States of Georgia, Texas, Washington D.C., Virginia, Maryland, and State of Louisiana.

116.    BLG and I did not conduct investigations, nor did it seek admissible evidence in the State of Missouri.

117.    To fulfill BLG's instructions from the Insurance Companies, TGP, and the Hofts to investigate and obtain admissible evidence in the Freeman-Moss Lawsuit, I performed the following services and actions pursuant to the Retainer Agreement:

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**          **PAGE 18**

118.    I interviewed and attended a deposition of a material witness, Joseph Bartling, in Washington, D.C. Joseph Bartling is a citizen and resident of the State of Virginia.

119.    I obtained the deposition testimony and interview of Jackie Pik, a material fact witness. Jackie Pik is a resident and citizen of the State of Texas.

120.    I interviewed and attended by zoom a deposition of a material witness, Jordan Conradson, in Baltimore, Maryland.  On information and belief, Jordan Conradson is a citizen and resident of the State of Maryland.

121.    I interviewed and attended a deposition by zoom of a material witness, Michelle Branton, in the State of Georgia. Michelle Branton is a citizen and resident of the State of Georgia.

122.    BLG and none of its attorneys or legal assistants have attended any depositions either in person or by zoom of any material witness to the Freeman Moss Lawsuit in the State of Missouri.

123.    BLG and none of its attorneys or legal assistants have interviewed or sought discovery from any witness in the State of Missouri.

124.    BLG and none of its attorneys or legal assistants have sought records or documents or any other discovery from any witness or person in the State of Missouri

125.    Ruby Freeman, one of the plaintiffs in the Freeman Moss Lawsuit, resides in and is a citizen of the State of Georgia. To fulfill BLG's instructions from the Insurance Companies, and the Hofts, I scheduled the deposition of Freeman in Atlanta, Georgia in May of 2024. At that time, Freeman was a resident of the State of Georgia.

126.    Shay Moss, one of the plaintiffs in the Freeman Moss Lawsuit, resides in and is a citizen of the State of Georgia. To fulfill BLG's instructions from the Insurance Companies, and

---

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**          **PAGE 19**

the Hofts, I scheduled the deposition of Moss in Atlanta, Georgia in May of 2024. At that time, Moss was a resident of the State of Georgia.

127.    I scheduled the deposition of James Hoft in Jensen Beach, Florida in May of 2024, where he lives and resides.

128.    I scheduled the deposition of Joe Hoft in Jensen Beach, Florida, in May 2024 where he lives and resides.

129.    I retained David Sawyer of Sawyer & Company, LLC as an expert witness and consultant to, *inter alia,* assist in the investigation of the evidence in the Freeman-Moss Lawsuit. David Sawyer resides in the State of Georgia and has no connection with, does not conduct business in, and is not a resident or citizen of the State of Missouri.

130.    I retained Todd Harding, Esq. ("Harding") to assist in filing a lawsuit in the Superior Court of Fulton County, State of Georgia, to obtain subpoenas for records and documents and depositions of witnesses in Georgia who had and have material, substantial and personal knowledge of the actions of the Fulton County Events. Harding is a resident of the State of Georgia and has no connection with, does not conduct business in, and is not a resident or citizen of the State of Missouri.

131.    Harding filed a Verified Petition and Aid of Discovery on April 12, 2024 in the Superior Court of Fulton County State of Georgia, Civil Action No. 24-CV-004696 (the "Fulton County Georgia Lawsuit") on behalf of TGP and the Hofts. A true and correct copy of the Petition and Aid of Discovery is attached to this affidavit as Exhibit 24.

132.    I retained Steve Davis and Cobra Legal Solutions, LLC as a legal assistant and ESI consultant to, *inter alia*, assisting in obtaining video evidence of the Fulton County Events. Steve

Davis is a resident of the State of Texas and resides in Dallas, Texas. The offices of Cobra Legal

Solutions, LLC are located in Dallas, Texas.

133.    I interviewed a material witness, Garland Favorito, in the State of Georgia with the

assistance of Harding. Garland Favorito is a citizen and resident of the State of Georgia.

134.    I interviewed a material witness, Joe Rossi in the State of Georgia with the

assistance of Harding. Joe Rossi is a citizen and resident of the State of Georgia.

