**EXHIBIT A**

Plaintiff's Second Amended Original Complaint (ECF 90, filed November 11, 2025)

Date: November 18, 2025

/s/ Joseph Hoft, Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BUNDREN LAW GROUP, PLLC. <br><br> Plaintiff, <br><br> v. <br><br> ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., INTACT FINANCIAL CORPORATION, TGP COMMUNICATIONS, LLC, JAMES "JIM" HOFT, INDIVIDUALLY, and JOE HOFT, INDIVIDUALLY. <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br> CIVIL ACTION NO. <br><br> 4:24-CV-00900 |

---

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

---

TO THE HONORABLE COURT:

BUNDREN LAW GROUP, PLLC (hereinafter referred to as "Plaintiff")

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**          **PAGE 1**

---

complains of ATLANTIC SPECIALTY INSURANCE COMPANY (hereinafter referred to as "Atlantic"), ONE BEACON PROFESSIONAL INSURANCE GROUP and ONE BEACON PROFESSIONAL INSURANCE, INC. (hereinafter collectively referred to as "Beacon"), INTACT INSURANCE GROUP, USA LLC (hereinafter referred to as "Intact"), INTACT INSURANCE GROUP USA HOLDINGS, INC. (hereinafter referred to as "Intact Group"), INTACT FINANCIAL CORPORATION (hereafter referred to as "Intact Financial"), TGP COMMUNICATIONS, LLC (hereinafter referred to as "TGP"), James "Jim" Hoft, individually, and Joe Hoft, individually, and says as follows:

I.

**PARTIES**

1.      Plaintiff is a professional limited liability company with its principal place of business in Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. Plaintiff conducts its business at 2591 Dallas Pkwy., Suite 300, Frisco, TX 75034. Plaintiff is incorporated and organized pursuant to the laws of the State of Texas. Plaintiff is a citizen of the State of Texas.

2.      Defendant ATLANTIC SPECIALTY INSURANCE COMPANY (hereinafter referred to as "Atlantic"), is an insurance company conducting business

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**          **PAGE 2**

in Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. Atlantic has its principal place of business at 150 Royal St., Canton, MA 02021. Atlantic has designated with the Texas Secretary of State Corporation Service Company d/b/a CSC Lawyers, Inc. located at 211 E. 7th St., Suite 620, Austin, TX 78701 -3218 as its registered agent for service of process in Texas. ATLANTIC SPECIALTY INSURANCE COMPANY is not a citizen of the State of Texas. ATLANTIC SPECIALTY INSURANCE COMPANY is a citizen of the State of Massachusetts. This Defendant has been served and has already appeared, and no additional Summons is necessary.

3.    ATLANTIC SPECIALTY INSURANCE COMPANY has disclosed that it is "an indirect wholly owned subsidiary of INTACT INSURANCE GROUP USA HOLDINGS, INC. which is a wholly owned subsidiary of INTACT FINANCIAL CORPORATION, a publicly held company whose stock is traded on the Toronto Stock Exchange. (See Dkt. #19). This Defendant has been served and has already appeared, and no additional Summons is necessary.

4.    Defendant ONE BEACON PROFESSIONAL INSURANCE GROUP (hereinafter collectively referred to as "Beacon") is an insurance company conducting business in Texas and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. Beacon has its principal place of business at 6800 College Blvd., Suite 350, Overland Park Kansas

66211. Beacon has not designated a registered agent in Texas with the Texas Secretary of State. ONE BEACON PROFESSIONAL INSURANCE GROUP is not a citizen of the State of Texas. ONE BEACON PROFESSIONAL INSURANCE GROUP is a citizen of the State of Kansas. This Defendant has been served and has already appeared, and no additional Summons is necessary.

5.    ONE BEACON PROFESSIONAL INSURANCE GROUP has disclosed that it is a non-existent, fictitious entity and has no parent corporations and no entity owns 10% or more of its stock. (See Dkt. #21). This Defendant has been served and has already appeared, and no additional Summons is necessary.

6.    Defendant ONE BEACON PROFESSIONAL INSURANCE, INC. (hereinafter collectively referred to as "Beacon") is an insurance company conducting business in Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. Beacon has its principal place of business at 6800 College Blvd., Suite 350, Overland Park Kansas 66211. Beacon has not designated a registered agent in Texas with the Texas Secretary of State. ONE BEACON PROFESSIONAL INSURANCE, INC. is not a citizen of the State of Texas. ONE BEACON PROFESSIONAL INSURANCE, INC. is a citizen of the State of Kansas. This Defendant has been served and has already appeared, and no additional Summons is necessary.

7.    ONE BEACON PROFESSIONAL INSURANCE, INC. has disclosed that it was a Delaware entity that was dissolved on October 30, 2015, and therefore has no parent corporations and no entity owns 10% or more of its stock. (*See* Dkt. #22). This Defendant has been served and has already appeared, and no additional Summons is necessary.

8.    Defendant INTACT INSURANCE GROUP, USA, LLC (hereinafter referred to as "Intact"), is an insurance company conducting business in Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. Intact has its principal place of business at 605 Highway 169 N, Suite 800, Plymouth MN 55441. Intact has not designated a registered agent in Texas with the Texas Secretary of State. INTACT INSURANCE GROUP, USA, LLC is not a citizen of the State of Texas. INTACT INSURANCE GROUP, USA, LLC is a citizen of the State of Minnesota. This Defendant has been served and has already appeared, and no additional Summons is necessary.

9.    INTACT INSURANCE GROUP, USA, LLC has disclosed that INTACT INSURANCE GROUP, USA, LLC is an indirect wholly owned subsidiary of INTACT INSURANCE GROUP USA HOLDINGS, INC. which is a wholly-owned subsidiary of INTACT FINANCIAL CORPORATION, a publicly held company whose stock is traded on the Toronto Stock exchange (*See* Dkt. #20). This

Defendant has been served and has already appeared, and no additional Summons is necessary.

10.    Defendant, INTACT INSURANCE GROUP USA HOLDINGS, INC. is a wholly owned subsidiary of INTACT FINANCIAL CORPORATION, a publicly held company whose stock is traded on the Toronto Stock Exchange. (*See* Dkt. #20). INTACT INSURANCE GROUP USA HOLDINGS, INC. is an insurance company conducting business in Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. INTACT INSURANCE GROUP USA HOLDINGS, INC.  has its principal place of business at 605 Highway 169 N, Suite 800, Plymouth MN 55441. INTACT INSURANCE GROUP USA HOLDINGS, INC. has not designated a registered agent in Texas with the Texas Secretary of State. INTACT INSURANCE GROUP USA HOLDINGS, INC. is not a citizen of the State of Texas. INTACT INSURANCE GROUP USA HOLDINGS, INC. is a citizen of the State of Minnesota. This Defendant has been served and has already appeared, and no additional Summons is necessary.

11.    Defendant INTACT FINANCIAL CORPORATION is a publicly held company whose stock is traded on the Toronto Stock Exchange. (*See* Dkt. #20). INTACT FINANCIAL CORPORATION is an insurance company conducting business in Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. INTACT FINANCIAL

CORPORATION has its principal place of business at 605 Highway 169 N, Suite 800, Plymouth MN 55441. INTACT FINANCIAL CORPORATION has not designated a registered agent in Texas with the Texas Secretary of State. INTACT FINANCIAL CORPORATION is not a citizen of the State of Texas. INTACT FINANCIAL CORPORATION is a citizen of the State of Minnesota. This Defendant has been served and has already appeared, and no additional Summons is necessary.

12.    Defendants ATLANTIC SPECIALTY INSURANCE COMPANY, ONE BEACON PROFESSIONAL INSURANCE GROUP, ONE BEACON PROFESSIONAL INSURANCE, INC., INTACT INSURANCE GROUP, USA, LLC, INTACT INSURANCE GROUP USA HOLDINGS, INC., and INTACT FINANCIAL CORPORATION will hereinafter collectively be referred to as the "Insurance Companies." This Defendant has been served and has already appeared, and no additional Summons is necessary.

13.    TGP COMMUNICATIONS, LLC (hereinafter referred to as "TPG"), is a company conducting business in the State of Texas, and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. TPG has its principal place of business at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957. TGP has not designated a registered agent in

Texas with the Texas Secretary of State. James "Jim" Hoft as the sole member and manager and agent of and for TGP COMMUNICATIONS, LLC. TGP COMMUNICATIONS, LLC, is not a citizen of the State of Texas. TGP COMMUNICATIONS, LLC is a citizen of the State of Florida. This Defendant has been served and has already appeared, and no additional Summons is necessary.

