**EXHIBIT L**

David K. Clements Affidavit

Date: November 18, 2025

/s/ Joseph Hoft, Pro Se

SWORN AFFIDAVIT OF DAVID K. CLEMENTS

STATE OF NEW MEXICO
COUNTY OF DONA ANA

I, David K. Clements, being duly sworn, depose and state as follows:

1. I am over the age of 18, of sound mind, and competent to make this affidavit. I am a licensed attorney and have personal knowledge of the facts stated herein, except where otherwise indicated.

2. In October 2023, I was contacted by Defendant Joe Hoft regarding legal services provided to him, his brother Jim Hoft, and The Gateway Pundit in a defamation case involving Ruby Freeman and Wandrea Shaye Moss. Joe Hoft inquired whether the legal services provided by their attorneys of record, John Burns and Marc Randazza, fell below the standard of care.

3. Specifically, Joe Hoft expressed concern that no depositions of the plaintiffs, Ruby Freeman and Wandrea Shaye Moss, had been conducted approximately two years into the representation. I inquired about the status of the parties' scheduling order, which sets deadlines for discovery. I learned that the Hofts were prohibited from conducting depositions or other discovery because the deadlines in the scheduling order had lapsed.

4. I further learned that their attorneys, John Burns and Marc Randazza, failed to inform the Hofts of this impediment and continued to represent to them that depositions of the plaintiffs could still be conducted. The Hofts were concerned about mounting legal bills, the lack of discernible progress in vindicating their names, and the fact that trial was looming approximately two months away.

5. Joe Hoft asked if I knew an attorney who could extricate them from their current representation. I informed him that I was acquainted with attorney Charles Bundren, who had litigated in Fulton County, Georgia (where Ruby Freeman and Wandrea Shaye Moss worked at the State Farm building). I further informed Joe Hoft that Charles Bundren claimed to be a custodian of ballot images that could be exculpatory of the Hofts' claims in the defamation case and had extensive knowledge of election-related controversies.

6. Based on this understanding, I reached out to Charles Bundren to gauge his interest in representing Joe Hoft, Jim Hoft, and The Gateway Pundit. The agreed scope of representation had three primary objectives:

   a. To take over representation from John Burns and Marc Randazza, including seeking to amend the scheduling order to generate new deadlines for conducting depositions of the plaintiffs;

b. To depose Ruby Freeman and Wandrea Shaye Moss, which Bundren appeared inclined to do as it would assist in collateral legal matters; and

c. To provide more efficient and cost-effective representation, as the Hofts were incurring significant legal expenses with their current counsel.

7. On or about November 16, 2023, I facilitated and participated in a phone conference between Charles Bundren and the Hofts, during which the above objectives were reiterated and agreed upon by all parties.

8. I later learned that while the scheduling order was amended and the trial date was vacated, no attempts were made by Charles Bundren to extricate John Burns or Marc Randazza from the case, nor were efforts made to depose Ruby Freeman or Wandrea Shaye Moss. Instead, Bundren adopted a strategy from Burns and Randazza to pursue bankruptcy for The Gateway Pundit, which added to the Hofts' financial strain.

9. Within several months, Charles Bundren's billable hours approached approximately $500,000, with the only tangible result being the amendment of the scheduling order.

10. On or about February 2, 2024, I had a follow-up conversation with Charles Bundren. During this conversation, Bundren raised the issue that Joe Hoft had discussed on a show or podcast that he had information about corrupt actors in Fulton County. Bundren stated he was required to respond to discovery requests from Ruby Freeman and Wandrea Shaye Moss regarding the source of Joe Hoft's claims.

11. Joe Hoft informed me that Charles Bundren was the source of the claims made in the podcast. However, Bundren asked me to claim that I, David K. Clements, was the source of the information to avoid becoming a fact witness in the case. I informed Bundren that this would be false, as I was not the source, and I refused to make such a statement.

12. During the same conversation, I inquired about the progress of the case and became dismayed to learn that the primary objectives of the representation were not being pursued. Specifically, John Burns and Marc Randazza remained counsel of record, no depositions of Ruby Freeman or Wandrea Shaye Moss were sought, and the bankruptcy strategy was being pursued, which would have foreclosed the Hofts' ability to depose the plaintiffs entirely.

13. Following my conversation with Bundren, I contacted Joe Hoft to express my concerns about Bundren's failure to adhere to the agreed scope of representation. I advised Joe Hoft that if Bundren would not follow through on the agreed objectives, the Hofts should consider terminating his representation to prevent further escalation of legal fees. Around this time, Joe Hoft indicated that they had received a bill from Charles Bundren for over $100,000.

14. The foregoing statements are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _16th_ day of _October_ 2025.

_____

David K. Clements

Sworn to and subscribed before me this _10th_ day of _October_, 2025, by David K. Clements.



_____
Notary Public

STATE OF NEW MEXICO
NOTARY PUBLIC
JEANNETTE FRANCO
COMMISSION #2004777
EXPIRES NOVEMBER 19, 2028

My Commission Expires: Nov, 19, 2028 [Notary Seal]