135.    I obtained discoverable admissible evidence from Fulton County, Georgia of pdf

and tiff images of the ballots scanned by Freeman and Moss in connection with the Fulton County

Events.

136.    I interviewed and prepared and caused a subpoena to be issued to a material witness,

David Cross in the State of Georgia with the assistance of Todd Harding. David Cross is a citizen

and resident of the State of Georgia.

137.    I interviewed a material witness, Susan Voyles in the State of Georgia with the

assistance of Harding.  Susan Voyles is a citizen and resident of the State of Georgia.

138.    I caused a subpoena to be issued to a material witness, Morgan White, in the State

of Georgia with the assistance of Harding. Morgan White is a citizen and resident of the State of

Georgia.

139.    I interviewed a material witness, Caroline Jeffords, in the State of Georgia. Caroline

Jeffords is a citizen and resident of the State of Georgia.

140.    I interviewed a material witness, Bridget Thorne, in the State of Georgia. Bridget

Thorne is a citizen and resident of the State of Georgia.

141.    I caused a subpoena to be issued to a material witness, Mark Wingate in the State of Georgia with the assistance of Todd Harding, Esq. Mark Wingate is a citizen and resident of the State of Georgia.

142.    I caused a subpoena to be issued to a material witness, Mitchell Harrison, in the State of Georgia with the assistance of Harding. Mitchell Harrison is a citizen and resident of the State of Georgia.

143.    I caused a subpoena to be issued to a material witness, Brandon Moye, in the State of Georgia with the assistance of Harding. Brandon Moye is a citizen and resident of the State of Georgia.

144.    I caused a subpoena to be issued to a material witness, Trevor McCoy in the State of Georgia with the assistance of Harding. Trevor McCoy is a citizen and resident of the State of Georgia.

145.    I caused a subpoena for records and a deposition to be issued and served to and interviewed a material witness, Harrison William Prescott Floyd, with the assistance of Harding. Harrison William Prescott Floyd is not a citizen and resident of the State of Missouri.

146.    I caused a subpoena for records and a deposition to be issued and served to a material witness, Steven Clifford Lee, in the State of Georgia with the assistance of Harding. Steven Clifford Lee is a citizen and resident of the State of Georgia.

147.    I caused a subpoena for records and a deposition to be issued and served to a material witness, Trevian C. Kutti, in the State of Georgia with the assistance of Harding. Trevian C. Kutti is not a citizen and resident of the State of Missouri.

148.    I caused a subpoena for records and a deposition to be issued and served to and interviewed a material witness, David Graham of Astro Integration Services Security, in the State

of Georgia with the assistance of Harding. David Graham is a citizen and resident of the State of Georgia.

149.    I caused a subpoena for records and deposition to be issued and served to a material witness, Bahn Rich, in the State of Georgia with the assistance of Harding. Bahn Rich is a citizen and resident of the State of Georgia.

150.    I reviewed a previous deposition of and caused a subpoena for records and deposition to be issued and served to a material witness Ralph Jones in the State of Georgia with the assistance of Harding. Ralph Jones is a citizen and resident of the State of Georgia.

151.    I caused a subpoena for records and deposition to be issued and served to a material witness, Regina Waller, in the State of Georgia with the assistance of Harding. Regina Waller is a citizen and resident of the State of Georgia.

152.    I reviewed documents regarding and caused a subpoena for records and deposition to be issued and served to a material witness, Carter Jones, in the State of Georgia with the assistance of Harding. Carter Jones is a citizen and resident of the State of Georgia.

153.    I caused a subpoena for records and deposition to be issued and served to a material witness, Gilbert C. Humes, in the State of Georgia with the assistance of Harding. Gilbert C. Humes is a citizen and resident of the State of Georgia.

154.    I reviewed documents regarding and investigated a material witness, Richard Baron, with the assistance of Harding. Richard Baron a former election official in Fulton County, Georgia and is now believed to be a citizen and resident of the State of Texas.

155.    I caused a subpoena for records and deposition to be issued and served to a material witness, Nadine Williams, in the State of Georgia with the assistance of Harding. Nadine Williams is a citizen and resident of the State of Georgia.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**    |    **PAGE 23**

156.    I caused a subpoena for records and deposition to be issued and served to a material witness, Adrick Hall, in the State of Georgia with the assistance of Harding. Adrick Hall is a citizen and resident of the State of Georgia.