14.    James "Jim" Hoft, individually, is an individual who is a resident and citizen of the State of Florida. James "Jim" Hoft conducts business in the State of Texas and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. James "Jim" Hoft has not designated a registered agent for service of process with the Texas Secretary of State. James "Jim" Hoft may be served with process and a federal civil summons at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957. James "Jim" Hoft is not a citizen of the State of Texas. James "Jim" Hoft is a citizen of the State of Florida. This Defendant has been served and has already appeared, and no additional Summons is necessary.

15.    Joe Hoft, individually, is an individual who is a resident and citizen of the State of Florida. Joe Hoft conducts business in the State of Texas and Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. Joe Hoft has not designated a registered agent for service of process with the Texas Secretary of State. Joe Hoft may be served with a federal

civil summons and process at 1820 NE Jensen Beach Blvd. Suite 1120, Jensen Beach, FL 34957. Joe Hoft is not a citizen of the State of Texas. Joe Hoft is a citizen of the State of Florida. This Defendant has been served and has already appeared, and no additional Summons is necessary.

16.    Plaintiff is a citizen of the State of Texas. Defendants are not citizens of the State of Texas. There is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## II.

### JURISDICTION AND VENUE

17.    The Court has jurisdiction over the subject matter and persons in this action and the amount in controversy is within the jurisdictional limits of this Court. Plaintiff seeks damages in an amount exclusive of penalties, interest, costs, and attorney's fees in excess of $75,000, and which is within the jurisdictional limits of this Court. This Court has original jurisdiction of this civil action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. §1332.

18.    This Court also has jurisdiction of this matter pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

19.    Defendants have conducted business in the State of Texas and in Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division.

20.    Jurisdiction and venue are proper in Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division because all or a substantial part of the events or omissions giving rise to the claims asserted herein took place in Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division. All of Plaintiff's damages and injuries occurred in Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division.

21.    This is an action for, *inter alia* breach of an insurance contract and the contract to retain the legal services of Plaintiff which was executed, negotiated, and performed in Collin County, Texas, and the United States District Court for the Eastern District of Texas Sherman Division, and for unlawful interference with a contract.

22.    This is also an action for declaratory relief pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 concern construction and applicability of the Temporary Restraining Order filed and entered on October 8, 2024 by a state court.

23.    This Court is a court of law and equity.

24.    Plaintiff seeks a Temporary Restraining Order and a Preliminary Injunction.

25.    The amount in controversy and the relief sought are within the jurisdiction of the United States District Court for the Eastern District of Texas Sherman Division because the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and this action is between citizens of different States.

### a.    Jurisdiction

26.    This Court's jurisdiction of this action is based upon 28 U.S.C. §1332, and Federal Rule of Civil Procedure 57 and  28 U.S.C. §§ 2201 and 2202.  This action is a matter in controversy between a citizen of Texas and citizens of other states within the United States.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs pursuant to 28 U.S.C. §1332.

27.    This Court has supplemental jurisdiction over Plaintiff's claims under Texas law under 28 U.S.C. §1367.

### b.    Venue

28.    Venue is proper in this district and division under 28 U.S.C. §1391 based on Defendants regularly transacting business within the United States District Court for the Eastern District of Texas, Sherman Division.

29.    Venue is proper in this district and division under 28 U.S.C. §1391 because Defendants are subject to the court's personal jurisdiction with respect to the

civil action in question and within the United States District Court for the Eastern District of Texas Sherman Division.

30.    Venue is proper in this district and division and in the United States District Court for the Eastern District of Texas Sherman Division under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred, and a substantial part of the property that is the subject of this action is situated in the United States District Court for the Eastern District of Texas, Sherman Division.

31.    All Defendants are subject to personal jurisdiction within this federal district and federal division and the United States District Court for the Eastern District of Texas Sherman Division.

32.    All Defendants have negotiated, executed, and entered into agreements and understandings with Plaintiff which are performable in whole or in part within the United States District Court for the Eastern District of Texas Sherman Division.

33.    Defendants have engaged, and continue to engage, in the transaction of business and the commission of the acts complained of herein and in interstate commerce within the jurisdiction and venue of the United States District Court for the Eastern District of Texas Sherman Division.

34.    This Court is a court of law and equity.

## III.

### NATURE OF THE ACTION AND CLAIMS

35.    This is a diversity action for, *inter alia*, contempt and violation of a state court Temporary Restraining Order, breach of contract, promissory estoppel, interference with contract, bad faith, and third-party beneficiary of an insurance contract.

36.    This is also an action to construe and enforce a State Court Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

### IV.

### STATEMENT OF FACTS

37.    This is a suit for contempt and violation of a state court Temporary Restraining Order by the Insurance Companies.

38.    This also is a suit for Defendants' breach of an insurance contract and breach of the contract with Plaintiff to pay for legal services and expenses for defense in a lawsuit, for bad faith and for interference with contract.

39.    TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually and Joe Hoft were sued by Ruby Freeman ("Freeman") and Shea Moss ("Moss") for, *inter alia,* defamation, disparagement, personal injury, harm to character or reputation including libel, and slander for publications allegedly made

by TGP COMMUNICATIONS, LLC ("TGP"), Jim "James" Hoft, individually, and Joe Hoft, individually. The lawsuit will hereinafter be referred to as the "Freeman Moss Lawsuit."

40.    The Insurance Companies issued to TGP COMMUNICATIONS, LLC, and its agents, employees, members, and managers a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy") which covered the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually.

41.    The Insurance Companies admitted coverage of the Insurance Policy covering the claims and allegations made in the Freeman Moss Lawsuit against TGP COMMUNICATIONS, LLC, Jim "James" Hoft, individually, and Joe Hoft, individually.

42.    The Insurance Companies have taken the position that Defense Costs are part of and not in addition to the limits of liability and the "Defense Costs" will erode and may exhaust the "limits of liability" of the insurance companies.

43.    Plaintiff was retained by contract both written and oral by the Insurance Companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually to provide legal representation to TGP, James "Jim" Hoft, individually, and Joe Hoft,

individually, in defense of the Freeman Moss Lawsuit, and Plaintiff did so. Plaintiff was retained by written contract and by oral contract.

44.    Plaintiff relied on the Insurance Policy as the primary contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

45.    Plaintiff is a third-party beneficiary of the Insurance Policy for payment of legal services and expenses rendered by Plaintiff to TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

46.    The insurance policy was the primary contract relied on by Bundren Law Group, PLLC to pay defense costs incurred by Plaintiff in defending TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

47.    TGP, James "Jim" Hoft, individually, and Joe Hoft, individually also promised and entered into a written contract and oral contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

48.    The Insurance Companies participated in and negotiated the terms of the written contract to pay Plaintiff for legal services and expenses rendered for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

49.    Plaintiff submitted invoices to the Insurance Companies and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit. The Insurance Companies paid a portion of the invoices but have failed and refused, and continue to fail and refuse, to pay Plaintiff for all of the invoices owed resulting in a balance owed by all Defendants, jointly and severally, to Plaintiff in the amount of $512,215.50. This amount is past due and remains unpaid by Defendants.

50.    TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, although they have received all invoices from Plaintiff for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit, TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, have failed and refused, and continue to fail and refuse, to pay Plaintiff's invoices resulting in a balance of unpaid and past due invoices in the amount of $512,215.50 owed to Plaintiff. This amount is past due and remains unpaid by TGP, James "Jim" Hoft, individually, and Joe Hoft, individually.

51.    Plaintiff has made repeated written demands on the Insurance Companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, for payment of the past due invoices for legal services and expenses incurred by

Plaintiff in defense of the Freeman Moss Lawsuit. The Insurance Companies, and TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, did not object and did not contest any charges on the invoices when the invoices were submitted to them by Plaintiff, and have ignored Plaintiff's demands and have failed and refused, and continue to fail and refuse, to pay the past due invoices which totaled in the amount of $512,215.50 owed to Plaintiff.

52.    The Insurance Companies have taken the position that "Defense Costs" "are part of and not in addition to the limits of liability" of the Insurance Policy and that "Defense Costs will erode and may exhaust the limit of liability" of the Insurance Policy. Plaintiff disagrees.

53.    Defendant TGP admitted to this Court at the Temporary Restraining Order hearing on October 11, 2024, that the Insurance Companies, have paid and will continued to pay amounts to other persons that "will erode" and will "exhaust the limit of liability" of the Insurance Policy without payment of past due amounts and invoices owed to Plaintiff in the amount of $512,215.50, including eroding and exhausting the limit of liability of the Insurance Policy by payment of a settlement to the plaintiffs in the Freeman Moss Lawsuit. Defendant TGP, by and through its legal counsel, on October 11, 2024, at the Temporary Restraining Order hearing before United States District Court Judge Amos Mazzant, admitted and confessed to United States District Court Judge Mazzant that the "limit of liability" of the

Insurance Policy will be eroded and exhausted by the Insurance Companies on October 19, 2024 by payment by the Insurance Companies of a settlement to the plaintiffs in the Freeman Moss Lawsuit. Unless restrained, as requested herein by Plaintiff, on October 19, 2024 or October 20, 2024 the Insurance Companies will erode, dissipate, and exhaust the "limit of liability" of the Insurance Policy.