157.    I caused a subpoena for records and deposition to be issued and served to a material witness, Yetunda Sims, in the State of Georgia with the assistance of Harding. Yetunda Sims is a citizen and resident of the State of Georgia.

158.    I caused a subpoena for records and deposition to be issued and served to a material witness, Jeffrey Merrifield, in the State of Georgia with the assistance of Harding. Jeffrey Merrifield is a citizen and resident of the State of Georgia.

159.    I caused a subpoena for records and deposition to be issued and served to a material witness, Keisha Dixon, in the State of Georgia with the assistance of Harding. Keisha Dixon is a citizen and resident of the State of Georgia.

160.    I caused a subpoena for records and deposition to be issued and served to a material witness, Paul Braun, in the State of Georgia with the assistance of Harding. Paul Braun is a citizen and resident of the State of Georgia.

161.    I caused a subpoena for records and deposition to be issued and served to a material witness the Federal Bureau of Investigation and FBI investigators in Atlanta, Georgia with the assistance of Harding. The Federal Bureau of Investigation and FBI investigators reside in the State of Georgia.

162.    I caused a subpoena for records and deposition to be issued and served to a material witness, the Georgia Bureau of Investigation and Georgia Bureau of Investigation investigators in Atlanta, Georgia, with the assistance of Harding. The Georgia Bureau of Investigation and Georgia Bureau of Investigation investigators in Atlanta, Georgia all reside in the State of Georgia.

163. I caused a subpoena for records and deposition to be issued and served to a material witness, the Fulton County Board of Elections and Registration in Atlanta, Georgia with the assistance of Harding. The Fulton County Board of Elections and Registration witnesses and records reside in the State of Georgia.

164. I caused a subpoena for records and deposition to be issued and served to a material witness, the Georgia Secretary of State in the State of Georgia with the assistance of Harding. The Georgia Secretary of State witnesses reside in Georgia.

165. I caused a subpoena for records and deposition to be issued and served to a material witness, the Georgia State Board of Elections, in the State of Georgia with the assistance of Harding. The Georgia State Board of Elections witnesses and records reside in Georgia.

166. I caused a subpoena for records and deposition to be issued and served to a material witness, the Cobb County, Georgia Police Department, in the state of Georgia with the assistance of Harding. The Cobb County, Georgia Police Department witnesses and records reside in and are maintained in the State of Georgia.

167. I caused a subpoena for records and deposition to be issued and served to a material witness, the Fulton County, Georgia Sheriff Department, in the State of Georgia with the assistance of Harding. The Fulton County, Georgia Sheriff Department witnesses and records reside in and are maintained in the State of Georgia.

168. I caused a subpoena for records and deposition to be issued and served to a material witness the Fulton County, Georgia custodian of records, in the state of Georgia with the assistance of Harding. The Fulton County, Georgia custodian of records witnesses and records reside in and are maintained in the State of Georgia.

169.    I caused a subpoena for records and deposition to be issued and served to a material witness, Cle Alexander, the Fulton County, Georgia Clerk of Superior and Magistrate Courts, in the State of Georgia with the assistance of Harding. Cle Alexander, the Fulton County, Georgia Clerk of Superior and Magistrate Courts resides in the State of Georgia.

170.    I caused a subpoena for records and deposition to be issued and served to a material witness Fanni Willis, the Fulton County, Georgia District Attorney in the State of Georgia with the assistance of Todd Harding, Esq. Fanni Willis, the Fulton County, Georgia District Attorney resides in the State of Georgia.

171.    I caused a subpoena for records and deposition to be issued and served to a material witness Lawrence Sloan in the State of Georgia with the assistance of Harding. Lawrence Sloan resides in the State of Georgia.

172.    I caused a subpoena for records and deposition to be issued and served to a material witness, Bessie Hampton, in the State of Georgia with the assistance of Harding. Bessie Hampton resides in the State of Georgia.

173.    I interviewed a material witness, Kevin Moncla and engage with communications with his counsel. Kevin Moncla and his legal counsel reside in the State of Louisiana.

174.    I caused a subpoena for records and deposition to be issued and served to a material witness, James Calloway, in the State of Georgia with the assistance of Harding. James Calloway resides in the State of Georgia.

175.    I caused a subpoena for records and deposition to be issued and served to a material witness Ide Moss in the State of Georgia with the assistance of Harding. Ide Moss resides in the State of Georgia.