54.    If, as has been admitted by Defendant TGP, the "limit of liability" of the Insurance Policy is eroded or exhausted without payment to Plaintiff in the amount of $512,215.50 for Plaintiff's past due invoices in the amount of $512,215.50 for defense costs in defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit, Plaintiff will be irreparably harmed and injured by the exhaustion and erosion the "limit of liability" of the Insurance Policy which Plaintiff relied on to pay Plaintiff's invoices for the defense costs. Consequently, the refusal of the Insurance Companies to pay Plaintiff the past due invoices for defense costs owed to Plaintiff because the Insurance Policy will have reached its "limit of liability" -- a fact which has been admitted by Defendant TGP -- will directly and proximately cause and create difficulty for Plaintiff in recovering from the Insurance Companies for defense costs incurred and billed by Plaintiff to the Insurance Companies for Plaintiff's defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit.

*a.    The State Court Temporary Restraining Order*

55.   On October 8, 2024, the 471st Judicial District Court of Collin County,

Texas filed and entered a Temporary Restraining Order (the "Temporary Restraining

Order") which provided that:

"Defendants Atlantic Specialty Insurance Company, One Beacon
Professional Insurance Group, One Beacon Professional Insurance, Inc. and
Intact Insurance Group, USA LLC and all those others acting in participation
or concert with Defendants Atlantic Specialty Insurance Company, One
Beacon Professional Insurance Group, One Beacon Professional Insurance,
Inc. and Intact Insurance Group, USA LLC including but not limited to agents,
representatives, consultants, and employees are restrained and enjoined from
making any payments to any person for any reason under the insurance policy
which would reduce, erode, exhaust, or deplete the limits of liability and
balance of funds available to pay defense costs to Plaintiff Bundren Law
Group, PLLC below $600,000."
(*See* Dkt.# 3).

56.   The State Court Temporary Restraining Order also provided that:

"Plaintiff shall serve a copy of (1) Plaintiff's Original Petition and Application
For Temporary Restraining Order and Temporary Injunction filed in the
above referenced case and (2) a copy of this Temporary Restraining Order on
all Defendants at all known addresses of any Defendant, and by know email
to any Defendant within five (5) business days of the date of this Order."
(*See* Dkt.# 3).

57.   On October 8, 2024, as Ordered by the 471st Judicial District Court of

Collin County, Texas, Plaintiff served a copy of (1) Plaintiff's Original Petition (the

"State Court Petition") (*see* Dkt.#2) filed in the 471st Judicial District Court of Collin

County, Texas, and (2) the Temporary Restraining Order (*see* Dkt. # 3) filed and

entered on October 8, 2024 on Defendants, the Insurance Companies, TGP and

James "Jim" Hoft, individually, and Joe Hoft, individually by service or otherwise.

58.   On October 8, 2024, the Insurance Companies, TGP and James "Jim"

Hoft, individually, and Joe Hoft, individually, received by email a copy of (1)

Plaintiff's Original Petition (the "State Court Petition") (*see* Dkt.#2) filed in the 471st

Judicial District Court of Collin County, Texas, and (2) the October 8, 2024

Temporary Restraining Order filed and entered by the 471st Judicial District Court

of Collin County, Texas (*see* Dkt. # 3).

59.   On October 9, 2024, the Insurance Companies, TGP and James "Jim"

Hoft, individually, and Joe Hoft, individually, received by Federal Express a copy

of (1) Plaintiff's Original Petition (the "State Court Petition") (*see* Dkt.#2) filed in

the 471st Judicial District Court of Collin County, Texas, and (2) the October 8, 2024

Temporary Restraining Order filed and entered by the 471st Judicial District Court

of Collin County, Texas.

60.   On October 8, 2024 and October 9, 2024, the Insurance Companies,

TGP and James "Jim" Hoft, individually, and Joe Hoft, individually, received by

process or otherwise a copy of (1) Plaintiff's Original Petition (the "State Court

Petition") (*see* Dkt.#2) filed in the 471st Judicial District Court of Collin County,

Texas, and (2) the October 8, 2024 Temporary Restraining Order filed and entered

by the 471st Judicial District Court of Collin County, Texas (*see* Dkt. # 3).

61.   On October 11, 2024, at a hearing conducted before the Hon. United

States District Court Judge Amoz Mazzant, TGP told Judge Mazzant that a

"settlement agreement" had been executed between the parties in the Freeman Moss Lawsuit which would require the Insurance Companies on October 19, 2024 to make a payment which would reduce, erode, exhaust, or deplete the limits of liability and balance of funds available to pay defense costs to Plaintiff Bundren Law Group, PLLC below $600,000.

62.    TGP subsequently told this Court that the "alleged" "first payment deadline" of "October 19, 2024" was in "error" and that "the actual date is 20 October 2024." (*See* Dkt. #32 at 3, n. 2).

63.    On a date prior to October 16, 2024 (which date was redacted by TGP in its filing), the Insurance Companies and specifically "Intact Insurance Specialty Solutions" by and through "Christopher R. Paar, Vice President of Specialty Claims for Intact Insurance Specialty Solutions" sent an email to TGP and Jim Hoft in which the Insurance Companies made the admission that "available funds for this mediation are in the range of $700,000" and that **"Intact" "will make its funds available to settle the case on behalf of less than all of the insureds. In doing so, it is likely that the limits available under the policy will be exhausted (subject to how much money is ultimately paid to Charles to resolve his outstanding bills**."(Emphasis in the original). (*See* Dkt. # 17-9).

64.    On October 16, 2024, John Burns, Esq., legal counsel for TGP and Jim Hoft, filed a Declaration in this action in which he said that the "monetary terms" of

the "settlement agreement" executed in the Freeman Moss Litigation "exceed the full amount of TGP's remaining insurance proceeds. TGP and Jim Hoft are due to make a payment *from those proceeds by October 20, 2024*." (*See* Dkt. 17-1 at 5-6, ¶ 20.) (Emphasis added)

65.    John C. Burns, Esq., counsel for TGP and Jim Hoft, has admitted that the "monetary terms" of the settlement reached in the Freeman Moss Lawsuit "exceed the full amount of TGP's remaining insurance proceeds." (*See* Ex. 32-1 at 2, ¶ 7.) and must be paid by the Insurance Companies on October 20, 2024.

66.    TGP admitted that "settlement agreement" in the Freeman Moss Lawsuit "requires the use of the insurance funds to cover it." (*See* Dkt. #25 at 1).

67.    TGP has admitted that it is the responsibility of the Insurance Companies to pay Plaintiff for the costs of defense (*see* Dkt. #25 at 2), and that the "insurance proceeds were needed for indemnification" to pay the settlement reached in the Freeman Moss Lawsuit. (*See* Dkt. #25 at 3).

68.    This case was removed by TGP to the United States District Court for the Eastern District of Texas Sherman Division from the 471st Judicial District Court of Collin County, Texas on October 9, 2024. (*See* Dkt. #1). Prior to the removal, the 471st Judicial District Court of Collin County, Texas filed and entered a Temporary Restraining Order (*See* Dkt. #3). The State Court Temporary Restraining Order remained in effect until "October 22, 2024" in accordance its terms and pursuant to

28 U.S.C § 1450 which states that "[a]ll injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *See Elepreneurs Holdings, LLC v. Benson*, 2021 U.S. Dist. LEXIS 7157 *3 (U.S.E.D. Texas, Judge Mazzant, 2021), *citing*, *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck drivers*, 415 U.S. 423, 435 (1974).

69.    The state court Temporary Restraining Order was never dissolved prior to October 22, 2024 when it expired by its own terms.

70.    The Insurance Companies were restrained by the Temporary Restraining Order dated October 8, 2024 from the 471st Judicial District Court of Collin County, Texas until October 22, 2024.

71.    The Temporary Restraining Order remained in effect as of October 20, 2024 the date of the alleged "first payment" pursuant to the executed settlement agreement in the Freeman Moss Litigation which TGP contends was necessary and was paid by the Insurance Companies.

72.    On information and belief, the Insurance Companies breached and violated and committed a contempt of the state court Temporary Restraining Order on or about October 20, 2024.

73.    Plaintiff requests this Court to construct the state court Temporary Restraining Order and find that the Insurance Companies breached and violated and

committed a contempt of the state court Temporary Restraining Order on or about October 20, 2024.