176.   BLG did not conduct any interviews of any witnesses and did not seek the deposition of any witnesses residing in the State of Missouri.

177.   BLG did not issue any subpoenas nor receive any records of any custodian of records from any witness or entity residing in the State of Missouri.

178.   Substantially all of the legal work performed by BLG for the Insurance Companies, TGP, and the Hofts was performed in the States of Texas or Georgia. No substantial legal work was performed in the State of Missouri.

179.   On October 8, 2024, Bundren Law Group, PLLC filed a lawsuit against the Insurance Companies, TGP, and the Hofts in the 471st District Court of Collin County, Texas, for, *inter alia,* breach of contract, promissory estoppel, and third-party beneficiary of the Insurance Contract, seeking damages against the Insurance Companies, TGP, and the Hofts, jointly and severally, for their refusal to pay the Invoices and defense costs, attorneys' fees, and litigation expenses expended by BLG.

180.   On October 8, 2024, the 471st District Court of Collin County, Texas granted BLG a Temporary Restraining Order against the Insurance Companies.

181.   All of the books and records regarding the above referenced lawsuit and the claims asserted therein are located in Collin County, Texas at the law offices of Bundren Law Group, PLLC.

182.   All of the employees, legal assistants, attorneys who worked on the Freeman Moss Lawsuit for Bundren Law Group, PLLC reside in Collin County, Texas, and it would be a great inconvenience for those witnesses to be forced to travel to Missouri for a trial of the above referenced matter, or to any other forum.

**AFFIDAVIT IN SUPPORT OF RESPONSE MOTION TO DISMISS**          **PAGE 27**

183.    There are no witnesses necessary for the trial of the above referenced civil matter who reside in the State of Missouri.

184.    All of the material witnesses necessary for trial of the above referenced civil matter reside in either Collin County, Texas, Florida, Georgia, Minnesota, or Maryland.

185.    There are no records or documents necessary for the trial of the above referenced matter located in the State of Missouri.

186.    Neither I nor any other employee, agent, legal assistant, or attorney working for Bundren Law Group, PLLC conducted any discovery for the Freeman Moss Lawsuit in the State of Missouri.

187.    Neither I nor any other employee, agent, legal assistant, or attorney working for Bundren Law Group, PLLC filed any pleadings or documents in any court in the State of Missouri, and did not file any pleadings or documents in the Freeman Moss Litigation.

188.    The State of Missouri and the United States District Court for the Eastern District of Missouri have no connection to the disputes between the parties in the above referenced civil action with respect to the claims asserted.

189.    All of the work performed in the defense of TGP, Jim Hoft and Joe Hoft in the Freeman Moss Litigation and pursuant to the Retainer Agreement by BLG and its attorneys, legal assistants, and staff was performed in Collin County, Texas with the exception of some limited travel as reflected on the Invoices.

190.    All of the books, records, timesheets, and documents supporting the time entries and description of services on the Invoices are located in BLG's offices in Collin County, Texas.

191.    All of the material witnesses regarding the time entries and description of services on the Invoices reside in Collin County, Texas.

192.    All communications regarding the Invoices by BLG and its attorneys, including me, regarding the Invoices with Defendants were initiated or received by phone, by email, or by letter in Collin County, Texas.

193.    The legal work as reflected on the Invoices performed by BLG and its attorneys and legal assistants pursuant to the Retainer Agreement and in defense of TGP, Jim Hoft and Joe Hoft in the Freeman Moss Litigation was substantially performed in Collin County, Texas.


FURTHER, AFFIANT SAYETH NAUGHT.


**WILLIAM CHARLES BUNDREN**


By: _____

William Charles Bundren


STATE OF TEXAS    )
                  )
COUNTY OF COLLIN  )


On this 15th day of November, 2024, before me, a Notary Public in and for said State, personally appeared William Charles Bundren, and that said instrument was signed on by him and he acknowledged said instrument to be his free act and deed.

IN TESTIMONY WHEREOF, I have set my hand and affixed my official seal in the County and State aforesaid, the day and year first written above.

ROSALINDA NATALIA MEDLIN
Notary Public, State of Texas
Notary ID# 13465149-2
My Commission Expires 11-17-2027

_____
Notary Public

My Commission Expires:    11-17-2027