74.    Plaintiff seeks a judgment from this Court, based on the state court Temporary Restraining Order issued by the 471st Judicial District Court of Collin County, Texas that the Insurance Companies are in contempt of the state court Temporary Restraining Order and a fine against the Insurance Companies in the amount of $600,000.

*b. TGP Notice of Removal.*

75.    On October 8, 2024, Defendants, the Insurance Companies, TGP and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of Plaintiff's Original Petition (*see* Dkt. #2) filed in the 471st Judicial District Court of Collin County, Texas.

76.    On October 8, 2024, Defendants, the Insurance Companies, TGP and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of the Temporary Restraining Order (*see* Dkt. #3) entered and filed in the 471st Judicial District Court of Collin County, Texas.

77.    On October 9, 2024, the Insurance Companies, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of TGP's Notice of Removal (*See* Dkt. #1).

78.    On October 11, 2024, the Insurance Companies, TGP, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of Plaintiff's Emergency Motion for Temporary Restraining Order (*See* Dkt. #4).

79.    On October 12, 2024, the Insurance Companies, TGP, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of Plaintiff's Original Complaint (*See* Dkt. #7).

80.    On October 19, 2024, the Insurance Companies, TGP, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of Plaintiff's Emergency Motion to Remand (*See* Dkt. #29).

81.    On October 20, 2024, the Insurance Companies, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of TGP's Amended Notice of Removal (*See* Dkt. #30).

82.    On October 21, 2024, the Insurance Companies, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of TGP's Second Amended Notice of Removal (*See* Dkt. #35.)

83.    On October 17, 2024, Atlantic Specialty Insurance Company appeared and filed a Disclosure Statement pursuant to Fed. R. Civ. P. 7.1(a)(2), and the other Insurance Companies, TGP, and Jim Hoft, individually, and Joe Hoft, individually,

were provided through service or otherwise with a copy of Atlantic Specialty Insurance Company's Disclosure Statement (*See* Dkt. #19).

84.    On October 17, 2024, Intact Insurance Group, USA, LLC appeared and filed a Disclosure Statement pursuant to Fed. R. Civ. P. 7.1(a)(2), and the other Insurance Companies, TGP, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of Intact Insurance Group, USA, LLC's Disclosure Statement (*See* Dkt. #20).

85.    On October 17, 2024, One Beacon Professional Insurance Group appeared and filed a Disclosure Statement pursuant to Fed. R. Civ. P. 7.1(a)(2), and the other Insurance Companies, TGP, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of One Beacon Professional Insurance Group's Disclosure Statement (*See* Dkt. #21).

86.    On October 17, 2024, One Beacon Professional Insurance, Inc. appeared and filed a Disclosure Statement pursuant to Fed. R. Civ. P. 7.1(a)(2), and the other Insurance Companies, TGP, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of One Beacon Professional Insurance, Inc.'s Disclosure Statement (*See* Dkt. #22).

87.    On October 18, 2024, Daniel M. Karp, Esq. appeared as legal counsel on behalf of Atlantic Specialty Insurance Company, Intact Insurance Group, USA, LLC, One Beacon Professional Insurance Group, and One Beacon Professional

Insurance, Inc., and TGP, and Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of Daniel M. Karp, Esq.'s Notice of Appearance (*See* Dkt. #27).

88. On October 17, 2024, Jonathan Christian Burns, Esq. appeared as legal counsel on behalf of TGP and James "Jim" Hoft, individually, and the Insurance Companies and Joe Hoft, individually, were provided through service or otherwise with a copy of Jonathan Christian Burns Esq.'s Notice of Appearance (*See* Dkt. #24).

89. On October 17, 2024, Marc Randazza, Esq. appeared as legal counsel on behalf of TGP and the Insurance Companies, James Jim Hoft, individually, and Joe Hoft, individually, were provided through service or otherwise with a copy of Marc Randazza Esq.'s Notice of Appearance (*See* Dkt. #26).

90. As of the filing of this Second Amended Original Complaint, the Insurance Companies have not agreed to pay Plaintiff's past due invoices for Plaintiff's defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, in the Freeman Moss Lawsuit beyond the "$2 million" "limit of liability" stated in the Insurance Policy.

91. Plaintiff has given Defendants, through service or otherwise, multiple written notices of Plaintiff's claims and damages suffered by Plaintiff, but Defendants have failed and refused, and continue to fail and refuse, to honor the insurance contract, the written contracts in the oral contracts and the attorney

retention contract, and continue to fail and refuse to pay Plaintiff for the amount of damages suffered by Plaintiff and covered by the Insurance Policy.

92. Plaintiff has been forced to file this lawsuit because the Insurance Companies breached, committed contempt, and violated a state court Temporary Restraining Order, and Defendants have failed and refused, and continue to fail and refuse, to pay a lawful debt owed to Plaintiff, and have failed and refused to pay Plaintiff for the past due invoices for defense costs which are covered by the Insurance Policy.

93. Plaintiff has occurred legal fees and court costs to bring this legal action against Defendants for which Plaintiff will seek recovery from Defendants, jointly and severally, for the court costs and attorney's fees incurred in this action.

94. On August 19, 2024, Plaintiff sent an email to the insurance company representative requesting the status of payment of unpaid invoices owed to BLG.

95. On August 29, 2024, Plaintiff sent a second email to the insurance company representative requesting the status of payment of unpaid invoices owed to BLG.

96. On September 24, 2024, Plaintiff sent third email to the insurance company representative requesting the status of payment of unpaid invoices owed to BLG.

97.    On September 24, 2024, Plaintiff received an email from Joe Hoft to the insurance company representative requesting whether there were any invoices that needed to be loaded in order to be paid to BLG.

98.    On September 24, 2024, Plaintiff received a copy of an email from the insurance company representative in response to email from Joe Hoft indicating that all invoices were loaded and ready for payment to Plaintiff.

99.    On September 25, 2024, Plaintiff received an email from Joe Hoft in response to the email from the insurance companies' representative requesting Plaintiff's assistance in obtaining additional copies of invoices 11606 and 11616.

100.   On September 25, 2024, Plaintiff responded by email to the September 25, 2024 email Plaintiff received from Joe Hoft in response to the September 25, 2024 email from the insurance company representative requesting additional copies of invoices 11606 and 11616.

101.   On September 25, 2024, Plaintiff sent an email to the insurance company representative demanding immediate payment of past due invoices.

102.   On Friday, September 27, 2024 at 9:58 AM, Plaintiff sent an email to the insurance company representative demanding payment of the past due invoices.

103.   Substantially all of the work performed by BLG in the defense of TGP and the Hofts in the Freeman Moss Lawsuit was performed in the State of Texas and, more particularly, in Collin County, Texas

104.   Plaintiff negotiated all contracts and attorney retention agreements between BLG, TGP, the Hofts, and the insurance companies who insured both TGP and the Hofts in connection with the Freeman-Moss Lawsuit in Collin County, Texas

105.   The insurance Companies orally promised to pay the legal fees incurred by Plaintiff in defending TGP and the Hofts in the Freeman-Moss Lawsuit within 30 days of receipt of the invoice.

106.   The insurance Companies orally promised to pay the expenses incurred by Plaintiff in defending TGP and the Hofts in the Freeman-Moss Lawsuit within 30 days of receipt of the invoice

107.   TGP and the Hofts contacted Plaintiff in December of 2023 and requested that Plaintiff provide legal representation for a defense of TGP and the Hofts in the Freeman-Moss Lawsuit.

108.   On January 10, 2024, TGP and the Hofts executed and delivered a Retainer Agreement to Plaintiff in connection with the Freeman-Moss Lawsuit.

109.   The Retainer Agreement states, in part, in capitalized and bold font that:

**13. THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL OBLIGATIONS OF THE PARTIES ARE PERFORMABLE IN COLLIN COUNTY, TEXAS. THIS AGREEMENT CAN BE ENFORCEABLE BY ANY COURT OF COMPETENT JURISDICTION IN COLLIN COUNTY, TEXAS.**

110. Before Plaintiff agreed to undertake a defense of TGP and the Hofts in the Freeman Moss Lawsuit, Plaintiff requested information on the existence of an insurance policy or agreement that insured or covered the reimbursement of defense costs and attorney fees for Plaintiff's legal services.

111. TGP and the Hofts represented and promised that they were insured under an insurance policy or agreement that would guarantee payment of Plaintiff's defense costs and attorney fees invoices for legal representation in connection with the Freeman-Moss Lawsuit.

112. Before execution of the Retainer Agreement, Plaintiff received and reviewed a copy of a "Media Advantage Policy" and "Media Professional Liability" insurance policy No. MEP-25081-21 (the "Insurance Policy"), which covered TGP and the Hofts for the defense costs and alleged claims and allegations asserted in the Freeman-Moss Lawsuit.

113. The Insurance Policy requires the issuing insurance companies to pay for the defense costs incurred by Plaintiff in connection with the Freeman-Moss Lawsuit.

114. The Insurance Policy was issued and guaranteed by a number of insurance companies, including Atlantic Specialty Insurance Company ("Atlantic"), One Beacon Professional Insurance Group and One Beacon Professional Insurance, Inc. (collectively, "Beacon"), and Intact Insurance Group, USA, LLC ("Intact").

Atlantic, Beacon, and Intact are hereinafter referred to collectively as the ("Insurance Companies").

115. The Insurance Companies participated in and negotiated the terms of the Retainer Agreement, which was executed by their insureds, TGP and the Hofts with Plaintiff.

116. The Insurance Companies approved of the terms of the Retainer Agreement, which was executed by their insureds, TGP and the Hofts with Plaintiff.

117. The Insurance Companies approved payment to Plaintiff of the full hourly rate for travel incurred with respect to Plaintiff's legal representation of TGP and the Hofts.

118. The Insurance Companies require that all invoices from Plaintiff for legal services be sent to the insurance Companies for processing and payment.

119. The Insurance Companies orally agreed to pay all invoices from Plaintiff for legal services within 30 days of receipt of the invoice.

120. Plaintiff relied on the oral promises made by the Insurance Companies, the insurance policy, in the emails received from the Insurance Companies confirming the understanding that the Insurance Companies would pay the invoices within 30 days of receipt.

121. Plaintiff relied on the Insurance Policy as the primary contract to pay Plaintiff's defense costs, attorney fees, and expenses expended in defense of TGP and the Hofts.

122. Plaintiff prepared invoices for legal services rendered and costs incurred to defend TGP and the Hofts in the Freeman-Moss Lawsuit. The daily timeslips and invoices were prepared and are maintained in Plaintiff's offices in Collin County, Texas. The books and records supporting the time entries on the invoices are maintained in Plaintiff's offices in Collin County, Texas.

123. Plaintiff was directed by the Insurance Companies, TGP, and the Hofts to submit invoices for BLG's legal services to the Insurance Companies (the "Invoices").

124. Specifically, Plaintiff was directed by TGP, the Hofts, and the insurance companies to submit the Invoices to Annamarie Haught ("Haught"), the claims representative for the Insurance Companies, TGP, and the Hofts.

125. Plaintiff submitted the Invoices to Haught for payment and with a copy of the invoices also submitted to TGP and the Hofts.

126. The Insurance Companies paid a portion of amounts owed on the Invoices but have failed and refused, and continue to fail and refuse, to pay Plaintiff all of the amounts due and owing under the Invoices pursuant to the Retainer Agreement, resulting in a past due balance owed in the amount of $512,215.50.

127. Plaintiff has made repeated written demands to the Insurance Companies, TGP, and the Hofts for payment of the Invoices, but such demand have been ignored.

128. Despite Plaintiff's demands, the Insurance Companies, TGP, and the Hofts continue to refuse to pay the Invoices due and owing to Plaintiff pursuant to the Retainer Agreement, the Insurance Policy, and the oral promises.

129. Pursuant to the Retainer Agreement, the Insurance Companies, TGP, and the Hofts directed Plaintiff to obtain and gather admissible evidence of the events and actions that occurred on election day in November 2020 in Fulton County, Georgia at the State Farm Arena in connection with the scanning of the mail-in ballots by Freeman, Moss, and others (the "Fulton County Events").

130. After executing the Retainer Agreement, Plaintiff learned that TGP and the Hofts' prior retained defense attorneys in the Freeman-Moss lawsuit, John Burns, Esq. ("Burns"), Marc Randazza, Esq. ("Randazza"), and Jay Wolman, Esq. ("Wolman") failed to investigate and make any effort to obtain any admissible evidence in connection with the Fulton County Events.

131. At the time of Plaintiff's involvement in the Freeman-Moss Lawsuit, Randazza, Burns, and Wolman failed to make any effort to obtain discovery or any admissible evidence concerning the Fulton County Events.

132.    The truth of the matters stated in a publication is an affirmative defense to any claim for defamation, libel, or slander and the investigation of the truth of the matters stated is critical to any defense when a libel, defamation or slander lawsuit is filed against a defendant.

133.    As such, Plaintiff and its attorneys, legal assistants, employees, and consultants were specifically retained by the Insurance Companies, TGP and the Hofts to investigate and obtain admissible evidence from Georgia and other states (not including Missouri) regarding the actions regarding the Fulton County Events.

134.    None of Plaintiff's attorneys, legal assistants, employees, and/or consultants are, or were at any time, residents of the State of Missouri, and none reside in the State of Missouri or undertook any investigation of the facts, interviews, or discovery in the State of Missouri for purposes of legal services in connection with the Freeman-Moss lawsuit, which the Invoices subject to this lawsuit arise out of.

135.    To fulfill Plaintiff's instructions from the Insurance Companies, TGP, and the Hofts, Plaintiff conducted investigations and sought admissible discovery in the States of Georgia, Texas, Washington D.C., Virginia, Maryland, and State of Louisiana.

136.    To fulfill Plaintiff's instructions from the Insurance Companies, TGP, and the Hofts to investigate and obtain admissible evidence in the Freeman-Moss

Lawsuit, Plaintiff performed the legal services and actions pursuant to the Retainer Agreement, the insurance policy, and the oral promises by Defendants.

137.    On May 23, 2024, Plaintiff was informed by email that the Insurance Companies cannot process payments to Plaintiff because TGP filed bankruptcy.

138.    TGP's bankruptcy was dismissed in July 2024.

139.    By email dated August 6, 2024, TGP and Jim Hoft demanded that the Insurance Companies not make payment to Plaintiff of the past due invoices.

140.    By email dated July 31, 2024, the Insurance Companies confirmed with TGP and Jim Hoft that $1,087,117.45 remained under the policy available for payment to Plaintiff. The email also confirmed that the Insurance Companies had received additional invoices with the insurance companies had not paid to Plaintiff.

141.    On August 6, 2024, Plaintiff received an email from the Insurance Companies requesting a "convenient time to discuss payment of the outstanding invoices."

142.    On September 25, 2024, by email, the Insurance Companies confirmed that they are "very close to completing our bill review" of Plaintiff's unpaid invoices.

143.    On September 27, 2024, by email, the insurance Companies confirmed that the amount owed to Plaintiff was "$375K to $400K."

144.    On September 24, 2024, by email, the Insurance Companies confirmed that all invoices owed to Plaintiff are "loaded" and ready to be paid.

145. On September 30, 2024, by email, the Insurance Companies confirmed that "[o]ur bill review team has completed the review of all of the Bundren bills the amount due is between $375K and $400K."

146. On September 30, 2024, by email, TGP and Jim Hoft acknowledged that the Insurance Companies intended to hold "$510,000" to pay Plaintiff's invoices. TGP and Jim Hoft then threatened The Insurance Companies with "bad faith" if the Insurance Companies paid Plaintiff and instead demanded that the Insurance Companies pay TGP and Jim Hoft $700,000 immediately.

147. On October 2, 2024, by email, TGP and Jim Hoft demanded that the Insurance Companies refused to pay Plaintiff the amounts due as acknowledged by the Insurance Companies under the threat of a lawsuit against the Insurance Companies.

148. On October 8, 2024, by email, the Insurance Companies, despite confirming unpaid invoices due to Plaintiff, agreed to refuse to pay Plaintiff's "invoices of $512K".

149. The Insurance Companies have acknowledged in writing that approximately "$512K" is due to Plaintiff pursuant to invoices submitted to the Insurance Companies but the insurance companies have failed and refused, and continued to fail and refuse, to pay the unpaid invoices the Insurance Companies receive from Plaintiff.

150. TGP and Jim Hoft interfered with the payment of Plaintiff's unpaid invoices which Plaintiff submitted to the Insurance Companies.

151. Although acknowledging in writing Plaintiff's unpaid invoices which Plaintiff submitted to the Insurance Companies were past due and owed to Plaintiff, the Insurance Companies failed and refused to pay the invoices.

### V.

### CONDITIONS PRECEDENT

152. All conditions precedent to the filing of this Second Amended Original Complaint have been satisfied.

### VI.

### CAUSES OF ACTION

### COUNT 1

### BREACH OF CONTRACT

153. Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

154. Plaintiff has fully performed Plaintiff's obligations under the Insurance Policy, and the attorney retention agreement entered into with Defendants.

155. Defendants entered into a written contract whereby Defendants made promises regarding payments to Plaintiff for defense costs for legal services and

expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

156.   Defendants promised that Plaintiff's invoices would be paid within 30 days of receipt of them.

157.   Defendants have not performed or tendered performance of Defendants' obligations under the contract to Plaintiff, and Defendants have no excuse for failing to perform the obligations of Defendants under the written contracts. To Plaintiff's detriment, Defendants breached Defendants' obligations under the contracts by failing to pay Plaintiff for defense costs for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

158.   Defendants' failure to perform the contracts is a material breach of the contracts and has directly and proximately caused damage to Plaintiff in the amount of $512,215.50 which is within the jurisdiction of this Court. Accordingly, Plaintiff seeks recovery herein of Plaintiff's damages in the amount of $512,215.50 plus all reasonable and necessary attorney's fees incurred in the prosecution of this action, pre-judgment and post-judgment interest at the highest lawful rates, and all taxable costs of court, and all other relief, both at law and in equity, to which Plaintiff is justly entitled to receive.

## COUNT 2

### PROMISSORY ESTOPPEL

159.   Plaintiff fully incorporates the allegations in all previous paragraphs of this Second Amended Original Complaint.

160.   Defendants made promises to Plaintiff regarding payment of defense costs to Plaintiff for defense costs for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit, and payment of Plaintiff's invoices for the defense of TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

161.   Defendants promised to pay Plaintiff's invoices within 30 days of receipt.

162.   Defendants received Plaintiffs invoices but have not make payment of the amounts due under the invoices.

163.   Plaintiff reasonably and substantially relied on the promises made by Defendants to Plaintiff's detriment.

164.   Plaintiff's reliance on the promises made by Defendants to Plaintiff was foreseeable by Defendants.

165.   Defendants knew, or reasonably should have known, that Plaintiff would rely on Defendants' promises.

166.    Injustice can be avoided only by enforcing Defendants' promises made to Plaintiff.

167.    Plaintiff proximately and directly suffered $512,215.50 in damages as a result of Plaintiff's reliance on Defendants' promises made to Plaintiff.

### COUNT 3

### THIRD-PARTY BENEFICIARY

168.    Plaintiffs fully incorporate the allegations in the previous paragraphs of this First Amended Original Complaint.

169.    Plaintiff is a third-party beneficiary to the Insurance Policy.

170.    The Insurance Policy intended to secure a benefit for Plaintiff by payment of defense costs for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

171.    The Insurance Policy provides for payment of defense costs to Plaintiff in defending James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

172.    The Insurance Companies, confirmed in writing and orally that Plaintiff is a third-party beneficiary of the Insurance Policy by, *inter alia,* making some payments under the Insurance Policy to Plaintiff for defending TGP, James "Jim"

Hoft, individually, and Joe Hoft, individually in defense of the Freeman Moss Lawsuit.

173.    The Insurance Policy required the Insurance Companies to pay Plaintiff for the "defense costs" for defending TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit, and the Insurance Companies, did pay some amounts to Plaintiff pursuant to the Insurance Policy.

174.    The contracting parties to the Insurance Policy intended for the Insurance Policy to pay for "defense costs" to Plaintiff for defending TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

175.    Plaintiff was retained by written contract to defend TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

176.    The Insurance Companies negotiated and approved the retention of Plaintiff to defend TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit, and acting accordingly.

177.    Plaintiff, pursuant to the Insurance Policy, and the promises made regarding the Insurance Policy, defended TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in the Freeman Moss Lawsuit.

178. Defendants promised Plaintiff that Plaintiff was a third-party beneficiary of the Insurance Policy and that payment of Plaintiff's invoices would be made within 30 days of receipt of the invoice in accordance with the Insurance Policy.

## COUNT 4

### BREACH OF ORAL CONTRACT

179. Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

180. Plaintiff has fully performed Plaintiff's obligations under the Insurance Policy, and the attorney retention agreement entered into with Defendants and in the oral promises between the parties.

181. Defendants entered into an oral contract whereby Defendants made promises regarding payments to Plaintiff for defense costs for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

182. Defendants promised that Plaintiff's invoices would be paid within 30 days of receipt.

183. Defendants have not performed or tendered performance of Defendants' obligations under the oral contract to Plaintiff, and Defendants have no excuse for failing to perform the obligations of Defendants under the oral contract.

To Plaintiff's detriment, Defendants breached Defendants' obligations under the oral contract by failing to pay Plaintiff for defense costs for legal services and expenses rendered by Plaintiff for TGP, James "Jim" Hoft, individually, and Joe Hoft, individually, in defense of the Freeman Moss Lawsuit.

184. Defendants orally promised to pay Plaintiff's invoices within 30 days of Defendants' receipt of the invoices.

185. Defendants paid, as promised, some of Plaintiff's invoices, but have failed and refused, and continued to fail and refuse to pay all of the invoices as orally promised.

186. Defendants' failure to perform the oral contract is a material breach of the oral contract and has directly and proximately caused damages to Plaintiff in the amount of $512,215.50 which is within the jurisdiction of this Court. Accordingly, Plaintiff seeks recovery herein of Plaintiff's damages in the amount of $512,215.50 plus all reasonable and necessary attorney's fees incurred in the prosecution of this action, pre-judgment and post-judgment interest at the highest lawful rates, and all taxable costs of court, and all other relief, both at law and in equity, to which Plaintiff is justly entitled to receive.

## COUNT 5

### QUANTUM MERUIT

187.  Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

188.  Plaintiff provided Defendants with legal services as described herein.

189.  Defendants accepted Plaintiff's legal services as described herein.

190.  Defendants knew or should have known that Plaintiff expected compensation when Defendants accepted the legal services.

191.  Because Plaintiff expected compensation for Plaintiff's legal services to Defendants, Defendants' acceptance of the legal services resulted in damage to Plaintiff.

192.  Accordingly, Plaintiff seeks recovery herein of Plaintiff's damages in the amount of $512,215.50 plus all reasonable and necessary attorney's fees incurred in the prosecution of this action, pre-judgment and post-judgment interest at the highest lawful rates, and all taxable costs of court, and all other relief, both at law and in equity, to which Plaintiff is justly entitled to receive.

### COUNT 6

### INTERFERENCE WITH EXISTING CONTRACT

193.  Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

194.  Plaintiff had a valid written and oral contract with the Insurance Companies.

195.  Defendants, TGP and Jim Hoft, knew or had reason to know of Plaintiff's valid written and oral contract with the Insurance Companies and Plaintiff's interest in the contract.

196.  Defendants, TGP and Jim Hoft, by and through her attorney, John Burns, willfully and intentionally interfered with Plaintiff's valid written and oral contract with the Insurance Companies.

197.  Defendants, TGP and Jim Hoft's, proximately caused injury to Plaintiff and accordingly, Plaintiff seeks recovery herein of Plaintiff's damages in the amount of $512,215.50 plus all reasonable and necessary attorney's fees incurred in the prosecution of this action, pre-judgment and post-judgment interest at the highest lawful rates, and all taxable costs of court, and all other relief, both at law and in equity, to which Plaintiff is justly entitled to receive.

### COUNT 7

### DECLARATORY JUDGMENT OF CONTEMPT AND TO ENFORCE TEMPORARY RESTRAINING ORDER OF THE STATE COURT

198.  Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

199.  The Insurance Companies violated the restrictions and restraints contained in the Temporary Restraining Order issued by the 471st Judicial District Court of Collin County, Texas.

200.   Upon information and belief, the insurance companies reduced, eroded, exhausted, and/or depleted the limits of liability and balance of funds available to pay defense costs to Plaintiff Bundren Law Group, PLLC below $600,000 by making payments pursuant to the settlement agreement in the Freeman Moss Lawsuit in violation of the Temporary Restraining Order.

201.   On October 8, 2024, the 471st Judicial District Court of Collin County, Texas enter a Temporary Restraining Order (the "Temporary Restraining Order") which provided that:

> "Defendants Atlantic Specialty Insurance Company, One Beacon Professional Insurance Group, One Beacon Professional Insurance, Inc. and Intact Insurance Group, USA LLC and all those others acting in participation or concert with Defendants Atlantic Specialty Insurance Company, One Beacon Professional Insurance Group, One Beacon Professional Insurance, Inc. and Intact Insurance Group, USA LLC including but not limited to agents, representatives, consultants, and employees are restrained and enjoined from making any payments to any person for any reason under the insurance policy which would reduce, erode, exhaust, or deplete the limits of liability and balance of funds available to pay defense costs to Plaintiff Bundren Law Group, PLLC below $600,000."
> (*See* Dkt.# 3).

202.   On October 8, 2024, the Insurance Companies, TGP and James "Jim" Hoft, individually, and Joe Hoft, individually, received by email a copy of the 471st Judicial District Court of Collin County, Texas, filed and entered Temporary Restraining Order (*See* Dkt. # 3).

203.   On October 8, 2024, the Insurance Companies, TGP and James "Jim" Hoft, individually, and Joe Hoft, individually, received by Federal Express a copy

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT          PAGE 47**

of the 471st Judicial District Court of Collin County, Texas, filed and entered Temporary Restraining Order (*See* Dkt. # 3).

204.   On October 8, 2024 and by October 9, 2024, the Insurance Companies, TGP and James "Jim" Hoft, individually, and Joe Hoft, individually, received by service or otherwise a copy of the 471st Judicial District Court of Collin County, Texas, filed and entered Temporary Restraining Order (*See* Dkt. # 3).

205.   The Insurance Companies were fully aware by no later than October 9, 2024 of the restraints and order of injunction contained in the Temporary Restraining Order filed and entered in the 471st Judicial District Court of Collin County, Texas, and fully aware that the Temporary Restraining Order did not expire until October 22, 2024.

206.   On October 11, 2024, at a hearing conducted before the Hon. United States District Court Judge Amoz Mazzant, TGP told Judge Mazzant that a settlement agreement had been executed between the parties in the Freeman Moss Lawsuit which would require the Insurance Companies on October 19, 2024 to make a payment which would reduce, erode, exhaust, or deplete the limits of liability and balance of funds available to pay defense costs to Plaintiff Bundren Law Group, PLLC below $600,000.

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT          PAGE 48**

207.   TGP subsequently told this Court that the "alleged" "first payment deadline" of "October 19, 2024" was in "error" and that "the actual date is 20 October 2024." (*See* Dkt. #32 at 3, n. 2).

208.   On a date prior to October 16, 2024 (which date was redacted by TGP in its filing), the Insurance Companies and specifically "Intact Insurance Specialty Solutions" sent an email to TGP and Jim Hoft in which the Insurance Companies made the admission that "available funds for this mediation are in the range of $700,000" and that "**Intact" "will make its funds available to settle the case on behalf of less than all the insureds. In doing so, it is likely that the limits available under the policy will be exhausted (subject to how much money is ultimately paid to Charles to resolve his outstanding bills**)."(Emphasis in the original). (*See* Dkt. # 17-9).

209.   On October 16, 2024, John Burns, Esq., legal counsel for TGP and Jim Hoft, filed a Declaration in this action in which he said that the "monetary terms" of the settlement agreement executed in the Freeman Moss Litigation "exceed the full amount of TGP's remaining insurance proceeds. TGP and Jim Hoft are due to make a payment *from those proceeds by October 20, 2024*." (*See* Dkt. 17-1 at 5-6, ⁋ 20.) (Emphasis added)

210.   John C. Burns, Esq., counsel for TGP and Jim Hoft, has admitted that the "monetary terms" of the settlement reached in the Freeman Moss Lawsuit

"exceed the full amount of TGP's remaining insurance proceeds." (*See* Ex. 32-1 at 2, ⁋ 7.).

211.   TGP admitted that "settlement agreement" in the Freeman Moss Lawsuit "requires the use of the insurance funds to cover it." (*See* Dkt. #25 at 1).

212.   This case was removed by TGP to the United States District Court for the Eastern District of Texas Sherman Division from the 471st Judicial District Court of Collin County, Texas on October 9, 2024. (*See* Dkt. #1), but prior to the removal, the 471st Judicial District Court of Collin County, Texas filed and entered a Temporary Restraining Order (*See* Dkt. #3). The State Court Temporary Restraining Order remained in effect until "October 22, 2024" in accordance its terms and pursuant to 28 U.S.C § 1450 which states that "[a]ll injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *See Elepreneurs Holdings, LLC v. Benson*, 2021 U.S. Dist. LEXIS 7157 *3 (U.S.E.D. Texas, Judge Mazzant, 2021), *citing*, *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck drivers*, 415 U.S. 423, 435 (1974).

213.   The state court Temporary Restraining Order was never dissolved prior to its expiration by its own terms on October 22, 2024.

214.  The Insurance Companies were restrained by the Temporary Restraining Order dated October 8, 2024 from the 471st Judicial District Court of Collin County, Texas until October 22, 2024.

215.  The Temporary Restraining Order remained in effect as of October 20, 2024 the date of the alleged "first payment" pursuant to the executed settlement agreement in the Freeman Moss Litigation which TGP contends was necessary and was paid by the Insurance Companies.

216.  On information and belief, the Insurance Companies breached and violated and committed contempt of the state court Temporary Restraining Order on or about October 20, 2024 when the insurance companies made payment under the settlement agreement executed in the Freeman Moss Litigation.

217.  Plaintiff requests this Court to declare and construe the state court Temporary Restraining Order and find by Judgment that the Insurance Companies breached and violated and committed a contempt of the state court Temporary Restraining Order on or about October 20, 2024, or thereafter by making payment which reduced, eroded, exhausted, or depleted the limits of liability and balance of funds available to pay defense costs to Plaintiff Bundren Law Group, PLLC below $600,000.

218.  Plaintiff seeks a judgment from this Court, based on the state court Temporary Restraining Order issued by the 471st Judicial District Court of Collin

County, Texas that the Insurance Companies are in contempt of the October 8, 2024 state court Temporary Restraining Order and a fine against the Insurance Companies in the amount of $600,000 for contempt in violation of the Temporary Restraining Order of the 471st Judicial District Court of Collin County, Texas.

219.  For the reasons stated in this First Amended Original Complaint, pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks a Judgment of this Court construing and declaring the applicability of the Temporary Restraining Order of the 471st Judicial District Court of Collin County, Texas, and a violation of the Temporary Restraining Order by the Insurance Companies.

### COUNT 8

### ATTORNEYS FEES

220.  Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

221.  Pursuant to Texas law, Plaintiff is entitled to recover Plaintiff's reasonable and necessary attorney's fees incurred in the prosecution of this action in the District Court, the Court of Appeals, if necessary, and the Supreme Court of the United States, if necessary.

222.  Plaintiff is entitled to recover attorney's fees incurred by Plaintiff in the lawsuit filed by TGP and Jim Hoft in the United States District Court for the Eastern

District of Missouri against TGP and Jim Hoft separate and apart from attorney's fees incurred above referenced civil action.

223.   Plaintiff demands attorney's fees incurred by Plaintiff in the lawsuit filed by TGP and Jim Hoft in the United States District Court for the Eastern District of Missouri against TGP and Jim Hoft.

### COUNT 9

### ACTUAL DAMAGES

224.   Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

225.   Plaintiff has suffered injury as a proximate cause and producing cause of the actions of Defendants described herein.

226.   Plaintiff is entitled to recover actual damages for Defendants actions described herein in the amount of $512,215.50.

227.   Plaintiff is entitled to recover damages outside of the damages recoverable under the Insurance Policy and beyond the "limit of liability" of the insurance policy due to the unlawful actions of the Insurance Companies.

228.   Plaintiff has suffered $512,215.50 in damages as a result of the actions of Defendants, and Plaintiff is entitled to recover that amount, jointly and severally, from Defendants.

229.   Plaintiff is entitled to recover such other and further damages and relief Plaintiff incurs as a proximate cause or producing cause of the actions of Defendants, jointly and severally, as described herein.

### COUNT 10

### PREJUDGMENT INTEREST

230.   Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

231.   Plaintiff seeks the recovery of prejudgment interest to the full extent that such interest is recoverable pursuant to law.

### COUNT 11

### POST- JUDGMENT INTEREST

232.   Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

233.   Plaintiff seeks the recovery of post-judgment interest to the full extent that such interest is recoverable pursuant to law.

### VII.

### REQUEST FOR JURY TRIAL

234.   Plaintiff requests a jury be impaneled and that a jury try this case. In conjunction with the filing of Plaintiff's Original Petition in the state court from

which this case was removed, Plaintiff tendered a jury fee to the clerk of the State court and requested in the state court a jury trial.

## VIII.

### APPLICATION OR MOTION FOR TEMPORARY RESTRAINING ORDER

235. Plaintiff fully incorporates the allegations in the previous paragraphs of this Second Amended Original Complaint.

236. Plaintiff asks the Court to issue a Temporary Restraining Order and Preliminary Injunction to restrain the Insurance Companies, and all of those persons acting in concert, joint enterprise, or participation with them from making any payments to any person pursuant to the Insurance Policy which would reduce, erode, or exhaust the limits of liability of the Insurance Policy below $600,000.

237. Plaintiff's application for a Temporary Restraining Order and Preliminary Injunction is authorized by Tex. Civ. Prac. & Rem. Code §65.011(1), *et. seq.,* and Federal Rule of Civil Procedure 65, and federal law.

238. The reduction, erosion, or exhaustion of the limits of liability of the Insurance Policy below $600,000 would be prejudicial and cause irreparable harm to Plaintiff because the Insurance Policy assures Plaintiff of payment for the defense costs for defending TGP, James "Jim" Hoft, individually, and Joe Hoft, individually in the Freeman Moss Lawsuit.

239. If the Insurance Companies are allowed to continue to pay funds from the Insurance Policy that will continue to reduce, erode, or exhaust the limits of liability of the Insurance Policy below $600,000 such action would render a Judgment in this action ineffectual and prejudice to Plaintiff, and would cause irreparable harm to Plaintiff.

240. It is necessary to preserve the limits of liability of the Insurance Policy to no less than $600,000 to preserve the subject matter of this suit until it is resolved by Final Judgment.

241. It is necessary to preserve the limits of liability of the Insurance Policy to no less than $600,000 to prevent further dissipation, exhaustion, or erosion of the assets of the Insurance Policy while his case is pending and until a Final Judgment is rendered.

242. It is necessary to preserve the limits of liability of the Insurance Policy to no less than $600,000 to prevent further dissipation, exhaustion, or erosion of the assets of the Insurance Policy while his case is pending and until a Final Judgment is rendered.

243. Plaintiff has a probable right to the relief Plaintiff seeks on final hearing and is likely to succeed on the merits of Plaintiff's lawsuit.

244.   Plaintiff will suffer irreparable injury if a Temporary Restraining Order and Preliminary Injunction are not granted to protect and preserve the limits of liability of the Insurance Policy to no less than $600,000.

245.   The harm to Plaintiff is imminent, the injury would be irreparable, and Plaintiff has no other adequate remedy at law if a Temporary Restraining Order and Preliminary Injunction are not granted.

246.   There is no harm that will be suffered by Defendants if a Temporary Restraining Order and Preliminary Injunction is granted.

247.   If a Temporary Restraining Order and Preliminary Injunction are not granted, Plaintiff will suffer imminent and irreparable harm and may lose Plaintiff's right to recover for defense costs under the Insurance Policy.

248.   If a Temporary Restraining Order and Preliminary Injunction are not granted, Plaintiff will be irreparably injured and harmed because the limits of liability of the Insurance Policy will be eroded, exhausted, and reduced so that Plaintiff will not be able to recover under the Insurance Policy for defense costs and the damages suffered by Plaintiff as was intended and guaranteed by the Insurance Policy.

249.   Plaintiff seeks Temporary Restraining Order and Preliminary Injunction only to prevent irreparable harm to Plaintiff by the erosion, exhaustion,

depletion, and loss of funds to be paid to Plaintiff under the Insurance Policy for defense costs.

250.   Defendants have admitted that Plaintiff is entitled to recover defense costs from the Insurance Policy.

251.   It is probable that Plaintiff will recover from Defendants after a trial on the merits because Defendants' breach of contract and violation of Texas law is clear, and Plaintiff has valid causes of action against Defendants and Plaintiff has suffered a probable injury.

252.   Plaintiff has no other adequate remedy at law.

### IX.

### APPLICATION OR MOTION FOR PRELIMINARY INJUNCTION

253.   Plaintiff incorporates the averments in the previous paragraphs of this Second Amended Original Complaint.

254.   Plaintiff asked the Court to set Plaintiff's application or motion for Preliminary Injunction for a hearing and, after hearing, issue a Preliminary Injunction against Defendants for the reasons previously alleged in this First Amended Original Complaint.

255.   Plaintiff requests the Preliminary Injunction to restrain the Insurance Companies and all of those persons acting in concert, joint enterprise, or participation with them from making any payments to any person pursuant to the

Insurance Policy which would reduce, erode, or exhaust the limits of liability below

$600,000 until a Final Judgment is rendered and reached in this case.

### PRAYER

For these reasons, Plaintiff prays that Defendants be cited to appear and

answer, and that, upon trial before a jury, Plaintiff be awarded a Judgment against

Defendants, jointly and severally, for the following;

1. A Declaratory Judgment of contempt against the Insurance Companies for violation of the State Court Temporary Restraining Order and a fine of $600,000 against the Insurance Companies for violation of the State Court Temporary Restraining Order;

2. Actual damages suffered by Plaintiff which are within the jurisdiction of this Court;

3. Breach of contract damages;

4. Prejudgment and post judgment interest owed to Plaintiff in accordance with Texas law;

5. Court cost;

6. Attorney's fees and costs, and court costs incurred in this action, including attorney fees incurred in the district court, the Court of Appeals, if applicable, and the Supreme Court of the United States, if applicable and necessary, and all costs of court;

7. Attorney's fees and costs, and court costs incurred in action brought by TGP and Jim Hoft in the United States District Court for the Eastern District of Missouri, and all costs of court from that action;

8. Injunctive relief including a Temporary Restraining Order and Preliminary Injunction; and,

9. Such other and further relief, both general and special, whether at law or in equity, to which Plaintiff may be justly entitled to receive.

Dated:       November 11, 2025.

Respectfully submitted,

By: /s/ Charles Bundren

**BUNDREN LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
Lead Attorney and Attorney-in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
(214) 808-3555     Telephone
e-mail:       charles@bundrenlaw.net
**ATTORNEY FOR PLAINTIFF:**
**BUNDREN LAW GROUP, PLLC**

### CERTIFICATE OF SERVICE

This is to certify that on this 11th day of November, 2025, a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure and the United States District Court for the Eastern District of Texas Local Rules on all legal counsel of record for any party by serving the following:

**KLEMCHUK PLLC**
Brian Casper, Esq.
Lead Counsel and Attorney-in-Charge
Texas State Bar No. 24075563
Email:            brian.casper@klemchuk.com
Darren Michael Klemchuk, Esq.
Email:       darin.klemchuk@klemchuk
Mandi Michelle Phillips, Esq.
Email:       mandi.phillips@klemchuk.com
8150 N. Central Expressway, 10th Floor
Dallas, TX 75206
Phone:        (214) 367-6000
Fax:          (214) 367-6001
**ATTORNEYS FOR DEFENDANT TGP**

**BURNS LAW FIRM**
John C. Burns, Esq.
Missouri State Bar No. 66462
P.O. Box 191250
St. Louis, Missouri 63119
Phone: (314) 329-5040
Fax: (314) 282-8136
Email: john@burns-law-firm.com
**ATTORNEY FOR DEFENDANTS:**
**TGP COMMUNICATIONS, LLC, AND JAMES "JIM" HOFT**

**FEE, SMITH & SHARP LLP**
Daniel M. Karp, Esq.
Lead Counsel and Attorney-in-Charge
Texas State Bar No. 24012937
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, TX 75240
Phone: (972) 980-3293
Fax: (972) 934- 9200
Email: dkarp@feesmith.com
**ATTORNEY FOR DEFENDANTS:**
**ATLANTIC SPECIALTY INSURANCE COMPANY;**

**INTACT INSURANCE USA LLC; ONEBEACON PROFESSIONAL**
**INSURANCE, INC., a dissolved corporation; and,**
**ONEBEACON PROFESSIONAL INSURANCE GROUP, a fictitious entity.**

Nicholas O'Connell
Intact Insurance Specialty Solutions
Intact U.S. Coverage Litigation Group
605 Highway 169 N.
Suite 800
Plymouth, MN 55441
Phone:        (952) 852-0481
Fax:          (877) 654-1527
Email:        njoconnell@intactinsurance.com
Pro Hac Vice
**ATTORNEY FOR DEFENDANT:**
**ATLANTIC SPECIALTY INSURANCE COMPANY**

Joe Hoft, individually, who has registered for electronic filing and
communications

All counsel of record and individuals who have registered for electronic filing.

__X__ by the Court's CM/ECF Pacer electronic filing System pursuant to FRCP
5(b)(2)(E) and 5(b)(3), and LOCAL RULE CV-5 (c)&(d),

_____ by certified mail return receipt requested deposited with the United States
Postal Service on the date indicated above pursuant to FRCP 5(b)(2)(C),

_____ by email at the email address indicated above pursuant to FRCP 5(b)(2)(E),
and in accordance with the United States District Court for the Eastern District
of Texas Local Rule CV-5(a)(7)(D) a copy of this document was served opposing
counsel in electronic form by serving opposing counsel at the email addresses
listed herein.

and/or

_____ by hand delivery service on the date indicated above pursuant to FRCP
5(b)(2)(A) and (B).

By: /s/ Charles Bundren
**ATTORNEY FOR PLAINTIFF:**
**BUNDREN LAW GROUP, PLLC**